## U.S. District Court for the Southern District of Texas
## (Houston Division)

| | | |
|---|---|---|
| In Re: Wells Fargo Wage and Hour Employment Practices Litigation (No. III) | : : : : : : | U.S. District Court for the Southern District of Texas, Houston Division<br><br>Case No. 4:11-md-2266 |

| | | |
|---|---|---|
| Manuel Gonzalez, Michelle Campbell, Kaustuv Datta, Quinn Elam, Dick Galarza, Joseph Johnson, Frank Lay, Humberto Morin, Samuel Pauls, and Clayton Peters<br><br>     Plaintiffs,<br><br>v.<br><br>Wells Fargo Home Mortgage, Inc and Wells Fargo Bank N.A,<br><br>     Defendants. | : : : : : : : : : : : : : : : | U.S. District Court for the Southern District of Texas, Houston Division<br><br>Case No.: 4:11-cv-03208 (filed in) |

| | | |
|---|---|---|
| Brent Chan and Dien Luu, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs<br><br>v.<br><br>Wells Fargo Home Mortgage, Inc.<br><br>     Defendant. | : : : : : : : : : : : : : | U.S. District Court for the Southern District of Texas, Houston Division<br><br>Case No. 4:11-cv-03275 (filed in) |

| | | |
|---|---|---|
| Raymond Richardson, Judith Gott, Angela Kolmansberger, on behalf of Themselves and All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>v.<br><br>Wells Fargo Bank, N.A.<br><br>     Defendant. | : : : : : : : : : : : : : : | U.S. District Court for the Southern District of Texas, Houston Division<br><br>Case No. 4:10-cv-04949 |

| | |
|---|---|
| James Chaplin, Lucy Gonzales, Donna Lynn Pontello, Denise Tomasini, Bill Early on behalf of themselves and All Others Similarly Situated | : : : : |
| Plaintiffs, | : : |
| v. | : : : |
| Wachovia Mortgage Corporation, Wachovia Corporation, World Mortgage Company, Wells Fargo & Company, and Wells Fargo Bank, N.A. | : : : |
| Defendants. | : : |

U.S. District Court for the Southern District of Texas, Houston Division

Case No. 4:11-cv-00638

**Reply to the *Richardson* and *Chaplin* Plaintiffs' Response to *Gonzales* and *Chan* Plaintiffs' Motion for Consolidation and Appointment of Woodley & McGillivary as Lead Counsel**

**and**

**Response to the Cross-Motion for Appointment of the *Richardson* and *Chaplin* Plaintiffs' Counsel as Lead Counsel**

## Table of Contents

**I.** **The *Gonzalez* Plaintiffs' Motion Only Became Necessary After *Richardson* Counsel Refused to Work Cooperatively** ........................................................................................ 1

**II.** **Counsel Blatantly Mischaracterizes the *Gonzalez* Plaintiffs' Positions and Motives** ..... 4

**A.** **Counsel Mischaracterizes the *Gonzales* Plaintiffs' Position with Respect to Consolidation** ......................................................................................................... 4

**B.** **The *Gonzalez* Plaintiffs' Motion is a Necessary Adjustment to Changed Circumstances Because of the Panel's Transfer Order and, Not as Counsel Suggests, a Contradiction of Previous Positions** ........................................ 5

**C.** ***Richardson* Counsel's Suggestion that *Only* the *Richardson* Plaintiffs May Request Conditional Certification and Notice of a Nationwide Collective Action is Entirely Unsupported** ..................................................................... 7

**D.** ***Gonzalez* Counsel Are Not Attempting to Interfere with Plaintiffs' Right to Select Counsel** ...................................................................................................... 9

**III.** **Application of the Factors for Evaluating Appointment of Lead Counsel Dictates that Appointment of Woodley & McGillivary as Lead Counsel is in the Best Interest of the Plaintiffs and the Court** .......................................................... 10

**A.** **Woodley & McGillivary Will Coordinate with Co-Counsel and Quickly Move for Collective Action Certification on Behalf of All Plaintiffs** ...................... 11

**1.** **Traditional FLSA Certification Analysis During the Notice Stage** ...................... 11

**2.** **FLSA Certification Analysis After Limited Discovery** .......................................... 12

**B.** **Woodley & McGillivary has *Relevant* Qualifications to Serve as Lead Counsel** ....... 12

**C.** **Ms. Wills' Limited FLSA Experience Demonstrates that Woodley & McGillivary is Better Qualified to Serve as Lead Counsel** ...................................................... 15

**IV.** **Conclusion** ........................................................................................................... 16

# Table of Authorities

## Cases

*Creely v. HCR ManorCare Inc.*, No. 3:09-cv-2879, 2011 U.S. Dist. LEXIS 61376
(N.D. Ohio, June 9, 2011) ........................................................................................... 13

*Gonzalez v. Wells Fargo*, Case No. 1:11-cv-02142 ...................................................... 6

*In Re Agent Orange Prod. Liab. Litig.*, 996 F.2d 1425, 1435 (2nd Cir. 1993) .......................... 5, 9

