-IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ——————————————— | § | |
| In Re: WELLS FARGO WAGE AND | § | MULTI-DISTRICT LITIGATION |
| HOUR EMPLOYMENT PRACTICE | § | CASE NO. 4:11-md-02266 |
| LITIGATION (III) | § | (Hon. Gray H. Miller) |
| ——————————————— | § | |

# APPLICATION TO APPOINT THE *RICHARDSON* AND *CHAPLIN* PLAINTIFFS' COUNSEL AS LEAD/LIAISON COUNSEL

Counsel for *Richardson* & *Chaplin* plaintiffs:

Rhonda H. Wills
WILLS LAW FIRM
1776 Yorktown, Suite 600
Houston, Texas  77056
Telephone:  713.528.44555
Facsimile: 713.528.2047

R. Paul Yetter
Reagan W. Simpson
YETTER COLEMAN LLP
909 Fannin, Suite 3600
Houston, Texas 77010
Telephone: 713.632.8000
Facsimile: 713.632.8002

Diana E. Marshall
MARSHALL & LEWIS, L.L.P.
1010 Lamar Street, Suite 450
Houston, Texas 77002
Telephone: 713.655.0300
Facsimile: 7l3.655.0130

John M. Padilla
PADILLA, RODRIGUEZ & DE LA GARZA
1776 Yorktown, Suite 110
Houston, Texas  77056
Telephone: 713.574.4600
Facsimile: 713.574.4601

**Table of Contents**

Table of Authorities ....................................................................................................... ii

I.    Counsel for the *Richardson* and *Chaplin* Plaintiffs Should Be Appointed
      Lead/Liaison Counsel. ......................................................................................... 1

      A.    The *Richardson*/ *Chaplin* Counsel Have Done a Significant Amount of
            Work "in Identifying or Investigating Potential Claims in the Action." ............... 2

      B.    The *Richardson* and *Chaplin* Counsel Have Substantial "Experience in
            Handling Class Actions, Other Complex Litigation, and the Types of
            Claims Asserted in this Action.".......................................................................... 8

            1.    FLSA Expertise.......................................................................................... 8

            2.    Multi-party Litigation .............................................................................. 10

            3.    Trial Advocacy......................................................................................... 12

      C.    The *Richardson* and *Chaplin* Counsel Have Deep "Knowledge of the
            Applicable Law." .................................................................................................. 15

      D.    The *Richardson* and *Chaplin* Counsel Have Committed, and Will Continue
            to Commit, Considerable "Resources" in "Representing the Class."................... 15

      E.    Other Factors Confirm that the *Richardson* and *Chaplin* Counsel Will
            "Fairly and Adequately Represent the Interests of the Class.".............................. 16

II.   Applicants' Proposal for Attorney Fees, Rates, and Percentages. ..................................... 17

III.  Conclusion ........................................................................................................................ 17

Certificate of Service ............................................................................................................ 20

## Table of Authorities

**FEDERAL CASES**

*Bernhard v. TD Bank, NA*,
2009 WL 3233541 (D.N.J. 2009) ...............................................................9

*Butler v. Am. Cable & Telephone, LLC*,
2011 WL 4729789 (N.D. Ill. 2011) ...........................................................15

*Canatxx Energy Venture, Inc. v. General Elec. Capital Corp.*,
2008 WL 4601691 (5th Cir. 2008) ............................................................13

*Charlebois v. Angels Baseball, LP*,
2011 WL 26102122 (C.D. Cal. 2011)........................................................15

*Four in One Co., Inc. v. SK Foods, LP*,
2009 WL 747160 (E.D. Cal. 2009)........................................................8, 13

*In re Alum. Phosphide Antitrust Litig.*,
1994 WL 481847 (D. Kansas 1994) ............................................................8

*In re PFF Bancorp, Inc.*,
2011 WL 4389323 (C.D. Cal. 2011)............................................................2

*Northwest Austin MUD v. Holder*,
129 S.Ct. 1695 (2009)...............................................................................13

*Ricci v. City of New Haven*,
129 S.Ct. 2658 (2009)...............................................................................13

*Yoakum v. PBK Architects, Inc.*,
2010 WL 4053956 (S.D. Tex. 2010) ...........................................................4

**FEDERAL STATUTES**

Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et. seq.*................................. passim

**FEDERAL RULES**

Fed. R. Civ. P. 23(g) ........................................................................... passim

Fed. R. Civ. P. 26...............................................................................4, 5

**OTHER AUTHORITIES**

*Manual for Complex Litigation, 4th Ed.,* § 10.224 ................................................. passim

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

_____     §
                                     §
In Re: WELLS FARGO WAGE AND          §
HOUR EMPLOYMENT PRACTICE             §          Civil Action No. 4:11-md-02266
LITIGATION (III)                     §                    (Hon. Gray H. Miller)
_____     §

**APPLICATION TO APPOINT THE *RICHARDSON* AND *CHAPLIN*
PLAINTIFFS' COUNSEL AS LEAD/LIAISON COUNSEL**

Plaintiffs Raymond Richardson, Judith Gott, and Angela Kolmansberger, on behalf of themselves and all others similarly situated, including opt-in plaintiffs (collectively, "*Richardson* plaintiffs"), and James Chaplin, Lucy Gonzalez, Donna Lynn Pontello, Denise Tomasini, and Bill Earley, on behalf of themselves and all others similarly situated, including opt-in plaintiffs (collectively, "*Chaplin* plaintiffs") apply to appoint counsel for the *Richardson* and *Chaplin* plaintiffs as lead/liaison counsel:

**I.      Counsel for the *Richardson* and *Chaplin* Plaintiffs Should Be Appointed
          Lead/Liaison Counsel.**

Counsel for the *Richardson* and *Chaplin* plaintiffs should be appointed lead/liaison counsel, as both Fed. R. Civ. P. 23(g) and *Manual for Complex Litigation* factors show that they are well positioned to serve in that role.  They have the requisite experience for pursuing actions pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §201 *et. seq.* ("FLSA") and have a record of success in complex multi-party actions, including class actions and mass actions. Collectively, they have tried over 100 jury trials, have extensive litigation experience in this District where the pretrial proceedings will occur, and have substantial appellate expertise in this Circuit.  They have protected the *Richardson* and *Chaplin* plaintiffs and future opt-in class members by securing tolling agreements that render their cases better vehicles to raise collective

claims and by aggressively litigating this matter prior to and during consolidation of these actions by the Multidistrict Litigation Panel ("Panel").  The *Richardson* and *Chaplin* actions represent the only putative national collective actions against both Wells Fargo and Wachovia and are the first-filed actions against both defendants in this multidistrict litigation.

Thus, counsel for the *Richardson* and *Chaplin* plaintiffs satisfy the requirements of Rule 23(g)(1) and are "best able to represent the interests" of mortgage loan officers from both Wells Fargo and Wachovia, within the meaning of Rule 23(g)(4).[1]

**A.    The *Richardson* and *Chaplin* Counsel Have Done a Significant Amount of Work "in Identifying or Investigating Potential Claims in the Action."**

The *Richardson* and *Chaplin* counsel have already performed a significant amount of work "in identifying or investigating potential claims in the action," Fed. R. Civ. P. 23(g)(1)(A)(i), and have been actively pursuing those claims on behalf of Wells Fargo and Wachovia mortgage loan officers nationwide.  *See In re PFF Bancorp, Inc.*, 2011 WL 4389323 (C.D. Cal. 2011) (taking into account counsel's involvement in the discovery process and court proceedings).

Months before the *Gonzalez* and *Chan* plaintiffs brought their actions, Rhonda Wills investigated Wells Fargo and Wachovia's employment and compensation practices, filed an FLSA collective action on behalf of mortgage loan officers nationwide, and undertook to protect the interests of putative plaintiffs in those actions by negotiating a tolling agreement with

---

[1]     In its September 28 Order (Dkt. #16), the Court requests applications for liaison counsel pursuant to Fed. R. Civ. P. 23(g).  The *Richardson* and *Chaplin* plaintiffs understand that to mean that the Court will appoint counsel in this MDL to fulfill the obligations described in the *Manual for Complex Litigation, 4th Edition*, §10.221 associated with lead counsel.  For that reason, this application refers to lead/liaison counsel.  Likewise, the *Richardson* and *Chaplin* plaintiffs believe that the qualifications of their counsel as set forth below render them well-suited for appointment as liaison counsel, as that term is used in §10.221.  This Application is supported by declarations from its counsel:  Declaration of Rhonda H. Wills ("Wills Decl.") attached as Ex. 1; Declaration of R. Paul Yetter ("Yetter Decl.") attached as Ex. 2; Declaration of Diana E. Marshall ("Marshall Decl.") attached as Ex. 3; and Declaration of John M. Padilla ("Padilla Decl.") attached as Ex. 4.

defendants.  Wills Decl. ¶¶10-13.  She also actively pursued claims on behalf of putative class members by filing a case management plan, reviewing documents produced in pre-certification discovery, and serving interrogatories.  *Id.* ¶11.  Her involvement exceeds that of *Gonzalez* and *Chan* counsel in breadth as well as depth: *Gonzalez* and *Chan* counsel have not taken any action to protect the interests of Wachovia or Wells Fargo mortgage loan officers on a nationwide basis, and have not taken important steps to protect the interests of either group, including negotiating a tolling agreement.  The work that Ms. Wills has done in this case so far demonstrates both her commitment to plaintiffs and her suitability, as well as the suitability of *Richardson* and *Chaplin* co-counsel, to serve as lead/liaison counsel.

While investigating the employment and compensation practices of Wells Fargo, Wachovia, and their subsidiaries, Ms. Wills discovered what appear to be widespread and systematic failures to comply with the FLSA.  *Id.* ¶9.  Based on these discoveries, on December 10, 2010, she filed in this District the *Richardson* action on behalf of Wells Fargo mortgage loan officers for misclassification and unpaid wages under the FLSA.  *Id.* ¶10.  In contrast, *Gonzalez* and *Chan* counsel did not file their claims until months later—April 14, 2011 and April 12, 2011, respectively—and then only with respect to Wells Fargo plaintiffs.  *Gonzalez* and *Chan* counsel have taken no action to protect the interests of Wachovia mortgage loan officers.