*In re Norplant Contraceptive Prods. Liab. Litig.*, 898 F. Supp 433 n.2 (S.D. Tex. 1995) ............. 8

*In re Pilgrims Pride FLSA Litigation,* No. 1:07-cv-1832, 2008 U.S. Dist. Lexis 93966
(March 13, 2008) ....................................................................................................... 9

*In re Plumbing Fixtures Cases*, 498 F. Supp 484 (J.P.M.L 1968) ........................................... 8, 9

*In re WorldCom, Inc. ERISA Litig.,* No. 02-4816, 2004 WL 2338151
(S.D.N.Y. Oct. 18, 2004) ............................................................................................. 16

*Lipnicki v. Meritage Home Corporation, et al.,* Civ. Action No. 3:10-cv-00605 ....................... 17

*Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987) .................................................... 12

*Meyers v. Pioneer Exploration LLC*, No. 4:09-2256 , 2010 U.S. Dist. LEXIS 66968
(S.D. Tex. July 6, 2010) .............................................................................................. 12, 13

*Mooney v. Aramco Servs. Co.*, 54 F.3d 1207 (5th Cir. Tex. 1995) ....................................... 12, 13

*Richardson et al v. Wells Fargo Bank, N.A*, 4:10-cv-04949 ............................................... 9, 11

*Rueda v. Tecon Services*, Civil Action No. 4:10-cv-04937 ................................................ 16

*Tittle v. Enron Corp.*, Case No. H-01-3913 (S.D. Tex.) .................................................. 15

*Transamerican Refining Corp. v. Dravo Corp.*, Case No. H-88-789 (S.D. Tex.) ....................... 15

*Willis v. Perry Homes*, Civil Action No. 1:09-cv-00799-LY ............................................. 17

**Statutes**

28 U.S.C. § 1407 ........................................................................................................... 4, 9

29 U.S.C. § 216 ............................................................................................................... 8

**Other Authorities**

Federal Rule of Civil Procedure 42 ................................................................................. 4

*Manual for Complex Litigation, Fourth Edition (2004)*, § 10.221 ............................... 10

The *Gonzalez* and *Chan* plaintiffs (hereinafter "*Gonzalez* plaintiffs") respectfully present this Reply to the *Richardson* and *Chaplin* plaintiffs' (hereinafter "*Richardson* plaintiffs") Response to the Motion for Consolidation and Appointment of Woodley & McGillivary as Lead Counsel (hereinafter "Motion") and this Response in Opposition to the Cross-Motion for Appointment of the *Richardson* Plaintiffs' Counsel as Lead Counsel (hereinafter "Cross-Motion").

Appointment of lead counsel in multi-district litigation is necessary to ensure that the burden on the court is minimized, that pretrial matters in the case are managed efficiently, and that the putative plaintiffs' interests are represented adequately and fairly. These goals are not served by appointing inexperienced, uncooperative, and unnecessarily combative counsel. Accordingly, appointment of Woodley & McGillivary as lead counsel is necessary to promote these important interests.

## I.   The *Gonzalez* Plaintiffs' Motion Only Became Necessary After *Richardson* Counsel Refused to Work Cooperatively

The *Gonzalez* plaintiffs are puzzled by *Richardson* counsel's unnecessarily contentious characterization of their Motion as "hijacking" her case where, as here, the *Gonzalez* plaintiffs made repeated attempts to form a coalition amongst *all* plaintiffs' counsel. As part of the coalition, and with *Chan* counsel's agreement and support, the *Gonzalez* plaintiffs simply sought agreement as to the appointment of lead counsel. Lead counsel is necessary in this case where there are multiple counsel representing multiple plaintiffs and where there is the strong likelihood of the certification of a nationwide FLSA collective action. *Richardson* counsel does not "own" the right to represent putative plaintiffs particularly where, as here, no motion for conditional certification has yet been filed.

Faced with Ms. Wills' unwillingness to work with *Gonzalez* and *Chan* counsel, the *Gonzalez* plaintiffs merely followed the procedures laid out in the *Manual for Complex Litigation* for advancing this case.  In a needlessly venomous response to the *Gonzalez* plaintiffs' Motion, the *Richardson* plaintiffs conveniently ignore that the filing of the Motion only became necessary when Ms. Wills, lead counsel for the *Richardson* plaintiffs, refused to participate in a cooperative effort to adopt a representation arrangement for management of this litigation without the need for judicial intervention.  Indeed, the allegation that *Gonzalez* counsel are attempting to "hijack" the case is particularly absurd given that *Gonzalez* counsel's numerous attempts to work collaboratively with Ms. Wills were rebuffed entirely by her.  *See* Doc. 6-5, Elkin Decl. at ¶¶ 12-14, Exh. 4, Memo. in Support Motion (hereinafter "*Gonzalez* Memo").