After filing suit, Ms. Wills negotiated a tolling agreement with defendants on behalf of the *Richardson* plaintiffs, an important step to protect their interests.  The agreement tolls and suspends limitations on any person filing a notice of consent in the *Richardson* case.  *Id.* ¶12.  It took effect on February 11, 2011 and continues until either 60 days after oral argument on conditional certification is completed or the Court's ruling on conditional certification, whichever occurs first.  *Id.*  The agreement protects the interests of potential plaintiffs by

preserving claims that might otherwise be barred by limitations because they have not yet filed a notice of consent.   Neither the *Gonzalez* counsel nor the *Chan* counsel negotiated a similar agreement.[2]

Ms. Wills took immediate action on behalf of the *Richardson* plaintiffs.  Following a Rule 26(f) conference with national counsel for Wells Fargo, Ms. Wills filed a Joint Discovery/Case Management Plan in *Richardson* on February 18, 2011, pursuant to Rule 26, and Judge Rosenthal held a Rule 26 scheduling hearing on February 25.  *Id.* ¶11.  On the basis of the Joint Discovery/Case Management Plan and arguments of counsel at the scheduling hearing, Judge Rosenthal entered an Initial Scheduling Order that same day setting forth a briefing schedule and hearing date for conditional certification.   *Id.*  Judge Rosenthal also established parameters for limited pre-conditional certification discovery.   *Id.*  Discovery for the limited purpose of conditional certification commenced thereafter, including the production by Wells Fargo of over 1,700 pages of documents and the submission by Wells Fargo of verified responses to interrogatories on pre-conditional certification issues.  *Id.*  The *Richardson* plaintiffs also received Rule 26 disclosures from Wells Fargo.   Likewise, Ms. Wills responded to pre-conditional certification discovery propounded by Wells Fargo upon the *Richardson* plaintiffs and provided Rule 26 initial disclosures to defendant.   *Id.*

---

[2]     Indeed, some of the actions taken by *Gonzalez* counsel in these proceedings had the potential to actually harm—rather than advance—the interests of putative class members. In their Response to the Cross-Motion for Appointment of the *Richardson/Chaplin* Plaintiffs' Counsel as Lead Counsel (Dkt. #20), *Gonzalez* counsel incorrectly argued that *Richardson* counsel have heightened the burden for conditional certification by conducting limited discovery on pre-conditional certification issues.  *Id.* at 12.  This argument potentially compromises the putative class's position.  *See Yoakum v. PBK Architects, Inc.,* 2010 WL 4053956 at *3 (S.D. Tex.) (discovery for conditional certification focuses on meeting the "fairly lenient standard" of whether plaintiff has shown "substantial allegations that putative class members were together the victims of a single decision, policy or plan.").

Ms. Wills has taken similar steps to safeguard the rights of Wachovia mortgage loan officers.  On February 23, she filed the *Chaplin* action in this District as a nationwide collective action under the FLSA on behalf of mortgage loan officers at Wachovia Mortgage Corporation, the only such action filed in the country.  *Id.* ¶13.  The *Chaplin* action, which was assigned to this Honorable Court, also asserts claims for misclassification and unpaid overtime and/or minimum wages under the FLSA.  *Id.*  After filing suit for the *Chaplin* plaintiffs, Ms. Wills negotiated a tolling agreement which tolls limitations for those Wachovia mortgage loan officers who opt in to the *Chaplin* action at a future date.  *Id.*  The tolling agreement commenced February 23, 2011, and continues until the earlier of 60 days after oral argument on plaintiffs' motion for notice and conditional certification is completed <u>or</u> the Court's ruling on that motion. *Id.*  Twenty-seven individuals have joined the *Chaplin* action so far from various states.  *Id.*

On May 25, 2011, in connection with the parties' Rule 26(f) conference in *Chaplin,* Wells Fargo counsel advised that defendants were preparing to file a motion with the Panel to transfer the *Richardson*, *Chaplin*, *Gonzalez*, and *Chan* actions to this District for pretrial purposes.  *Id.* ¶14.  The *Richardson* and *Chaplin* plaintiffs did not oppose the MDL motion to transfer for pretrial purposes.  *Id.*  The *Richardson* and *Chaplin* plaintiffs also agreed to a stay during the pendency the MDL motion to transfer because their counsel had successfully negotiated tolling agreements that protected the interests of the putative class members of the *Richardson* and *Chaplin* matters.  *Id.*

In contrast, *Gonzalez* and *Chan* counsel have advocated the interests of their respective home-state plaintiffs (New Jersey and Washington, respectively), to the exclusion of nationwide plaintiffs and Wachovia mortgage loan officers.  To that end, both have sought to represent only

mortgage loan officers of Wells Fargo, not Wachovia.  *Id.* ¶15.[3]  The claims brought by *Gonzalez* and *Chan* counsel are geographically limited: the *Chan* action asserts claims only under Washington state law, on behalf of Wells Fargo mortgage loan officers who are Washington residents, while the *Gonzalez* action asserts claims under New Jersey state law, on behalf of Wells Fargo mortgage loan officers who are New Jersey residents.  *Id.*  Indeed, both *Chan* and *Gonzalez* counsel have disclaimed any intention of pursuing claims on behalf of a nationwide FLSA collective action while opposing transfer and consolidation.  *Id.*[4]

Only *Richardson* and *Chaplin* counsel have taken action on behalf of Wells Fargo and Wachovia mortgage loan officers nationwide.  During the past eleven months, Ms. Wills alone has spent more than 500 hours performing legal services for the *Richardson* and *Chaplin* matters.  A synopsis of the work she has performed to date includes, but is not limited to, the following:

- drafting, researching and filing the complaint and serving defendants;

- drafting and/or serving discovery requests and responses;

---

[3]      In their response to defendants' motion to consolidate these cases, *Gonzalez* plaintiffs stated that neither their action nor the *Chan* action "involve[s] claims for any time periods for persons who worked for Wachovia bank," and so discovery regarding Wachovia's policies and practices was "wholly irrelevant" to their cases.  Wills Decl. ¶15, Ex. D at 2-3.