Even though *Gonzalez* counsel were unfamiliar with Ms. Wills' work, in the interest of promoting collaboration among the plaintiffs, they attempted to work with Ms. Wills in developing a plan for representation that promoted judicial efficiency and benefited the interests of all plaintiffs.  *See* Proposed Representation Agreement, September 2, 2011; Elkin Decl. at ¶¶ 12-14.[1]  Despite these efforts, Ms. Wills demonstrated an unwillingness and inability to work cooperatively from the outset: she dodged and failed to return phone calls; refused to take part in discussions about working collaboratively; and flat-out rejected the proposed representation arrangement without proposing any alternatives or being willing to discuss any sort of cooperative arrangement among co-counsel.  *See* Elkin Decl. at ¶¶ 12-14.  Ms Wills failed to participate in the scheduled conference call (arranged by Woodley & McGillivary) amongst all the plaintiffs' counsel to discuss the proposed representation arrangement.  Instead, she called

---

[1]     A true and accurate copy of a proposed representation agreement submitted by *Gonzalez* counsel to Ms. Wills is attached hereto as Exhibit A.  *Gonzalez* and *Chan* counsel reached the agreement appended as Exhibit 5 to the Cross Motion only *after* Ms. Wills made it clear she was unwilling to work out a cooperative agreement with them.

Mr. McGillivary an hour after the scheduled call and categorically refused to participate in any kind of representation agreement, or even a discussion of such an agreement.  *See* Elkin Decl. at ¶¶ 12-14.  At no point did Ms. Wills offer an alternative proposal or suggestion for working collaboratively with co-counsel to manage the case on behalf of the plaintiffs.

Understandably, given Ms. Wills' disinterest in collaboration, *Gonzalez* counsel became extremely concerned that failure to bring this Motion would prove detrimental to the *Gonzalez* plaintiffs, as well as the putative class members.  Indeed, after reviewing the *Richardson* plaintiffs' litigation history, particularly with respect to Ms. Wills' decision to permit discovery prior to moving for collective action certification (a decision which, as explained in Part IVA, *infra*, imposes a heightened standard on the moving plaintiffs) and counsel's failure to move for collective action certification and notice in a timely fashion, it became apparent that bringing the Motion was necessary to promote the best interest of all plaintiffs, putative plaintiffs, and to promote judicial efficiency.  This concern was validated upon submission of the *Richardson* plaintiffs' Response and Cross-Motion which mischaracterized the *Gonzales* plaintiffs' positions and presented arguments in an unnecessarily harsh and combative tone, demonstrating further that the appointment of Woodley & McGillivary as lead counsel is necessary to effectively manage the plaintiffs' claims.

Moreover, rather than work cooperatively with *Gonzalez* counsel, Ms. Wills added four additional attorneys from two additional firms to represent the *Richardson* plaintiffs – a decision that in no way improves her qualifications to serve as lead counsel given that the additional firms have ***no experience*** managing FLSA collective actions.  Given the *Richardson* plaintiffs' counsel's demonstrated inability to work cooperatively with co-counsel and inexperience in managing this type of litigation, it is clear that appointment of the *Richardson* plaintiffs' counsel

3

as lead counsel will burden, rather than benefit, the Court.  Instead, the *Gonzalez* plaintiffs

respectfully requests appointment of Woodley & McGillivary as lead counsel to ensure that the

best interests of the plaintiffs and putative class members are represented, and that the best

interest of the court in effective management of the litigation is served.

**II.      Counsel Blatantly Mischaracterizes the *Gonzalez* Plaintiffs' Positions and Motives**

   **A.      Counsel Mischaracterizes the *Gonzales* Plaintiffs'
             Position with Respect to Consolidation**

        In an effort to characterize the *Gonzalez* plaintiffs' position as "legally untenable"

*Richardson* counsel misstates the *Gonzalez* plaintiffs' position with respect to consolidation.

Contrary to counsel's assertions otherwise, the *Gonzalez* plaintiffs' Motion and supporting

Memorandum ***do not request consolidation for all purposes***.  Instead, pursuant to the Panel's

Order, the case was transferred to this Court for ***coordinated or consolidated proceedings***.[2]  The

*Gonzalez* plaintiffs merely requested that the Court exercise its broad discretion to administer

multidistrict litigation and consolidate these actions to expedite pretrial proceedings and reduce

duplicative efforts.[3]  *See* Doc. 6, *Gonzalez* Memo at 4.   As the *Richardson* plaintiffs

exhaustively (and unnecessarily) point out, the Panel's authority to transfer and order

consolidation pursuant to 28 U.S.C. § 1407(a) extends ***only*** to pretrial proceedings.  Accordingly,

the *Gonzalez* plaintiffs requested consolidation to expedite pretrial proceedings, reduce

duplicative efforts, streamline and simplify certification of a collective action, discovery and

pretrial motion practice.  *See* Doc. 6, *Gonzalez* Memo at 4.

---

[2]        *See* Transfer Order at 2, Exhibit 1, *Gonzalez-Chan* Memo (Pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A and pending outside the Southern District of Texas are transferred to the Southern District of Texas and…assigned to the Honorable Gray H. Miller,  ***for coordinated or consolidated proceedings***).

[3]        Federal Rule of Civil Procedure 42(a)(2) permits consolidation and Rule 42(a)(3) permits the Court to issue any other orders to avoid unnecessary cost or delay if the actions before the court involve a common question of law or fact.