[4]      *Gonzalez* plaintiffs emphasized that they were only seeking a statewide New Jersey class—not a nationwide class—before the MDL Panel:  "Only New Jersey.  New Jersey.  New Jersey."  Wills Decl. ¶16, Ex. F at 11.  They stressed that they had no interest in proceedings involving plaintiffs from other jurisdictions:  "We don't care what happens in Texas, no offense to Texas.  We don't care what happens in Washington."   *Id.* at 12.  In their response to defendants' motion to consolidate these cases, the *Gonzalez* plaintiffs likewise explained that their case was "geographic-centric to defendants' New Jersey region," and so their "discovery will be limited to defendants' policies and procedures as implemented in New Jersey."  *Id.* ¶15, Ex. D at 1, 5.  Similarly, the *Chan* plaintiffs noted that their claims were "region-specific," and so their discovery would primarily involve "depositions of persons and production of information located in Washington."  *Id* ¶15, Ex. E at 7.  They argued that pretrial coordination and consolidation was not necessary because the *Chan* case "involves only Washington state law claims," and affirmed:  "We only have Washington state claims.  We have no FLSA filings in our case."  *Id.* ¶16; Ex. F at 8-9.

- preparing and filing at least 68 notices of consent to join the *Richardson* and *Chaplin* collective actions with respect to plaintiffs and opt-in plaintiffs from various states;

- reviewing more than 1700 pages of documents from Wells Fargo produced in the *Richardson* matter;

- reviewing and synthesizing documents produced by Wells Fargo and Wachovia in other FLSA matters to form a general knowledge of the pertinent policies and practices of those institutions;

- participating in over a dozen telephone conferences with counsel for Wells Fargo;

- participating in over 100 meetings and/or telephone conferences with plaintiffs and opt-in plaintiffs;

- interviewing multiple witnesses with respect to plaintiffs' claims;

- interviewing plaintiffs and opt-in plaintiffs and drafting more than 42 declarations in support of conditional certification and notice;

- coordinating and attending more than 100 meetings and telephone conferences with co-counsel; and

- traveling outside of Houston to meet with clients and interview witnesses.

*Id.* ¶19.  In fact, counsel for the *Richardson* and *Chaplin* plaintiffs have continued to advance the interests of putative collective action members during the pendency of the MDL motion and the related stay by joining additional opt-in plaintiffs during this time.  *Id.* ¶14.

*Richardson* and *Chaplin* counsel have committed significant time and energy investigating, identifying, and pursuing claims on behalf of mortgage loan officers nationwide. The depth and breadth of their efforts confirm that they are well-suited to serve as lead/liaison counsel.

**B.**    **The *Richardson* and *Chaplin* Counsel Have Substantial "Experience in Handling Class Actions, Other Complex Litigation, and the Types of Claims Asserted in this Action."**

The *Richardson* and *Chaplin* counsel have a wide range of "experience in handling class actions, other complex litigation, and the types of claims asserted in this action." Fed. R. Civ. P. 23(g)(1)(A)(ii); *see also Manual for Complex Litigation* §10.224 (court should assess "qualifications, functions, organization, and compensation of designated counsel" and "whether the arrangements for coordination among counsel are fair, reasonable, and efficient"). In applying Fed. R. Civ. P. 23(g)(1)(A)(ii), courts have emphasized the importance of trial experience generally, in addition to counsel's past experience handling similar claims and class action suits, and have considered counsel's reputation in the legal community. *See, e.g., Four in One Co., Inc. v. SK Foods, LP*, 2009 WL 747160, *3 (E.D. Cal. 2009). As a secondary matter, courts also consider the locality of the counsel, as "local attorneys would usually have a better working knowledge of its rules and practices and experiences in applying them." *In re Alum. Phosphide Antitrust Litig.*, 1994 WL 481847, *4 (D. Kansas 1994) (not reported).

Members of the *Richardson* and *Chaplin* team have pursued FLSA claims, including misclassification claims and collective actions. This experience is bolstered by counsel's extensive class action, multi-district litigation, and mass action experience and accomplishments in trial and appellate courts. And *Richardson* and *Chaplin* counsel regularly practice in this District, making them well-suited to serve as lead/liaison counsel.

**1.    FLSA Expertise**

Over the past 17 years, Ms. Wills has specialized in employment litigation and complex multi-party litigation, including national and statewide class actions and collective actions brought under the FLSA. Wills Dec. ¶4. As a result, she has close familiarity with the types of claims asserted in this action—misclassification under the FLSA of mortgage loan officers.