Indeed, the *Richardson* plaintiffs' attempt to paint the Motion as an attempt to "hijack the nationwide collective action" is particularly illogical given that the Panel's Order specifically anticipates and authorizes this Court to exercise its broad managerial discretion and consolidate the cases for purposes of pretrial proceedings.  Pursuant to the Panel's Order, the *Gonzalez* plaintiffs' Motion requests consolidation of pre-trial proceedings to promote judicial efficiency and conserve resources in an effort to reduce duplicative litigation and provides a Proposed Order for carrying this out effectively.  *See* Doc. 8, Proposed Order.  This request is appropriate because the Court has complete control of the coordinated or consolidated pre-trial proceedings and has all the pretrial power necessary to exercise that authority under the Federal Rules of Civil Procedure.  *See In Re Agent Orange Prod. Liab. Litig*., 996 F.2d 1425, 1435 (2nd Cir. 1993) (transferee judge has all pretrial jurisdiction transferor judge would have had if transfer had not occurred).  Nowhere in either the Motion or the Proposed Order do the *Gonzalez* Plaintiffs ever suggest consolidation for all purposes.  The *Richardson* plaintiffs' attempts to paint the *Gonzalez* plaintiffs' request for pretrial consolidation as nefarious are unfounded, and most troublingly, suggest that counsel for the *Richardson* plaintiffs is more concerned with taking cheap and unwarranted shots than the effective management of this litigation.

**B.    The *Gonzalez* Plaintiffs' Motion is a Necessary Adjustment to Changed Circumstances Because of the Panel's Transfer Order and, Not as Counsel Suggests, a Contradiction of Previous Positions**

In a brash attempt to convince the court of malicious motives behind the *Gonzalez* plaintiffs' Motion, *Richardson* counsel ignores the fact that the *Gonzalez* plaintiffs were forced to file this Motion in response to circumstance primarily of Ms. Wills' making: Ms. Wills' litigation position before the Panel in which she supported defendants' efforts to transfer the *Gonzalez* and *Chan* cases to this Court followed by her unwillingness or inability to cooperate in

formulating a representation agreement.  Obviously, the Panel's Order created a changed situation for the *Gonzalez* and *Chan* plaintiffs necessitating counsels' efforts to ensure that their respective clients received the best and most efficient representation possible in coordination with the other cases in the multi-district litigation.

Specifically, at defendants' request, and with the support of the *Richardson* plaintiffs, the Panel transferred the *Gonzalez* and *Chan* plaintiffs' actions to this Court.  Prior to the transfer, however, *Gonzalez* plaintiffs intended to seek certification of an FLSA collective action limited to Home Mortgage Consultants who have worked for defendant in New Jersey.  *Gonzalez* counsel explained this to the Panel in briefing and at hearing. Consistent with statements made to the Panel by *Gonzalez* counsel, and prior to the Panel's Order transferring their case, *Gonzalez* plaintiffs, did, in fact, move for collective action certification of a class limited to Home Mortgage Consultants who have worked for defendant in New Jersey. *See Gonzalez v. Wells Fargo*, Case No. 1:11-cv-02142 (Motion for FLSA Collective Action and Notice, Docket No. 18. 8/11/2011) (D.N.J.).  However, once the Panel transferred the *Gonzalez* case to this Court, the legal landscape changed. As a result of the Panel's transfer Order (and, in large part, as a result of Ms. Wills' position supporting defendants' motion to transfer) there will be no separate New Jersey FLSA collective action because plaintiffs' motion in New Jersey can no longer be acted upon. Instead, if an FLSA collective action is certified, it will be done on a nationwide basis. As a result of these changed circumstances, and to adequately protect the *Gonzalez* plaintiffs' interests, Woodley & McGillivary sought to be appointed lead counsel.

Notably, at the hearing before the Panel, Ms. Wills, acting as lead counsel for the *Richardson* plaintiffs, made clear her unwillingness to carve out state-wide FLSA collective actions for New Jersey and Washington State.  Ms. Wills stated on the record that the

*Richardson* plaintiffs would be seeking "a nationwide class, and it would also encompass the FLSA claims for the New Jersey plaintiffs…and the same thing in Washington State…those persons in Washington state would fall under the nationwide file that we seek to represent so they would also be included in the nationwide class."[4]  Doc. 17-1, Exh. 1, p. 16, l. 9-24.

Accordingly, this Motion was pursued to promote the best interests of the *Gonzalez* and *Chan* plaintiffs, as well as the putative class members.  The Motion was *not* advanced to "hijack" Ms. Wills' cases, nor does it demonstrate any inconsistency in the *Gonzalez* plaintiffs' actions. Instead, the Motion was necessitated by the Panel's decision to transfer the actions, Ms. Wills' assertion at the hearing that she planned to seek a nationwide collective action without carving out state-wide collective actions in New Jersey and Washington State, Ms. Wills' refusal to work cooperatively after issuance of the transfer order, and Ms. Wills' questionable decision to engage in pre-certification discovery. [5]

### C.    *Richardson* Counsel's Suggestion that <u>*Only*</u> the *Richardson* Plaintiffs May Request Conditional Certification and Notice of a Nationwide Collective Action Is Entirely Unsupported