During her time with Vinson & Elkins, she handled complex class actions on behalf of defendants in various jurisdictions, including Texas, South Carolina, Tennessee, New Jersey, Florida, Alabama, the U.S. Virgin Islands, and Canada.  She was also a senior member of the litigation team involved in representing an international company in conjunction with a $1 billion class action settlement fund.  *Id.* ¶5.

At the Wills Law Firm, she has focused on representing plaintiffs in nationwide and statewide FLSA collective actions.  She has successfully resolved many cases that have been certified by federal courts as nationwide and statewide FLSA collective actions.  *Id.* ¶6.  In the past two years, she has handled matters on behalf of mortgage loan officers in FLSA misclassification claims, including claims against Crestmark Mortgage Company, Ltd.; ViewPoint Bankers Mortgage, Inc; Priority Home Mortgage, L.P.; Ameripro Funding, Inc.; Allied Home Mortgage Capital Corp.; Regions Mortgage; and 360 Mortgage Group, LLC.  *Id.* ¶8.

In addition to an in-depth understanding of the substantive law involved in this case, Ms. Wills has familiarity with the rules and procedure in this Court.  *See Bernhard v. TD Bank, NA*, 2009 WL 3233541, *5 (D.N.J. 2009) (taking into consideration counsel's experience in "class actions before this District" in assessing 23(g) factors).  Since 2008, she has appeared as lead counsel in over 20 FLSA actions in this District seeking overtime compensation, minimum wages, and other wages.  Wills Decl. ¶6.  Almost all these cases have been successfully settled— although the terms are confidential, a common practice in this District in the settlement of FLSA cases—or are currently pending.  *Id.*  A representative list of Ms. Wills's FLSA collective action and multi-party matters is attached as Exhibit A to her Declaration.  *Id.*  She currently has, or previously had, FLSA collective action matters filed before most of the federal judges in the

Southern District of Texas, including this Honorable Court, Judge Lee H. Rosenthal, Judge Nancy F. Atlas, Judge David Hittner, Judge Keith P. Ellison, Judge Vanessa Gilmore, Judge Sim Lake, Judge Kenneth M. Hoyt, and Judge Melinda Harmon. *Id.*

Ms. Wills also has pursued FLSA claims on behalf of plaintiff-employees in the Western District of Texas. Since 2009, she has successfully resolved six FLSA collective actions in that District on confidential terms, including five matters before Judge Lee Yeakel. *Id.* ¶ 7, Ex. A.

A focus of Ms. Wills's practice has been FLSA claims on behalf of employees of financial institutions. Among other institutions, she has investigated employment and compensation practices of Wells Fargo and Wachovia, including certain of their subsidiaries. *Id.* ¶9. To date, her investigation has uncovered what appears to be widespread and systematic failures to comply with the FLSA by both institutions. *Id.* As a consequence, her firm has brought eight FLSA collective actions in this District on behalf of Wells Fargo and Wachovia employees, asserting claims of misclassification and unpaid overtime and/or minimum wages. *Id.* In addition to *Richardson* and *Chaplin*, these actions are as follows: *McNeill, et al. v. Wells Fargo Bank*, no. 4:11-cv-1400 (Rosenthal, J.) (on behalf of Wells Fargo tellers); *McNeill, et al. v. Wachovia Corp.*, no. 4:11-cv-1401 (Miller, J.) (on behalf of Wachovia tellers); *Griffith, et al. v. Wells Fargo Bank*, no. 4:11-cv-1440 (Harmon, J.) (on behalf of Wells Fargo loan processors); *Harp v. Wachovia Mortgage Corp.*, no. 4:11-cv-1482 (Ellison, J.) (on behalf of Wachovia loan processors); *Richardson, et al. v. Wells Fargo Bank*, no. 4:11-cv-738 (Atlas, J.) (on behalf of Wells Fargo personal bankers); and *Switzer, et al. v. Wachovia Corp., et al.*, no. 4:11-cv-1604 (Hittner, J.) (on behalf of Wachovia financial specialists). *Id.*

## 2. Multi-party Litigation

The *Richardson* and *Chaplin* team's expertise in FLSA claims is complemented by their extensive experience handling class actions, multi-district litigation, and mass actions—both

-10-

locally and on a national scale.  Each of the firms that comprise the *Richardson* and *Chaplin*

team routinely participates in multi-party proceedings.  Wills Decl. ¶¶5-9; Yetter Decl. ¶¶9-12;

Marshall Decl. ¶5; Padilla Decl. ¶4.

Yetter Coleman, over the course of 15 years, has established a successful class action

practice, representing both plaintiffs and defendants in cases nationwide.  The firm has

successfully brought and defended against multiple class actions in Texas federal and state

courts, including in this District.  These class actions include:

- *Milkes v. Host Marriott*, a case in Texas District Court in which Yetter Coleman obtained a $400 million settlement for a class of limited partners of six partnerships;

- *McNamara v. Bre-X Minerals Ltd.*, a case in the Eastern District of Texas in which Yetter Coleman served as lead counsel in a securities fraud action against a Canadian mineral exploration company and others; the case resulted in a certified settlement class;

- *Woolley v. VistaPrint Corp.*, a putative class action in this District alleging consumer fraud in which Yetter Coleman secured dismissal and entry of a take-nothing judgment;

- *LaValle v. TCI of Houston*, a putative $6 billion nationwide class action in this District against the then largest U.S. cable television firm, in which Yetter Coleman obtained a pretrial dismissal with prejudice; and

- *In re Dell Inc. Sec. Litig.*, a Fifth Circuit appeal in a putative class action alleging securities fraud violations in which Yetter Coleman represented Dell and top executives, and obtained a favorable settlement following oral argument.