*Richardson* counsel makes the unsupported assertion that **only** the *Richardson* plaintiffs may request nationwide collective action certification and facilitate notice, without offering any support for this position.  *See* Doc. 17 at 20.  Importantly, to date, the *Richardson* plaintiffs have **not** moved for collective action certification.  Indeed, as mentioned above, the New Jersey *Gonzalez* plaintiffs are the only party to have moved for collective action certification of a collective action class comprising defendant's Home Mortgage Consultants in New Jersey. Once

---

[4]      Of course, the Richardson plaintiffs have at no time moved for conditional certification even though the case has been pending since December 2010.
[5]      Indeed, the assertions in the transfer hearing before the Panel and Ms. Wills' unwillingness to work cooperatively with counsel for the *Gonzalez* plaintiffs after transfer suggest that her support of the Defendant's Motion for Transfer was perhaps given under the mistaken impression that she would ***automatically*** be appointed lead counsel for a nationwide collective action because her cases were filed in the transferee court.   In an FLSA collective action, the plaintiffs' counsel will at all times continue to represent their existing clients.

the Panel transferred this action, the transferor court (i.e., the District of New Jersey) was divested of jurisdiction to decide pending matters, including the *Gonzalez* plaintiffs' motion for collective action certification. *See In re Plumbing Fixtures Cases*, 498 F. Supp 484, 495 (J.P.M.L 1968). As a result of the Panel's decision to transfer these actions and for the reasons described in Part II.B., *supra*, and Part III.A, *infra,* the *Gonzalez* plaintiffs' have not and cannot renew their motion for a state-wide collective action, and instead will seek nationwide collective action certification pursuant to 29 U.S.C. § 216(b). *See In re Norplant Contraceptive Prods. Liab. Litig.*, 898 F. Supp 433, 436 n.2 (S.D. Tex. 1995)(motion filed prior to transfer deemed withdrawn because not renewed following transfer). Once filed, this Court will have jurisdiction to decide the motion for nationwide collective action certification. *See In re Pilgrims Pride FLSA Litigation,* No. 1:07-cv-1832, 2008 U.S. Dist. Lexis 93966 (March 13, 2008)(following transfer by the Panel for pretrial proceedings pursuant to 28 U.S.C. § 1407, court conditionally certified collective action and authorized notice);[6] *In re Agent Orange Prod. Liab. Litig., 996* F.2d at 1435 (transferee court has all pretrial jurisdiction transferor judge would have had if transfer had not occurred).

Moreover, as explained in Part III.A, *infra*, the *Gonzalez* plaintiffs and putative class members ***should not*** be forced to suffer the consequences of the *Richardson* plaintiffs' agreement to pre-certification discovery – a decision which imposes a higher burden in seeking collective action certification.[7] For all of these reasons and despite the *Richardson* plaintiffs' unfounded assertion to the contrary, the *Gonzalez* plaintiffs can and will file a motion for nationwide collective action certification.

---

[6] A true and accurate copy of these unreported cases are attached hereto as Exhibit B.
[7] *Richardson* counsel entered into a Joint Discovery/Case Management Plan which permits pre-certification discovery. *See Richardson et al., v. Wells Fargo Bank, N.A*, 4:10-cv-04949, Doc. 16 and 20, attached hereto as Exhibit B. Notably, in Multi-District Litigation, transferee judges have the authority to modify or vacate prior orders issued by the transferor court. *See In Re Plumbing Fixtures Cases*, 298 F.Supp. 484, 489 (J.P.M.L. 1968).

**D.** ***Gonzalez* Counsel Are Not Attempting to Interfere with Plaintiffs' Right to Select Counsel**

In an argument that demonstrates a fundamental misunderstanding of the role of lead counsel, *Richardson* counsel once again mischaracterizes the position of the *Gonzalez* plaintiffs and states that *Gonzalez* counsel "ignores a plaintiff's constitutional right to select his or her own counsel." Doc. 17 at 21.   In making this assertion, *Richardson* counsel flouts the role of lead counsel as described by the Manual for Complex Litigation:

> *Lead Counsel:* Charged with formulating (in consultation with other counsel) and presenting positions on substantive and procedural issues during the litigation. Typically they act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met.

*Manual for Complex Litigation, Fourth Edition (2004)*, § 10.221.  Contrary to the assertion of the *Richardson* plaintiffs, appointment of Woodley & McGillivary as lead counsel in no way usurps or interferes with the attorney-client relationship of the *Richardson* plaintiffs and their counsel.[8]  Instead, appointment of Woodley & McGillivary as lead counsel will require the firm to manage the overall litigation ***in consultation with*** counsel for the individual plaintiffs.  The current *Richardson* plaintiffs will still be represented by *Richardson* counsel.