Yetter Decl. ¶10.

The firm serves as co-counsel in two significant class actions that are pending in the

Southern District of Texas, as well: *In re BP Sec. Litig*, MDL no. 2185 (Ellison, J.) and *M.D. v.

Perry*, no. 2:11-civ-84 (Jack, J.).  *See Id.* ¶9.  Yetter Coleman's past successes demonstrate its

ability to manage complex litigation, and its familiarity with the rules and requirements for

litigating in this District would additionally benefit the putative class members in this case.

-11-

Yetter Coleman has also represented plaintiffs and defendants in mass actions, with significant success:

- In *In re Tenet Healthcare Cases* (Shasta Co., Calif.), Yetter Coleman obtained an aggregate settlement of $395 million for about 300+ patients who received unnecessary heart procedures;

- In *Abney v. General Electric Co.* (S.D. Ala.), a race discrimination case brought by 60 plaintiffs, Yetter Coleman represented defendants and obtained a settlement on favorable terms on the eve of trial;

- In *Schmick v. KPMG LLP* (Harris Co. Tex.), Yetter Coleman served as co-counsel for 64 investors who brought accounting malpractice claims against a partnership auditor, and obtained a confidential settlement.

*See Id.* ¶12.

Because of its class action practice, Yetter Coleman has familiarity with the Panel and its procedures.  The firm has both won and successfully opposed motions to coordinate claims on behalf of its clients.  *See e.g.*, *In re Global Distribution Systems Antitrust Litig.*, MDL no. 2281 (opposing a motion to coordinate multiple lawsuits asserting claims related to the global distribution of airline tickets); *In re VistaPrint Corp. Marketing & Sales Practices Litig.*, MDL no. 1994 (successfully moving to coordinate class actions alleging various forms of consumer fraud).  *Id.* ¶11.  Yetter Coleman has also represented multiple parties in actions to consolidate pursuant to orders of the Panel.  *See, e.g., In re BP Sec. Litig.*, MDL no. 2185; *Avenue Capital Management II, L.P. v. JP Morgan Chase & Co.*, no. H-05-3031 (coordinated with MDL no. 1441).  *Id.*

### 3.    Trial Advocacy

In addition to its substantial experience dealing with FLSA claims and class action litigation, *Richardson* and *Chaplin* counsel have received national recognition for accomplishments in the courtroom and appellate courts, a factor that courts have taken into

account when assessing counsel's knowledge and experience.  *See, e.g.*, *Four in One Co. v. SK Foods L.P.*, 2009 WL 747160 at *3 (remarking on the importance of trial experience generally).

Yetter Coleman has tried dozens of cases and arbitrations during the past fifteen years.  In 2003, it obtained a $136 million jury verdict in Nevada state court on behalf of an Australian mining company; the case settled for over $100 million.  Yetter Decl. ¶6.  In 2009, it obtained a $32.5 million verdict on behalf of its client against a U.K. insurer, which also settled favorably. *Id.*

The firm's appellate practice group has also achieved important victories for clients in both state and federal courts—including the United States Supreme Court and Texas federal and state courts.  *Id.* ¶7; *see, e.g., Ricci v. City of New Haven,* 129 S.Ct. 2658 (2009) (reversing appellate court and rendering verdict in favor of Connecticut firefighters whose promotions were denied in violation of Title VII); *Northwest Austin MUD v. Holder*, 129 S.Ct. 1695 (2009) (unanimous holding that utility district was entitled to use an exemption to preclearance provision of the Voting Rights Act); *Canatxx Energy Venture, Inc. v. General Elec. Capital Corp.*, 2008 WL 4601691 (5th Cir. 2008) (reversing $136.7 million trial court verdict and rendering take-nothing judgment).

These victories have led to recognition in the legal community.  In 2005, Yetter Coleman was selected by *The American Lawyer* as one of the nation's 8 leading litigation boutiques, an honor that was bestowed again on the firm in 2009 when that publication conducted its second review of litigation boutiques.  Yetter Decl. ¶13.  In 2010, *The National Law Journal* selected Yetter Coleman as one of 20 leading national appellate practices.  *Id.*  And members of the *Richardson* and *Chaplin* team are recognized for their ability within both the local and national legal community, as well:

- Mr. Yetter is a member of the International Society of Barristers and an advocate in the American Board of Trial Advocates.  He has been recognized as one of "America's Leading Business Lawyers" by *Chambers USA*, as a "Texas Super Lawyer" in Business Litigation by *Thomson Reuters*, and as one of the "Top Ten Winning Lawyers" by *National Law Journal*.