Moreover, had *Richardson* counsel carefully read the representation proposal presented by the *Gonzalez* plaintiffs, it would be clear that appointment of Woodley & McGillivary as lead counsel in no way "interferes" with the attorney-client relationship, nor the *Richardson* plaintiffs' selection of counsel.  The proposed representation agreement stated that the firms would ***jointly*** represent the putative plaintiffs who join the case pursuant to a Court-issued

---

[8]        Moreover, this argument is undercut by Ms. Wills' decision to bring on four additional attorneys from two additional firms subsequent to the *Gonzalez* plaintiffs' Motion.

notice.  *See* Ex. A, Proposed Representation Agreement at 2-3.   Moreover, the proposed

agreement specifically states that, "[t]he firms will make their best effort to share in the work as

equally as possible." *Id.* at 3.

     Working jointly to represent putative plaintiffs would be consistent with the Notices of

Consent filed by Ms. Wills' clients which each state that the individual chooses to be represented

by Ms. Wills "and any other attorneys with whom they [sic] associate in this lawsuit."  *See*

*Richardson, et al. v. Wells Fargo Bank, NA*, 4:10-cv-04949, Doc. 1, Attachment 1.[9]

Accordingly, the Richardson *plaintiffs* will maintain an attorney-client relationship with Ms.

Wills.

## III.   Application of the Factors for Evaluating Appointment of Lead Counsel Dictates that Appointment of Woodley & McGillivary as Lead Counsel is in the Best Interest of the Plaintiffs and the Court

     Notably, the *Richardson* plaintiffs do not challenge that Woodley & McGillivary is

qualified to manage the litigation on behalf of the plaintiffs under the factors set forth in the

*Manual for Complex Litigation* which are evaluated by courts in appointing lead counsel.  *See*

*Gonzalez* Memo, Part IV.C. at 5-17.  Indeed, the *Richardson* plaintiffs make no mention

whatsoever of these factors, let alone provide analysis of counsel's qualifications to serve as lead

counsel in light of these factors.  Woodley & McGillivary's expertise in FLSA and wage and

hour litigation will effectively serve the interests of all plaintiffs, as well as the court because the

case will move forward more efficiently given Woodley & McGillivary's demonstrated ability to

work cooperatively with co-counsel.  *See* Doc. 6, *Gonzalez* Memo, Part IV.C., at 5-17.

---

[9]     A true an accurate copy of the complaint and attached notices is attached hereto as Exhibit C.

10

### A.     Woodley & McGillivary Will Coordinate with Co-Counsel and Quickly Move for Collective Action Certification on Behalf of All Plaintiffs

As noted in the opening brief, if selected as lead counsel, Woodley & McGillivary will coordinate with co-counsel to quickly move for collective action certification of a nationwide class of Home Mortgage Consultants which is critical to ensure notice is mailed out to putative class members as quickly as possible.  In contrast, *Richardson* counsel has made the critical misstep of agreeing to engage in pre-certification discovery and, thereby has delayed the issuance of notice.  *See* Exhibit B.  Moreover, this decision was a serious mistake because it heightens the burden that plaintiffs carry in demonstrating that initial certification is warranted.

### 1.     Traditional FLSA Certification Analysis During the Notice Stage

In FLSA cases in which plaintiffs move for certification as a collective action, courts in the Southern District of Texas apply the two-stage class certification process set forth in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987).  *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. Tex. 1995).  In the first stage, known as the notice stage,

> the court determines—based on the pleadings and any submitted affidavits—whether to certify the class conditionally and give notice to potential class members … Because the court often has minimal evidence at this stage of the litigation the standard is ***lenient***, "requiring nothing more than substantial allegations that putative class members were together the victims of a single decision, policy or plan."

*Meyers v. Pioneer Exploration LLC*, No. 4:09-2256 , 2010 U.S. Dist. LEXIS 66968, at *4-5 (S.D. Tex. July 6, 2010)(quoting *Mooney*, 54 F.3d at 1214)(emphasis supplied).  Then, "[i]f the district court conditionally certifies a class and authorizes notice, putative class members are notified of their opportunity to opt in as plaintiffs under § 216(b).  The action then proceeds as a class action during discovery."  *Meyers*, 2010 U.S. Dist. LEXIS 66968, at *5.  Notably, in this traditional collective action certification analysis, the standard is lenient.  Generally, after the

close of discovery, the defendant initiates the second stage by filing a motion for decertification. *Mooney*, 54 F.3d at 1214. At this stage, the Court makes a factual determination from discovery evidence of whether the plaintiffs are "similarly situated." *Id.*

### 2. FLSA Certification Analysis After Limited Discovery

In contrast, when the parties have been permitted to conduct some limited discovery to determine whether a class of similarly situated plaintiffs may exist, courts often subject plaintiffs to a heightened standard of review. In *Creely v. HCR ManorCare Inc.*, No. 3:09-cv-2879, 2011 U.S. Dist. LEXIS 61376 (N.D. Ohio, June 9, 2011), the court examined the cases in which the parties conducted limited discovery and determined that a "hybrid standard…which combines the lenient standard with some consideration of the stage-two factors" applies if the parties conduct limited discovery prior to certification. *Id.* at *21-22. Accordingly, the court required the plaintiffs "to make a modest 'plus' factual showing that there is a group of potentially similarly situated plaintiffs that may be discovered by sending opt-in notices." *Id.* at * 22. Clearly, *Richardson* counsel's agreement to engage in discovery prior to certification demonstrates that she is not best qualified to serve as lead counsel because this agreement imposes a heightened standard on the plaintiffs and results in delay in issuing court appointed notice, a harmful decision given the importance of quickly notifying putative class members of the action to ensure they have ample opportunity to vindicate their rights.