- Mr. Simpson, who joined Yetter Coleman as partner and head of its appellate practice in July 2011, has been recognized as "one of the most respected appellate attorneys in the state of Texas" by the 2010 *Chambers USA: America's Leading Lawyers for Business.*  He is one of a small group of lawyers who are Fellows of both the American College of Trial Lawyers and the American Academy of Appellate Lawyers.

*Id.* ¶¶3, 8, Ex. A.

Other members of the *Richardson* and *Chaplin* team have distinguished themselves as courtroom advocates and are highly regarded by their peers.

Diana Marshall, a founding partner of Marshall & Lewis LLP, is a Fellow of the American College of Trial Lawyers and The American Board of Trial Advocates.  She has been named as one of the Top Five Women Trial Lawyers in America by Time magazine.  Marshall Decl. ¶¶2-3.  Ronald Lewis, also a principal and co-founder of Marshall & Lewis, has been selected by his peers to be included in the Best Lawyers in America.  *Id.* ¶4.  Together, they have handled hundreds of cases over the course of their careers and have tried cases to verdict in this District as lead counsel.  *Id.* ¶5.

John Padilla is the managing partner of Padilla, Rodriguez & de la Garza, LLP, and has assisted Ms. Wills in representing plaintiffs in FLSA cases in this District.  Padilla Decl. ¶2, 4.  He was recognized for three top personal injury verdicts, fourth, sixth, and seventh in their respective categories, in "Top Texas Verdicts" (2009 and 2010).  *Id.* ¶5.

**C.    The *Richardson* and *Chaplin* Counsel Have Deep "Knowledge of the Applicable Law."**

The *Richardson* and *Chaplin* counsel have deep "knowledge of the applicable law."  Fed. R. Civ. P. 23(g)(1)(A)(iii); *see also Manual for Complex Litigation* §10.224 (court should assess "would-be designated attorneys' competence for assignments").   Courts generally look to counsel's relevant experience in determining whether they have the "knowledge of the law" required by Fed. R. Civ. P. 23(g)(1)(A)(iii).  *See*, *e.g.*, *Butler v. Am. Cable & Telephone, LLC*, 2011 WL 4729789, *8 (N.D. Ill. 2011) (explaining that, given the attorneys' extensive experience in class action suits, "It rationally follows that the attorneys have requisite knowledge of the law."); *Charlebois v. Angels Baseball, LP*, 2011 WL 26102122, *11 (C.D. Cal. 2011) (noting that counsel's experience in class actions satisfied "both the second and third prongs of the Rule").

The combined experience of the *Richardson* and *Chaplin* counsel demonstrates that they have a thorough understanding of FLSA claims generally—including misclassification claims—and of class action and multi-district litigation.  Significantly, they also have familiarity with the rules and requirements for litigating in this District, as the attorneys from each of the law firms that are a part of the *Richardson* and *Chaplin* team practice here.  Wills Decl. ¶3; Yetter Decl. ¶3; Marshall Decl. ¶3, 4; Padilla Decl. ¶3.   Their knowledge of the substantive law in this type of action, with their procedural expertise, makes them well-suited to act as lead/liaison counsel.

**D.    The *Richardson* and *Chaplin* Counsel Have Committed, and Will Continue to Commit, Considerable "Resources" in "Representing the Class."**

The *Richardson* and *Chaplin* counsel "will commit"—and have already committed—considerable "resources" in "representing the class."  Fed. R. Civ. P. 23(g)(1)(A)(iv); *see also Manual for Complex Litigation* §10.224 (court should assess "the attorneys' resources, commitment, and qualifications to accomplish the assigned tasks").

The *Richardson* and *Chaplin* counsel have the manpower, the legal expertise, and the financial resources to successfully represent plaintiffs in this action.  Together, they comprise a team with FLSA collective action and Rule 23 class action expertise, MDL experience, extensive jury trial experience, an understanding of the rules and requirements for litigating in this District, and appellate expertise.  In previous representations, *Richardson* and *Chaplin* counsel have advanced the expenses of litigation in contingency fee cases in general, and FLSA cases in particular, and are prepared to do the same in this matter.  Wills Decl. ¶17; Yetter Decl. ¶14; Padilla Decl. ¶5.

> **E.**   **Other Factors Confirm that the *Richardson* and *Chaplin* Counsel Will "Fairly and Adequately Represent the Interests of the Class."**

Other factors also show that the *Richardson* and *Chaplin* counsel will "fairly and adequately represent the interests of the class."   Fed. R. Civ. P. 23(g)(1)(B).   Only the *Richardson* and *Chaplin* counsel can "fairly represent the various interests in the litigation." *Manual for Complex Litigation* §10.224.   They have demonstrated their commitment to representing both Wells Fargo and Wachovia mortgage loan officers on a nationwide basis.  In contrast, counsel for the *Gonzalez* and *Chan* plaintiffs have stated their allegiance to state-centric classes for New Jersey and Washington.  By securing tolling agreements on behalf of class members, *Richardson* and *Chaplin* counsel have proven their ability to fairly and adequately represent the interests of the class.