### B. Woodley & McGillivary has *Relevant* Qualifications to Serve as Lead Counsel

In a clear attempt to bolster her case for appointment as lead counsel, in addition to co-counsel John M. Padilla, Ms. Wills added four more attorneys from two additional firms, Yetter

Coleman, L.L.P. and Marshall & Lewis, L.L.P.[10]  While these attorneys appear to have some experience in multidistrict litigation, Ms. Wills has made no argument that these recent additions to the *Richardson* plaintiffs team have ***any*** experience managing nationwide FLSA collective actions, nor does she assert that they have any wage and hour, or even general employment law, experience.  While counsel for the *Richardson* plaintiffs now outnumbers counsel for the *Gonzalez* plaintiffs, the additional attorneys have done nothing to bolster the qualifications of counsel to serve as lead counsel in ***this action***.  Overlawyering a case will promote neither judicial efficiency nor necessarily benefit the plaintiffs.

Given the demonstrated and extensive experience of Woodley & McGillivary in successfully managing nationwide FLSA collective actions, *see Gonzalez* at Part IV.C.1-6, at 7-16, it is clear that appointment of Woodley & McGillivary as lead counsel best serves the interests of the plaintiffs and the court.   Woodley & McGillivary commands the respect of colleagues given the firm's experience successfully litigating FLSA and wage and hour actions. *See id*.  Additionally, Mr. McGillivary and Ms. Elkin often write and speak on issues related to wage and hour law, and litigation procedures involved in wage and hour collective and class action cases.  *See id.*  They are also actively involved in educating judges, arbitrators, and practitioners on topics related to the FLSA and state wage and hour law, including federal judges and their clerks.  *See id.*  Additionally, the firm has the resources necessary to effectively manage this litigation.  Woodley & McGillivary has 15 attorneys who exclusively perform work on behalf of unions and employees, most often involving wage and hour claims. *See id.*  With the assistance of a litigation director and paralegals, the firm has the requisite expertise to manage a nationwide collective action against Wells Fargo. *See id.*   Importantly, Woodley &

---

[10]       As further demonstration that *Richardson* counsel is likely unfamiliar with the *Manual on Complex Litigation*, there has been no disclosure of agreements and understandings regarding the arrangement shared by the firms representing the *Richardson* plaintiffs to counsel representing the *Gonzalez* plaintiffs.  *See Manual*, § 10.221.

McGillivary has the financial resources necessary to effectively litigate this action and, as in other FLSA actions, the firm will advance the expenses of litigation. *See id.*

Moreover, *Chan* counsel, like the firms Ms. Wills has now added to the case, also have extensive experience litigating complex multi-party class action and MDL cases.  They also, however, have wage and hour specific experience.  Keller Rohrback L.L.P. has litigated scores of complex, multi-party cases, including representing Enron employees seeking to recover their lost retirement benefits in *Tittle v. Enron Corp.*, Case No. H-01-3913 (S.D. Tex.) (Consolidated Cases) and purchasers of specialty steel pipe in *Transamerican Refining Corp. v. Dravo Corp.*, Case No. H-88-789 (S.D. Tex.) (Consolidated Cases).  Keller Rohrback's attorneys are accountants, economists, computer technology experts, and former U.S. Justice Department prosecuting attorneys.  In addition, they have litigated wage and hour cases against companies such as Voicelink Data Services, United Parcel Service, Bank of America ,and Autozone.  Keller Rohrback has garnered praise from courts for its attorneys' abilities to litigate cases efficiently, creatively, and cooperatively:  "[Keller Rohrback] has performed an important public service in this action and has done so efficiently and with integrity. It has cooperated completely and in novel ways with Lead Counsel for the Securities Litigation, and in doing so all of them have worked to reduce legal expenses and maximize recovery for class members. [Keller Rohrback] has also worked creatively and diligently to obtain a settlement from WorldCom in the context of complex and difficult legal questions."  *In re WorldCom, Inc. ERISA Litig.*, No. 02-4816, 2004 WL 2338151, at *10 (S.D.N.Y. Oct. 18, 2004).  Further, Tim Pauley of Pauley Law Group, PLLC is a former Department of Labor attorney who prosecuted FLSA wage and hour claims and has since represented *both* employers and employees in federal and state wage hour matters

for more than 30 years.  Most importantly, unlike *Richardson* counsel, *Chan* counsel has

demonstrated a willingness to work cooperatively with co-counsel.

###### C.     Ms. Wills' Limited FLSA Experience Demonstrates that Woodley & McGillivary is Better Qualified to Serve as Lead Counsel

Upon careful review of the Representative List of FLSA Collective Actions cited by Ms.