The *Richardson* and *Chaplin* counsel "command the respect of their colleagues" and can "work cooperatively with opposing counsel and the court."  *Manual for Complex Litigation* §10.224.  They supported defendants' request to coordinate these cases for pretrial proceedings, while the *Gonzalez* and *Chan* counsel resisted.  Consequently, *Gonzalez* and *Chan* counsel "may have generated personal antagonisms during prior proceedings that will undermine [their]

effectiveness in the present case." *Id.*   *Richardson* and *Chaplin* counsel have shown an ability to work cooperatively with other attorneys in FLSA actions, as evidenced by Ms. Wills's work with Broadus Spivey in the Western District and Ms. Marshall and Mr. Padilla in this District.  Wills Decl. ¶18.   In addition, the *Richardson* and *Chaplin* team has practiced extensively in this District, including in this Court.

## II.    Applicants' Proposal for Attorney Fees, Rates, and Percentages.

As part of its September 28 order, the Court directed applicants to "set forth fee proposals, rates and percentages that applicants expect to seek if the litigation succeeds in creating a common fund." (Dkt. #16 at 2)

*Richardson* and *Chaplin* counsel disclose their proposed fee arrangement if the litigation succeeds in creating a common fund as follows:  Counsel will seek an award of fees, calculated on a traditional lodestar basis, plus a multiplier as may be appropriate to reflect the success of the litigation, and in accordance with the factors followed in Fifth Circuit precedent.   Hourly rates for counsel are as follows:  senior trial counsel, $550; trial counsel, $400-$475; staff attorney, $300-$375; briefing attorneys, $175-$275; law clerks, $100; and legal assistants, $75.   Wills Decl. ¶20.  Finally, *Richardson* and *Chaplin* counsel anticipate that the fees shared among them will ultimately reflect the labor, resources, responsibility, and expertise necessary to advance the interests of plaintiffs and the class.  *Id.; Manual for Complex Litigation* §10.224 (factors to be assessed in appointment of counsel include "whether there has been full disclosure of all agreements and understandings among counsel").

## III.   Conclusion

The Court should appoint counsel for the *Richardson* and *Chaplin* plaintiffs as lead/liaison counsel consistent with their Proposed Initial Case Management Order to prosecute the claims of Wells Fargo and Wachovia mortgage loan officers in this MDL proceeding.  They

have satisfied the requirements of Rule 23(g), on the basis of their FLSA expertise and

courtroom successes, including in multi-party proceedings.  They have taken important steps to

protect the interests of Wells Fargo and Wachovia class members, including the negotiation of

valuable tolling agreements.  Their qualifications and proactive steps to protect potential

plaintiffs make them well-suited to serve as lead/liaison counsel in this important case.

Dated: October 27, 2011                    Respectfully submitted,

                                           */s/ Rhonda H. Wills*
                                           Rhonda H. Wills
                                           ATTORNEY-IN-CHARGE
                                           State Bar No. 00791943
                                           Federal Id. No. 20699
                                           WILLS LAW FIRM
                                           1776 Yorktown, Suite 600
                                           Houston, Texas  77056
                                           Telephone: (713) 528-4455
                                           Facsimile: (713) 528-2047

                                           R. Paul Yetter
                                           State Bar No. 22154200
                                           Reagan W. Simpson
                                           State Bar No. 18404700
                                           YETTER COLEMAN LLP
                                           909 Fannin, Suite 3600
                                           Houston, Texas 77010
                                           Telephone: (713) 632-8000
                                           Facsimile: (713) 632-8002

                                           Diana E. Marshall
                                           State Bar No. 13025500
                                           Ronald C. Lewis
                                           State Bar No. 12305450
                                           MARSHALL & LEWIS, LLP

-18-

1010 Lamar Street, Suite 450
Houston, Texas 77002
Telephone: (713) 655-0300
Facsimile: (7l3) 655-0130

John M. Padilla
State Bar No. 00791395
PADILLA, RODRIGUEZ & DE LA GARZA, L.L.P.
1776 Yorktown Street, Suite 110
Houston, Texas 77056
Telephone: (713) 574-4600
Facsimile: (713) 574-4601

ATTORNEYS FOR RICHARDSON & CHAPLIN PLAINTIFFS

**Certificate of Service**

On October 27, 2011, I electronically filed the foregoing document with the clerk of the court for the Southern District of Texas using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented to accept this Notice as service of this document by electronic means and/or the foregoing document is being sent by U.S. Mail:

Gregory K. McGillivary
Molly A. Elkin
Diana J. Nobile
Woodley & McGillivary
1101 Vermont Ave. NW, Suite 1000
Washington, D.C. 20005
*Attorneys for Gonzalez Plaintiffs*

Vincent M. Giblin
Pitta & Giblin LLP
120 Broadway, 28th Floor
New York, NY 10271
*Attorneys for Gonzalez Plaintiffs*

Mark A. Griffin
Tana Lin
Keller Rohrback LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101
*Attorneys for Chan Plaintiffs*

Timothy James Pauley
Pauley Law Group PLLC
1001 Fourth Avenue, Suite 3200
Seattle, WA 98154
*Attorneys for Chan Plaintiffs*

David Bryce Jordan
Littler Mendelson, P.C.
1301 McKinney Street, Suite 1900
Houston, TX  77010
*Attorneys for Defendants*

Lindbergh Porter
Philip L. Ross
Littler Mendelson, P.C.
650 California Street, 20th Floor
San Francisco, CA 94108
*Attorneys for Defendants*

/s/ Autry W. Ross
Autry W. Ross