Wills to demonstrate her experience, it becomes clear that in 23 of the 29 cases, a collective

action was not or has not yet been certified.  Of the six cases conditionally certified as collective

actions, three motions to certify were unopposed.  *See, e.g., Rueda v. Tecon Services*, Civil

Action No. 4:10-cv-04937, Doc. 42 (an ***unopposed*** collective action was certified by the court

for employees working at a single facility, however, an ***opposed*** motion for collective action

certification beyond that facility was denied because the plaintiffs failed to prove that employees

beyond the single facility were similarly situated); *Lipnicki v. Meritage Home Corporation, et

al.,* Civ. Action No. 3:10-cv-00605, Doc. 42 (unopposed motion for collective action

certification was granted but does not apply to a nationwide class); *Willis v. Perry Homes*, Civil

Action No. 1:09-cv-00799-LY (parties stipulated to collective action and notice).   It also appears

that Ms. Wills separately counts cases where she merely filed multiple cases against the same

defendant.

Moreover, of the 29 cases cited by Ms. Wills, 18 are still pending before the court, and in

15 of those 18 cases, Ms. Wills has not yet moved for conditional collective action certification.

This calls into question Ms. Wills' ability to provide the level of time, attention, and resources

necessary to act as lead counsel in this matter.  Moreover, it again reiterates failure to recognize

the importance of quickly moving for collective action certification in ensuring the rights of

putative class members are protected.  Given that Woodley & McGillivary possesses the

requisite experience and resources to manage this litigation on behalf of the plaintiffs and

putative class, it is clear that Woodley & McGillivary is better qualified to serve as lead counsel.

## IV.    Conclusion

For all of the foregoing reasons, and for all the reasons cited in the Motion for

Consolidation and Appointment of Woodley & McGillivary as Lead Counsel and supporting

Memorandum, the *Gonzalez* plaintiffs respectfully request that the Court grant the *Gonzalez*

Plaintiffs' Motion and deny the *Richardson* plaintiffs' Cross-Motion for Appointment of the

*Richardson* Plaintiffs' Counsel as Lead Counsel.

Date: October 3, 2011                          Respectfully Submitted,

                                               /s/ Gregory K. McGillivary
                                               Gregory K. McGillivary
                                               Molly A. Elkin
                                               Diana J. Nobile
                                               WOODLEY & McGillivary
                                               1101 Vermont Ave. NW, Suite 1000
                                               Washington, D.C. 20005
                                               Tel: (202) 833-8855
                                               Fax: (202) 452-1090
                                               E-mail:  gkm@wmlaborlaw.com
                                                        mae@wmlaborlaw.com
                                                        djn@wmlaborlaw.com

                                               *Counsel for Plaintiffs Manuel Gonzalez, Michelle Campbell,*
                                               *Kaustuv Datta, Quinn Elam, Dick Galarza, Joseph Johnson,*
                                               *Frank Lay, Humberto Morin, Samuel Pauls, and Clayton*
                                               *Peters, District of New Jersey, No. 1:11-cv-02142-JBS-KMW*

                                               /s/ Mark A. Griffin
                                               Mark A. Griffin
                                               Tana Lin
                                               Keller Rohrback L.L.P.
                                               1201 Third Avenue, Ste. 3200
                                               Seattle, WA 98101-3052
                                               Email: mgriffin@kellerrohrback.com
                                                       tlin@kellerrohrback.com

                                               *Counsel for Plaintiffs: Brent Chan and Dien Luu, W.D.*
                                               *Washington, No. 2:11-cv-00871*

16

## CERTIFICATE OF SERVICE

On October 3, 2011 the foregoing was filed on behalf of the *Gonzalez* plaintiffs (Case No.: 4:11-cv-03208) and the *Chan* plaintiffs (Case No. 4:11-cv-03275) through the Court's CM/ECF system which will send a notice of electronic filing to:

Lindbergh Porter, Jr.
LITTLER MENDELSON
A Professional Corporation
650 California Street, 20th Floor
San Francisco, CA 94108.2693
Telephone: 415.433.1940
Facsimile: 415.399.8490
E-mail: lporter@littler.com

*Counsel for Defendants*: Wells Fargo Bank, N.A., "Wachovia Mortgage Corporation," "Wachovia Corporation," "World Mortgage Company A/K/A World Mortgage Co., and Wells Fargo & Company

Rhonda Hunter Wills, Esq.                          R.Paul Yetter
Wills Law Firm                                     Reagan W. Simpson
1776 Yorktown, Ste. 600                            Yetter & Coleman, L.L.P.
Houston, TX 77056                                  909 Fannin, Suite 3600
Email: rwills@rwillslawfirm.com                    Houston, Texas 77010

John M. Padilla, Esq.                              Diana E. Marshall
Padilla, Rodriguez, & de la Garza, L.L.P.          Marshall & Lewis, L.L.P.
1776 Yorktown, Ste. 110                            1010 Lamar Street, Suite 450
Houston, TX 77056                                  Houston, Texas, 77002
Email: jpadilla@prdlawfirm.com

*Counsel for Plaintiffs*: *Richardson*, et al. v. Wells Fargo Bank, N.A., Case No. 4:10-cv-04949 and *Chaplin,* et al. v. Wachovia Mortgage Corp., et al. Case No. 4:11-cv-00638

/s/ Gregory K. McGillivary
Gregory K. McGillivary

17