IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In Re: WELLS FARGO WAGE AND HOUR EMPLOYMENT PRACTICE LITIGATION (III) §§§§§ | Civil Action No. 4:11-md-02266 (Hon. Gray H. Miller) |

## DECLARATION OF RHONDA H. WILLS

1.     My name is Rhonda H. Wills.  I am over the age of eighteen years, capable of making this declaration, and fully competent to testify to the matters stated here, due to my position, experience, and personal knowledge.  I have personal knowledge of the facts stated, and they are true.

2.     I am a principal in the WILLS LAW FIRM.  I have been retained by Raymond Richardson, Judith Gott, and Angela Kolmansberger, on behalf of themselves and all others similarly situated, including opt-in plaintiffs (collectively, "*Richardson* plaintiffs") in *Richardson v. Wells Fargo Bank, N.A.*, Civil Action No. 4:10-cv-04949 (S.D. Tex.) and plaintiffs James Chaplin, Lucy Gonzales, Donna Lynn Pontaello, Denise Tomasini, and Bill Earley, on behalf of themselves and all others similarly situated, including opt-in plaintiffs (collectively, "*Chaplin* plaintiffs") in *Chaplin v. Wachovia Mortgage Corp.*, Civil Action No. 4:11-cv-00638 (S.D. Tex.).  I make this declaration in support of the Application for Lead/Liaison Counsel submitted in this proceeding by the *Richardson* plaintiffs and the *Chaplin* plaintiffs.

3.     I am a 1994 graduate of the University of Texas School of Law, and I have a B.B.A. in international business from the University of Texas at Austin.  I have been licensed to practice in Texas since 1994, and since that time I have been a member of the State Bar of Texas in good standing.  I am admitted to practice before the Southern District of Texas, the



Western District of Texas, the Fifth Circuit Court of Appeals, and the United States Supreme Court. Before founding the WILLS LAW FIRM in 2003, I practiced at VINSON & ELKINS L.L.P. for almost 8 years following a one year judicial clerkship with the Supreme Court of Texas.

      4.     In the past 17 years, among other things, I have specialized in employment litigation and complex multi-party litigation, including national and statewide Rule 23 class actions and collective actions brought under the Fair Labor Standards Act ("FLSA").

      5.     While at VINSON & ELKINS, I handled complex class actions representing defendants in various jurisdictions, including Texas, South Carolina, Tennessee, New Jersey, Florida, Alabama, the U.S. Virgin Islands, and Canada. Further, I was a senior member of the litigation team involved in representing an international company in conjunction with a $1 billion class action settlement fund.

      6.     At the WILLS LAW FIRM, I have focused my practice on representing plaintiffs in nationwide and statewide FLSA collective actions. I have successfully resolved multiple cases that have been certified by federal courts as nationwide and statewide FLSA collective actions. Since 2008, I have appeared as lead counsel in over 20 actions in the Southern District of Texas seeking overtime compensation, minimum wages, and other wages, brought pursuant to the FLSA. Almost all of these cases have either been successfully settled— although the terms are confidential, which is a common practice in this District in the settlement of FLSA cases—or they are currently pending. A representative list of my FLSA collective action and multi-party matters is attached as Exhibit A. I also currently have or have previously had FLSA collective action matters filed before most of the federal judges in the Southern District of Texas, including this Honorable Court, Judge Lee H. Rosenthal, Judge Nancy F.

Atlas, Judge David Hittner, Judge Keith P. Ellison, Judge Vanessa Gilmore, Judge Sim Lake, Judge Kenneth M. Hoyt, and Judge Melinda Harmon.

7.      I have also pursued FLSA claims on behalf of plaintiff-employees in the Western District of Texas.  Since 2009, I have successfully resolved six FLSA collective actions in that District on confidential terms, including five matters before Judge Lee Yeakel. *See* Ex. A.

8.      In the past two years, I have handled multiple matters on behalf of mortgage loan officers in FLSA misclassification claims, including claims against Crestmark Mortgage Company, Ltd.; ViewPoint Bankers Mortgage, Inc.; Priority Home Mortgage, L.P.; Ameripro Funding, Inc.; Allied Home Mortgage Capital Corporation; Regions Mortgage; and 360 Mortgage Group, LLC.

9.      A focus of my practice has been litigating FLSA claims on behalf of employees of financial institutions.   Among other institutions, I have investigated the employment and compensation practices of Wells Fargo and Wachovia (which was acquired by Wells Fargo in or around 2009) including certain of their subsidiaries.  To date, my investigation has uncovered what appears to be widespread and systematic failures to comply with the FLSA by both Wells Fargo and Wachovia.  As a consequence, my firm and co-counsel are litigating a total of eight collective actions in the Southern District of Texas on behalf of Wells Fargo and Wachovia employees, asserting claims of misclassification and unpaid overtime and/or minimum wages, in violation of the FLSA.  In addition to *Richardson* and *Chaplin*, these actions include the following:  *McNeill, et al. v. Wells Fargo Bank*, Civil Action No. 4:11-cv-1400 (Rosenthal, J.) (collective action brought on behalf of Wells Fargo tellers); *McNeill, et al. v. Wachovia Corp.*, Civil Action No. 4:11-cv-1401 (Miller, J.) (collective action brought on behalf of Wachovia tellers); *Griffith, et al. v. Wells Fargo Bank*, Civil Action No. 4:11-cv-1440 (Harmon,

J.) (collective action brought on behalf of Wells Fargo loan processors); *Harp v. Wachovia Mortgage Corp.*, Civil Action No. 4:11-cv-1482 (Ellison, J.) (collective action brought on behalf of Wachovia loan processors); *Richardson, et al. v. Wells Fargo Bank*, Civil Action No. 4:11-cv-738 (Atlas, J.) (collective action brought on behalf of Wells Fargo personal bankers); and *Switzer, et al. v. Wachovia Corp., et al.*, Civil Action No. 4:11-cv-1604 (Hittner, J.) (collective action brought on behalf of Wachovia financial specialists).

       10.     On December 10, 2010, my firm filed the *Richardson* action in this District as a nationwide collective action under the FLSA on behalf of mortgage loan officers at Wells Fargo (including similarly situated employees, loan officers, loan consultants, home mortgage consultants, loan originators, among others, collectively referred to as "mortgage loan officers"). The *Richardson* action, which was assigned to the Hon. Lee H. Rosenthal, asserts claims for misclassification and unpaid overtime and/or minimum wages under the FLSA and was the first-filed action on behalf of Wells Fargo mortgage loan officers in this MDL. To date, 41 persons from various states have joined the *Richardson* action.

       11.     To protect the interests of the *Richardson* plaintiffs and to advance their claims as expeditiously as possible, I immediately undertook a number of measures for their benefit. Following a Rule 26(f) conference with Lindberg Porter (national counsel for Wells Fargo), I filed in *Richardson* a Joint Discovery/Case Management Plan pursuant to Rule 26 on February 18, and Judge Rosenthal held an initial pretrial and Rule 26 scheduling hearing on February 25, 2011. On the basis of the Joint Discovery/Case Management Plan and argument of counsel at the scheduling hearing, Judge Rosenthal entered an Initial Scheduling Order that same day setting forth a briefing schedule and hearing date for conditional certification. Further, Judge Rosenthal established parameters for limited pre-conditional certification discovery.

Discovery for the limited purpose of conditional certification commenced thereafter, including the production by Wells Fargo of over 1,700 pages of documents and the submission by Wells Fargo of verified responses to interrogatories on pre-conditional certification issues. The *Richardson* plaintiffs also received Rule 26 disclosures from Wells Fargo. Likewise, I responded to pre-conditional certification discovery propounded by Wells Fargo upon the *Richardson* plaintiffs, and provided Rule 26 initial disclosures.

12.    To further protect the interests of the *Richardson* plaintiffs, I negotiated a tolling agreement with defendants and filed it with the Court on February 17, 2011. The tolling agreement was amended on April 6, 2011 to extend the tolling period. Pursuant to that stipulation of tolling, limitations are tolled and suspended for any and all claims for any person who files a notice of consent in the *Richardson* action, commencing on February 11, 2011 and continuing until the earlier of 60 days after oral argument is completed on plaintiffs' motion for notice and conditional certification <u>or</u> the Court's ruling on that motion. The tolling agreement provides a significant benefit to those persons who may opt in to the *Richardson* action at a future date by preserving damage claims that might otherwise be barred by limitations because they have not yet filed a notice of consent. A true and correct copy of the *Richardson* tolling agreement is attached as Exhibit B.

13.    On February 23, 2011, my firm filed the *Chaplin* action in this District as a nationwide collective action under the FLSA on behalf of mortgage loan officers at Wachovia. The *Chaplin* action, which was assigned to this Honorable Court, also asserts claims for misclassification and unpaid overtime and/or minimum wages under the FLSA. It is the only action filed on behalf of <u>Wachovia</u> mortgage loan officers. To date, 27 persons from various states have joined the *Chaplin* action. After filing suit for the *Chaplin* plaintiffs, I negotiated a

tolling agreement which tolls limitations for those Wachovia mortgage loan officers who opt in to the *Chaplin* action, commencing February 23 and continuing until the earlier of 60 days after oral argument is completed on plaintiffs' motion for notice and conditional certification or the Court's ruling on that motion.  A true and correct copy of the *Chaplin* tolling agreement is attached as Exhibit C.

        14.    On May 25, 2011, my co-counsel, John M. Padilla, and I met with David B. Jordan (Houston counsel for defendants) pursuant to Rule 26(f) to discuss terms for a Joint Discovery/Case Management Plan in *Chaplin*.  During this conference, Mr. Jordan informed us that defendants were preparing to file a motion to transfer with the Multidistrict Litigation Panel ("Panel") to consolidate the *Richardson*, *Chaplin*, *Gonzalez*, and *Chan* actions in the Southern District of Texas for pretrial purposes.  Following our conference, defendants filed the motion to transfer.  The *Richardson* plaintiffs and *Chaplin* plaintiffs did not oppose the MDL motion to transfer for pretrial purposes.  Further, I agreed to stay the *Richardson* and *Chaplin* matters during the pendency of the ruling of the Panel on the MDL motion to transfer because I had successfully negotiated tolling agreements that would protect the interests of the putative class member of the *Richardson* and *Chaplin* matters while the Panel considered the motion.  During the pendency of the MDL motion and the stay, I continued to advance the interests of the *Richardson* and *Chaplin* plaintiffs by joining additional opt-in plaintiffs and continuing legal work in both *Richardson* and *Chaplin*.

        15.    Before the Panel, both the *Gonzalez* plaintiffs (New Jersey) and the *Chan* plaintiffs (Washington) opposed transfer and consolidation of the cases and specifically disclaimed any intention of pursuing claims on behalf of a nationwide FLSA collective action.  A true and correct copy of the opposition responses of the *Gonzalez* and *Chan* plaintiffs are

attached as Exhibits D and E, respectively.  In their opposition response, the *Gonzalez* plaintiffs represented that their case was "geographic-centric to defendants' New Jersey region" (Ex. D at 1) and that consequently its "discovery will be limited to defendants' policies and procedures as implemented in New Jersey" (*Id.* at 5).  Significantly, the *Gonzalez* plaintiffs explained that their case and the *Chan* action did not "involve claims for any time period for persons who worked for Wachovia bank" and that discovery regarding Wachovia's policies and practices were "wholly irrelevant" to their cases.  (*Id.* at 2-3)  The *Chan* plaintiffs likewise stressed the "region-specific" nature of their claims and pointed out that the majority of discovery in *Chan* will involve "depositions of persons and production of information located in Washington." (Ex. E at 7)

       16.    On July 28, 2011, the Panel held a hearing in San Francisco on defendants' motion to transfer.  I attended and participated in oral argument before the Panel on behalf of the *Richardson* and *Chaplin* plaintiffs.  A copy of the transcript of that hearing is attached as Exhibit F.  At the hearing, counsel for the *Chan* plaintiffs argued that pretrial coordination and consolidation was not necessary because the *Chan* case "involves only Washington state law claims." (Ex. F at 8)  Counsel for *Chan* further emphasized "We only have Washington state claims.  We have no FLSA filings in our case." (*Id.* at 9)  *Chan*'s counsel also noted to the Panel that coordination of discovery would be of limited use because "we have no interest in discovery with the Wachovia Defendant.  And for the other cases, they have no interest in discovery regarding our breach of contract claims or wage deductions or the specific facts establishing the evidence under Washington law. . . ." (*Id.* at 10)  Likewise, the *Gonzalez* plaintiffs affirmed that they were seeking a statewide New Jersey class, not a national class: "Only New Jersey.  New Jersey.  New Jersey." (*Id.* at 11)  The *Gonzalez* plaintiffs also stated that they had no interest in proceedings involving plaintiffs from other jurisdictions:  "We don't

care what happens in Texas, no offense to Texas.  We don't care what happens in Washington."
(*Id.*)

17.    My firm, along with my co-counsel—YETTER COLEMAN LLP, PADILLA, RODRIGUEZ & DE LA GARZA, LLP, and MARSHALL & LEWIS, LLP, have the financial and staffing resources to litigate this action.  It has been my practice to advance the expenses of litigation in FLSA cases, and I am prepared to do so in this matter, as are the other members of my co-counsel team.

18.    I have worked cooperatively with co-counsel on numerous FLSA collective action matters.  For example, I have worked with Broadus A. Spivey, former President of the State Bar of Texas, on eight FLSA collective actions.  Likewise, I have worked with my co-counsel in this matter, Diana E. Marshall and John M. Padilla, on other FLSA collective action matters, including other currently pending FLSA collective actions against Wells Fargo and Wachovia.

19.    During the past 11 months since I originated the *Richardson* matter, I have spent more than 500 hours performing legal work on the *Richardson* and *Chaplin* matters.  A synopsis of some of the legal work that I have performed to date on these matters includes, but is not limited to, the following:

- drafting, researching, and filing the complaint and serving defendants;

- reviewing defendants' answer;

- drafting and/or serving discovery requests and responses;

- drafting, filing and/or reviewing motions, responses and other pleadings;

- preparing and filing at least 68 notices of consent to join the *Richardson* and *Chaplin* collective actions with respect to plaintiffs and opt-in plaintiffs from various states;

- reviewing more than 1,700 pages of documents from Wells Fargo produced in the *Richardson* matter;

- reviewing other discovery responses from Wells Fargo in the *Richardson* matter;

- reviewing and synthesizing documents produced by Wells Fargo and Wachovia in other FLSA matters to form a general knowledge of the pertinent policies and practices at those institutions;

- attending hearings, including a scheduling hearing before Judge Lee H. Rosenthal and a hearing before the MDL Panel in San Francisco;

- participating in over a dozen telephone conferences with counsel for Wells Fargo;

- coordinating and participating in a Rule 26(f) conference in both *Richardson* and *Chaplin*;

- participating in over 100 meetings and/or telephone conferences with plaintiffs and opt-in plaintiffs;

- interviewing multiple witnesses with respect to plaintiffs' claims;

- interviewing plaintiffs and opt-in plaintiffs and drafting more than 42 declarations in support of conditional certification and notice;

- preparing a draft of a motion for conditional certification and notice;

- researching applicable legal issues;

- drafting, reviewing and exchanging correspondence with opposing counsel, including at least 10 letters and over 100 email messages;

- coordinating and attending more than 100 meetings and telephone conferences with co-counsel;

- traveling to meet with clients and interview witnesses outside of Houston; and

- drafting motions, opposition briefs and other documents relating to the MDL proceeding.

Moreover, staff from my firm have expended extensive time in the *Richardson* and *Chaplin* matters performing various legal work.

20.    Hourly rates for *Richardson* and *Chaplin* counsel are as follows:  senior trial counsel, $550; trial counsel, $400-$475; staff attorneys, $300-$375; briefing attorneys, $175-$275; law clerks, $100; and legal assistants, $75.

I declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct.

Dated: October 27, 2011

Rhonda H. Wills

## REPRESENTATIVE LIST OF FLSA COLLECTIVE ACTIONS
## OF RHONDA H. WILLS

Below is a list of Ms. Wills' FLSA collective action and multi-party matters that either have

been successfully resolved or are currently pending:

- *Aaron McNeill, et al., v. Wells Fargo Bank, N.A.,* Civil Action No. 4:11-cv-01400, In the United States District Court for the Southern District of Texas, Houston Division (FLSA collective action re Wells Fargo tellers) (J. Miller)

- *LaDonna McNeill, et al., v. Wachovia Corporation, et al.,* Civil Action No. 4:11-cv-01401, In the United States District Court for the Southern District of Texas, Houston Division (FLSA collective action re Wachovia tellers) (J. Rosenthal)

- *Griffith v. Wells Fargo Bank, N.A.,* Civil Action No. 4:11-01440, In the United States District Court for the Southern District of Texas, Houston Division (FLSA collective action re Wells Fargo loan processors) (J. Harmon)

- *Harp v. Wachovia Mortgage Corporation,* Civil Action No. 4:11-cv-01482, In the United States District Court for the Southern District of Texas, Houston Division (FLSA collective action re Wachovia loan processors) (J. Ellison)

- *Richardson, et al., v. Wells Fargo Bank, N.A.,* Civil Action No. 4:11-cv-00738, In the United States District Court for the Southern District of Texas, Houston Division (FLSA collective action re Wells Fargo personal bankers) (J. Atlas)

- *Switzer, et al., v. Wachovia Corporation, et al.,* Civil Action No. 4:11-cv-01604, In the United States District Court for the Southern District of Texas, Houston Division (FLSA collective action re Wachovia financial specialists) (J. Hittner)

- *Richard, et al., v. ViewPoint Bank, et al.,* Civil Action No. 4:11-cv-00846, In the United States District Court for the Southern District of Texas, Houston Division (FLSA collective action re mortgage loan officers) (J. Lake)

- *Villegas v. Regions Bank, et al.,* Civil Action No. 4:11-cv-00904, In the United States District Court for the Southern District of Texas, Houston Division (FLSA collective action re mortgage loan officers) (J. Rosenthal)

- *Salto, et al., v. Ameripro Funding, Inc.,* Civil Action No. 1:11-cv-00289-SS, In the United States District Court for the Western District, Austin Division (FLSA collective action re mortgage loan officers) (J. Sparks)



- *Bethea, et al. v. 360 Mortgage Group, LLP*, Civil Action No. 1:11-cv-921-SS, In the United States District Court for the Western District, Austin Division (FLSA collective action re mortgage loan officers) (J. Sparks)

- *Valladares, et al., v. Priority Home Mortgage, LP. et al.*, Civil Action No. 3:11-cv-00114, In the United States District Court for the Southern District of Texas, Galveston Division (FLSA collective action re mortgage loan officers) (J. Hoyt)

- *Mote v. Perry Homes , A Joint Venture, et al.*, Civil Action No. 1:09-cv-00553-LY, In the United States District Court for the Western District, Austin Division (FLSA collective action re mortgage loan officers) (J. Yeakel)

- *Hajdasz, et al., v. Allied Home Mortgage Capital Corporation*, Civil Action No. 4:11-cv-00909, In the United States District Court for the Southern District of Texas, Houston Division (FLSA collective action re mortgage loan officers) (referred to arbitration)

- *Blake v. Hewlett-Packard Company*, Civil Action No. 4:11-cv-00592, In the United States District Court for the Southern District of Texas, Houston Division (FLSA collective action) (J. Harmon)

- *Fructuoso, et al., v. HEB Grocery Company, LP, et al.*, Civil Action No. 1:10-cv-00951-LY, In the United States District Court for the Western District, Austin Division (FLSA collective action) (J. Yeakel)

- *Self v. Meritage Home Corporation, et al.*, Civil Action No. 3:11-cv-00070, In the United States District Court for the Southern District of Texas, Galveston Division (FLSA collective action) (J. Hoyt)

- *Hughes v. The Ryland Group, Inc. et al.*, Civil Action No. 3:11-cv-00203, In the United States District Court for the Southern District of Texas, Galveston Division  (FLSA collective action) (J. Hoyt)

- *Gillum, et al. v. Acuity Healthcare, LP*, Civil Action No. 4:11-cv-391 (FLSA collection action re healthcare workers) (J. Atlas)

- *Carman, et al., v. Meritage Homes Corporation, et al.*, Civil Action No. 4:11-cv-01824, In the United States District Court for the Southern District of Texas, Houston Division (FLSA collective action) (J. Hoyt)

- *McCarragher, et al., v. The Ryland Group, Inc. et al.*, Civil Action No. 3:11-cv-00055, In the United States District Court for the Southern District of Texas, Galveston Division (FLSA collective action) (J. Hoyt)

- *Canela, et al., v. HEB Grocery Company, LP, et al.*, Civil Action No. 1:10-cv-00788-LY, In the United States District Court for the Western District, Austin Division (conditionally certified FLSA collective action) (J. Yeakel)

- *Rueda, et al., v. Tecon Services, Inc.,* Civil Action No. 4:10-cv-04937, In the United States District Court for the Southern District of Texas, Houston Division (conditionally certified FLSA collective action) (J. Rosenthal)

- *Lipnicki, et al., v. Meritage Homes Corporation, et al.,* Civil Action No. 3:11-cv-00605, In the United States District Court for the Southern District of Texas, Galveston Division (conditionally certified FLSA collective action) (J. Hoyt)

- *Gonzalez et al., v. Ridgewood Landscaping, Inc.,* Civil Action No. 4:09-cv-02992, In the United States District Court for the Southern District of Texas, Houston Division (conditionally certified FLSA collective action ) (J. Rosenthal)

- *Willis, et al., v. Perry Homes, et al.,* Civil Action No. 1:09-cv-00799-LY, In the United States District Court for the Western District, Austin Division (conditionally certified FLSA collective action) (J. Yeakel)

- *Sandberg, et al., v. Perry Homes, et al.,* Civil Action No. 1:09-cv-00763-LY, In the United States District Court for the Western District, Austin Division (conditionally certified FLSA collective action) (J. Yeakel)

- *White-Yeldell v. Lennar Corporation, et al.,* Civil Action No. 4:08-cv-03743, In the United States District Court for the Southern District of Texas, Houston Division (FLSA collective action) (J. Gilmore)

- *Carter, et al., v. Lennar Corporation, et al.,* Civil Action No. 4:08-cv-03790, In the United States District Court for the Southern District of Texas, Houston Division (FLSA collective action) (J. Atlas)

- *Sam, et al., v. Lennar Corporation, et al.,* Civil Action No. 4:09-cv-00565, In the United States District Court for the Southern District of Texas, Houston Division (FLSA collective action) (J. Gilmore)

- *Alvarado, et al., v. Shipley Donut Flour & Supply Co., Inc.,* Civil Action No. 4:08-cv-02111, In the United States District Court for the Southern District of Texas, Houston Division (FLSA collective action) (J. Atlas)

- *Ramirez, et al., v. Gigi Huang Restaurant, Ltd., et al.,* Civil Action No. 4:09-cv-02649, In the United States District Court for the Southern District of Texas, Houston Division (FLSA collective action)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAYMOND RICHARDSON, JUDITH GOTT, AND ANGELA KOLMANSBERGER, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | § § § § § | CIVIL ACTION NO. 4:10-CV-04949 |
| PLAINTIFFS, | § § | |
| v. | § § | COLLECTIVE ACTION (JURY DEMANDED) |
| WELLS FARGO BANK, N.A. | § § | |
| DEFENDANT. | § | |

**AMENDED STIPULATION OF TOLLING AGREEMENT**

The Parties agree and stipulate as follows:

The statute of limitations shall be tolled and suspended—with respect to any and all claims that may be brought by any person who files a Notice of Consent in the above-referenced matter—for the following time period: beginning on February 11, 2011 and ending on the *earlier of* either (a) 60 days after oral argument is completed on Plaintiffs' Motion for Notice and Conditional Certification or (b) the date on which the Court rules on Plaintiffs' Motion for Notice and Conditional Certification.

Respectfully submitted,

*/s/ Rhonda H. Wills*
Rhonda H. Wills
Attorney-in-Charge
State Bar No. 00791943
Southern District I.D. No. 20699
WILLS LAW FIRM
1776 Yorktown, Suite 600
Houston, Texas 77056
Telephone: (713) 528-4455
Facsimile: (713) 528-2047



EXHIBIT
B

John M. Padilla
State Bar No. 00791395
PADILLA, RODRIGUEZ & DE LA GARZA, L.L.P.
1776 Yorktown, Suite 110
Houston, Texas 77056
Telephone: (713) 574-4602
Facsimile: (713) 574-4601
**ATTORNEYS FOR PLAINTIFFS**

-AND-

*/s/ Stefanie R. Moll (w/permission)*
Attorney-in-Charge
State Bar # 24002870
Fed. ID # 22861
LITTLER MENDELSON, P.C.
1301 McKinney, Suite 1900
Houston, Texas 77010
713-951-9400 (Telephone)
713-951-9212 (Facsimile)

*/s/ Lindberg Porter (w/permission)*
Lindbergh Porter
LITTLER MENDELSON, P.C.
650 California Street, 20th Floor
San Francisco, California 94108
415-399-8445 (Telephone)
415-743-6541 (Facsimile)
**ATTORNEYS FOR DEFENDANT
WELLS FARGO BANK, N.A.**

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2011, I electronically filed the foregoing document with the clerk of the court for the Southern District of Texas using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented to accept this Notice as service of this document by electronic means:

*/s/ Rhonda H. Wills*
Rhonda H. Wills

Firmwide:100954781.1 051995.1032

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES CHAPLIN, ET AL., ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | § § § § | |
| PLAINTIFFS, | § § | CIVIL ACTION NO. 4:11-CV-638 |
| v. | § § | |
| WACHOVIA MORTGAGE CORPORATION, WACHOVIA CORPORATION, WORLD MORTGAGE COMPANY A/K/A WORLD MORTGAGE CO., WELLS FARGO & COMPANY, AND WELLS FARGO BANK, N.A. | § § § § § § § | COLLECTIVE ACTION (JURY DEMANDED) |
| DEFENDANTS. | § | |

## STIPULATION OF TOLLING AGREEMENT

The Parties agree and stipulate as follows:

The statute of limitations shall be tolled and suspended—with respect to any and all claims that may be brought by any person who files a Notice of Consent in the above-referenced matter—for the following time period: beginning on February 23, 2011 and ending on the *earlier of* either (a) 60 days after oral argument is completed on Plaintiffs' Motion for Notice and Conditional Certification or (b) the date on which the Court rules on Plaintiffs' Motion for Notice and Conditional Certification.

Respectfully submitted,

*/s/ Rhonda H. Wills*
Rhonda H. Wills
Attorney-in-Charge
State Bar No. 00791943
Southern District I.D. No. 20699
WILLS LAW FIRM
1776 Yorktown, Suite 600
Houston, Texas 77056



Telephone: (713) 528-4455
Facsimile: (713) 528-2047

John M. Padilla
State Bar No. 00791395
PADILLA, RODRIGUEZ & DE LA GARZA, L.L.P.
1776 Yorktown, Suite 110
Houston, Texas 77056
Telephone: (713) 574-4602
Facsimile: (713) 574-4601
**ATTORNEYS FOR PLAINTIFFS**

-AND-

*/s/ David B. Jordan (w/permission)*
David B. Jordan
Attorney-in-Charge
State Bar No. 24032603
Federal I.D. No. 40416
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, Texas 77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)

*/s/ Lindberg Porter (w/permission)*
Lindbergh Porter
LITTLER MENDELSON, P.C.
650 California Street, 20th Floor
San Francisco, California 94108
415-399-8445 (Telephone)
415-743-6541 (Facsimile)
**ATTORNEYS FOR DEFENDANT**
**WELLS FARGO BANK, N.A.**

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2011, I electronically filed the foregoing document with the clerk of the court for the Southern District of Texas using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented to accept this Notice as service of this document by electronic means:

*/s/ Rhonda H. Wills*
Rhonda H. Wills

2

### BEFORE THE UNITED STATES JUDICIAL PANEL ON
### MULTIDISTRICT LITIGATION

In re Wells Fargo Wage and Hour    :     **MDL Docket No. 2266**
Employment Practices Litigation    :

### NEW JERSEY PLAINTIFFS' RESPONSE TO
### DEFENDANTS' MOTION FOR TRANSFER OF ACTIONS TO THE
### SOUTHERN DISTRICT OF TEXAS FOR COORDINATED PRETRIAL
### PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407

This response brief is brought on behalf of the plaintiffs in the lawsuit *Manuel Gonzalez, et al. v. Wells Fargo Home Mortgage, Inc. and Wells Fargo, N.A.*, Civil Action No. 11-cv-02142 (*Gonzalez*), now pending in the U.S. District Court of New Jersey before the Honorable Jerome B. Simandle. The plaintiffs in the New Jersey case – *Gonzalez* - oppose transfer of this action to the Southern District of Texas because transfer will not promote the just and efficient conduct of the actions and will not increase the convenience of the parties and witnesses. To the contrary, the New Jersey plaintiffs' action solely concerns the specific factual policies and practices regarding the home mortgage consultants, loan officers and loan originators in defendants' New Jersey region, and assessment of defendants' defense that plaintiffs' are allegedly exempt from the overtime requirements of New Jersey state law and the Fair Labor Standards Act (FLSA). As a result, this case will be "geographic-centric" to defendants' New Jersey region and the case will involve discovery of company personnel and company records that nearly all are located in New Jersey. Moreover, there are only a small number of actions regarding defendants' overtime practices with respect to home mortgage consultants, loan officers and loan originators that defendants seek transfer, and the issues



in these cases are insufficiently complex to justify transfer. Accordingly, plaintiffs request that defendants' motion to transfer be denied.

## I.   BACKGROUND

Defendants seek to transfer the New Jersey plaintiffs' *Gonzalez* case along with *Chan v. Wells Fargo Home Mortgage, Inc.*, case No. 2-11-cv-00871 (*Chan*), a case solely involving state law claims in Washington state, to the U.S. District Court for the Southern District of Texas, and to join these cases with two pending cases there -- *Chaplin v. Wachovia Mortgage Corp.*, case No. 4:11-cv-00638 (*Chaplin*) and *Richardson v. Wells Fargo Bank, N.A.*, case No. 4:10-cv-04949 (*Richardson*) – for purposes of pretrial proceedings. Several things are noteworthy about these cases, each of which militates against the Washington and New Jersey cases being transferred.

First, although there are technically four cases involved, the two cases in Texas involve the same attorneys for plaintiffs and the same attorneys for defendants. From the pleadings, the reason there are two cases in Texas is evident. The *Chaplin* case is filed on behalf of persons who worked as loan officers or home mortgage consultants for Wachovia Bank (See Plaintiffs' Complaint attached as Exhibit 2 to Defendant's Motion to Transfer, Paragraphs 1.1, 1.2) before Wells Fargo apparently took over Wachovia Bank, and the case is brought against Wells Fargo because of the take over. The other Texas case, *Richardson*, is brought on behalf of home mortgage consultants who worked for Wells Fargo Bank. Neither the Washington *Chan* case nor the New Jersey *Gonzalez* case involve claims for any time periods for persons who worked for Wachovia bank. Thus, discovery regarding Wachovia's policies and practices, and the activities of the

plaintiffs in *Chaplin* will be wholly irrelevant to the legal and factual issues in *Gonzalez* and *Chan*.

Although the *Chan* case has been removed to federal court, it solely involves allegations of violations of Washington state laws. (See Exhibit 3 of Defendants' Motion to Transfer). In addition to allegations of violations of the Washington state minimum wage and overtime laws, the *Chan* plaintiffs allege that they were not permitted to take meal and rest breaks in violation of Washington state law. (See Exhibit 3 of Defendants' Motion to Transfer). No claims under the Fair Labor Standards Act are asserted. The *Chan* plaintiffs seek certification as a state class action on behalf of a class of home mortgage consultants employed by defendants in Washington state. Thus, the claims are limited to the Washington state region and will be dependent on the defendants' policies and practices, and the plaintiffs' job duties and responsibilities in Washington state. Discovery regarding Wells Fargo's practices and policies or the individual plaintiffs' activities in Texas or New Jersey will be irrelevant to the plaintiffs in *Chan*.

Similarly, the *Gonzalez* case is limited to claims on behalf of employees in a single state - home mortgage consultants, loan officers and loan originators in New Jersey who are asserting violations of the New Jersey state minimum wage and overtime laws as well as violations of the FLSA. The plaintiffs in *Gonzalez* seek class certification of a class of persons who have worked as home mortgage consultants, loan officers or loan originators in New Jersey. Each of the plaintiffs are persons who worked as home mortgage consultants, loan originators and/or loan officers in New Jersey.[1] The

---

[1]    Although it is unclear from defendants' answer to the complaint in *Gonzalez* which exemption defendants intend to allege as a defense to their failure to comply with the minimum wage and overtime requirements of New Jersey state law and the FLSA, it

*Gonzalez* plaintiffs also pursue FLSA overtime claims on behalf of similarly situated

persons who have worked as home mortgage consultants, loan officers or loan originators

in New Jersey.[2]  Although plaintiffs have not yet moved for collective action status under

the FLSA, plaintiffs are not seeking to add plaintiffs who worked outside of New Jersey

when they move for collective action status and their motion will be limited to current

and former New Jersey employees of defendants who worked as home mortgage

consultants, loan officers, and/or loan originators.

The *Gonzalez* plaintiffs action is limited to New Jersey because the defendants'

home mortgage division is set up with a regional office in New Jersey, and defendants'

regional policies and practices – exhibited through such information as documents,

supervision, and training in New Jersey – will be relevant to plaintiffs' proof to establish

defendants' minimum wage and overtime violations under both the FLSA and New

Jersey state law, and to rebut any defenses defendants raise to its failure to comply with

these laws.  Thus, these sorts of determinations for the class representatives will be

geographic-centric to New Jersey.

---

should be noted that application of the exemptions to New Jersey wage and hour law are
different than under the FLSA.  Under the FLSA, there is no specific percentage test
under which an employee must perform exempt duties to be exempt from the wage and
hour laws, whereas under New Jersey state law an employee must spend 80% or more of
his or her time performing exempt job duties to fall within the exemption.  *Compare* 29
C.F.R. § 541.700(b) *with* N.J. Admin. Code tit. 12, §§56-7.1(a)(5), 56-7.2(a)(4), 56-
7.3(a)(4) and 56-7.4.

[2]      In addition to the different tests for exemptions to the wage and hour laws under
New Jersey state law and the FLSA, under the FLSA the statute of limitations is
potentially one year longer and one can obtain liquidated damages as well as backpay
under the FLSA, but not in New Jersey. *Compare* 29 U.S.C. §§ 216(b) *with* 255(a) with
N.J.S.A. 34:11-56a25.1.

In *Gonzalez*, the discovery will be limited to defendants' policies and procedures as implemented in New Jersey with respect to plaintiffs' job duties and responsibilities. Defendant Wells Fargo Home Mortgage, Inc. has established three districts in New Jersey in which it employs home mortgage consultants, loan officers and loan originators. These districts are within a region that encompasses New Jersey. Thus, most if not all of plaintiffs' discovery will involve depositions of persons in New Jersey and nearly all of the documents plaintiffs seek and the information sought will be located in New Jersey.

## II.    ARGUMENT – DEFENDANTS' MOTION FAILS TO SATISFY THE PREREQUISITES OF AND POLICIES UNDERLYING SECTION 1407

### A.    Multidistrict Litigation Inappropriate Where There Are Few, Non-Complex Cases

Multidistrict litigation in which cases are transferred to one district court from another district court is appropriate only where there are common questions of fact, where grouping the cases together for coordinated and consolidated proceedings will be for the convenience of the parties and where transfer will promote the just and efficient conduct of the actions. 28 U.S.C. § 1407(a). The party moving for transfer has the burden of proving that the requirements for transfer are met and that it in the interests of the parties and the courts that transfer occur. *See In re Chiropractic Antitrust Litigation.*, 483 F.Supp. 811, 813 (J.P.M.L. 1980); *In re 21st Century Productions, Inc. "Thrilsphere" Contract Litigation,* 448 F.Supp. 271, 273 (J.P.M.L. 1978). In their motion and brief, defendants do not explain, beyond reflexively quoting the statutory requirements, how consolidation and transfer of four cases, two of which are in the same judicial district and involve the same counsel and two of which are geographically

limited to claims in Washington state and New Jersey, to a judicial district in Texas will promote the convenience of parties or witnesses, or promote the efficiency of the process.

"When the number of cases proposed to be transferred is relatively small, an important factor in determining whether to transfer is the complexity of the issues involved in the cases. Generally, there will be nothing or relatively little to be gained in the way of efficiency if only a few cases are pending in different districts. Accordingly, the Multidistrict Litigation Panel understandably requires a heightened showing that the questions to be resolved are sufficiently complex to warrant transfer." 17 James Wm. Moore et al., *Moore's Federal Practice* ¶ 112.02[3] (1997). Further, as the MDL panel explained in *In re: CVS Caremark Corp. Wage and Hour Employment Practices Litigation*, 684 F.Supp. 2d 1377, 1379 (J.P.M.L. 2010), there are three broad circumstances that make a case for centralization less compelling:

(1)   when the duties of the subject employees appear to be subject to significant local variances or would entail significant localized discovery;

(2)   the defendants and/or some of the plaintiffs oppose centralization; and

(3)   only a few actions are involved in the litigation.

*See In re Boehringer Ingelheim Pharmaceuticals Inc. Fair Labor Standards Litigation*, MDL No. 2210, 2011 U.S. Dist. LEXIS 11391 (J.P.M.L. 2011);[3] *See also In re Qualify Mortgage USA Inc. Mortgage Loan Referral Litig. v. Quality Mortgage USA, Inc.*, 1997 U.S. Dist. LEXIS 10862, *1-2 (J.P.M.L. 1997)("Given the minimal number of actions in this docket, movants have failed to persuade us that any common questions of fact are sufficiently complex, or that the accompanying discovery will be so time-consuming, to justify Section 1407 transfer"); *North Star Steel Co. v. MidAmerican Energy Holdings*

---

[3]     Unreported cases are attached hereto as Exhibit A.

*Co.*, 1998 U.S. Dist. LEXIS 4491 at \*2 (J.P.M.L. Apr. 3, 1998)(same). All three of the circumstances identified by the Panel in *CVS* as reasons not to consolidate and transfer cases to a single judicial district are present here.

      **B.**    **Centralization and Transfer of *Gonzalez* Is Inappropriate Because There are Few Cases, the Cases Are Not Sufficiently Complex, Transfer Would Not Promote the Efficiency of the Pre-Trial Discovery, and It Would Not Be for the Parties and Witnesses Convenience**

     Here, there are a number of reasons that transfer of the *Gonzalez* case to the Southern District of Texas is inappropriate and contrary to the purposes of multidistrict litigation. First, there are not a sufficient number of cases to justify transfer, particularly since these actions are insufficiently complex to justify transfer and consolidation for purposes of pretrial proceedings. Although there are four actions listed, two of the actions are filed in the same court in Texas and involve the same attorneys for plaintiffs and defendants, and the same defendants. The other two cases each involve a single state, one of which is in Washington state and the other is in New Jersey. Thus, there are only 4 cases in 3 districts and 2 of the cases involve the same counsel.

     The cases are wage and hour actions involving defendants' failure to compensate employees with the minimum wage and overtime. Defendants' assert that the home mortgage consultants, loan officers and loan originators are allegedly exempt from state and federal minimum wage and overtime laws. In cases involving FLSA claims, the MDL panel has repeatedly denied motions to transfer as involving insufficiently complex issues to merit transfer and consolidation where, as here, there are an insufficient number of cases involved. *See, e.g.. In re Boehringer Ingelheim Pharmaceuticals Inc. Fair Labor Standards Litigation*, MDL No. 2210, 2011 U.S. Dist. LEXIS 11391 (J.P.M.L.

2011)( Transfer denied in FLSA exemption case involving cases in four different districts); *In re H&R Block, Inc. Wage and Hour Employment Practices Litigation*, 729 F.Supp. 2d 1358 (J.P.M.L. 2010)(Transfer denied in FLSA litigation where "only three actions are pending and plaintiffs in two of the three actions share counsel"); *In Re Cablenet Services Unlimited Inc., Fair Labor Standards Act Litigation*, 716 F.Supp. 2d 1363 (J.P.M.L. 2010)(Transfer denied where only two cases and factual questions shared are not sufficiently complex or numerous); *In re PPG Industries, Inc. Wage and Hour Employment Practices Litigation*, 701 F.Supp. 2d 1379 (J.P.M.L. 2010)(Transfer denied in FLSA action involving claimed FLSA exemptions in three cases in three judicial districts as cases were insufficiently complex to justify transfer).*Cf. In re Student-Athlete Name & Likeness Litigation*, MDL No. 2212, 2011 U.S. Dist. LEXIS 11394 (J.P.M.L. 2011)(Transfer denied in cases involving only 3 jurisdictions, although 11 cases pending); *In re Webloyalty.com inc. Marketing and Sales Practices Litigation* MDL No. 2206 2011 U.S. Dist. LEXIS 12655 (J.P.M.L. 2011)(Transfer denied where two actions pending in two districts); In re *Student-Athlete Name & Likeness Litigation*, MDL No. 2212, 2011 U.S. Dist. LEXIS 11394 (J.P.M.L. 2011)(Transfer denied where cases involved "only" 3 jurisdictions, although 11 cases pending).

Upon examination, the issues involved in the Wells Fargo FLSA litigation are not sufficiently complex to warrant transfer, particularly considering the limited number of cases involved.  The cases involve the issue of whether defendants can establish any affirmative defenses to excuse defendants' failure to pay the minimum wage and overtime in accordance with state and federal law to employees working as home mortgage consultants, loan originators and/or loan officers.  This requires an examination

of the job duties and responsibilities of the plaintiffs as applied to the exemptions that

defendant asserts.[4]  This will require individualized fact examinations of the plaintiff

class representatives in each region, and discovery on a geographic-centric basis rather

than nationwide discovery.

Indeed, rather than promote the efficient conduct of the litigation and the

convenience of the parties, transfer will inconvenience the parties and stall the efficient

conduct of the litigation.  Discovery is likely to be done on an individualized basis for

plaintiffs' representatives within each region.  It will be different in Washington state,

New Jersey and Texas.  For example, the *Gonzalez* plaintiffs were directly supervised by

the branch manager assigned to the branch at which these employees worked.  Decl. of

Manuel Gonzalez, ¶¶ 3; Decl. of Samuel Pauls, ¶ 3.[5]  In New Jersey, branch mangers

reported to, and were supervised by, an area manager responsible for a particular region

in the state.  Decl. of Manuel Gonzalez, ¶ 4, Decl. of Samuel Pauls, ¶ 4.  The area manger

reported to a regional manger who was responsible for the Wells Fargo Home Mortgage

branches throughout the state of New Jersey.  Decl. of Manuel Gonzalez, ¶ 5, Decl. of

Samuel Pauls, ¶ 5.  The regional manager did not supervise employees in any other state.

*Id.*  It is the branch managers, area managers, and regional manager in New Jersey who

implemented and explained policies and supervised the home mortgage consultants

---

[4]    In its answer to the complaint in *Gonzalez*, defendants do not identify which
exemptions to the FLSA or New Jersey state law, if any, they claim apply to plaintiffs.
Instead, defendant vaguely state that "Plaintiffs claims are barred because the work they
performed falls within exemptions, exclusions, exceptions, or credits provided for in the
FLSA (including 29 U.S.C. §§ 207, 213), and/or NJWHL (including N.J.S.A. 34:11-
56a25) and their regulations." Defendants' Answer, Sixth Defense.

[5]    A true and accurate copy of the Declaration of Manuel Gonzalez is attached
hereto as Exhibit B.  A true and accurate copy of the Declaration of Samuel Pauls is
attached hereto as Exhibit C.

working in New Jersey Wells Fargo Home Mortgage Branches.  *See* Decl. of Manuel

Gonzalez ¶¶ 3-5, Decl. of Samuel Pauls, ¶¶ 3-6 (stating that compensation packages for

home mortgage consultants were explained by, and implemented through, the regional

and area managers).

     All of the depositions of the plaintiffs in *Gonzalez* and their supervisors, and area

managers, and the regional manager will occur in New Jersey.  There may be some

depositions involving Wells Fargo headquarters personnel, depending on the degree of

delegation by the headquarters office, which we believe to be substantial, and plaintiffs'

counsel will cooperate with defendants and other plaintiffs' counsel in the other actions

for depositions of headquarters personnel of defendant Wells Fargo, N.A..  Further,

should the New Jersey plaintiffs need to come to court for any reason, the more

convenient place for them would be the court in the state near where they live and work.

     Indeed, this case is similar to the *Tyson* and *Rite Aid* wage and hour litigation in

which the MDL panel denied Tyson's request to consolidate and transfer FLSA actions

because the Panel was "not persuaded that Section 1407 centralization would serve the

convenience of the parties and witnesses and promote efficient conduct of this litigation"

where "discovery is likely to be plant-specific" and the questions of fact were not shown

to be sufficiently complex. *In re Tyson Foods, Incl, Meat Processing Facilities Fair

Labor Standards Act Litigation*, 581 F.Supp. 2d 1374 (2008).  Similarly, here, the

discovery is likely to be individualized with respect to the job duties of the home

mortgage consultants, loan officers and loan originators in each region – Washington,

Texas and New Jersey. As this court explained in *Rite Aid,* a case involving the issue of

whether employees were exempt from the FLSA and under state law overtime laws, the

defendants' affirmative defenses will require that "discovery is likely to require an individualized, factual inquiry into the job duties performed by [the] employees, and the plaintiffs assert violations of various state wage laws, which have differing provisions." *In re Rite Aid Corp. Wage and Hour Employment Practices Litigation*, 655 F.Supp. 2d 1376, 1377 (J.P.M.L. 2009).

There are two further reasons that consolidation would not promote the efficient conduct of the litigation. First, the case in Washington state does not involve FLSA claims at all, and involves a state law issue that is not at issue in the other cases -- whether defendant provided meal and rest breaks to employees in compliance with Washington state law. Discovery on this issue will be wholly irrelevant to the plaintiffs in the other cases. Second, nearly all discovery in the *Chaplin* case will be irrelevant to the other proceedings because the *Chaplin* case concerns the time that home mortgage consultants worked for Wachovia bank when Wachovia bank was independent of Wells Fargo. Thus, any policies or job duties of those employees while working at Wachovia will not have any conceivable relevance to the job duties of employees of Wells Fargo. Yet, defendant seeks to have all discovery from these cases consolidated and coordinated with the other cases. No benefit can be realized from doing so.

Similar to the many other FLSA cases involving a limited number of cases and geographic-centric claims, defendants' motion to transfer should be denied.

## III.   CONCLUSION

For the foregoing reasons, the *Gonzalez* plaintiffs respectfully request that the

Panel deny defendants' motion to transfer plaintiffs' case from New Jersey to Texas.

Doing so will create inefficiencies in discovery, and will inconvenience the parties.

Date: June 15, 2011                                                 Respectfully submitted,

                                                 /s/ Gregory K. McGillivary
                                                 Gregory K. McGillivary
                                                 WOODLEY & McGillivary
                                                 1101 Vermont Ave. NW
                                                 Suite 1000
                                                 Washington, D.C. 20005
                                                 Tel: (202) 833-8855
                                                 Fax: (202) 452-1090
                                                 E-mail:  gkm@wmlaborlaw.com

                                                 *Counsel for Plaintiffs Manuel*
                                                 *Gonzalez, Michelle Campbell,*
                                                 *Kaustuv Datta, Quinn Elam, Dick*
                                                 *Galarza, Joseph Johnson, Frank*
                                                 *Lay, Humberto Morin, Samuel*
                                                 *Pauls, and Clayton Peters, District*
                                                 *of New Jersey, No. 1:11-cv-02142-*
                                                 *JBS-KMW*

# Exhibit A

Case 4:11-md-02266 Document 29-2 Filed 10/27/11 in TXSD Page 31 of 129
Case MDL No. 2266 Document 14-1 Filed 06/15/11 Page 2 of 11

Page 1





Cited
As of: Jun 15, 2011

## IN RE: BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., FAIR LABOR STANDARDS ACT (FLSA) LITIGATION

### MDL No. 2219

### JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### *2011 U.S. Dist. LEXIS 11391*

### February 4, 2011, Filed

**JUDGES:** [*1] John G. Heyburn II, Chairman. David R. Hansen, W. Royal Furgeson, Jr., Frank C. Damrell, Jr., Barbara S. Jones, Paul J. Barbadoro.

**OPINION BY:** John G. Heyburn II

**OPINION**

### ORDER DENYING TRANSFER

Before the Panel: * Plaintiff in an action in the Northern District of Illinois seeks centralization, pursuant to *28 U.S.C. § 1407*, of the four actions listed on Schedule A in the District of Connecticut. Plaintiffs in the District of Connecticut and Northern District of California actions, which are represented by some of the same counsel as moving plaintiff, separately responded in support of moving plaintiff's motion. Plaintiff in the Southern District of Florida action opposes centralization. Common defendant Boehringer Ingelheim Pharmaceuticals, Inc. (Boehringer) opposes centralization; alternatively, Boehringer requests centralizing all actions except the District of Connecticut action in the Southern District of Florida.

\* Judge Kathryn H. Vratil took no part in the decision of this matter.

This litigation currently consists of the following four actions: an action each in the Northern District of California, the District of Connecticut, the Southern District of Florida and the Northern District of Illinois.

No [*2] party in this wage and hour litigation significantly disputes that the actions contain similar allegations concerning the classification of Boehringer's pharmaceutical sales representatives. [1] We agree that common factual issues exist, but on balance, we conclude that centralization is not necessary to ensure the just and efficient conduct of the actions now before us.

1 The parties devote much attention to the implications of a purported split among the circuits regarding the classification of pharmaceutical sales representatives. While the parties' arguments and related allegations of "judgment shopping" were slightly probative of the parties' motives that led to their respective position on the issue of centralization and selection of a transferee district, these arguments were largely irrelevant to the *Section 1407*

Case 4:11-md-02266 Document 29-2 Filed 10/27/11 in TXSD Page 32 of 129
Case MDL No. 2266 Document 14-1 Filed 06/15/11 Page 3 of 11

Page 2

2011 U.S. Dist. LEXIS 11391, *2

analysis. The Panel has long held that "[w]hen determining whether to transfer an action under *Section 1407* . . . it is not the business of the Panel to consider what law the transferee court might apply." *In re: General Motors Class E Stock Buyout Sec. Litig., 696 F.Supp. 1546, 1547 (J.P.M.L. 1988)*. We see no reason to depart from this longstanding practice.

In particular, [*3] several considerations the Panel has previously relied upon to deny centralization are present in the actions before us. In *In re: CVS Caremark Corp. Wage and Hour Emp't. Practices Litig. 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010)*, we articulated three broad circumstances that make the case for centralization less compelling: (1) when the duties of the subject employees appear to be subject to significant local variances or would entail significant localized discovery, (2) the defendants and/or some of the plaintiffs oppose centralization, or (3) only a few actions or procedurally dissimilar actions are involved in the litigation. Other factors, such as the presence of common counsel for moving plaintiffs in actions filed shortly before the motion for centralization might also weigh against centralization. *Id.*

Significantly, there are only a handful of procedurally dissimilar cases currently before the Panel, three of which are brought by plaintiffs with common counsel. *See also In re: JPMorgan Chase & Co. Fair Labor Standards Act (FLSA) Litig., 729 F.Supp.2d 1354, 2010 WL 3087413 (J.P.M.L. 2010)* (denying centralization, in part, because "of the substantial disparity in the progress [*4] of the actions."). The Connecticut *Ruggeri* action was filed in December 2006, almost four years before the other actions. Merits discovery was completed in *Ruggeri* over two years ago. It is not apparent how centralization will benefit the resolution of *Ruggeri*, in which numerous substantive rulings have already been issued and the opt-in period has long since closed.

Because plaintiffs in three actions share counsel and Boehringer is represented by common counsel, alternatives to formal centralization, such as voluntary cooperation among the few involved counsel and courts, appear viable. *See, e.g., In re: Rite Aid Corp. Wage and Hour Employment Practices Litig., 655 F.Supp.2d 1376, 1377 (J.P.M.L. 2009)* (denying centralization of six actions pending in four districts and noting "[c]ooperation

among counsel and the parties is particularly appropriate here, where plaintiffs in four of the six actions encompassed by the motion share counsel."). We encourage the parties to employ alternatives to transfer to minimize duplicative discovery and/or inconsistent pretrial rulings. *See, e.g., In re Eli Lilly and Co. (Cephalexin Monohydrate) Patent Litigation, 446 F.Supp. 242, 244 (J.P.M.L. 1978)*; [*5] *see also Manual for Complex Litigation, Fourth*, § 20.14 (2004).

IT IS THEREFORE ORDERED that the motion, pursuant to *28 U.S.C. § 1407*, for centralization of the actions listed on Schedule A is denied.

PANEL ON MULTIDISTRICT LITIGATION

/s/ John G. Heyburn II

John G. Heyburn II

Chairman

David R. Hansen

W. Royal Furgeson, Jr.

Frank C. Damrell, Jr.

Barbara S. Jones

Paul J. Barbadoro

**SCHEDULE A**

Northern District of California

Peter Batchkoff v. Boehringer Ingelheim Pharmaceuticals, Inc., C.A. No. 3:10-04830

District of Connecticut

Luann Ruggeri, et al. v. Boehringer Ingelheim Corp., C.A. No. 3:06-01985

Southern District of Florida

Marta Lopez-Lima v. Boehringer Ingelheim Pharmaceuticals, Inc., C.A. No. 1:10-22398

Northern District of Illinois

Catherine Copello v. Boehringer Ingelheim Pharmaceuticals, Inc., C.A. No. 1:10-07396

Case 4:11-md-02266   Document 29-2   Filed 10/27/11 in TXSD   Page 33 of 129
Case MDL No. 2266   Document 14-1   Filed 06/15/11   Page 4 of 11

Page 1





Cited
As of: Jun 15, 2011

**IN RE QUALITY MORTGAGE USA, INC., MORTGAGE LOAN REFERRAL LITIGATION; James R. Willis, et al. v. Quality Mortgage USA, Inc., M.D. Alabama, C.A. No. 2:94-01370; Larry R. Montgomery, et al. v. Quality Mortgage USA, Inc., et al., D. Colorado, C.A. No. 1:96-1153; Salvatore Favaloro v. Express Funding, Inc., D. Massachusetts, C.A. No. 1:96-12258**

**DOCKET NO. 1172**

**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

*1997 U.S. Dist. LEXIS 10862*

**May 22, 1997, FILED**

**DISPOSITION:**    [*1]  Plaintiffs' motion for centralization of the above-captioned actions pursuant to *28 U.S.C. § 1407*, DENIED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** The litigation consisted of three actions pending in the Middle District of Alabama, the District of Colorado, and the District of Massachusetts, respectively. Plaintiff incorporated and others filed a motion for centralization of the actions pursuant to *28 U.S.C.S. § 1407* to the Judicial Panel on Multidistrict Litigation to centralize the actions in the Middle District of Alabama for coordinated or consolidated pretrial proceedings.

**OVERVIEW:** On the basis of the papers filed, the panel found that centralization would neither serve the convenience of the parties and witnesses nor further the just and efficient conduct of the litigation. Given the minimal number of actions in the docket, movants failed to persuade the panel that any common questions of fact were sufficiently complex, or that the accompanying discovery would be so time-consuming, to justify transfer. The panel pointed out that suitable alternatives to transfer existed in order to minimize the possibility of duplicative discovery and/or inconsistent pretrial rulings. Resort to such alternatives was particularly appropriate in the docket, in light of the facts that plaintiffs in all three actions were represented by common counsel and pretrial proceedings were at a relatively advanced stage in the Middle District of Alabama action, which had been pending for more than 30 months.

**OUTCOME:** Plaintiffs' motion for centralization of the above-captioned actions was denied. Movants failed to persuade the panel that any common questions of fact were sufficiently complex, or that the accompanying discovery would be so time-consuming, to justify transfer.

**JUDGES:** BEFORE JOHN F. NANGLE, CHAIRMAN, ROBERT R. MERHIGE, JR., *  WILLIAM B.

Case 4:11-md-02266  Document 29-2  Filed 10/27/11 in TXSD  Page 34 of 129
Case MDL No. 2266  Document 14-1  Filed 06/15/11  Page 5 of 11

Page 2

1997 U.S. Dist. LEXIS 10862, *1

ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS AND LOUIS C. BECHTLE, JUDGES OF THE PANEL

    \* Judge Merhige took no part in the decision of this matter.

## OPINION

### *ORDER DENYING TRANSFER*

This litigation consists of the three above-captioned actions pending in the Middle District of Alabama, the District of Colorado, and the District of Massachusetts, respectively. Before the Panel is a motion, pursuant to *28 U.S.C. § 1407*, by plaintiffs in all three actions to centralize the actions in the Middle District of Alabama for coordinated or consolidated pretrial proceedings. All three defendants oppose the motion. If the Panel nevertheless orders centralization, defendants would favor the District of Colorado as the transferee forum.

On the basis of the papers filed, [1] the Panel finds that *Section 1407* centralization would neither serve the convenience of the parties and witnesses nor further the just and efficient conduct of this litigation. Given the minimal number of actions [\*2] in this docket, movants have failed to persuade us that any common questions of fact are sufficiently complex, or that the accompanying discovery will be so time-consuming, to justify *Section*

*1407* transfer. *See In re Scotch Whiskey Antitrust Litigation, 299 F. Supp. 543, 544 (J.P.M.L. 1969)*. We point out that suitable alternatives to transfer exist in order to minimize the possibility of duplicative discovery and/or inconsistent pretrial rulings. *See, e.g., In re Eli Lilly and Company (Cephalexin Monohydrate) Patent Litigation, 446 F. Supp. 242, 244 (J.P.M.L. 1978)*. *See also Manual for Complex Litigation, Third*, § 31.14 (1995). Resort to such alternatives is particularly appropriate in this docket, in light of the following factors: 1) plaintiffs in all three actions are represented by common counsel; and 2) pretrial proceedings are at a relatively advanced stage in the Middle District of Alabama action, which has been pending for more than 30 months.

    1    The parties waived oral argument and accordingly the question of centralization under *Section 1407* was submitted on the briefs. Rule 17, *R.P.J.P.M.L., 147 F.R.D. 589, 600-01 (1993)*.

[\*3]  IT IS THEREFORE ORDERED that the motion for centralization of the above-captioned actions pursuant to *28 U.S.C. § 1407* be, and the same hereby is, DENIED.

FOR THE PANEL:

John F. Nangle

Chairman

Case 4:11-md-02266   Document 29-2   Filed 10/27/11 in TXSD   Page 35 of 129
Case MDL No. 2266   Document 14-1   Filed 06/15/11   Page 6 of 11

Page 1





Cited
As of: Jun 15, 2011

**IN RE NORTH STAR STEEL ANTITRUST LITIGATION; North Star Steel Co. v. MidAmerican Energy Holdings Co., et al., S.D. Iowa, C.A. No. 4:97-80782; North Star Steel Texas, Inc. v. Entergy Gulf States, Inc., et al., S.D. Texas, C.A. No. 4:97-3994**

**DOCKET NO. 1223, C.A. No. 4:97-80782, C.A. No. 4:97-3994**

**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

*1998 U.S. Dist. LEXIS 4491*

**April 3, 1998, Filed**

**DISPOSITION:** [*1] Motion for centralization of the actions pursuant to *28 U.S.C. § 1407* DENIED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In two antitrust actions, one each pending in the Southern District of Iowa and the Southern District of Texas, the Southern District of Iowa plaintiff and the Southern District of Texas plaintiff filed motions pursuant to *28 U.S.C.S. § 1407*, to centralize litigation against energy company one and energy company two respectively, in the District of the District of Columbia for coordinated or consolidated pretrial proceedings.

**OVERVIEW:** On the basis of the papers filed, the judicial panel on multi-district litigation found that *28 U.S.C.S. § 1407* centralization neither served the convenience of the parties and witnesses nor furthered the just and efficient conduct of the litigation. Given the minimal number of actions in the docket, movants had failed to persuade the judicial panel on multi-district litigation that any common questions of fact (as opposed

to common questions of law) presented in the actions were sufficiently complex, or that the accompanying discovery would have been so time-consuming, so as to justify *28 U.S.C.S. § 1407* transfer. The judicial panel on multi-district litigation found that suitable alternatives to transfer existed in order to minimize the possibility of duplicative discovery and/or inconsistent pretrial rulings.

**OUTCOME:** The court denied the Southern District of Iowa plaintiff and the Southern District of Texas plaintiff 's motion for centralization of their respective antitrust actions against energy company one and energy company two.

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Multidistrict Litigation*
*Civil Procedure > Discovery > Undue Burdens*
*Patent Law > Inequitable Conduct > General Overview*
[HN1] Pursuant to *28 U.S.C.S. § 1407* movants for centralization of actions must show that any common

questions of fact (as opposed to common questions of law) presented in the actions are sufficiently complex, or that the accompanying discovery will be so time-consuming, so as to justify *28 U.S.C.S. § 1407* transfer.

**JUDGES:** BEFORE JOHN F. NANGLE, CHAIRMAN, ROBERT R. MERHIGE, JR., WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS AND LOUIS C. BECHTLE, JUDGES OF THE PANEL.

**OPINION**

***ORDER DENYING TRANSFER***

This litigation presently consists of the two above-captioned actions, one each pending in the Southern District of Iowa and the Southern District of Texas. The Southern District of Iowa plaintiff North Star Steel Company and the Southern District of Texas plaintiff North Star Steel Texas, Inc., move the Panel, pursuant to *28 U.S.C. § 1407*, to centralize the actions in this litigation in the District of the District of Columbia for coordinated or consolidated pretrial proceedings. Responses in opposition to plaintiffs' *Section 1407* motion have been submitted by: 1) the Southern District of Texas defendants Entergy Gulf States, Inc., and Entergy Corporation; 2) the Southern District of Iowa defendants MidAmerican Energy Company and MidAmerican Energy Holdings Company; and 3) The Iowa Utilities Board (IUB), which is participating in the Southern District of Iowa action as *amicus curiae*. [1] [*2] If the Panel nevertheless orders centralization, the Southern District of Iowa defendants would favor the Southern District of Iowa as the transferee forum and the Southern District of Texas defendants would favor either the Southern District of Texas or the Southern District of

Iowa as the transferee forum.

> 1 The plaintiffs' collateral motion to strike IUB's response to the *Section 1407* motion is hereby denied.

On the basis of the papers filed, [2] the Panel finds that *Section 1407* centralization would neither serve the convenience of the parties and witnesses nor further the just and efficient conduct of this litigation. Given the minimal number of actions in this docket, [HN1] movants have failed to persuade us that any common questions of fact (as opposed to common questions of law) presented in these actions are sufficiently complex, or that the accompanying discovery will be so time-consuming, to justify *Section 1407* transfer. See *In re Scotch Whiskey Antitrust Litigation, 299 F. Supp. 543, 544 (J.P.M.L. [*3] 1969)*. We point out that suitable alternatives to transfer exist in order to minimize the possibility of duplicative discovery and/or inconsistent pretrial rulings. *See, e.g., In re Eli Lilly and Company (Cephalexin Monohydrate) Patent Litigation, 446 F. Supp. 242, 244 (J.P.M.L. 1978). See also Manual for Complex Litigation, Third, § 31.14 (1995).*

> 2 The parties waived oral argument and accordingly the question of centralization under *Section 1407* was submitted on the briefs. Rule 17, *R.P.J.P.M.L., 147 F.R.D. 589, 600-01 (1993).*

IT IS THEREFORE ORDERED that the motion for centralization of the above-captioned actions pursuant to *28 U.S.C. § 1407* be, and the same hereby is, DENIED.

FOR THE PANEL:

John F. Nangle

Chairman

Case 4:11-md-02266 Document 29-2 Filed 10/27/11 in TXSD Page 37 of 129
Case MDL No. 2266 Document 14-1 Filed 06/15/11 Page 8 of 11

Page 1



IN RE: WEBLOYALTY.COM, INC., MARKETING AND SALES PRACTICES
LITIGATION (NO. II); Patrick Berry v. Webloyalty.com, Inc., et al, S.D. California,
C.A. No. 3:10-1358; Liam Slyne v. Webloyalty.com, Inc., et al., D. Connecticut, C.A.
No. 3:10-1372

MDL No. 2206

JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

*2011 U.S. Dist. LEXIS 12655*

**February 8, 2011, Filed**

**JUDGES:** [*1] John G. Heyburn II, Chairman. David R. Hansen, W. Royal Furgeson, Jr., Frank C. Damrell, Jr., Barbara S. Jones, Paul J. Barbadoro.

**OPINION BY:** John G. Heyburn II

**OPINION**

**ORDER DENYING TRANSFER**

**Before the Panel:** * Defendant Webloyalty.com, Inc. (Webloyalty) has moved, pursuant to *28 U.S.C. § 1407*, for coordinated or consolidated pretrial proceedings of this litigation in the District of Connecticut. This litigation currently consists of the two above-captioned actions, one each in the Southern District of California and the District of Connecticut. Plaintiff in the Connecticut action and California defendant MovieTickets.com support the motion. Defendant Visa, Inc., does not oppose centralization in the District of Connecticut. Plaintiff in the Southern District of California action opposes centralization. If the Panel deems centralization appropriate, this plaintiff suggests centralization in the Southern District of California.

> * Judge Kathryn H. Vratil took no part in the disposition of this matter.

After considering the papers and the hearing arguments, the Panel is not persuaded that *Section 1407* centralization is necessary for the convenience of the parties and witnesses or for the just and efficient conduct [*2] of this litigation. The Panel always carefully considers the views of the parties, particularly the defendants, who often have the most efficiencies to gain from centralization. Nevertheless, the facts and circumstances here persuade us otherwise.

Similar complaints about Webloyalty's online membership program already have been the subject of one now-settled MDL docket. [1] However, the current motion concerns only two actions now pending in two districts and Webloyalty has failed to convince us that the factual questions shared by these actions are either sufficiently complex or numerous to justify *Section 1407* transfer at this time. *In re EasySaver Rewards Mktg. and Sales Practices Litig., 716 F.Supp.2d 1358, (J.P.M.L. 2010).*

> 1    *In re Webloyalty.com, Inc., Marketing and Sales Practices Litigation, 474 F.Supp.2d 1353 (J.P.M.L. 2007)* (involving four actions pending in two districts).

Viable alternatives to transfer can minimize the possibilities of duplicative discovery or inconsistent pretrial rulings. *See, e.g., In re Eli Lilly and Co.*

Case 4:11-md-02266   Document 29-2   Filed 10/27/11 in TXSD   Page 38 of 129
Case MDL No. 2266   Document 14-1   Filed 06/15/11   Page 9 of 11

Page 2

2011 U.S. Dist. LEXIS 12655, *2

*(Cephalexin Monohydrate) Patent Litig.*, 446 F.Supp. 242, 244 *(J.P.M.L. 1978); see also Manual for Complex Litigation, Fourth*, § 20.14 (2004). In fact, at [*3] oral argument, plaintiffs in these two actions represented that they were prepared to coordinate their efforts to avoid overlapping proceedings.

IT IS THEREFORE ORDERED that the motion, pursuant to 28 U.S.C. § 1407, for centralization of these actions is denied.

PANEL ON MULTIDISTRICT LITIGATION

/s/ John G. Heyburn II

John G. Heyburn II

Chairman

David R. Hansen

Frank C. Damrell, Jr.

Paul J. Barbadoro

W. Royal Furgeson, Jr.

Barbara S. Jones

Case 4:11-md-02266 Document 29-2 Filed 10/27/11 in TXSD Page 39 of 129
Case MDL No. 2266 Document 14-1 Filed 06/15/11 Page 10 of 11

Page 1



IN RE: STUDENT-ATHLETE NAME & LIKENESS LITIGATION

MDL No. 2212

JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

*2011 U.S. Dist. LEXIS 11394*

**February 4, 2011, Filed**

**JUDGES:** [*1] John G. Heyburn II, Chairman. David R. Hansen, W. Royal Furgeson, Jr., Frank C. Damrell, Jr., Barbara S. Jones, Paul J. Barbadoro.

**OPINION BY:** John G. Heyburn II

**OPINION**

**ORDER DENYING TRANSFER**

**Before the entire Panel** *: Plaintiffs alleging publicity rights claims in the consolidated Northern District of California actions have moved, pursuant to *28 U.S.C. § 1407*, for coordinated or consolidated pretrial proceedings of this litigation in the Northern District of California. The litigation currently consists of eleven actions listed on Schedule A and pending in three districts, nine actions pending in the Northern District of California, and one action each in the District of New Jersey and the Eastern District of Tennessee.

    \* Judge Vratil took no part in the decision of this matter.

    Seventeen plaintiffs alleging antitrust claims in the consolidated Northern District of California actions support the motion. Defendants in the Northern District of California actions, Collegiate Licensing Company and the National Collegiate Athletic Association, do not oppose centralization, but if the Panel deems centralization to be appropriate, suggest centralization in

the Southern District of Indiana or the District of New [*2] Jersey. The Eastern District of Tennessee plaintiff opposes centralization or, alternatively, suggests that the Panel conditionally deny the motion to allow for the resolution of his pending motion to remand to state court. If the Panel deems centralization to be appropriate, this plaintiff supports centralization in the Northern District of California. The District of New Jersey plaintiff opposes centralization. Common defendant Electronic Arts Inc. (Electronic Arts) opposes the motion or, alternatively, suggests centralization in the District of New Jersey.

    On the basis of the papers filed and hearing session held, the Panel is not persuaded that *Section 1407* centralization would serve the convenience of the parties and witnesses or further the just and efficient conduct of this litigation at this time. At first blush, the present *Section 1407* motion and its underlying cases seem quite complex. Each aspect of this litigation has become a controversy, with even movants' notice of related action subject to challenge. However, upon closer examination, we are persuaded that this litigation can be effectively managed by informal coordination among the parties. Nine actions are already [*3] pending in the Northern District of California before Judge Claudia Wilken in a consolidated fashion. There are, therefore, effectively only three actions pending, one each in the Northern District of California, the District of New Jersey and the Eastern District of Tennessee. Judge Wilken has already appointed interim lead counsel in the Northern District of California actions, who can facilitate informal

Case 4:11-md-02266 Document 29-2 Filed 10/27/11 in TXSD Page 40 of 129
Case MDL No. 2266 Document 14-1 Filed 06/15/11 Page 11 of 11

Page 2

2011 U.S. Dist. LEXIS 11394, *3

coordination of discovery among these actions.

We find most persuasive that, of all responding parties, those who would be most affected by centralization -- the District of New Jersey and Eastern District of Tennessee plaintiffs and defendant Electronic Arts -- do not believe that centralization would be beneficial. Indeed, while Electronic Arts, the only common party among all actions, stands to benefit most from the efficiencies created by centralization, it prefers to leave the cases where they are currently proceeding, because it believes that centralization would be disruptive to the efficient conduct of each action with little overall benefit. We agree. As all parties to the District of New Jersey and Eastern District of Tennessee actions oppose centralization, and the consolidated [*4] Northern District of California actions are proceeding efficiently, we see no reason to disrupt the progress of these actions. Alternatives to transfer exist that may minimize whatever possibilities there are of duplicative discovery and/or inconsistent pretrial rulings. *See, e.g., In re Eli Lilly and Co. (Cephalexin Monohydrate) Patent Litig., 446 F.Supp. 242, 244 (J.P.M.L. 1978); see also Manual for Complex Litigation, Fourth, § 20.14 (2004).*

IT IS THEREFORE ORDERED that the motion, pursuant to *28 U.S.C. § 1407,* for centralization of these actions is denied.

PANEL ON MULTIDISTRICT LITIGATION

/s/ John G. Heyburn II

John G. Heyburn II

Chairman

David R. Hansen W. Royal Furgeson, Jr.

Frank C. Damrell, Jr. Barbara S. Jones

Paul J. Barbadoro

**APPENDIX A**

Northern District of California

Ishmael Thrower v. National Collegiate Athletic Association, et al., C.A. No. 3:10-00632

Samuel Michael Keller v. Electronic Arts Inc., et al., C.A. No. 4:09-01967 [decision now reported at: *2010 U.S. Dist. LEXIS 10719*]

Edward C. O'Bannon, Jr. v. National Collegiate Athletic Association, et al., C.A. No. 4:09-03329 [decision now reported at: *2009 U.S. Dist. LEXIS 122205*]

Bryon Bishop v. Electronic Arts, Inc., et al., C.A. No. 4:09-04128

Craig Newsome v. National Collegiate Athletic Association, et al., C.A. No. 4:09-04882

Michael Anderson v. National Collegiate Athletic Association, et al., C.A. No. 4:09-05100 [*5]

Danny Wimprine v. National Collegiate Athletic Association, et al., C.A. No. 4:09-05134

Samuel Jacobson v. National Collegiate Athletic Association, et al., C.A. No. 4:09-05372

Damien Rhodes v. National Collegiate Athletic Association, et al., C.A. No. 4:09-05378

District of New Jersey

Ryan Hart et al. v. Electronic Arts, Inc., et al., C.A. No. 3:09-05990 [decision now reported at: *2010 U.S. Dist. LEXIS 99622*]

Eastern District of Tennessee

Tommy Hubbard v. Electronic Arts Inc., C.A. No. 2:09-00234

# Exhibit B

## BEFORE THE UNITED STATES JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

In re Wells Fargo Wage and Hour   :    **MDL Docket No. 2266**
Employment Practices Litigation    :

### Declaration of Manuel Gonzalez

I, Manuel Gonzalez, declare under penalty of perjury, pursuant to 28

U.S.C.§1746, that the following is true and correct:

1.     I am a plaintiff in the lawsuit *Manuel Gonzalez, et al. v. Wells Fargo*

*Home Mortgage, Inc. and Wells Fargo, N.A.*, Civil Action No. 11-cv-02142 (*Gonzalez)*,

now pending in the U.S. District Court of New Jersey.

2.     I was employed by Wells Fargo as a Loan Officer/Home Mortgage

Consultant from August 2008 to September 2010.

3.     While employed at Wells Fargo, my direct supervisor was the branch

manager assigned to my Wells Fargo Home Mortgage branch. The branch was originally

located in Clark, New Jersey and later moved to Summit, New Jersey.

4.     It was my understanding that Wells Fargo Home Mortgage has one area

manger responsible for Central New Jersey, one area manger responsible for Northern

New Jersey, one area manager responsible for Southern New Jersey, and one area

manager responsible for the New Jersey "Shore" area. It was my understanding that my

branch manger reported to and was supervised by the area manager responsible for Wells

Fargo Home Mortgage branches in Central New Jersey.

5.     The New Jersey area mangers report to a regional manger. The regional

manger was responsible for Wells Fargo Home Mortgage branches in the state of New

Jersey. It was my understanding that the regional manager did not supervise or manage

6.    The Central New Jersey area manager conducted my initial interview upon my application to work at Wells Fargo.

7.    I attended training in Parsippany, New Jersey on the ACT contact database that I used in my day-to-day job duties.

8.    I also attended training for my job at Wells Fargo in Edison, New Jersey with hundreds of other Wells Fargo employees who worked in New Jersey. I did not attend any training outside of New Jersey.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the aforementioned is true and correct:

Date 6-13-2011

Manuel Gonzalez

# Exhibit C

## BEFORE THE UNITED STATES JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

In re Wells Fargo Wage and Hour    :    MDL Docket No. 2266
Employment Practices Litigation    :

### DECLARATION OF SAMUEL PAULS

I, Samuel Pauls, declare under penalty of perjury, pursuant to 28 U.S.C.§1746,

that the following is true and correct:

1.    I am a plaintiff in the lawsuit *Manuel Gonzalez, et al. v. Wells Fargo*

*Home Mortgage, Inc. and Wells Fargo, N.A.*, Civil Action No. 11-cv-02142 (*Gonzalez*),

now pending in the U.S. District Court of New Jersey.

2.    I was employed by Wells Fargo as a Loan Officer/Home Mortgage

Consultant from June 15, 2001 to March 1, 2011.

3.    While employed at Wells Fargo, my direct supervisor was the branch

manager assigned to my Wells Fargo Home Mortgage branch. The branch was originally

located in Clark, New Jersey and later moved to Summit, New Jersey.

4.    It was my understanding that Wells Fargo Home Mortgage has one area

manger responsible for Central New Jersey, one area manger responsible for Northern

New Jersey, one area manager responsible for Southern New Jersey, and one area

manager responsible for the New Jersey "Shore" area. It was my understanding that my

branch manger reported to and was supervised by the area manager responsible for Wells

Fargo Home Mortgage branches in Central New Jersey.

5.    The New Jersey area mangers reported to a regional manger. The regional

manger was responsible for Wells Fargo Home Mortgage branches in the state of New

Jersey. The regional manager did not supervise or manage employees or Wells Fargo

Home Mortgage branches in any other state.

6. My compensation and, it is my understanding, the compensation for other

home mortgage consultants were explained by and implemented through the regional and

area managers.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the

aforementioned is true and correct:

Date 6/13/11

Samuel Pauls

## UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

MDL No. 2266: *IN RE: Wells Fargo Wage and Hour Employment Practices Litigation*

## CERTIFICATE OF SERVICE

On June 15, 2011, the foregoing Response to Motion to Transfer was electronically filed by Gregory K. McGillivary on behalf of Plaintiffs Manuel Gonzalez, Michelle Campbell, Kaustuv Datta, Quinn Elam, Dick Galarza, Joseph Johnson, Frank Lay, Humberto Morin, Samuel Pauls, and Clayton Peters, District of New Jersey, No. 1:11-cv-02142-JBS-KMW, through the CM/ECF system which will send a notice of electronic filing to:

Lindbergh Porter, Jr.
LITTLER MENDELSON
A Professional Corporation
650 California Street, 20th Floor
San Francisco, CA 94108.2693
Telephone: 415.433.1940
Facsimile: 415.399.8490
E-mail: lporter@littler.com

**Counsel for Defendants**: Wells Fargo Bank, N.A., "Wachovia Mortgage Corporation," "Wachovia Corporation," "World Mortgage Company A/K/A World Mortgage Co., and Wells Fargo & Company

Rhonda Hunter Wills, Esq.
Wills Law Firm
1776 Yorktown, Ste. 600
Houston, TX 77056
Email: rwills@rwillslawfirm.com

John M. Padilla, Esq.
Padilla, Rodriguez, & de la Garza, L.L.P.
1776 Yorktown, Ste. 110
Houston, TX 77056
Email: jpadilla@prdlawfirm.com

**Counsel for Plaintiffs**: Raymond Richardson, Angela Kolmansberger, Judith Gott, Shelley Adams, Waliallen Allal, Cathy Bethea, Dorothy Cardillo, Edward Carrai, Darlene Castille, Hector O. Cil, Jason Farina, Kelly Mack Francis, Sonyia Marie Graham, Anthony J. Inzero, Pamela Gale Lacour, David A. Martinelli, Daniel Marcuccio, Patricia P. McIsaac, Penny Nicole Medeiros, Havazelet ("Chari") Miller, Ted Miller, Bruce S. Nohe, Marianela Opazo, Nelson Oyedeji, John Pasquarello, Teryl D. Peer, Michael J. Pierce, Regina M. Richard, Cindy Norbereg Richardson, Cedric A. Smith, Kim I. Smith, Scott Smith, and DeNetrice B. Williams, S.D. Texas, No. 4:10-cv-04949

Rhonda Hunter Wills, Esq.
Wills Law Firm
1776 Yorktown, Ste. 600
Houston, TX 77056
Email: rwills@rwillslawfirm.com

John M. Padilla, Esq.
Padilla, Rodriguez, & de la Garza, L.L.P.
1776 Yorktown, Ste. 110
Houston, TX 77056
Email: jpadilla@prdlawfirm.com

***Counsel for Plaintiffs***: James Chaplin, Lucy Gonzales, Donna Lynn Pontello, Denise Tomasini, Bill Early, Angela Anderson-Mills, Bruce S. Arthur, Lela M. Ashford, Jessica L. Breault, Edward Carrai, Schrece R. Davillier, Kelly Mack Francis, Anthony J. Inzero, Elizabeth K. Jeffreys, Daniel Marcuccio, Bruce S. Nohe, Teryl D. Peer, Regina M. Richard, Scott Smith, Darrell DeWayne Turner, Ana Villegas, Robert J. Ware, Marvin Miller, and Sheila B. Wright, S.D. Texas, No. 4:11-cv-00638

| | |
|---|---|
| Mark A. Griffin, Esq. | Timothy J. Pauley, Esq. |
| Tana Lin, Esq. | Ryan J. Pauley, Esq. |
| Keller Rohrback L.L.P. | Pauley Law Group, PLLC |
| 1201 Third Avenue, Ste. 3200 | 1001 4th Avenue, Ste. 3200 |
| Seattle, WA 98101-3052 | Seattle, WA 98154 |
| Email: mgriffin@kellerrohrback.com | Email: tpauley@pauleylawgroup.com |
| tlin@kellerrohrback.com | rpauley@pauleylawgroup.com |

***Counsel for Plaintiffs:*** Brent K. Chan and Dien Luu, W.D. Washington, No. 2:11-cv-00871

*/s/ Gregory K. McGillivary*
Gregory K. McGillivary
WOODLEY & McGillivary
1101 Vermont Ave. NW
Suite 1000
Washington, D.C. 20005
Tel: (202) 833-8855
Fax: (202) 452-1090
E-mail: gkm@wmlaborlaw.com

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

**IN RE: WELLS FARGO BANK NATIONWIDE HOME MORTGAGE CONSULTANT
OVERTIME LITIGATION (NO. III)**

**MDL. NO. 2266**

**WASHINGTON PLAINTIFFS' OPPOSITION TO DEFENDANT WELLS FARGO'S
MOTION FOR TRANSFER**

**ELECTRONICALLY FILED**

| | | |
|---|---|---|
| BRENT CHAN and DIEN LUU, on behalf of themselves and all others similarly situated, | ) ) ) | U.S. District Court for the Western District of Washington, Seattle Division |
| Plaintiffs, | ) ) | Case No. 2:11-cv-00871-JLR |
| v. | ) ) ) | Honorable James L. Robart, presiding |
| WELLS FARGO HOME MORTGAGE, a division of WELLS FARGO BANK, N.A., | ) ) ) | |
| Defendant. | ) | |

On May 25, 2011, Defendant Wells Fargo Bank, N.A., filed a motion to transfer *Chan v. Wells Fargo Home Mortgage, Inc.*, No. 2:11-00871-JLR (W.D. Wash.) ("*Chan*"), along with three other actions to the United States District Court for the Southern District of Texas, Houston Division pursuant to 28 U.S.C. § 1407(a). Unlike the other three cases, the *Chan* Plaintiffs allege only Washington state law claims regarding minimum wage, overtime, pay for lunch and break periods, reimbursement for deductions unlawfully made from their pay, and breach of contract. *Chan* Plaintiffs make no claims under any federal law in their case.

For the reasons stated herein, *Chan* Plaintiffs oppose Defendants' motion and ask the

EXHIBIT

E

Court to deny the transfer request.

## I.    FACTUAL BACKGROUND

*Chan* Plaintiffs are Home Mortgage Consultants ("HMCs") employed in the state of

Washington by Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A.  On April

12, 2011, Plaintiffs filed the action at issue in the Superior Court for the State of Washington.

Plaintiffs only alleged violations of Washington state law with regard to minimum wages,

overtime pay, and pay for lunch and break periods.  On May 24, 2011, Wells Fargo accepted

service of the Summons and Complaint and filed a notice of removal of the case to the United

States District Court for the Western District of Washington.  As the employment records of

Plaintiffs and the putative class members are in the exclusive possession, custody, and control of

Defendant so that Plaintiffs are unable to determine the amount of controversy with certainty,

Plaintiffs have not challenged Defendants' removal of the case to federal court at this time.

Defendant then filed a motion to transfer the case to the United States Judicial Panel on

Multidistrict Litigation on May 25, 2011.  On June 13, 2011, Plaintiffs filed an Amended

Complaint as a matter of right, adding claims for additional violations concerning deductions

made from Plaintiffs' pay in violation of Washington state law as well as breach of contract

claims.  *See* Att. 1 to Declaration of Tana Lin in Support of Washington Plaintiffs' Opposition to

Defendant Wells Fargo's Motion For Transfer ("Lin Decl.").

## II.    ARGUMENT

Pursuant to 28 U.S.C. § 1407(a), three criteria must be met for transfer to be proper:

1) the actions that are pending in different districts must involve one or more common questions

of fact; 2) the transfer must be for the convenience of parties and witnesses; and 3) the transfer

must promote the just and efficient conduct of such actions. All three criteria must be met before transfer is proper. *In re Highway Accident Near Rockville, Conn., on Dec. 30, 1972*, 388 F.Supp. 574, 575 (J.P.M.L. 1975). Defendant, as movant, has the burden of demonstrating that all three factors are met and justifying the transfer request. *In re Sicilia Di R. Biebow & Co. Contract Litig.*, 490 F. Supp. 513, 515 (J.P.M.L. 1980).

## A.     Common Questions of Fact Alone Are Insufficient to Justify The Transfer.

Plaintiffs in *Chan* concede that their case may have some questions of fact in common with the other cases Wells Fargo seeks to transfer. However, the inquiry does not end there for in situations involving only a small number of cases, as is the case here, the party requesting the transfer bears a heavy burden: "where…there are a minimal number of cases involved in the litigation the moving party bears a ***strong burden*** to show that the ***common questions of fact are so complex*** and the accompanying ***common discovery so time consuming*** as to overcome the inconvenience to the party whose action is being transferred and its witnesses." *In re Multidistrict Civil Antitrust Actions Involving the Distribution of Scotch Whiskey*, 299 F. Supp. 543, 544 (J.P.M.L. 1969) (emphasis added).

Here, there are only a total of four cases at issue (two of which are brought by the same plaintiffs' counsel and are filed in the same Texas court), and Wells Fargo cannot meet its heavy burden to demonstrate that the common questions of fact are so complex that they overcome the great inconvenience to the parties they seek to transfer. Defendant must show that these cases are "exceptional cases sharing unusually complex questions of fact." *Id.* However, these FLSA-type cases do not meet this high threshold. *See e.g., In re: Rite Aid Corp. Wage and Hour Emp't Practices Litig.*, 655 F.Supp.2d 1376, 1377 (J.P.M.L.2009); *In re: U.S.A. Exterminators, Inc.,*

*Fair Labor Standards Act (FLSA) Litig.*, 588 F.Supp.2d 1378, 1379 (J.P.M.L.2008); *In re:*

*Tyson Foods, Inc., Meat Processing Facilities Fair Labor Standards Act (FLSA) Litig.*, 581

F.Supp.2d 1374, 1375 (J.P.M.L.2008); *In re Edward D. Jones & Co., Overtime Pay Litig.*, 442 F.

Supp. 2d 1370, 1371 (J.P.M.L. 2006). If anything, given the differences between Washington

state law and the Fair Labor Standards Act, there are numerous unique facts that need to be

developed in *Chan* that will not be applicable to the other FLSA cases.[1] Beyond parroting the

criteria, Wells Fargo has in no way demonstrated why the common questions of fact are either so

complex or so time consuming as to justify their transfer request and the inconvenience it will

foist on *Chan* Plaintiffs, the New Jersey *Gonzalez* Plaintiffs, or itself given the Washington and

New Jersey specific discovery that will be required in those cases. *See infra* Section II.B.

      Further, even if *Chan* involves some common questions of fact with the other cases, the

mere existence of common questions of fact by itself is insufficient to justify a transfer as the

other criteria under 1407(a) also must be met. *In re G.D. Searle & Co. "Copper 7" IUD Prods.*

*Liab. Litig.*, 483 F.Supp. 1343, 1345 (J.P.M.L. 1980). For the reasons stated below, Defendant

cannot meet its burden under the other two criteria and, accordingly, its motion to transfer should

be denied.

**B.**    **Transfer Will Not Be Convenient For The Parties And Witnesses.**

      For a motion for transfer to be granted, the Judicial Panel on Multidistrict Litigation must

determine that "transfers for such proceedings will be for the convenience of parties and

witnesses." 28 U.S.C. § 1407(a). The mere presence of common questions of fact does not

---

[1] In addition, New Jersey Plaintiffs in *Gonzalez v. Wells Fargo, et al.*, No. 11-cv-02142 (D.N.J.) have submitted an opposition representing that their action "solely concerns the specific factual policies and practices regarding the home mortgage consultants, loan officer and loan originators in defendants' New Jersey region." *Gonzalez* Opp, at 1. Finally, *Chaplin v. Wachovia Mortgage Corp., et al.*, Case No. 4:11-cv-00638 (S.D. Tex.), makes claims against Wachovia, so there may not be overlap in witnesses between *Chaplin* and the other three cases.

necessarily mean a transfer will reduce the inconvenience to the parties and witnesses. *See In re Concrete Pipe*, 302 F. Supp. 244, 254 (J.P.M.L. 1969) (Weigel, J., concurring).

The Southern District of Texas will in no way be convenient for Plaintiffs or class members in *Chan* who all reside in the state of Washington, as do the majority of likely witnesses in the case. It would unnecessarily increase the cost of litigation for Washington plaintiffs with a limited case regarding violations of Washington law only to have to travel to Texas for proceedings or to have to potentially become embroiled in the additional discovery expenses associated with national discovery or irrelevant discovery regarding Wachovia. The same will be true for the New Jersey *Gonzalez* Plaintiffs as their claims are focused on the practices and policies of Wells Fargo in the New Jersey region.

Nor will the Southern District of Texas be convenient for Wells Fargo as it is headquartered in San Francisco. In *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, No. MDL-1770, that is currently ongoing in the United States District Court in the Northern District of California, Wells Fargo asserted that HMCs work differently based on, *inter alia*, geographic location. Specifically, Wells Fargo maintained that:

> HMCs work across the geographic and economic spectrum, from densely populated San Francisco to sprawling Los Angeles, and from rural Shasta County to affluent Newport Beach and Westwood, and from farming communities in the Central and Imperial valleys to the timber mill counties along the Oregon border. Over this territory, income and housing prices, borrower preferences, lifestyles, objectives, and consequently, loan types and terms, vary greatly and so do HMC work styles, hours, and specialties. Meeting with referral sources, networking, counseling borrowers on loan products and their financial situation, attending escrow closings, and all aspects of the loan cycle from the loan application to the loan closing vary from one area of California (and the nation) to another.

Wells Fargo Home Mortgage's Memorandum of Points and Authorities in opposition to Mevorah's Motion for Class Certification at 7-8, Att. 2 to Lin Decl. Defendant's position seems

to suggest that even the witnesses for Wells Fargo will be employees or executives with in-depth

knowledge of its practices in Washington and who likely also reside in Washington (and New

Jersey for the *Gonzalez* case). Accordingly, the Southern District of Texas likely will not be

convenient for Wells Fargo employees with information relevant to the Washington or New

Jersey specific claims raised in *Chan* or *Gonzalez* or, for that matter, any of the parties or

witnesses in *Chan* or *Gonzalez* taken as a whole.

**C.      Transfer Will Not Necessarily Promote The Just And Efficient Conduct Of Such Actions.**

There are only four cases here that Defendant seeks to transfer. One of those cases,

*Chaplin v. Wachovia Mortgage Corp., et al.*, No. 4:11-cv-00638 (S.D. Tex.), makes claims

against Wachovia, and it is unlikely that there will be an overlap in witnesses between *Chaplin*

and the other three cases. Defendant has failed to submit any evidence to support such an

efficiency argument. Regardless, the panel has found the case for centralization to be "less

convincing" in FLSA cases where (1) the duties of the subject employees appeared to be subject

to significant local variances, (2) the defendants and/or some of the plaintiffs opposed

centralization, or (3) only a few or procedurally dissimilar cases were involved. *In re CVS*

*Caremark Corp. Wage & Hour Emp't Practices Litig.*, 684 F. Supp. 2d 1377, 1379 (J.P.M.L.

2010).

All three criteria that militate against centralization in FLSA cases are present here. First,

as stated in Section II.B., *supra*, Wells Fargo has taken the position in other FLSA litigation

involving HMCs that their working conditions are subject to significant geographic variances.

Further, Wells Fargo asserts that "the various HMC complaints here ultimately requires [sic]

distinct factual inquiries regarding the individual plaintiffs' job duties…" Def. Mtn. at 5. Wells

Fargo should not be allowed to assert in one case all the differences that require "distinct factual inquiries" and turn around and claim in another jurisdiction that it will somehow promote efficiency to coordinate various cases despite all the "distinct factual inquiries" they assert will be necessary. Add to this the differences between the Washington state wage laws and the FLSA,[2] and Wells Fargo's rational for centralizing is much "less convincing." Indeed, there are no convincing reasons for centralizing *Chan* with any of the other cases as the majority of discovery in *Chan* will most likely involve depositions of persons and production of information located in Washington. Likewise, the *Gonzalez* Plaintiffs have represented that given their New Jersey region-specific claims, their discovery will involve depositions of persons in New Jersey and nearly all the documents they seek will be located in New Jersey. *Gonzalez* Opp. at 5.

Second, Plaintiffs note that while Wells Fargo's motion cites *Am. Online, Inc. Comty. Leaders Litig.*, 198 F.Sup.2d 1381 (J.P.M.L. 2002) as "instructive," Def. Mtn. at 6, Defendant fails to point out that none of the parties opposed the transfer in that case. Here, both the *Chan* and *Gonzalez* Plaintiffs vigorously oppose the transfer.

Third, because there are only four cases at issue here, the current motion to transfer should be denied. Indeed, there has been a recent trend toward denying motions to transfer

---

[2] For example, under federal law, an outside sales employee who is exempt from overtime is defined as one who 1) customarily and regularly is engaged away from his/her employer's place or places of business; and 2) has a primary duty of making sales or obtaining orders or contracts for services or the use of facilities, for which the client or customer will pay a consideration. 29 C.F.R. § 541.500. However, Washington law defines an exempt outside sales employee as one who: 1) is customarily and regularly engaged away from his/her employer's place or places of business; 2) is engaged in making sales, obtaining orders or contracts for services or use of facilities or demonstrating products or equipment for sale; 3) is paid a guaranteed salary, commission, or fee payment (or combination); 4) controls his/her total hours worked each week; 5) spends no more than 20 percent of his/her time doing inside office work not related to outside sales; and 6) who is advised of his status as "outside salesman." WAC 296-128-540.

FLSA cases where there are only a few cases at issue, as is the situation here. *See, e.g., In re CVS Caremark Corp. Wage & Hour Employment Practices Litig.*, 2010 WL 532561 (transfer of seven overtime cases denied); *In re: PPG Indus., Inc., Wage & Hour Emp't Practices Litig.,* 701 F. Supp. 2d 1379 (J.P.M.L. 2010) (transfer of three FLSA cases denied); *In re: Rite Aid Corp. Wage and Hour Emp't Practices Litig.*, 655 F.Supp.2d 1376 (transfer of two FLSA actions denied); *In re: U.S.A. Exterminators, Inc., Fair Labor Standards Act (FLSA) Litig.*, 588 F.Supp.2d 1378 (transfer of two FLSA action denied); *In re: Tyson Foods, Inc., Meat Processing Facilities Fair Labor Standards Act (FLSA) Litig.*, 581 F.Supp.2d 1374 (transfer of ten FLSA actions denied); *In re Edward D. Jones & Co., Overtime Pay Litig.*, 442 F. Supp. 2d 1370 (transfer of three overtime litigation actions denied); *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242 (J.P.M.L. 1978) (transfer of three actions denied). The cases Defendant cites in support of its motion all pre-date these more recent Panel decisions.

In addition, given the small number of cases at issue, there are alternatives to transfer that would still minimize any potentially duplicative discovery. To name just a few, notices for a particular deposition could be filed in all actions if there truly are overlapping witnesses, thereby making the deposition applicable in each action; the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all those actions; and any party could seek orders from the three courts directing the parties to coordinate their pretrial efforts. *See In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. at 244. *Chan* Plaintiffs are willing to cooperate with both Defendant and other plaintiffs' counsel regarding any overlapping witnesses or discovery, to the extent there are any.

Wells Fargo also asserts that transfer of the cases will "avoid conflicting or divergent

rulings, including rulings regarding jurisdiction, discovery and substantive and dispositive motions," Def. Mtn. at 6, and "eliminate the likelihood of inconsistent rulings of pre-trial motions." *Id.* at 8. However, "[m]erely to avoid two federal courts having to decide the same issue is, by itself, usually not sufficient to justify Section 1407 centralization." *In re: Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d 1378 (J.P.M.L. 2009). In addition, *Chan* raises only Washington state specific claims which have distinct differences regarding various exemptions from Washington wage laws and its federal counterparts. *See supra*, n.1. Finally, federal cases and interpretations of the Washington Minimum Wage Act are not controlling upon Washington courts. *See Tift v. Prof'l Nursing Services, Inc.*, 76 Wash. App. 577, 583, (Wash. Ct. App. 1995). *See also Sheriffs' Ass'n v. Chelan Cty.*, 109 Wash.2d 282, 291 (1987); *Weeks v. Chief of Wash. State Patrol*, 96 Wash.2d 893, 897 (1982). As *Chan* raises only Washington state specific claims, it should be left undisturbed in the Western District of Washington for Washington courts to decide.

## III.   CONCLUSION

Wells Fargo cannot meet all three of the criteria required to justify the transfer of the *Chan* case. Accordingly, *Chan* Plaintiffs respectfully request that the panel deny Defendant's request.

DATED this 16th day of June, 2011.

KELLER ROHRBACK L.L.P.

By /s/Tana Lin
    Mark Griffin
    Tana Lin
    1201 Third Ave., Ste. 3200
    Seattle, WA 98101
    Tel:  (206) 623-1900  Fax:  (206) 623-3384
    mgriffin@kellerrohrback.com
    tlin@kellerrohrback.com

Timothy J. Pauley
Ryan J. Pauley
PAULEY LAW GROUP, PLLC
1001 Fourth Avenue, Suite 3200
Seattle, WA  98154
Tel:  (206) 684-9454  Fax:  (206) 382-9648
tpauley@pauleylawgroup.com
rpauley@pauleylawgroup.com

Attorneys for Plaintiffs

WASHINGTON PLAINTIFFS' OPPOSITION TO DEFENDANT
WELLS FARGO'S MOTION FOR TRANSFER

Case No. MDL 2266 - 10

**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT
LITIGATION**

**IN RE: WELLS FARGO BANK NATIONWIDE HOME MORTGAGE CONSULTANT
OVERTIME LITIGATION (NO. III)**

**MDL. NO. 2266**

**DECLARATION OF TANA LIN IN SUPPORT OF WASHINGTON PLAINTIFFS'
OPPOSITION TO DEFENDANT WELLS FARGO'S MOTION FOR TRANSFER**

**ELECTRONICALLY FILED**

| | | |
|---|---|---|
| BRENT CHAN and DIEN LUU, on behalf of themselves and all others similarly situated, | ) ) ) | U.S. District Court for the Western District of Washington, Seattle Division |
| Plaintiffs, | ) ) | Case No. 2:11-cv-00871-JLR |
| v. | ) ) | |
| WELLS FARGO HOME MORTGAGE, a division of WELLS FARGO BANK, N.A., | ) ) ) | Honorable James L. Robart, presiding |
| Defendant. | ) ) | |

I, Tana Lin, declare as follows:

1.     I am an attorney licensed to practice law in the states of Illinois, Michigan, and Washington as well as the District of Columbia. I am an attorney with Keller Rohrback L.L.P., attorneys of record for Plaintiffs and the proposed class. I have personal knowledge of the facts set forth below and, if called as witness, I could and would testify competently thereto.

2.     Attached as Exhibit 1 is a true and accurate copy of Amended Class Action Complaint for Unpaid Minimum Wage and Overtime Wages and for Failure to Allow Employees to Take Meal/Break Periods and Jury Demand filed on June 13, 2011 in the USDC

Western District of Washington at Seattle Case No. 2:11-cv-00871-JLR.

3.    Attached as Exhibit 2 is a true and accurate copy of Wells Fargo Home Mortgage's Memorandum of Points and Authorities in Opposition to Mevorah's Motion for Class Certification filed in the USDC Northern District of California MDL Case No. MDL-1770 (Document No.47).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 16th day of June, 2011 at Seattle, Washington.


      s/ Tana Lin
      Tana Lin

**EXHIBIT 1**

The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRENT CHAN and DIEN LUU, on behalf of themselves and all others similarly situated,

                            Plaintiffs,

    v.

WELLS FARGO HOME MORTGAGE, a division of WELLS FARGO BANK, N.A.,

                            Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 2:11-cv-00871-JLR

AMENDED CLASS ACTION COMPLAINT FOR UNPAID MINIMUM WAGE AND OVERTIME WAGES AND FOR FAILURE TO ALLOW EMPLOYEES TO TAKE MEAL/BREAK PERIODS AND JURY DEMAND

Pursuant to Fed. R. Civ. P. 15(a), Plaintiffs Brent Chan and Dien Luu amend their complaint as a matter of course and allege as follows:

## NATURE OF ACTION

1.    This is a proposed class action brought against Defendant Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A. ("Wells Fargo") by Plaintiffs on behalf of Home Mortgage Consultants employed by Wells Fargo in Washington who were not paid the applicable minimum wage for all hours they worked in each workweek and/or who were not paid overtime at one and one half times their regular rates of pay for hours they worked in excess of forty in a workweek as required by Washington law.

PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT
(2:11-cv-00871-JLR) Page - 1

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

N:\CLIENTS\28908\1\PLEADINGS\AMENDEDCOMPLAINTFEDFINAL 061011.DOC

2.     Plaintiffs also allege that Defendant violated Washington law by failing to permit the Home Mortgage Consultants they employed in Washington to take meal and rest breaks during their shifts as required by Washington law.  Plaintiffs further allege that Defendant violated Washington law by failing to pay the Home Mortgage Consultants they employed in Washington for their time when they worked through their meal/break periods.

3.     Plaintiffs further allege that Defendant violated Washington law and its contractual obligations to the Home Mortgage Consultants by making improper deductions from their wages.

4.     Plaintiffs bring this action in their individual capacities and on behalf of a class of persons similarly situated, as defined below.

## THE PARTIES

5.     Plaintiff Brent Chan resides and at all times material hereto resided in King County, Washington.

6.     Plaintiff Dien Luu resides and at all times material hereto resided in Snohomish County, Washington.

7.     Plaintiffs were employed by Wells Fargo Home Mortgage, Inc. which was incorporated in California but has since been merged into and become Wells Fargo Home Mortgage, a division of Defendant Wells Fargo Bank, N.A.  Defendant operates home mortgage loan offices throughout Washington, including a number of offices in King County.

## JURISDICTION AND VENUE

8.     According to the Notice of Removal By Defendant Wells Fargo Home Mortgage (Docket Doc. No. 1) ("Wells Fargo Removal Notice"), this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). As the employment records of Plaintiffs

PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT
(2:11-cv-00871-JLR) Page - 2

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

N:\CLIENTS\28908\1\PLEADINGS\AMENDEDCOMPLAINTFEDFINAL 061011.DOC

and the putative class members are in the exclusive possession, custody, and control of Defendant so that Plaintiffs are unable to determine the amount of controversy with certainty, Plaintiffs are not challenging Defendants' removal of the case to this Court at this time.

9.     According to the Wells Fargo Removal Notice, venue is proper in the Western District of Washington at Seattle pursuant to 28 U.S.C. § 1441(a).

## FACTUAL ALLEGATIONS

10.     Defendant operates over thirty home mortgage loan offices open to the general public in Washington. Defendant employs hundreds of Home Mortgage Consultants in Washington.

11.     Plaintiffs and other putative class members worked for Defendant in Washington as Home Mortgage Consultants for part or all of the time period material to this litigation.

12.     Plaintiffs were employed by Wells Fargo as Home Mortgage Consultants at Defendant's Bellevue office in Washington during the time period material to this litigation.

13.     Plaintiffs and other putative class members are non-exempt current and former employees of Defendant in Washington.

14.     Plaintiffs and other putative class members worked in excess of forty hours per week as Home Mortgage Consultants.  Plaintiffs and other class members were not paid minimum wage and/or overtime pay at the rate of one and one half times their regular rates of pay for all hours they worked in excess of forty in a workweek during the time period material to this litigation.

15.     Plaintiffs and other putative class members were not permitted to take meal and break periods during their shifts while employed by Defendant. In addition, Plaintiffs and other

PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT
(2:11-cv-00871-JLR) Page - 3

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

N:\CLIENTS\28908\1\PLEADINGS\AMENDEDCOMPLAINTFEDFINAL 061011.DOC

class members were not paid for the time they worked when they were supposed to be taking

meal/break periods during the time period material to this litigation.

16.    The Wells Fargo Home Mortgage Incentive Compensation Plan for Home

Mortgage Consultants ("Incentive Compensation Plan") in effect for the relevant time period

states: "It is the responsibility of the Employee to collect up-front third party fees including, but

not limited to, the appraisal and credit report. Employee's commission credit shall be adjusted

to account for any uncollected fees on canceled loans (including brokered out canceled loans),

and denied loans unless the employee collects at least $350 of any third party fees owed on a

given loan. If the Employee collects at least $350 in up-front fees, there will be NO commission

credit adjustment for any additional uncollected fees on that particular loan." ("Deduction

Provision").

17.    In violation of the Deduction Provision in the Incentive Compensation Plan,

Defendant deducted various uncollected fees from Plaintiffs' pay, and on information and belief,

the pay of other putative class members, even when they collected up-front fees from third

parties as required in the Incentive Compensation Plan. Defendant breached its own policy by,

among other actions, wrongfully deducting amounts from Plaintiffs' commission credits for

payment of upfront third party fees. For example, and by way of example only, in cases where

Plaintiffs collected the required amount of upfront third party fees from a loan applicant,

Defendant routinely refunded the full amount of those fees to the loan applicant if he/she

withdrew his/her application. Defendant then deducted the refunded third party fees from

Plaintiffs' commission credits even though Defendant's policy stated that such deductions

would not occur.

PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT
(2:11-cv-00871-JLR) Page - 4

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

N:\CLIENTS\28908\1\PLEADINGS\AMENDEDCOMPLAINTFEDFINAL 061011.DOC

18.    In addition, when a Home Mortgage Consultant did not collect an upfront fee during the rescission period mandated by the Truth In Lending Act, 12 C.F.R. § 226.15(c), and a customer cancelled the loan, Defendant would deduct from the Home Mortgage Consultant's pay the cost of the credit report that was necessary to the processing of the loan.

19.    Defendant acted willfully and with intent to deprive Plaintiffs and putative class members of their wages as set forth above.

20.    As the employment and work records for the Plaintiffs and putative class members are in the exclusive possession, custody, and control of Defendant, Plaintiffs are unable to state at this time the amount owed to them or the class.

## CLASS ACTION ALLEGATIONS

21.    This class action is brought and may be maintained pursuant to CR 23(a), 23(b)(1), 23(b)(2) and 23(b)(3). Plaintiffs seek to represent a Class comprised as follows:

> All persons who have been employed by Wells Fargo as Home Mortgage Consultants in Washington at any time during the relevant statute of limitations period.

22.    This action is properly brought as a class action under CR 23(a) because:

(a)    Upon information and belief, Plaintiffs allege Defendant employed hundreds of persons as Home Mortgage Consultants during the Class period. Therefore, the Class is so numerous that joinder of all members is impracticable.

(b)    There are questions of law or fact common to the Class. *See* Para. 20(a), *infra*.

(c)    The claims asserted by Plaintiffs are typical of the claims of the members of the Class.

PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT
(2:11-cv-00871-JLR) Page - 5

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

N:\CLIENTS\28908\1\PLEADINGS\AMENDEDCOMPLAINTFEDFINAL 061011.DOC

(d)     Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' claims are typical of the members of the Class, and Plaintiffs seek no relief that is adverse to other members of the Class.

(e)     Plaintiffs have retained counsel competent and experienced in class and wage/hour litigation and have no conflicts of interest with other Class members in the maintenance of this class action. Plaintiffs will vigorously pursue the claims of the Class.

23.     This action is properly brought as a class action under CR 23(b)(1) because the prosecution of separate actions by or against individual members of the class would create a risk of adjudication with respect to individual member of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

24.     This action is properly brought as a class action under CR 23(b)(2) as Defendant has acted on grounds generally applicable to Plaintiff and the Class as alleged herein, thereby making appropriate final injunctive or corresponding declaratory relief and incidental damages with respect to the Class as a whole.

25.     This action is properly brought as a class action under CR 23(b)(3) because:

(a)     There are questions of law or fact common to the Class which predominates over any questions affecting any individual member, including:

(i)     Whether Plaintiffs and members of the Class are entitled to damages for unpaid minimum and overtime wages under Washington law;

PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT
(2:11-cv-00871-JLR) Page - 6

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

N:\CLIENTS\28908\1\PLEADINGS\AMENDEDCOMPLAINTFEDFINAL 061011.DOC

       (ii)    Whether Defendant violated Washington law when it failed to allow Home Mortgage Consultants to take meal/break periods and did not compensate them when they worked through those meal/break periods;

       (iii)   Whether Defendant violated Washington law and breached their contractual obligations to the Home Mortgage Consultants by making unlawful deductions from their wages; and

       (iv)   Whether Plaintiffs and members of the Class are entitled to double damages under RCW 49.52.070.

(b)    A class action is superior to any other available means for the adjudication of this controversy. This action will cause an orderly and expeditious administration of the Class's claims; economies of time, effort and expense will be fostered; and uniformity of decisions will be ensured at the lowest cost and with the least expenditure of judicial resources.

(c)    The amounts at stake for Class members, while substantial in the aggregate, are not great enough individually to enable them to maintain separate suits against Defendant.

(d)    Plaintiffs do not anticipate any difficulty in management of this action because the evidence proving Defendant's violations of Washington law are ascertainable through discovery. The identities of the Class members are known by Defendant, and damages should be able to be calculated

PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT
(2:11-cv-00871-JLR) Page - 7

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

N:\CLIENTS\28908\1\PLEADINGS\AMENDEDCOMPLAINTFEDFINAL 061011.DOC

from Defendant's records. This action imposes no unusual difficulties that would impede its management by the Court as a class action.

## CLAIM FOR VIOLATION OF THE REVISED CODE OF WASHINGTON

### (RCW 49.46 – MINIMUM WAGE AND OVERTIME)

26.    Plaintiffs restate and allege the allegations set forth in paragraphs 1 through 25 above.

27.    In violation of RCW 49.46.020 and 49.46.130, Defendant did not pay Plaintiffs and other members of the Class in Washington (1) all their wages at the applicable minimum wage and (2) their overtime at a rate of at least one and one-half times their regular rates of pay for those all that they worked in excess of forty in a workweek during the time period material to this litigation.

28.    As a result of this conduct, Plaintiffs and members of the Class have sustained damages in the form of unpaid compensation for their working time.

## CLAIM FOR VIOLATION OF THE WASHINGTON ADMINISTRATIVE CODE

### (WAC 296-126-092)

29.    Plaintiffs restate and allege the allegations set forth in paragraphs 1 through 25 above.

30.    In violation of WAC 296-126-092, Defendant did not allow Plaintiffs and other members of the Class in Washington (a) a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of their shifts when they were working more than five consecutive hours and (b) a rest period of not less than ten minutes, on the Defendant's time, for each four hours of working time by members of the

PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT
(2:11-cv-00871-JLR) Page - 8

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

N:\CLIENTS\28908\1\PLEADINGS\AMENDEDCOMPLAINTFEDFINAL 061011.DOC

Class. Defendant further failed to pay members of the Class for such working time when they were not allowed to take such meal periods and rest periods.

31.     As a result of this conduct, Plaintiffs and members of the Class have sustained damages in the form of unpaid compensation for their working time.

## CLAIM FOR VIOLATION OF THE REVISED CODE OF WASHINGTON

### (RCW 49.52.060)

32.     Plaintiffs restate and allege the allegations set forth in paragraphs 1 through 25 above.

33.     In violation of RCW 49.52.060, Defendant, willfully and with the intent to deprive members of the Class of their wages, deducted from their wages third party fees that in no way accrued to the benefit of the employee, instead providing a financial benefit to Defendant.

34.     As a result of this conduct, Plaintiffs and members of the Class have sustained damages in the form of unlawful withholdings which reduced the compensation they had earned.

## CLAIM FOR VIOLATION OF THE WASHINGTON ADMINISTRATIVE CODE

### (WAC 296-126-028)

35.     Plaintiffs restate and allege the allegations set forth in paragraphs 1 through 25 above.

36.     In violation of WAC 296-126-028, Defendant, willfully and with the intent to deprive members of the Class of their wages, deducted from their wages third party fees that in no way accrued to the benefit of the employee, instead deducting from the wages of the Class the cost of third party fees that resulted in a financial benefit to Defendant.

PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT
(2:11-cv-00871-JLR) Page - 9

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

N:\CLIENTS\28908\1\PLEADINGS\AMENDEDCOMPLAINTFEDFINAL 061011.DOC

37.     As a result of this conduct, Plaintiffs and members of the Class have sustained damages in the form of unlawful withholdings which reduced the compensation they had earned.

## CLAIM FOR BREACH OF CONTRACT

38.     Plaintiffs restate and allege the allegations set forth in paragraphs 1 through 25 above.

39.     The Wells Fargo Home Mortgage Incentive Compensation Plan for Home Mortgage Consultants in effect for the relevant time period states: "It is the responsibility of the Employee to collect up-front third party fees including, but not limited to, the appraisal and credit report. Employee's commission credit shall be adjusted to account for any uncollected fees on canceled loans (including brokered out canceled loans), and denied loans unless the employee collects at least $350 of any third party fees owed on a given loan. If the Employee collects at least $350 in up-front fees, there will be NO commission credit adjustment for any additional uncollected fees on that particular loan."

40.     In violation of this provision, Defendant deducted various uncollected fees from Plaintiffs' pay, and on information and belief the pay of other putative class members, even when they collected up-front fees from third parties as required in the Incentive Compensation Plan.

## CLAIM FOR VIOLATION OF THE REVISED CODE OF WASHINGTON

### (RCW 49.52.050)

41.     Plaintiffs restate and allege the allegations set forth in paragraphs 1 through 25 above.

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

42. In violation of RCW 49.52.050, Defendant, willfully and with the intent to deprive members of the Class of their wages, paid members of the Class a lower wage than Defendant was obligated to pay them under their contracts and Washington statutory law.

43. As a result of this conduct, Plaintiffs and members of the Class have sustained damages in the form of unpaid compensation for their working time.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs request judgment against Defendant for themselves and the members of the Class as follows:

A. Certification of the Class pursuant to CR 23(b)(1). (2) or (3);

B. Judgment in the amount of the unpaid wages, including overtime, due to Plaintiffs and each member of the Class;

C. Judgment in an amount equal to twice the amount of unpaid wages unlawfully withheld by way of exemplary damages, as required by RCW 49.52.070;

D. Judgment in an amount of the uncollected fees that were unlawfully deducted and are, therefore, due to Plaintiffs and each member of the Class;

E. Judgment for costs and fees incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs, as provided by RCW 49.12.150 49.48.030 and 49.52.070;

F. Prejudgment interest as provided by Washington law; and

G. Granting such other and further relief or penalties permitted under Washington law as the Court deems just and proper.

PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT
(2:11-cv-00871-JLR) Page - 11

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

N:\CLIENTS\28908\1\PLEADINGS\AMENDEDCOMPLAINTFEDFINAL 061011.DOC

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury of all issues so triable in this case.

DATED this 13th day of June, 2011.

KELLER ROHRBACK L.L.P.


By /s/Tana Lin
    Mark Griffin, WSBA #16296
    Tana Lin, WSBA #35271
    1201 Third Ave., Ste. 3200
    Seattle, WA 98101
    Tel: (206) 623-1900 Fax: (206) 623-3384
    mgriffin@kellerrohrback.com
    tlin@kellerrohrback.com


PAULEY LAW GROUP, PLLC


By: /s/Timothy J. Pauley
    Timothy J. Pauley, WSBA #18583
    Ryan J. Pauley, WSBA #40625
    1001 Fourth Avenue
    Suite 3200
    Seattle, WA 98154
    Tel: (206) 684-9454 Fax: (206) 382-9648
    tpauley@pauleylawgroup.com
    rpauley@pauleylawgroup.com

    Attorneys for Plaintiffs

PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT
(2:11-cv-00871-JLR) Page - 12

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

N:\CLIENTS\28908\1\PLEADINGS\AMENDEDCOMPLAINTFEDFINAL 061011.DOC

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 13, 2011, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

following CM/ECF participants:

Breanne M. Sheetz
Daniel L Thieme
LITTLER MENDELSON
One Union Square
600 University Street, Ste. 3200
Seattle, WA 98101-3122
206-623-3300
FAX 206-447-6965
Email: bsheetz@littler.com
        thieme@littler.com

And I further certify that on the same date I caused to be mailed by United States Postal Service

the document to the following non-CM/ECF participant:

Lindbergh Porter, Jr.
LITTLER MENDELSON, P.C.
650 California Street, 20th Floor
San Francisco, CA  94108-2693
415-399-8445
FAX 415-743-6541
Email:  lporter@littler.com

                        /s/  Erica J. Knerr
                        Legal Assistant
                        KELLER ROHRBACK L.L.P.
                        1201 3rd Avenue, Suite 3200
                        Seattle, WA  98101
                        Tel:  (206) 623-1900
                        Fax:  (206) 623-3384

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**EXHIBIT 2**

1    LINDBERGH PORTER, JR., Bar No. 100091
     RICHARD H. RAHM, Bar No. 130728
2    ALISON S. HIGHTOWER, Bar No. 112429
     LITTLER MENDELSON
3    A Professional Corporation
     650 California Street, 20th Floor
4    San Francisco, CA  94108.2693
     Telephone:    (415) 433-1940
5    Facsimile:    (415) 399-8490
     E-mail:  lporter@littler.com
6    rrahm@littler.com

7    Attorneys for Defendant WELLS FARGO HOME
     MORTGAGE, a division of WELLS FARGO
8    BANK, NATIONAL ASSOCIATION

9                    UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11

12   In re:                              MDL Case No. MDL-1770

13   WELLS FARGO HOME MORTGAGE           **WELLS FARGO HOME MORTGAGE'S**
     OVERTIME PAY LITIGATION             **MEMORANDUM OF POINTS AND**
14                                       **AUTHORITIES IN OPPOSITION TO**
                                         **MEVORAH'S MOTION FOR CLASS**
15                                       **CERTIFICATION**

16   This document relates to ALL CASES  Date:     July 30, 2007
                                         Time:     2:00 p.m.
17                                       Court:    15
                                         Before:   The Honorable Marilyn Hall Patel
18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

# TABLE OF CONTENTS

|  |  | PAGE |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 2 |
|  | A. HMCs Work As Independent Entrepreneurs Developing Their Own Business Under The WFHM Umbrella | 2 |
|  | B. HMCs' Specialization In Particular Products Influences Their Duties, Amount Of Time In The Office And Compensation | 3 |
|  | C. Within Specializations, HMCs Work Differently Depending On Factors Ranging From Marketing Strategy To Geographic Location | 5 |
|  | D. HMCs Prefer Their Work Autonomy And Commission-Based Compensation System | 8 |
|  | E. As A Former Sub-Prime HMC In The Central Valley, Mevorah Is Not Typical Of The Class Of HMCs He Seeks To Certify | 9 |
|  | F. Procedural Background | 9 |
| III. | LEGAL ARGUMENT | 10 |
|  | A. Mevorah Has Not Met All Of The Requirements Of Rule 23(a) | 10 |
|  |    1. Mevorah Does Not Establish The Necessary Commonality Or Typicality Under Rule 23(a) | 10 |
|  |    2. As A Former Employee Mevorah Has Conflicts With The Putative Class And Therefore Cannot Adequately Represent The Putative Class | 11 |
|  | B. Mevorah Does Not Meet His Burden Of Showing Under Rule 23(b)(3) Either That Common Questions Predominate Or That Class Treatment Is The Superior Method For Fair and Efficient Adjudication | 12 |
|  |    1. The Potentially Applicable Exemptions | 13 |
|  |       a. The Outside Sales Exemption | 13 |
|  |       b. The Commissioned Sales Exemption | 14 |
|  |       c. The Administrative Exemption | 15 |
|  |       d. The Federal Highly Paid Exemption | 16 |
|  |    2. Common Questions Of Law And Fact Do Not Predominate Because Of The Fact-Based Inquiries Required | 16 |
|  |    3. A Class Action Is Not Superior Due To Case Management Issues, The Lack Of HMC Interest, And The Available Alternative Remedies | 20 |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

Case MDL No. 1226 MDC Document 47 Filed 01/03/07 Page 3 of 62

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

        a.    Case Management Problems Should Preclude Class Certification ........................................................................ 20

        b.    Lack Of Interest In Pursuing This Action Is Shown By The Failure To Offer A Single Supporting Declaration ........................... 22

        c.    Alternative Forums Exist For Those Who Wish To Bring A Claim ........................................................................................ 23

    C.    If Any Class Is Certified, The Class Should Be Limited To A FLSA Collective "Opt-In" Action ........................................................... 24

IV.    CONCLUSION ............................................................................... 25

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

1

## TABLE OF AUTHORITIES

2                                                                                                PAGE

3  **CASES**

4  *Allison v. Citgo Petroleum Corp.,*
   151 F. 3d 402 (5th Cir. 1998) ............................................................... 24

5  *Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ................................................................................ 13

6  *Anderson v. Mt. Clemens Pottery Co.,*
   328 U.S. 680 (1946) ................................................................................ 22

7  *Barnett v. Washington Mutual Bank,*
8  2004 U.S. Dist. LEXIS 15661 (N.D. Cal. 2004) ............................... 15

9  *City of San Jose v. Superior Court,*
   12 Cal. 3d 447 (1974) ............................................................................ 22

10 *Connecticut v. Doehr,*
   501 U.S. 1 (1991) .................................................................................... 22

11 *Crawford v. Honig,*
   37 F. 3d 485 (9th Cir. 1994) ................................................................. 11

12 *Cuadra v. Millan,*
13 17 Cal. 4th 855 (1998) .......................................................................... 24

14 *Diaz v. Electronics Boutique of America, Inc.,*
   2005 WL 2654270 (W.D.N.Y. 2005) .................................................... 11

15 *Edwards v. City of Long Beach,*
   467 F. Supp. 2d 986 (C.D.Cal. 2006) .................................................. 25

16 *Fields v. AOL Time Warner, Inc.,*
   261 F. Supp. 2d 971 (W.D. Tenn. 2003) ............................................ 14

17 *Gatto v. Mortgage Specialists of Illinois, Inc.,*
18 442 F. Supp. 2d 529 (N.D. Ill. 2006) .................................................. 15

19 *General Tel. Co. v. Falcon,*
   457 U.S. 147 (1982) ................................................................................ 10

20 *Haley v. Medtronic, Inc.,*
   169 F.R.D. 643 (C.D. Cal. 1996) .......................................................... 20

21 *Hanlon v. Chrysler Corp.,*
   150 F. 3d 1011 (9th Cir. 1998) ............................................................ 11

22 *Hanon v. Dataproducts Corp.,*
23 976 F. 2d 497 (9th Cir. 1992) .............................................................. 22

24 *Hoffman-LaRoche, Inc. v. Sperling,*
   493 U.S. 165 (1989) ................................................................................ 24

25 *In re "Agent Orange" Prod. Liab. Litig.,*
   818 F. 2d 145 (2nd Cir. 1987) ............................................................. 22

26 *In re Dalkon Shield IUD Prod. Liab. Litig.,*
   693 F. 2d 847 (9th Cir. 1982) .............................................................. 20

27 *In re Milestone Scientific Securities Litig.,*
28 183 F.R.D. 404 (D.N.J. 1998) .............................................................. 10

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

**OPPOSITION TO MEVORAH MOTION**          iii.                    Case No. MDL-1170
**TO CERTIFY CLASS**

1

**TABLE OF AUTHORITIES**
(CONTINUED)

2
<div align="right">PAGE</div>

3
*Jiminez v. Domino's Pizza, Inc.,*
   238 F.R.D. 241 (C.D. Cal. 2006) ................................................................ 13, 17, 24

4
*Johannes v. Aerotek, Inc.,*
5
   2001 U.S. Dist. LEXIS 25409 (C.D. Cal. 2001) ...................................................... 11, 19

*Kelley v. SBC, Inc.,*
6
   1998 U.S. Dist. Lexis 18643 (N.D. Cal. 1998) ...................................................... 19, 20

*Keyes Motors v. DLSE,*
7
   197 Cal. App. 3d 557 (1987) ...................................................................................... 15

8
*LaChapelle v. Owens-Illinois, Inc.,*
   513 F. 2d 286 (5th Cir. 1975) ..................................................................................... 25

9
*Lanzarone v. Guardsmark Holdings, Inc.,*
10
   2006 U.S. Dist. LEXIS 95785 (C.D. Cal. 2006) ...................................................... 23, 24

*Leuthold v. Destination America, Inc.,*
11
   224 F.R.D. 462 (N.D. Cal. 2004) ................................................................................ 25

12
*Liberty Lincoln Mercury v. Ford Mktg Corp.,*
   149 F.R.D. 65 (D.N.J. 1993) ...................................................................................... 11

13
*Matarazzo v. Friendly Ice Cream Corp.,*
   62 F.R.D. 65 (E.D.N.Y. 1974) .................................................................................... 12

14
*Mitchell v. Kentucky Finance Co.,*
15
   359 U.S. 290 (1959) ................................................................................................... 15

*Morisky v. Public Serv. Electric & Gas Co.,*
16
   111 F. Supp. 2d 493 (D.N.J. 2000) ............................................................................ 11

17
*Nielsen v. Devry, Inc.,*
   302 F. Supp. 2d 747 (W.D. Mich. 2003) .................................................................... 14

18
*Palmieri v. Nynex Long Distance Co.,*
   2005 U.S. Dist. LEXIS 6057 (D. Me., 2005) ............................................................. 14

19
*Perry v. U.S. Bank,*
20
   2001 U.S. Dist. LEXIS 25050 (N.D. Cal. 2001) .................................................. 17, 20

*Ramirez v. Yosemite Water Co.,*
21
   20 Cal. 4th 785 (1999) ..................................................................................... 11, 15, 22

22
*Robinson v. Sizes Unlimited, Inc.,*
   685 F. Supp. 442 (D.N.J. 1988) ................................................................................. 25

23
*Rodriguez v. Family Publications Serv.,*
   57 F.R.D. 189 (C.D. Cal. 1972) ................................................................................. 22

24
*Sepulveda v. Wal-Mart Stores, Inc.,*
25
   237 F.R.D. 229 (C.D. Cal. 2006) ......................................................................... 21, 22

*Southern Snack Foods, Inc. v. J&J Snack Foods Corp.,*
26
   79 F.R.D. 678 (D.N.J. 1978) ...................................................................................... 12

27
*Sweet v. Pfizer,*
   232 F.R.D. 360 (C.D. Cal. 2005) ............................................................................... 11

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

OPPOSITION TO MEVORAH MOTION
TO CERTIFY CLASS

<div align="center">iv.</div>

Case No. MDL-1170

<div align="center">

**TABLE OF AUTHORITIES**
(CONTINUED)

</div>

|  |  |
|---|---|
| | **PAGE** |
| *Van Allen v. Circle K Corp.*, | |
| 58 F.R.D. 562 (C.D. Cal. 1972) | 12 |
| *Walsh v. Ikon Office Solutions, Inc.*, | |
| 2007 Cal. App. Lexis 456 (Ct. App. Mar. 1, 2007) | 17 |
| *Zinser v. Accufix Research Institute, Inc.*, | |
| 253 F. 3d 1180 (9th Cir. 2001), | |
| *as amended*, 273 F. 3d 1266 (9th Cir. 2001) | 13, 24 |

**STATUTES**

| | |
|---|---|
| 29 C.F.R. § 541, *et seq.* | 16 |
| 29 C.F.R. § 541.100 | 20 |
| 29 C.F.R. § 541.200(a) | 16 |
| 29 C.F.R. § 541.203 | 16 |
| 29 C.F.R. § 541.701 | 14 |
| 29 C.F.R. § 779.318(a) | 15 |
| 29 U.S.C. § 206(a) | 15 |
| 29 U.S.C. § 207(i) | 15 |
| 29 U.S.C. § 213(a)(1) | 20 |
| 29 U.S.C. § 216(b) | 24, 25 |
| 8 Cal. Code Reg. § 11000(2) | 15 |
| 8 Cal. Code Reg. § 11040 | 15, 20 |
| 8 Cal. Code Reg. § 110702(I) | 14 |
| 8 Cal. Code Regs. § 11040(3)(D) | 15 |
| Bus. & Prof. Code § 17200 | 24, 25 |
| Cal. Labor C. § 1171 | 14 |
| Fed. R. Civ. Proc. 23(a) | 1, 10, 11, 13 |
| Fed. R. Civ. Proc. 23(a)(3) | 10 |
| Fed. R. Civ. Proc. 23(a)(4) | 1 |
| Fed. R. Civ. Proc. 23(b) | 1, 13 |
| Fed. R. Civ. Proc. 23(b)(3) | 1, 2, 13, 17, 20 |
| Fed. R. Civ. Proc. 23(c)(1) | 20 |
| Pub. L. 49, ch. 52, §61 Stat. 84, 87 (1947) | 24 |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

OPPOSITION TO MEVORAH MOTION
TO CERTIFY CLASS

v.

Case No. MDL-1170

# I. INTRODUCTION

Jason Mevorah, a former Wells Fargo Home Mortgage ("WFHM") sub-prime Home Mortgage Consultant ("HMC"), asks this Court to certify a class of approximately 5,000 current and former California HMCs from several hundred offices with respect to his exemption misclassification claims. Mevorah is the only proposed class representative, and he fails to present evidence from any other current or former HMC that his claims are in any way typical of the other HMCs. Nor could he.

HMCs are responsible for originating mortgage loan products that best suit their clients' personal and financial situation and objectives. They operate as individual entrepreneurs and have virtually unfettered discretion to perform their job where and how they see fit. The work performed by an HMC is heavily impacted by product specialization, whether it is prime loans, sub-prime loans, reverse mortgages or other product specializations. Even greater differences exist within product specializations. How an HMC spends his or her time will be influenced by work-style preferences and marketing strategy, compensation goals, experience in the business, geographic location, and market forces, to name but a few. Mevorah's motion for certification should be denied for the following reasons:

**No Common Questions Of Fact And Law.** Rule 23(a)(2) requires Mevorah's claims to be "typical" of the claims of the class, and Rule 23(b)(3) requires that common questions of law and fact must predominate over questions affecting individual class members. There are seven different exemptions under federal and state law potentially applicable to HMCs. Because of the great differences among HMCs, the determination of whether any of the seven exemptions applies to a particular HMC will require a highly specific factual and legal determination. Mevorah can therefore satisfy neither Rule 23(a) nor Rule 23(b).

**Mevorah's Interests Are Antagonistic To The Proposed Class.** Rule 23(a)(4) requires that Mevorah represent the interests of his class. As a former HMC, who no longer works in the mortgage industry, Mevorah's interests are antagonistic to the interests of current HMCs, who prefer to maintain their work autonomy and the commission-based compensation structure. Indeed, Mevorah has submitted no declaration from any current or former HMC supporting his claims.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

OPPOSITION TO MEVORAH MOTION
TO CERTIFY CLASS

1

Case No. MDL-1170

WFHM offers numerous declarations from current and former HMCs attesting to their satisfaction.

**Class Action Is Not A Superior Method.** The class action must be superior to other available methods for the fair and efficient adjudication of the claims. Resolving the claims of a class of as many as 5,000 HMCs with widely varying work experiences would be unmanageable and is unnecessary given the alternative forums available. WFHM would be deprived of its due process if class treatment were afforded to this diverse group of HMCs. For these reasons, and because HMCs are hostile to Mevorah's claims, Mevorah cannot satisfy Rule 23(b)(3).

**FLSA Claims Require Certification On An "Opt-In" Basis.** Although Mevorah has alleged causes of action for violation of California's Unfair Competition Law ("UCL"), the underlying violations essentially concern the Fair Labor Standards Act ("FLSA"). Yet, the FLSA requires any class certification must be done on an "opt-in" basis. Mevorah should not be allowed to circumvent the FLSA by alleging UCL causes of action.

## II. FACTUAL BACKGROUND

### A. HMCs Work As Independent Entrepreneurs Developing Their Own Business Under The WFHM Umbrella.

During the class period, WFHM had a "distributed" HMC network of between approximately 5,000 to 10,000 nationwide. These HMCs serve those needing a mortgage loan primarily for the purchase of residential real estate.[1] These HMCs work in some 2,000 WFHM branch offices spread over the 50 states, with several hundred branches and 1,000 to 1,500 HMCs in California. Including former employees, there were approximately 5,000 California HMCs and approximately 20,000 nationwide since 2001. Declaration of Brad Blackwell ("Blackwell Decl.") ¶ 3.

WFHM hires HMCs to be independent, self-directed loan consultants who assess a potential borrower's financial picture and home purchase or refinancing objectives, advise borrowers regarding a wide array of loan products and options, and ultimately place the borrower in the right

---

[1] Wells Fargo also has "call center" loan originators (who are not involved in this lawsuit and are classified as non-exempt). Their job duties are vastly different from the job duties of "distributed" HMCs. Call center loan originators work entirely from their offices in Arizona and Minnesota, handling calls for California and all other states. They report to and through a completely different management structure and have set hours of work and spend all their time in the offices. They make out-bound calls to place mortgages and they service customers who call into Wells Fargo requesting to refinance mortgages by phone. *See* Blackwell Decl. ¶ 16.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**OPPOSITION TO MEVORAH MOTION
TO CERTIFY CLASS**     2.     Case No. MDL-1170

1    home mortgage product. HMCs essentially function as entrepreneurs of their own businesses.

2    Newer HMCs and those needing more job coaching receive widely varying levels of supervision

3    from occasional to more frequent. Those HMCs with experience and tenure are free to set their own

4    schedules, itineraries, and work plans with little or no direction from managers. Aside from a

5    weekly meeting, HMCs are generally not required to come to a branch. In fact, many HMCs work

6    from branches that do not have on-site branch managers. Rather, they determine when and how to

7    work both to cater to their clients' needs and their own work styles. Most HMCs generate loan

8    origination directly or through their own referral sources. The referral sources are as varied as the

9    HMCs can generate, including real estate agents, financial advisors, bankers, former clients,

10    community leaders and organizations, residential builders and construction companies. Blackwell

11    Decl. ¶ 4.

12      WFHM compensates HMCs very well for their individual initiative. Since January 2005,

13    HMCs have been paid a minimum, non-recoverable draw against commissions based on the

14    mortgage loans they place. During the period relevant to this lawsuit, WFHM paid California HMCs

15    an average annual compensation of $149,000, and some received more than $500,000 or even $1

16    million. *See* Declaration of Patrick Cahalan ("Cahalan Decl.") ¶ 2.

17      **B.**     **HMCs' Specialization In Particular Products Influences Their Duties, Amount Of Time In The Office And Compensation.**

18

19      HMCs can specialize with respect to prime mortgages, sub-prime mortgages, reverse

20    mortgages, renovation mortgages, builder developments, or emerging markets. Each of these

     specializations influence an HMC's duties, the amount of time spent in the office, and compensation.

21

22      **Prime HMCs.** Prime HMCs work with borrowers who qualify for the best interest rates.

     Prime HMCs have complete discretion in establishing their loan origination business plan, which can

23

24    include developing referral sources for borrowers with traditional credit profiles, such as real estate

     agents, financial consultants, tax planners, investment advisers, community organizations,

25

26    accountants and clients. As with all HMCs, there are literally scores of loan products that are

     available in order to meet the borrower's home purchasing or refinancing objectives and fit within

27

28    their financial constraints. These loan products range from conventional conforming loans to A-

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**OPPOSITION TO MEVORAH MOTION TO CERTIFY CLASS**      3.      Case No. MDL-1170

1    loans, and within these categories there are a range of products for specialized needs, such as builder

2    loans and first-time homebuyer loans.  Moreover, with each of these types of products there are fixed

3    and adjustable rate loans, a combination of fixed and adjustable loans, fully amortizing loans,

4    interest-only loans, and 15 and 30-year loans.  Because these borrowers have traditional credit

5    profiles, they tend to be more knowledgeable regarding home mortgages.  Therefore, the nature of

6    the consulting HMCs perform may focus more on nuances of loan products or terms.  *See* Blackwell

7    Decl. ¶ 6.

8        **Sub-Prime HMCs.**  On the other end of the credit spectrum, Sub-prime HMCs work with

9    borrowers with impaired credit who do not qualify for prime interest rates.  As with prime, there is

10   myriad of products, ranging from full documentation loans to stated assets loans, with pricing

11   alternatives based on the qualification of the borrower.  As with prime loans, there is a matrix of

12   options, such as fixed, adjustable and fixed-adjustable combination loan products, 15-year, 30-year,

13   etc.  Because these borrowers do not have credit or assets that would qualify them for conventional

14   loans, sub-prime loans are the most technical part of the lending business.  The source of loan

15   origination can be similar to prime but can also be different, such as from real estate transactions

16   records and internal and external "lead" generating services.  The nature of the consulting work

17   HMCs perform includes advising regarding debt consolidation, improving credit scores, and

18   different loan products. Because of the credit profile of their borrowers, the advisory role that a Sub-

19   prime HMC takes on can be extensive -- "When I focused on sub-prime loans, I spent much more

20   time doing credit counseling."[2]  *See* Blackwell Decl. ¶ 7.

21       **Reverse Mortgage HMCs.**  Reverse Mortgage HMCs work with clients who are over 62

22   who can receive regular payments by decreasing the equity in their homes.  Reverse Mortgage

23   HMCs may go to the office as little as once or twice a month.  Because their customer base tends to

24   be elderly and to comply with regulatory requirements, these HMCs spend more time visiting their

25   clients at their homes and spend more time advising them (or their relatives) about the suitability of

26

27       [2] Declaration of Alberto Izurieta ("Izurieta Decl.") ¶ 4.  (All HMC and Branch Manager
     declarations are attached in alphabetical order as Exhibit A to the Declaration of Lindbergh Porter
28   ["Porter Decl."].)  *See also* Declaration of Patrick Maley ("Maley Decl.") ¶¶ 2-5.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

**OPPOSITION TO MEVORAH MOTION
TO CERTIFY CLASS**              4.                    Case No. MDL-1170

1   reverse mortgages. These HMCs also typically engage in specific promotional activities geared to

2   their customer base, such as giving seminars to seniors.[3] *See* Blackwell Decl. ¶ 8.

3       **Other Product Specializations.** Renovation HMCs specialize in mortgages to finance the

4   costs of renovation based on the increased value the renovation will add to the home. Renovation

5   HMCs must be knowledgeable about home construction/renovation and often develop business

6   through their contacts in the construction industry. Builder HMCs usually focus on a particular

7   housing development and receive client referrals from and market to builders.[4] Emerging Market

8   HMCs develop relationship with minority, low to moderate income, and emerging communities that

9   have historically been underserved. *See* Blackwell Decl. ¶ 9.

10      **C.    Within Specializations, HMCs Work Differently Depending On Factors Ranging
            From Marketing Strategy To Geographic Location.**

11      Within product specializations, an HMC's duties, amount of time spent in and out of the

12  office, and compensation varies greatly, depending on a number of factors, including work-style

13  preferences and marketing strategy, compensation objectives, experience in the business, target

14  market, geographic location, and market forces, to name but a few. These factors also influence how

15  much time HMCs spend consulting with their clients regarding their mortgage options.

16      **Work-Style Preferences and Marketing Strategy.** Within a product specialization, some

17  HMCs spend well over half their time making direct contact with referral sources to obtain business.

18  Some HMCs market to real estate developers, others market to real estate agents, and others may

19  market to other financial professionals as referral sources.[5] Some HMCs give seminars to find

20  ────────────────

21      [3] *See, e.g.,* Declaration of Scott Behm ("Behm Decl.") ¶ 4 ("My customers usually cannot get
    out of their homes or do not want to leave their homes. I meet over 90 percent of my customers at
    their homes."). *See also* Declaration of Tim Pearce ("Pearce Decl.") ¶¶ 3-5.

22      [4] *See, e.g.,* Declaration of Patricia Johnson ("Johnson Decl.") ¶ 4 ("Because I am primarily
23  working with a building on a particular subdivision, I have a had a large volume of production,
    which requires me to spend most of my time in the office."); Ross Decl. ¶ 5 ("What time I did spend
24  in sales development was primarily tied to ensuring that the builder was satisfied with my
    services.").

25      [5] *See, e.g.,* Declaration of Morgan Fine ("Fine Decl.") ¶ 5 ("When I am outside the office, I
26  am tapping into my referral sources and meeting clients, attending entertainment events with
    referrals, attending open houses and going to sporting events, such as San Diego Padres baseball
    games."); Declaration of Adrienne Weiss ("Weiss Decl.") ¶ 5 ("The 50 percent of the time I spent
27  out of the office involves attending realtor functions, such as going to the weekly Fremont Tri-City
    Board of Realtors meetings, attending open houses each week, and going to realtor's offices to meet
28  clients and customers, taking flowers, coffee, or popcorn to realtor's offices, and putting on first-

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

**OPPOSITION TO MEVORAH MOTION
TO CERTIFY CLASS**                        5.                    Case No. MDL-1170

clients.[6] Many are active in sports, community organizations and charities.[7] Those who market to developers may spend less time marketing than those who engage in numerous real-estate related events.[8] Reverse Mortgage HMCs market to the elderly, which entails spending a significant time at senior centers and at the homes of their clients, their clients' relatives and financial advisors.[9] Other HMCs rely more on mass marketing techniques, communicating by flyer and telephone calls to borrowers and prospective borrowers.[10] *See* Blackwell Decl. ¶ 10.

**Compensation Goals.** HMCs function like individual entrepreneurs, each building up a book of business, with no cap as to how much they can earn.[11] Indeed, the average compensation in California is roughly $150,000 a year, with some earning over $500,000 or even $1 million. Cahalan Decl. ¶ 2. Although WFHM provides some training, HMCs are not supervised or monitored with respect to how they spend their time or where they spend their time. Provided they

time homebuyer seminars."); Behm Decl. ¶ 4.

[6] *See, e.g.,* Declaration of David Aulicino ("Aulicino Decl.") ¶ 3; Declaration of Cyndi Blickle ("Blickle Decl.") ¶ 7; Declaration of Tracy Lee Clark ("Clark Decl.") ¶ 6; Declaration of Sue Elford ("Elford Decl.") ¶ 7; Declaration of Valerie Moussa ("Moussa Decl.") ¶ 3; Declaration of Arlene Villarin-Simonian ("Villarin-Simonian") Decl. ¶ 3.

[7] *See, e.g.,* Clark Decl. ¶ 5 ("I target organizations that I am passionate about, such as the California Highway Patrol, the Back to School Conference and the Boys and Girls Club, and I develop relationships by working in or for those organizations. This provides me with a steady stream of referrals."); Declaration of Kai Lynch ("Lynch Decl.") ¶ 2 ("I am very active in San Luis Obispo real estate circles. ... I volunteer on the Arroyo Grande Football club. Those activities bring me into frequent contact with parents and residents who are potential clients.").

[8] *See, e.g.,* Ross Decl. ¶ 5; Blickle Decl. ¶ 7; Elford Decl. ¶ 5; Johnson Decl. ¶ 5; Declaration of Lori Martin ("Martin Decl.") ¶ 6; Declaration of Darlene Matthews ¶ 6; Declaration of Stan Schechtman ("Schechtman") ¶ 3; Weiss Decl. ¶ 5.

[9] *See, e.g.,* Aulicino Decl. ¶ 2; Behm Decl. ¶ 4; Pearce Decl. ¶¶ 3-4.

[10] *See, e.g.,* Declaration of Prospero Garcia ("Garcia Decl.") ¶ 5 ("I identify Wells Fargo customers both in California and around the country who have mortgages that could benefit from one of Wells Fargo's financial products, and then I contact these people either directly by phone or by directly mailing them financial product information."); Declaration of Mischa Zvegintzov ("Zvegintzov Decl.") ¶ 4 ("I am constantly sending out flyers and making cold calls and, consequently, I rely very little on referrals from realtors or bankers."); Maley Decl. ¶ 3.

[11] *See, e.g.,* Aulicino Decl. ¶ 6 ("Salespeople like [reverse mortgage consultants] are entrepreneurs, and I drive my own business. ... I choose to be compensated in this manner with great excitement because of the unlimited potential I am given for my income through my own efforts."); Blickle Decl. ¶ 3 ("As an HMC, I felt that I owned and ran my own business."); Declaration of David Fellner ("Fellner Decl.") ¶ 6 ("I am a self-driven entrepreneur."); Declaration of Dan Stevens ("Stevens Decl.") ¶ 2 ("In effect, it is like I am running my own business. The better I do, the better my compensation, with the onus is on me to make as much as I want.").

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

OPPOSITION TO MEVORAH MOTION
TO CERTIFY CLASS

6.

Case No. MDL-1170

1    achieve modest minimum loan origination, they can spend as much or as little time on their business

2    as they choose and can spend as little or as much of their time in the office as they choose.[12] Their

3    schedules are their own to make and adjust.[13]  *See* Blackwell Decl. ¶ 11-12.

4         **Experience In The Business.**  The amount of time an HMC has been in the business can

5    significantly affect how they perform their job and the amount of time spent in the office.  Those

6    who have just started may spend almost all of their time networking and calling on referral sources

7    to build up a client base, while those who have been in the business many years may need to do less

8    introductory marketing, may spend more time consulting with clients, or may even decide to work

9    fewer hours.[14]  Those HMCs who have established a large book of business use assistants to do the

10   actual processing of the loans, freeing up their time to consult with clients and conduct marketing

11   activities.[15]  *See* Blackwell Decl. ¶ 13.

12        **Geographic Location.**  HMCs work across the geographic and economic spectrum, from

13   densely populated San Francisco to sprawling Los Angeles, and from rural Shasta County to affluent

14   Newport Beach and Westwood, and from farming communities in the Central and Imperial valleys

15   to the timber mill counties along the Oregon border.  Over this territory, income and housing prices,

16

17   [12] HMCs generally are required to originate three mortgages per month, but many originate dozens. Blackwell Decl. ¶ 4. *See also* Declaration of Bill Siewert ("Siewert Decl.") ¶ 3; Declaration of Tim Dougherty ("Dougherty Decl.") ¶ 6.

18

19   [13] *See, e.g.*, Elford Decl. ¶ 12 ("I took this job because I want my own freedom to choose when I work, how I work and how I am to earn my compensation. ... I work strictly on commission and earn three or four times what I did when I was a salaried employee."); Lynch Decl. ¶ 7 ("I would not want to be paid or regulated in any fashion on an hourly basis."); Declaration of Mia Kelsey ("Kelsey Decl.") ¶ 2 ("Being paid by commission, my schedule is flexible, and I am not on a clock."); Declaration of Jacob Neushul ("Neushul Decl.") ¶ 8 ("I value the flexibility to dictate my own schedule, including what days I work and how much I work."); Dougherty Decl. ¶ 5; Siewert Decl. ¶ 2; Maley Decl. ¶ 2.

20

21

22

23   [14] Kelsey Decl. ¶ 4 ("Several years ago, I spent much more time working on sales development. However, because I have been in the mortgage industry for thirteen years, I have been able to build a substantial referral base."); Declaration of Bill Cathcart ("Cathcart Decl.") ¶ 4 ("Because of my success in developing a base of referrals, I do not need to do much in the way of business development anymore. ... I see my [9:30 a.m. to 4:30 p.m.] hours as a type of reward for my earlier work in developing business contacts."); Siewert Decl. ¶ 4 (experienced HMCs "can spend more time talking to, and advising, their clients.").

24

25

26

27   [15] Stevens Decl. ¶ 5 ("Because of the volume of my production, the Company provides me with a sales assistant, which frees up more of my time for business development."); Declaration of Jenny Gomez ("Gomez Decl.") ¶ 4; Declaration of Tobbie Love ("Love Decl.") ¶ 5; Villarin-Simonian Decl. ¶ 6; Zvegintzov Decl. ¶ 4.

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

1 borrower preferences, lifestyles, objectives and, consequently, loan types and terms, vary greatly and

2 so do HMC work styles, hours and specialties.  Meeting with referral sources, networking,

3 counseling borrowers on loan products and their financial situation, attending escrow closings, and

4 all aspects of the loan cycle from the loan application to the loan closing vary from one area of

5 California (and the nation) to another.[16]  *See* Blackwell Decl. ¶ 14.

6 **Market Forces.**  An HMC's time in the office and compensation are also influenced by the

7 market during specific time periods, as well as by fluctuating home purchasing trends during the

8 year.  For instance, normally HMCs must invest significant time outside of the office engaged in

9 marketing.  When interest rates were at historical lows, the refinance market boomed, causing some

10 HMCs to elect to spend less time marketing and more time refinancing loans for their clients.[17]

11 Likewise, the time of the year can have an effect on the amount of time an HMC spends in the

12 office, depending on the specialization and product.  For instance, during particular months, *e.g.*,

13 October to February, many families do not want to change residences and, consequently, there is less

14 home-buying taking place.  During these periods, HMCs may work fewer hours.[18]  However, these

15 trends have little if no effect on Reverse Mortgage HMCs or renovation specialists, whose clients

16 need loans year round.[19]  *See* Blackwell Decl. ¶ 15.

17 **D.    HMCs Prefer Their Work Autonomy And Commission-Based Compensation System.**

18 
19 WFHM compensates its HMCs primarily by a commission structure based on a formula

20 based on the total value of loans they originate.  Quite simply, the greater the total value of loans, the

21 more an HMC receives in commissions – with the average California HMC earning approximately

22 $150,000 annually.  Cahalan Decl. ¶ 2.  Such individuals have no incentive to change a system under

23 [16] *See also* Dougherty Decl. ¶ 3; Siewert Decl. ¶ 3.

24 [17] *See, e.g.*, Siewert Decl. ¶ 3 ("Another factor with respect to hours is the market.  During
the height of the business boom, I could work a 10-hour day just handling the business I was
25 receiving from clients.").

26 [18] *See, e.g.*, Elford Decl. ¶ 4 ("My schedule varies depending on what I consider the busy
season, which typically is from April until the end of the summer.  Things slow down in October
through roughly January and February."); Declaration of Miranda Dibari   ¶ 6; Fellner Decl. ¶ 7;
27 Moussa Decl. ¶ 4.

28 [19] *See* Pearce Decl. ¶ 5.

1   which they are so handsomely rewarded.[20]

2   **E.    As A Former Sub-Prime HMC In The Central Valley, Mevorah Is Not Typical Of The Class Of HMCs He Seeks To Certify.**

3       Mevorah began in 2000 to work as a credit manager at Wells Fargo Financial in Sacramento,

4   a division that sells and services credit cards, small personal loans, automobile refinances and second

5   mortgages. Deposition of Jason Mevorah ("Mevorah Depo.") (Ex. B to Porter Decl.) 10:21-11:16.

6   In July 2002, Mevorah became an HMC at WFHM in Yuba City. *Id.* at 11:20-12:12. Mevorah was

7   hired and trained to originate only sub-prime loans, whereas the other four HMCs in the branch

8   originated prime loans. *Id.* at 29:8-30:16. Mevorah was compensated by commissions, a

9   compensation structure he was "very happy" with at the time. *Id.* at 64:18-22. Mevorah's manager

10  did not require him to keep particular hours at the office, and decisions as to when to go to the office

11  and when to go home were all "personal." *Id.* at 75:23-76:1; 115:11-16. Mevorah admits that

12  without this flexibility he may not have been as productive; he was always well ahead of minimum

13  goals. *Id.* at 117:22-118:14. Consequently, Mevorah could leave early or put in long days to

14  maximize the value of his time and his work weeks varied tremendously. *Id.* at 80:2-81:2; 130:13-

15  18.

16      In June 2004, WFHM promoted Mevorah to a Sales Supervisor in the Grass Valley/Nevada

17  City branch, in which he originated prime loans, and he supervised three other HMCs who did the

18  same. Mevorah Depo. 47:22-48:14; 93:1-6. Mevorah was not happy as a supervisor, and he left in

19  December, 2004. *Id.* at 60:18-61:6.

20  **F.    Procedural Background.**

21      WFHM removed this action on March 22, 2005, and the parties made initial disclosures on

22  September 2, 2005. WFHM responded to Mevorah's document requests on January 11, 2006, and to

23

24  _____

[20] *See, e.g.,* Love Decl. ¶ 8 ("This is not an office job and I do not wish to be paid on an
25  hourly basis or a salary basis."); Declaration of Goldy Sidhu ("Sidhu Decl.") ¶ 6 ("An important part
of why I became an HMC was so I was not simply working hourly shifts in an office."); Behm Decl.
26  ¶ 8 ("I like the potential of extra-large checks when I have larger producing months, rather than a
standard check."); Fine Decl. ¶ 8 ("It would be very difficult to do this job if I was an hourly
27  employee or if I was told what hours to work and when to take lunch breaks or rest breaks."); 
Aulicino Decl. ¶ 6; Declaration of Robin Fahning ("Fahning Decl.") ¶ 9; Declaration of Robert
28  Collins ("Collins Decl.") ¶ 8; Declaration of Tina Vo ("Vo Decl.") ¶ 8; Neushul Decl. ¶ 8.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**OPPOSITION TO MEVORAH MOTION**            9.                    Case No. MDL-1170
**TO CERTIFY CLASS**

1    its interrogatories on February 2, 2006. This action was coordinated into the *In re Wells Fargo*

2    *Overtime Pay Litigation* in June 2006. Mevorah took the depositions of WFHM on July 27 and

3    September 20, 2006. WFHM deposed Mevorah on August 11, 2006. Pursuant to Court order, the

4    parties hired an administrator to randomly select 500 HMC names, according to criteria specified by

5    Plaintiffs in the coordinated action, for Plaintiffs to contact during discovery. In November 2006,

6    those 500 names were provided to Plaintiffs.

7    **III.    LEGAL ARGUMENT**

8        **A.    Mevorah Has Not Met All Of The Requirements Of Rule 23(a).**

9        Mevorah proposes a broad class of "all persons who were employed by Wells Fargo Home

10    Mortgage in the State of California as a Home Mortgage Consultant after February 10, 2001."

11    Opening Brief at 2:18-20. This classification encompasses roughly 5,000 HMCs from several

12    hundred branch offices throughout California. To certify a class, Mevorah bears the burden of

13    establishing under Rule 23(a): (1) numerosity, (2) commonality, (3) typicality and (4) adequacy of

14    representation. "Courts must undertake a 'rigorous analysis' to ensure that the [Rule 23] putative

15    class and its proposed representative satisfy each of the prerequisites of class certification." *General*

16    *Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). Mevorah fails on three of the four elements:

17    typicality, commonality, and adequacy of representation.

18        **1.    Mevorah Does Not Establish The Necessary Commonality Or Typicality Under Rule 23(a).**

19

20        To establish typicality, Mevorah's claims must be "typical of the claims or defenses of the

21    class." Fed. R. Civ. Proc. 23(a)(3). Where an individualized factual and legal inquiry is necessary

22    to determine if an employee is exempt, the plaintiff representative's claim "cannot be said to be

23    characteristic of the other class members." *In re Milestone Scientific Securities Litig.*, 183 F.R.D.

24    404, 415 (D.N.J. 1998). Likewise, "highly specific factual and legal determinations are not

25    consistent with the commonality requirement of a class action and, indeed, undercut the purpose of

26    the class action procedure." *Liberty Lincoln Mercury v. Ford Mktg Corp.*, 149 F.R.D. 65, 76 (D.N.J.

27    1993).

28        In *Diaz v. Electronics Boutique of America, Inc.*, 2005 WL 2654270 (W.D.N.Y. 2005), the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

**OPPOSITION TO MEVORAH MOTION
TO CERTIFY CLASS**       10.       Case No. MDL-1170

1   court denied class certification for an "off-the-clock" overtime suit brought on behalf of thousands of

2   store managers and assistant store managers. The court found that commonality and typicality were

3   absent because the claims of the two class representatives "present factual questions specific to each

4   and separate from the other's and from those of proposed class members." *Id.* at *5-6. In *Morisky v.*

5   *Public Serv. Electric & Gas Co.*, 111 F. Supp. 2d 493, 500 (D.N.J. 2000), the court also found no

6   commonality or typicality, even though 141 utility employees had signed "opt in" consent forms,

7   because the putative class members had diverse duties requiring a fact-based and individualized

8   inquiry into exemption status.

9       Here, the determination of whether each of roughly 5,000 HMCs was exempt requires

10  myriad fact-based and individualized inquiries. *See* Section III.B. For instance, whether an HMC

11  was an "outside salesperson" who customarily and regularly worked more than half his or her time

12  away from WFHM's place of business originating mortgages will be a question of fact. *Ramirez v.*

13  *Yosemite Water Co.*, 20 Cal. 4th 785 (1999). So will be the question whether work done in the

14  office was incidental to outside sales. Whether a particular HMC exercised the requisite discretion

15  to fall within the administrative exemption is also a question of fact. *Johannes v. Aerotek, Inc.*, 2001

16  U.S. Dist. LEXIS 25409 (C.D. Cal. 2001) (denying summary judgment). The individualized nature

17  of the factual inquiries therefore defeats commonality or typicality.

18           **2.      As A Former Employee Mevorah Has Conflicts With The Putative Class**
             **And Therefore Cannot Adequately Represent The Putative Class.**
19

20      To satisfy the last requirement of Rule 23(a), Mevorah must adequately represent the

21  interests of absent class members, which means "class representatives must not have interests

22  antagonistic to the unnamed class members." *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1020 (9th

23  Cir. 1998); *Sweet v. Pfizer*, 232 F.R.D. 360, 370 (C.D. Cal. 2005); *Crawford v. Honig*, 37 F. 3d 485,

24  487 (9th Cir. 1994) (adequate representation depends upon "an absence of antagonism" and shared

25  interest between proposed representatives and absent members).

26      Courts have routinely denied class certification when a class representative attempts to

27  represent both current and former class members because that representation is inherently

28  antagonistic. For instance, in *Southern Snack Foods, Inc. v. J&J Snack Foods Corp.*, 79 F.R.D. 678,

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

**OPPOSITION TO MEVORAH MOTION**          11.          Case No. MDL-1170
**TO CERTIFY CLASS**

1    681 (D.N.J. 1978), the court denied certification of a class of former and current franchisees because

2    the plaintiff "offered no compelling reason for the court to deviate from the general rule that *former*

3    class members are not adequate representatives of the class." (Emphasis supplied.) *See also Van*

4    *Allen v. Circle K Corp.*, 58 F.R.D. 562, 564 (C.D. Cal. 1972) (certification denied when interests of

5    a class including both present and *former* independent operators were adverse); *Matarazzo v.*

6    *Friendly Ice Cream Corp.*, 62 F.R.D. 65, 68 (E.D.N.Y. 1974) (class denied because "*former* store

7    managers do not have the same interests of present store managers" [emphasis supplied]).

8         As a *former* HMC, who no longer even works in the mortgage industry, Mevorah clearly

9    does not represent the interests of current HMCs. Indeed, with respect to his commission earnings,

10   Mevorah admits that when he worked as an HMC, "I was *very happy* with my job." Mevorah Depo.

11   64:18-22. Indeed, Mevorah offers no declarations from *any* HMCs – current or former – agreeing

12   that the system should be changed. To the contrary, current California HMCs prefer to keep the

13   system in which they are not only not paid a commission, but are permitted to decide precisely how

14   much time they work, when they work, and how they work, without any interference by

15   management.[21] Even *former* HMCs have testified that Mevorah does not represent them.[22]

16   Mevorah's interests are thus "antagonistic" to current HMCs as he "would be indifferent to anything

17   other than financial recovery to the fullest extent from defendant." *Van Allen*, 58 F.R.D. at 564. As

18   an inadequate representative of current and former HMCs, the class cannot be certified.[23]

19        **B.    Mevorah Does Not Meet His Burden Of Showing Under Rule 23(b)(3) Either**
          **That Common Questions Predominate Or That Class Treatment Is The**
20        **Superior Method For Fair and Efficient Adjudication.**

21        Even assuming Mevorah could establish all four requirements of Rule 23(a), he must also

22   satisfy at least one requirement of Rule 23(b) to certify a class. *Zinser v. Accufix Research Institute,*

23   _____

           [21] *See* Declarations cited in Footnotes 20 and 39.

24         [22] *See, e.g.*, Blickle Decl. ¶ 10 ("While I worked as an HMC, I was happy being paid on a
     commission basis. As a commissioned employee, I had the potential to make more money than a
25   salaried or hourly paid employee and there was no ceiling on my potential earnings."); Ross Decl.
     ¶ 3 ("If Wells Fargo Home Mortgage went to a salary-based system of compensation, I would have
26   had to re-evaluate my options.").

27         [23] Since Plaintiff quit his job at WFHM in 2004, he also is not typical of HMCs who worked
     under the new compensation system implemented in 2005, with a minimum draw against
28   commissions.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**OPPOSITION TO MEVORAH MOTION**          12.                    Case No. MDL-1170
**TO CERTIFY CLASS**

1 | *Inc.*, 253 F. 3d 1180, 1186 (9th Cir. 2001), *as amended*, 273 F. 3d 1266 (9th Cir. 2001).  Mevorah

2 | seeks certification based only on Rule 23(b)(3), which requires not only that common questions of

3 | law and fact predominate over questions affecting individual members, but also that a class action be

4 | superior to other means to adjudicate the controversy.  Neither prong of Rule 23(b) has been met.

5 |       Predominance measures the cohesiveness of a proposed class and functions as a stricter

6 | version of Rule 23(a)'s commonality requirement.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S.

7 | 591, 623-24 (1997).  To determine whether common issues of law and fact predominate, the court

8 | must "first examine the substantive issues raised by Plaintiffs and second inquire into the proof

9 | relevant to each issue." *Jiminez v. Domino's Pizza, Inc.*, 238 F.R.D. 241 (C.D. Cal. 2006).  The

10 | substantive issues here involve the classification of each of the 5,000 HMCs as "exempt."  As many

11 | as seven exemptions are at issue:  (1) the California and federal outside sales exemption; (2) the

12 | California and federal "commissioned" sales exemption; (3) the California and federal

13 | administrative exemption; and (4) the federal highly paid exemption.  We briefly review these

14 | potential exemptions – not to prove they apply because at this stage the Court is not resolving the

15 | merits – but to establish why the factual issues arising from these exemptions require an

16 | individualized factual inquiry that fails to satisfy Rule 23(b)(3).

17 |         **1.    The Potentially Applicable Exemptions.**

18 |         **a.    The Outside Sales Exemption.**

19 |       Both California and federal law exempt from overtime employees who meet the definition of

20 | an "outside salesperson."  Under federal law, an "outside salesman" is defined as an employee

21 | whose (1) primary duty is making sales or obtaining orders or contracts for services; and (2) "[w]ho

22 | is customarily and regularly engaged away form the employer's place or places of business in

23 | performing such primary duty."[24]  Under California law the outside sales exemption applies to

24 | salespersons who customarily and regularly work more than half the working time away from the

25 | employer's place of business selling or obtaining orders or contracts.  *See* Cal. Labor C. § 1171; 8

26 | Cal. Code Reg. § 110702(I).

27 |     [24] "Customarily and regularly" is defined as "a frequency that must be greater than occasional but which, of course, may be less than constant," and "includes work normally and

28 | recurrently performed every workweek." 29 C.F.R. § 541.701.

.ITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
an Francisco, CA 94108-2693
415 433.1940

**OPPOSITION TO MEVORAH MOTION
TO CERTIFY CLASS**      13.      Case No. MDL-1170

1      Federal courts look to the "totality of the circumstances" based on nine factors. The

2    employee (1) derives a substantial amount of his or her income from commissions; (2) is regularly

3    engaged away from the company's place of business; (3) is hired and denominated a salesperson; (5)

4    receives sales training; (6) has no restriction on hours; (7) can make as much or as little as his or her

5    ambition allows; (8) is not supervised; and (9) does work that is incidental to his or her own sales.

6    *See Palmieri v. Nynex Long Distance Co.*, 2005 U.S. Dist. LEXIS 6057, *42-53 (D. Me., 2005)

7    *Fields v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 971, 974 (W.D. Tenn. 2003); *Nielsen v. Devry,*

8    *Inc.*, 302 F. Supp. 2d 747, 756 (W.D. Mich. 2003). In *Palmieri*, the district court found that a high-

9    level salesman at Verizon who approached his job "as an entrepreneur" and who attended multiple

10   customer meetings outside of the office came within the outside sales exemption. *Palmieri*, 2005

11   U.S. Dist. LEXIS 6057 at *14, 42.

12      Moreover, the DOL has held in an Opinion Letter dated March 31, 2006, based on a set of

13   duties that mirror the duties of WFHM's HMCs, that "employees of finance companies who obtain

14   and solicit mortgages may be exempt outside sales employees."[25]  *See* Porter Decl., Exh C.  The

15   DOL further found that work in the office that was "incidental to the employee's obtaining the

16   mortgage" qualifies as "exempt work" if done with respect to the employee's own sales.  Thus, even

17   HMCs who spent a majority of their time in the office still come within the FLSA's "outside sales"

18   exemption provided they were primarily working on their own sales.

19             **b.    The Commissioned Sales Exemption.**

20      Those HMCs who do not meet the test for outside sales may qualify for the federal and state

21   exemptions for commissioned salespersons.  Both the California and federal exemption applies to

22   employees whose regular rate of pay is more than one and a half times minimum wage and where

23   "more than half his or her compensation for a representative period (not less than one month)

24

---

25      [25] The DOL found that mortgage loan officers met the "outside sales" exemption if they:  (1)
met with prospective clients at locations other than the employer's business; (2) contacted clients by
26   telephone, mail and email as an adjunct to their in-person contacts; (3) obtained credit information
and other necessary documents for the loan application process; (4) called on real estate agents/
27   brokers, financial advisors, and other potential referral sources to develop borrower leads; (5)
engaged in marketing and promotional activities in support of their own sales; and (6) had flexibility
28   to set their working hours and to schedule the tasks they perform during the work week.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

**OPPOSITION TO MEVORAH MOTION**      14.         Case No. MDL-1170
**TO CERTIFY CLASS**

represents commissions on goods or services." 29 U.S.C. § 207(i); 8 Cal. Code Regs. § 11040(3)(D).[26] Since the average compensation for California HMCs was $149,000, HMCs easily meet the minimum compensation requirement: approximately $16,000 a year for the federal standard and $21,100 under California law. 29 U.S.C. § 206(a); 8 Cal. Code Reg. § 11000(2).

Federal law, but not California law, requires that the employer be a "retail or service establishment."[27] The Department of Labor identified the attributes of a "retail establishment" in a 1970 interpretive bulletin as "one which sells goods or services to the general public." 29 C.F.R. § 779.318(a). The home mortgage loan industry meets this standard. To the extent Mevorah contends it does not, issues of fact will need to be resolved.[28]

### c.   The Administrative Exemption.

There are three elements to the FLSA administrative exemption: (1) minimum salary of $455 per week;[29] (2) the employee's primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) the employee's primary duty includes the exercise of discretion and independent

---

[26] *Barnett v. Washington Mutual Bank*, 2004 U.S. Dist. LEXIS 15661, *18-26 (N.D. Cal. 2004) (loan originators qualified for the commissioned sales exemption).

[27] Plaintiff contends that HMCs were not paid "on a true commission basis" because supposedly the commission was not computed on a percentage of the sales price of the product. *See* Opening Brief at 9:11-19. But Plaintiff's own declaration states that the commission was a percentage of the loan. *See* Mevorah Decl. ¶ 6. Furthermore, Plaintiff mistakenly relies on *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785 (1999) and *Keyes Motors v. DLSE*, 197 Cal. App. 3d 557 (1987). The courts there did not address the calculation methodology since the employees were not principally in selling a product or service.

[28] Mevorah also relies on *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290 (1959). But, as recognized by the court in *Gatto v. Mortgage Specialists of Illinois, Inc.*, 442 F. Supp. 2d 529 (N.D. Ill. 2006), *Mitchell* interpreted a later repealed statute [29 U.S.C. § 213(a)(2)] that defined "retail or service establishment." A mortgage specialist met the definition because the loans were sold to the general public, the establishment served the everyday needs of the community, its loans were recognized as retail sales or service in the industry, and the difficulties in requiring overtime pay for "big ticket" commissioned employees militated in favor of holding the business to be "retail." *Gatto*, 442 F. Supp. 2d at 541. Those decisions relied upon by Plaintiff (Opening Brief at 12:2-14) recognize that the current status of the mortgage industry has changed since 1959, but refused to analyze those changes under the relevant statutory scheme.

[29] On January 1, 2005, Wells Fargo implemented a policy of paying HMCs a minimum draw against commission. Prior to this date it was left to the manager's discretion whether to use a minimum draw against commissions. *See* Cahalan Decl. ¶ 3. As such, depending on the manager, the administrative exemption will also apply to HMCs before January 1, 2005.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

**OPPOSITION TO MEVORAH MOTION
TO CERTIFY CLASS**          15.          Case No. MDL-1170

1    judgment with respect to matters of significance.[30] *See* 29 C.F.R. § 541.200(a).

2        The DOL recently clarified in its Opinion Letter of September 8, 2006 that the administrative

3    exemption covered mortgage loan officers who service their employer's financial services business

4    by marketing, servicing and promoting the employer's financial products, advising customers

5    regarding products and recommending products to clients. *See* Porter Decl., Exh. D. Moreover,

6    according to the Opinion Letter, mortgage loan officers (HMCs at WFHM) meet the exemption if

7    their duties include work such as collecting and analyzing information regarding the customer's

8    income, assets, investments or debts; determining which financial products best meet the customer's

9    needs and financial circumstances; advising the customer regarding the advantages and

10    disadvantages of different financial products; and marketing, servicing or promoting the employer's

11    financial products. *Id.* at 2. *See* 29 C.F.R. § 541.203. Many HMCs thus meet the "administrative

12    exemption" under federal and California law.

13                 **d.**      **The Federal Highly Paid Exemption.**

14        Under federal law, highly compensated employees are "deemed exempt" under an August

15    2004 amendment to regulations if the employees: (1) receive total annual compensation of at least

16    $100,000; (2) receive at least $455 per week paid on a "salary" or fee basis; and (3) customarily and

17    regularly perform one or more of the exempt duties or responsibilities of an exempt executive,

18    administrative or professional employee. *See* 29 C.F.R. § 541, *et seq.* In 2005 and 2006, some 600

19    HMCs in California earned in excess of $100,000 annually in total compensation, and thus many

20    HMCs may qualify for this exemption. *See* Cahalan Decl. ¶ 2.

21           **2.**     **Common Questions Of Law And Fact Do Not Predominate Because Of The Fact-Based Inquiries Required.**

22

23        Having reviewed the exemptions WFHM asserts as affirmative defenses, we return to

     consideration of Rule 23(b)(3): Mevorah fails to show that common issues predominate because the

24

     numerous individualized factual findings that are necessary to adjudicate the relevant exemptions

25

     outweigh any common issues.

26

27        [30] The only significant difference between the FLSA and the California administrative

28    exemption is that under California law more than one-half of the employee's time must be spent on administrative duties.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

**OPPOSITION TO MEVORAH MOTION TO CERTIFY CLASS**      16.           Case No. MDL-1170

1    The court denied certification of a class of personal bankers in *Perry v. U.S. Bank*, 2001 U.S.

2    Dist. LEXIS 25050 (N.D. Cal. 2001). Because of the individual fact inquiry necessary to determine

3    whether each class member met each applicable exemption, the court held "plaintiff has not met his

4    burden of showing that common issues of fact predominate over the individual factual differences

5    among the personal bankers, particularly in light of the differences in individual job duties...." *Id.* at

6    *20. Similarly, the California Court of Appeal recently affirmed the denial of certification of a class

7    of account managers. *See Walsh v. Ikon Office Solutions, Inc.*, 2007 Cal.App. Lexis 456 (Ct. App.

8    Mar. 1, 2007). The court held that because of the variations in the amount of time spent outside the

9    office, as well as the nature of sales-related activities, any determination of whether the outside sales

10   exemption applied "would require individualized examination of the circumstances of the account

11   managers' activities." *Id.* at 18, 35-36. *Accord, Jiminez v. Domino's Pizza, Inc.*, 238 F.R.D. 241,

12   252 (common issues did not predominate in a Rule 23 class brought by general managers because

13   individualized factual inquiries of time spent on exempt tasks, mix of duties, and discretion used).

14   The same individualized factual inquiry will be necessary here as well. In order to decide

15   whether each HMC qualifies for any of the seven potentially applicable exemptions, the jury will

16   need to make numerous factual determinations to determine which tasks each HMC performed and

17   whether those tasks are exempt or non-exempt.

18   **Outside Salesperson:** California HMCs vary tremendously in how much time they spend in

19   sales activities outside of the office, depending on product specialization, work-style preferences and

20   marketing strategy, experience, target market, compensation objectives, and geographic location.

21   Cindy Blickle explains, "[a] significant amount of my efforts to establish loan originations involved

22   out-of-the-office activities such as: regularly attending open houses; visiting realtor offices to

23   maintain contacts and generate sales leads; attending weekly MLS meeting with realtors; going to

24   lunch or coffee with realtors; and conducting first-time home seminars." Blickle Decl. ¶ 7. At the

25   other end of the spectrum is Mischa Zvegintzov, who states that "[u]nlike many HMCs who develop

26   business by spending time outside of the office, I am a 'marketing machine,'" who is "constantly

27   sending out flyers and making cold calls and, consequently, I rely very little on referrals from

28   realtors or bankers." Zvegintzov Decl. ¶ 4. Therefore, the range of time spent outside of the office

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415 433.1940

**OPPOSITION TO MEVORAH MOTION
TO CERTIFY CLASS**          17.          Case No. MDL-1170


1  varies significantly from as much as 75% to as little as 20%.[31]

2   Under the "totality of circumstances" test, factual determinations thus will need to be made

3  to decide for each HMC: (1) how much time was spent outside the office (2) whether the HMC

4  customarily and regularly engaged away from WFHM's place of business, (3) whether the HMC is

5  supervised,[32] (4) whether the HMC receives sales training,[33] (5) can make as much or as little as his

6  or her ambition allows,[34] (5) when in the office how much of the work performed was incidental to

7  outside sales activities;[35] (6) whether the HMC met the "realistic expectations" of WFHM; and (7)

8  whether WFHM expressed dissatisfaction with the HMC's execution of any non-exempt work.

9   **Commissioned Sales Exemptions:**  Factual issues to be resolved for each HMC who spent

10  significant time in the office include: (1) with respect to the federal exemption, whether the HMC's

11  activities qualify as retail sales; (2) whether the mortgage products were recognized as retail sales or

12  service in the industry; (3) whether each HMC earned more than one and one-half (1-1/2) times the

13  minimum wage and received more than half of his/her compensation from commissions.

14   **Administrative Exemption:**  To decide whether any HMCs fall within the administrative

15  exemption, the specific type of discretion used by each HMC and the nature of the tasks performed

---

16  [31] *See, e.g.,* Clark Decl. ¶ 5 (75% out of the office); Schechtman Decl. ¶ 3 (60%); Behm
17 Decl. ¶ 3 (50-60%); Blickle Decl. ¶ 6 (50%); Lynch Decl. ¶ 2 (40%); Villarin-Simonian Decl. ¶ 3
(33%); Zvegintzov Decl. ¶ 4 (20%); Moussa Decl. ¶ 3 ("On average I spend a little more than half of
18 my time on sales activities outside my office."); Elford Decl. ¶ 11 ("I typically drop by my Home
Mortgage branch once or twice a week.").

19  [32] *See, e.g.,* Cathcart Decl. ¶ 5 ("Although I report to a manager, the manager is there only to
20 facilitate certain deals by going to bat for you."); Garcia Decl. ¶ 2 ("she is there only for guidance on
business matters"); Stevens Decl. ¶ 3; Siewert Decl. ¶ 2; Maley Decl. ¶ 4; Dougherty Decl. ¶ 5.

21  [33] *See, e.g.,* Elford Decl. ¶ 2 ("I took sales training when I first started"); Fahning Decl. ¶ 2
("trained on the [WFHM] loan sales methods and techniques."); Gomez Decl. ¶ 2; Love Decl. ¶ 3.

22  [34] *See, e.g.,* Fahning Decl. ¶ 8 ("The commission sales basis places no artificial cap on how
23 much I can earn in an hour or any other period."); Garcia Decl. ¶ 2 ("I prefer being paid according to
a commission structure because I can make as much as I want to make."); Izurieta Decl. ¶ 12;
Stevens Decl. ¶ 2; Love Decl. ¶ 8; Matthews Decl. ¶ 10; Vo Decl. ¶ 8.

24  [35] *See, e.g.,* Gomez Decl. ¶ 3 ("I spend virtually all of my work time on my loan originations
25 and monitoring the progress of my loans"); Behm Decl. ¶ 5 ("Almost all of the time I spend in the
office is spent furthering my own sales efforts."); Fine Decl. ¶ 6 ("About 90% of the time I spend in
26 the office is spent furthering my own sales efforts and completing my own loan originations.");
Aulicino Decl. ¶ 4 ("I spend less than five percent of my time performing tasks that hourly
27 employees perform."); Collins Decl. ¶ 4 (2 hours a week on administrative tasks); Declaration of Jeff
Pluta ("Pluta Decl.") ¶ 6 (95% on sales-related activities); Neushul Decl. ¶ 5 ("almost 100%");
28 Martin Decl. ¶ 7 ("100%").

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

**OPPOSITION TO MEVORAH MOTION
TO CERTIFY CLASS**    18.    Case No. MDL-1170

1    will require detailed scrutiny.  Mevorah himself acknowledged that he advised clients on choosing

2    among an array of thirty different mortgage products.  *See* Mevorah Depo. 93:12-24.  As one HMC

3    explained, "Customers consult me regarding what is often one of the most important financial

4    decisions they will make and based on the information they provide, I provide narrowly tailored

5    options to fit my customer's needs."[36]  Factual inquiries that will need to be resolved include:  (1)

6    whether the primary duty of each HMC was performance of office or non-manual work directly

7    related to the management or general business operations of WFHM or its clients, (2) under

8    California law, whether each HMC spent a majority of his or her time performing such exempt

9    duties; and (3) whether each HMC exercised discretion and independent judgment with respect to

10   matters of significance.[37]  *See Johannes v. Aerotek, Inc.*, 2001 U.S. Dist. Lexis 25409 (denying

11   summary judgment for recruiters); *Kelley v. SBC, Inc.*, 1998 U.S. Dist. Lexis 18643 (N.D. Cal.

12   1998) (same).

13       **Highly Paid Exemption:**   Factual issues also are raised by the federal "highly paid

14   exemption."  A determination whether this exemption applies "must be based on the actual nature of

15   the duties performed by employee, not by the employee's title or job description." *Kelley v. SBC,*

16   *Inc.*, 1998 U.S. Dist. Lexis 18643 at *21 (denying summary judgment).[38]  The Court will need to

17   decide whether each well-paid HMC customarily and regularly performed one or more exempt duty

18   of an administrative or executive employee.

19       [36] Moussa Decl. ¶ 2.  *See also, e.g.,* Gomez Decl. ¶ 5 ("I talk with them about their reason for
20   buying at a particular time and what their future goals [are].  For example, it is important for me to
     know in serving them best whether they intend to purchase for the long-term or for the short-term
21   and if for the short-term, what reason."); Aulicino Decl. ¶ 2 ("The reverse mortgage product must
     meet the need of the client and it is not always the best product for everyone.  I help the customer
22   find the best product by analyzing information regarding the customer's credit history, income, rate
     flexibility, assets, investments, and debts."); Fellner Decl. ¶ 2; Martin Decl. ¶ 10; Stevens Decl. ¶ 4.

23       [37] Plaintiff suggests that Wells Fargo has irreconcilable conflicts in asserting the
     administrative and sales exemptions.  *See* Opening Brief at 12:18-13:6.  While conflicts might exist
24   with respect to any argument that a given individual HMC falls within both exemptions, there is no
     conflict in showing that some HMCs fall within one exemption and some fall within the other.

25
         [38] Some HMCs will qualify for the Executive Exemption under federal and California law
26   because they had the authority to hire or fire other employees, or their suggestions were given
     particular weight, they customarily and regularly directed the work of at least two employees, used
27   discretion and independent judgment, were paid a sufficient salary, and were primarily engaged in
     activities that meet this exemption.  8 Cal. Code Reg. § 11040; IWC Order 4-2001(A)(2); 29 U.S.C.
28   § 213(a)(1); 29 C.F.R. §541.100.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**OPPOSITION TO MEVORAH MOTION**          19.          Case No. MDL-1170
**TO CERTIFY CLASS**

1    These factual inquiries cannot be performed *en masse*, but instead must be performed on an

2    individualized basis for each HMC, whose activities vary significantly, just like the "personal

3    bankers" at U.S. Bank, the Ikon "account managers," and the Domino's "general managers." These

4    fact-intensive questions render Mevorah's action not suitable for class certification. *See Perry*, 2001

5    U.S. Dist. LEXIS 25050 at *20-21.

### 3.    A Class Action Is Not Superior Due To Case Management Issues, The Lack Of HMC Interest, And The Available Alternative Remedies.

Mevorah also must establish that a class action is superior to alternative resolution methods.

The Court can consider case management issues, the amount of interest by putative class members in

joining this litigation, and the availability of alternative remedies. *See* Fed. R. Civ. Proc. 23(b)(3).

### a.    Case Management Problems Should Preclude Class Certification.

Rule 23(b)(3) requires Mevorah to prove that a class action is a superior method to try this

case. *See* Rule 23(c)(1) Advisory Committee Notes, 2003 Amendments. Where each class member

would have to litigate numerous and substantial separate issues to establish his or her right to recover

individually – after liability to the class is established – the Ninth Circuit has decreed that a class

action is not "superior." *See Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 654 (C.D. Cal. 1996), citing

*In re Dalkon Shield IUD Prod. Liab. Litig.*, 693 F. 2d 847, 856 (9th Cir. 1982).

For each HMC, the jury would need to determine the factual predicates for each potentially

applicable exemption, requiring an individual assessment for each HMC as to whether any

exemption applied. For instance, David Aulicino a reverse mortgage HMC, spends about 30 percent

of his work time outside of the office furthering his sales efforts and loan originations. *See* Aulicino

Decl. ¶ 3. But when in the office, he estimates that more than 95 percent of his time is spent

furthering his sales. *Id.* at ¶ 5. A jury would need to hear evidence as to exactly what he does in the

office and determine if those activities in fact were incidental to his loan originations and thus the

outside sales exemption applies.

This same type of analysis would have to be performed for most, if not all, of the HMC class

members, working out of 400 branches, with different specialties and varying work styles,

preferences, and habits. The task of sorting through the resulting mountain of evidence to decide the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**OPPOSITION TO MEVORAH MOTION
TO CERTIFY CLASS**                    20.                    Case No. MDL-1170

1    factual issues raised by each HMC would be immense and is not suitable for class action.  With

2    thousands of witnesses, complicated jury instructions, and a plethora of factual issues to resolve, trial

3    could take many months if not more than a year.  *See Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D.

4    229, 250 (C.D. Cal. 2006) ("the few issues that might be tried on a class basis ... balanced against

5    issues that must by tried individually, indicate that the time saved by a class action may be relatively

6    insignificant").

7         Mevorah contends that this Court can avoid a trial of the claims of each of the 5,000 HMC

8    class members by "utiliz[ing] random statistical sampling to resolve factual issues on a class-wide

9    basis."  Opening Brief at 13:16-19.  According to Mevorah's expert, Richard Drogin, this Court

10   could draw a random sample of an unspecified number of HMCs and then ***assume*** that whatever the

11   experience and factual circumstances that apply to that sample must apply to all 5,000 HMCs.  This

12   approach is logically and legally flawed.  Evidence offered through a random sample at most will

13   only inform the Court as to what percentage of the class has a specific characteristic, *e.g.*, spends

14   more than half of his or her time outside of the office.  *See* Rebuttal Expert Report of Kevin Murphy

15   ("Murphy Report") (Ex. E to Porter Decl.) ¶8.  *See also* WFHM's Objections to Evidence.

16        Assume a random sample of 30 HMCs testify, after which a jury decides that 43 percent of

17   the sample of HMCs are not correctly classified.  *See* Murphy Report ¶¶ 9-11.  The jury can say

18   which of the HMCs who testified were not properly classified, and extrapolate that 43 percent of the

19   absent 4970 HMCs who did not testify likewise were similarly misclassified.  But this Court will

20   have no basis to decide which specific individuals within the absent class were misclassified.  *Id.*  A

21   statistical sample will not tell the Court which HMCs exercised discretion, which HMCs conducted

22   activities in the office that are incidental to outside sales, which highly paid HMCs had one or more

23   exempt duties, and which HMCs had primary duties directly related to the management or general

24   business operations of WFHM or its clients.

25        This Court cannot assume that the tasks performed by a random sample of HMCs accurately

26   represents the exempt nature of all HMCs' duties.  At most, statistical sampling is appropriate only

27   to prove by "reasonable inference" the "amount of work performed."  Statistical sampling cannot

28   prove the nature of the work performed or the duties of each employee in the class, particularly since

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**OPPOSITION TO MEVORAH MOTION
TO CERTIFY CLASS**                    21.                    Case No. MDL-1170

1    no "reasonable inference" can be drawn given the diversity in individual HMCs' work. *Anderson v.*

2    *Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946). *See Sepulveda*, 237 F.R.D. at 248 (rejecting

3    expert report because declarations established variance in employee's duties).

4         Further, WFHM would be deprived of due process if the results of a sample of HMCs was

5    extrapolated to all 5,000 HMCs. WFHM would be "preclude[d] from defending each individual

6    claim to its fullest," creating an injustice. *City of San Jose v. Superior Court*, 12 Cal. 3d 447, 458

7    (1974) (denying class treatment). *See Connecticut v. Doehr*, 501 U.S. 1, 11 (1991) (due process

8    requires consideration of the private interest affected and examination of the risk of erroneous

9    deprivation through the procedures under attack); *In re "Agent Orange" Prod. Liab. Litig.*, 818 F. 2d

10    145, 164 (2nd Cir. 1987) (class action inappropriate where significant questions on defenses to

11    liability affect individuals differently); *Hanon v. Dataproducts Corp.*, 976 F. 2d 497, 508 (9th Cir.

12    1992) (class not appropriate if there are unique defenses to class representative's claim); and

13    *Rodriguez v. Family Publications Serv.*, 57 F.R.D. 189, 193 (C.D. Cal. 1972) (individual factual

14    circumstances for application of defense means common issues do not predominate). A random

15    sample is thus no shortcut and, in any event, is not authorized by the courts. *See, e.g., Ramirez*, 20

16    Cal. 4th at 802, 803 n. 5 (must determine amount of time spent on each task under realistic

17    expectations test).

18           **b.**      **Lack Of Interest In Pursuing This Action Is Shown By The**
                 **Failure To Offer A Single Supporting Declaration.**

19

20         Even if the case management problems were insufficient to deny class certification, this

21    Court should consider the lack of interest in pursuing this case by the absent class members. Class

22    action certification has been denied where the absent class members do not demonstrate support.

23    *See, e.g., Lanzarone v. Guardsmark Holdings, Inc.*, 2006 U.S. Dist. LEXIS 95785 (C.D. Cal. 2006)

   (denying class certification).

24

25         Mevorah offers no declarations of other absent class members supporting this suit, and none

26    have come forward to offer support. WFHM's numerous declarations show the substantial

27    disinterest and even hostility within the ranks of the current and former California HMCs Mevorah

28    seeks to represent. HMCs are quite content with their current system of compensation because of

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**OPPOSITION TO MEVORAH MOTION
TO CERTIFY CLASS**        22.        Case No. MDL-1170

the freedom to grow their clientele in whatever manner they see fit, as well as the choice to work as much, and whenever, they choose.  Many had worked salaried jobs where hours were tracked, and prefer to control their own work destinies.  The declaration of Kurtis King is representative:

> I prefer to be paid on a commission basis.  That is why I joined Wells Fargo as an HMC.  At my prior job, I was paid a salary plus commission.  This hindered my income.  I want to be paid as I am at Wells Fargo, where I am paid a commission plus a minimum draw.  At Wells Fargo, my income is not limited.  I am paid for my performance, and there is no one else's hand in my pocket.  I do not have to subsidize others' income because I am rewarded for my own efforts.

King Decl. ¶ 10.  Indeed, various HMCs expressed their opinion that they did not "want to participate in an lawsuit for overtime wages or regarding pay for meal and rest periods.[39]

### c.  Alternative Forums Exist For Those Who Wish To Bring A Claim.

Class certification also is inappropriate because any potential plaintiffs can file a separate lawsuit since the value of their claims are far above nominal.  The interests of each member of the putative class in controlling prosecution thus weighs against class treatment.  *See Zinser,* 253 F. 3d at 1190; *Allison v. Citgo Petroleum Corp.,* 151 F. 3d 402, 420 (5th Cir. 1998) (certification denied where damages could be six figures).  Alternatively, they can bring an administrative claim before the California Division of Labor Standards Enforcement ("DLSE"), which the California Supreme Court has endorsed as "speedy, informal, and affordable."  *Cuadra v. Millan*, 17 Cal. 4th 855, 858 (1998).  Indeed, the Court in *Lanzarone* held that such a DLSE administrative proceeding was a superior method of resolution because "even relatively small claims will not necessarily, as a matter of practice, be forsaken absent class certification."  *Lanzarone,* 2006 U.S. Dist. LEXIS 95785 at *5;

---

[39] Izurieta Decl. ¶ 12.  *See also, e.g.,* Cathcart Decl. ¶ 2 ("If [WFHM] put me on an hourly basis, I would leave.");  Elford Decl. ¶ 12 ("I understand a lawsuit has been filed by another HMC concerning hourly work, overtime, meal period, and lunch periods. ... I can state that I do not wish to be considered a salaried or hourly paid employee.  I took the particular job because I want my own freedom to choose when I work, how I work and how I am to earn my compensation.");  Fellner Decl. ¶ 8 ("I prefer to be paid strictly on commissions.  I do not want to be paid hourly and I do not think in terms of overtime.");  Gomez Decl. ¶ 9 ("I do not want to be tied to a clock and I do not intend to work by the hour.");  Lynch Decl. ¶ 7 ("I do not want to and would not work in a system that required me to record hours, when I take a break or when I went to lunch.");  Neushul Decl. ¶ 6 ("I would not stay in this position if this flexibility was taken away from me.");  Stevens Decl. ¶ 2 ("If [WFHM] were to convert to a salary-based system, I would leave.");  Weiss Decl. ¶ 9 ("would not want to be in a position that paid hourly or salaried and had structured hours").  *See also* Declarations cited at Footnote 20.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433.1940

OPPOSITION TO MEVORAH MOTION
TO CERTIFY CLASS                          23.                    Case No. MDL-1170

1   *Jimenez*, 238 F.R.D. at 253-54 (DLSE forum "does present a viable alternative").

2       Mevorah speculates that the "threat of reprisal" may deter HMCs from bringing a claim. *See*

3   Opening Brief at 20:23-27.  While that fear might be understandable in certain job classifications,

4   HMCs are more akin to accountants, attorneys, and others who develop a portable "book of

5   business" they can easily transport to another employer.  In their competitive environment, HMCs

6   have nothing to fear by bringing suit.  The presence of alternative forums is an independent basis for

7   denying class certification. *See* Blackwell Decl. ¶ 17.

8       **C.    If Any Class Is Certified, The Class Should Be Limited To A FLSA Collective**
            **"Opt-In" Action.**
9

10      Mevorah has alleged a Section 17200 claim for the purpose of circumventing the normal

11  FLSA "opt-in" procedure. *See* 29 U.S.C. § 216(b).  Yet, Congress created the opt-in procedure "for

12  the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right

13  and freeing employers from the burden of representative actions." *Hoffman-LaRoche, Inc. v.*

14  *Sperling*, 493 U.S. 165, 173 (1989).  When Congress first adopted the opt-in model for collective

15  actions, it did so expressly for the purpose of eliminating the possibility of opt-out (Rule 23) class

16  actions. *See* Pub. L. 49, ch. 52, §61 Stat. 84, 87 (1947).  Mevorah should not be allowed to bypass

17  the other mandatory "opt-in" procedure of the FLSA, particularly given that the California

18  commissioned sales exemptions is not limited to "retail or service" establishments.

19      Furthermore, when there is hostility to the class action by members of the putative class, an

20  "opt-in" class has been held to be "superior" to a Rule 23 "opt-out" class. *See Leuthold v.*

21  *Destination America, Inc.*, 224 F.R.D. 462 (N.D. Cal. 2004).  The plaintiff there, like Mevorah,

22  alleged a violation of Business and Professions Code section 17200.  The court noted "the fact that

23  plaintiffs' Rule 23 class is based on state law claims is problematic and raises a jurisdictional

24  concern.   The court's adjudication of the California state law claims is anchored upon its

25  adjudication of the accompanying FLSA claims. ...  [T]he policy behind requiring FLSA plaintiffs

26  to opt in to the class would largely 'be thwarted if a plaintiff were permitted to back door the

27  shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack

28  such an opt-in requirement.'" 224 F.R.D. at 470 (citation omitted). *Accord, Edwards v. City of Long*

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**OPPOSITION TO MEVORAH MOTION**
**TO CERTIFY CLASS**                        24.                    Case No. MDL-1170

1 *Beach*, 467 F. Supp. 2d 986 (C.D.Cal. 2006) (denying class certification of California law meal and

2 rest period claims). *See also, LaChapelle v. Owens-Illinois, Inc.,* 513 F. 2d 286, 289 (5th Cir. 1975)

3 (Section 216(b) and Rule 23 are "mutually exclusive and irreconcilable"); *Robinson v. Sizes*

4 *Unlimited, Inc.*, 685 F. Supp. 442, 445 n. 7 (D.N.J. 1988) (noting the "fundamental, irreconcilable

5 difference between" opt-out and opt-in schemes).

6 Here, the "opt in" class would permit those HMCs who wish to pursue overtime claims to do

7 so, but not increase the size of the class unnecessarily by assuming that all 5,000 HMCs wish to be

8 included when many clearly do not. If any class is certified, WFHM respectfully suggests it should

9 be an "opt-in" class, particularly since the national class plaintiffs seek an "opt-in" class.

10 **IV.   CONCLUSION**

11 The putative class of 5,000 HMCs in California is not a "one size fits all" group, but instead a

12 diverse collection of individuals who originate different kinds of mortgages in distinctly different

13 ways. They have different specialties, use different means of building their business, and choose

14 where and when to work. To determine whether each and every one of them is exempt under the

15 seven exemptions that must be evaluated would be a Herculean task, requiring lengthy factual

16 development and resolution. This fact-based individual inquiry dooms this action for class

17 certification since common issues do not predominate, commonality and typicality are lacking, and

18 Mevorah cannot adequately represent the interests of current HMCs. This motion for class

19 certification should be denied.

20 Dated: July 3, 2007

22 LINDBERGH PORTER
23 LITTLER MENDELSON, P.C.
   Attorneys for Defendant
24 WELLS FARGO HOME MORTGAGE, a division of
   WELLS FARGO BANK, NATIONAL ASSOCIATION

BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDSTRICT LITIGATION

IN RE: WELLS FARGO BANK NATIONWIDE HOME MORTGAGE CONSULTANT
OVERTIME LITIGATION (NO. III)

MDL. NO. 2266

<u>CERTIFICATE OF SERVICE</u>

ELECTRONICALLY FILED

| | |
|---|---|
| BRENT CHAN and DIEN LUU, on behalf of themselves and all others similarly situated,     )<br><br>    Plaintiffs, )<br><br>    v. )<br><br>WELLS FARGO HOME MORTGAGE, a division of WELLS FARGO BANK, N.A., )<br><br>    Defendant. ) | U.S. District Court for the Western District of Washington, Seattle Division<br><br>Case No. 2:11-cv-00871-JLR<br><br>Honorable James L. Robart, presiding |

On June 16, 2011, the foregoing documents entitled:

WASHINGTON PLAINTIFFS' OPPOSITION TO DEFENDANT WELLS FARGO'S MOTION FOR TRANSFER

And

DECLARATION OF TANA LIN IN SUPPORT OF WASHINGTON PLAINTIFFS' OPPOSITION TO DEFENDANT WELLS FARGO'S MOTION FOR TRANSFER

were electronically filed through the CM/ECF system, which will send a notice of electronic filing to:

    Lindbergh Porter, Jr.
    Philip L. Ross
    LITTLER MENDELSON, P.C.
    650 California Street, 20th Floor
    San Francisco, CA  94108-2693

Email: lporter@littler.com; plross@littler.com

David Bryce Jordan
LITTLER MENDELSON, P.C.
650 California St., 20th Floor
San Francisco, CA  94108
Tel: (415) 433-1940
Email: djordan@littler.com

***Counsel for Defendants:*** Wells Fargo Bank, N.A., "Wachovia Mortgage Corporation," "Wachovia Corporation," "World Mortgage Company A/K/A World Mortgage Co., and Wells Fargo & Company

The following party will be served via E-mail and U.S. Mail:

Daniel L. Thieme, WSBA #12855
Breanne Sheetz, WSBA #39632
LITTLER MENDELSON, P.C.
One Union Square
600 University St., Suite 3200
Seattle, WA 98101
Email: dthieme@littler.com, bsheetz@littler.com

***Counsel for Defendants:*** Wells Fargo Bank, N.A., "Wachovia Mortgage Corporation," "Wachovia Corporation," "World Mortgage Company A/K/A World Mortgage Co., and Wells Fargo & Company

| | |
|---|---|
| Rhonda Hunter Wills, Esq. | John M. Padilla, Esq. |
| Wills Law Firm | Padilla, Rodriguez & de la Garza, L.L.P. |
| 1776 Yorktown, Ste. 600 | 1776 Yorktown, Ste. 110 |
| Houston, TX  77056 | Houston, TX  77056 |
| Email: rwills@rwillslawfirm.com | Email: jpadilla@prdlawfirm.com |

***Counsel for Plaintiffs:*** Raymond Richardson, Angela Kolmansberger, Judith Gott, Shelley Adams, Waliallen Allal, Cathy Bethea, Dorothy Cardillo, Edward Carrai, Darlene Castille, Hector O. Cil, Jason Farina, Kelly Mack Francis, Sonyia Maria Graham, Anthony J. Inzero, Pamela Gale Lacour, David A. Martinelli, Daniel Marcuccio, Patricia P. McIsaac, Penny Nicole Medeiros, Havazelet ("Chari") Miller, Ted Miller, Bruce S. Nohe, Marianela Opazo, Nelson Oyedeji, John Pasquarello, Teryl D. Peer, Michael J. Pierce, Regina M. Richard, Cindy Norbereg Richardson, Cedrick A. Smith, Kim I. Smith, Scott Smith, and DeNetrice B. Williams, S.D. Texas No. 4:10-cv-04949

and

**Counsel for Plaintiffs**:  James Chaplin, Lucy Gonzalez, Donna Lynn Pontello, Denise Tomasini and Bill Earley, Southern District of Texas, No. 4:11-cv-00638

> Gregory K. McGillivary
> Diana Jane Nobile
> WOODLEY & McGILLIVARY
> 1101 Vermont Ave. NW, Ste. 1000
> Washington, DC  20005
> Tel:  (202) 833-8855
> Fax:  (202) 452-1090
> Email:  gkm@wmlaborlaw.com; djn@wmlaworlaw.com

> Vincent M. Giblin
> PITTA & GIBLIN LLP
> 120 Broadway, 28th Floor
> New York, NY  10271
> Tel:  (212) 652-3883
> Fax:  (212) 592-3891
> Email:  vgiblin@pittagiblin.com

**Counsel for Plaintiffs**:  Manuel Gonzalez, Michelle Campbell, Kaustuv Datta, Quinn Elam, Dick Galarza, Joseph Johnson, Frank Lay, Humberto Morin, Samuel Pauls, and Clayton Peters, District of New Jersey, No. 1:11-cv-02142-JBS-KMW

> DATED this 16th day of June, 2011.

> KELLER ROHRBACK L.L.P.

> By /s/Tana Lin
> Mark Griffin
> Tana Lin
> 1201 Third Ave., Ste. 3200
> Seattle, WA 98101
> Tel:  (206) 623-1900  Fax:  (206) 623-3384
> mgriffin@kellerrohrback.com
> tlin@kellerrohrback.com

Timothy J. Pauley
Ryan J. Pauley
PAULEY LAW GROUP, PLLC
1001 Fourth Avenue, Suite 3200
Seattle, WA  98154
Tel:  (206) 684-9454  Fax:  (206) 382-9648
tpauley@pauleylawgroup.com
rpauley@pauleylawgroup.com

Attorneys for Plaintiffs Brent Chan and Dien
Luu, W.D. Washington, No. 2:11-cv-00871

CERTIFICATE OF SERVICE
Case No. MDL 2266 - 4

```
1          UNITED STATES JUDICIAL PANEL

2                      ON

3            MULTIDISTRICT LITIGATION

4    SAN FRANCISCO, CALIFORNIA; CEREMONIAL COURTROOM, NINETEENTH

5     FLOOR; JUDGE DAMRELL, JUDGE VRATIL, JUDGE HEYBURN, JUDGE

6               FURGESON, JUDGE JONES

7    IN RE:  WELLS FARGO WAGE AND  ) MDL 2266

8    HOUR EMPLOYMENT PRACTICES     )THURSDAY, JULY 28, 2011

9    LITIGATION (NO. III),         )ORAL ARGUMENT

10   _____)

11           REPORTER'S TRANSCRIPT OF PROCEEDINGS

12   APPEARANCES:

13   FOR WELLS FARGO BANK, N.A, ET AL:

14   LITTLER MENDELSON
     BY:  LINDBERGH PORTER, JR,  ATTORNEY AT LAW (SPEAKER ONE)
15   650 CALIFORNIA STREET, TWENTIETH FLOOR     (THREE MINUTES)
     SAN FRANCISCO, CALIFORNIA  94108-2693
16   TEL (415) 433-1940 FAX (415) 399-8490
     LPORTER&LITTLER.COM
17

18   FOR BRENT CHAN, ET AL:

19   KELLER ROHRBACK, L.L.P.            (SPEAKER TWO)
     BY:  TANA LIN, ATTORNEY AT LAW     THREE MINUTES
20   1201 THIRD AVENUE, NUMBER 3200
     SEATTLE, WASHINGTON  98101-3052
21   TEL (206) 623-1900

22   FOR MANUAL GONZALEZ, ET AL:

23   WOODLEY & MCGILLIVARY             (SPEAKER THREE)
     BY:  MOLLY ELKIN, ATTORNEY AT LAW (TWO MINUTES)
24   1101 VERMONT AVENUE, SUITE 1000
     WASHINGTON, D.C.  20005
25   TEL (202) 833-8855
     INFO@WMLABORLAW.COM
```

EXHIBIT
F

1    **FOR JAMES CHAPLIN, ET AL:**

2    WILLS LAW FIRM
     BY:  **RHONDA H. WILLS, ATTORNEY AT LAW**   (SPEAKER FOUR)
3    1001 FANNIN STREET, SUITE 2300            (TWO MINUTES)
     HOUSTON, TEXAS  77002-6736
4    TEL (713) 758-2222

5

6    REPORTED BY:  STARR A. WILSON, CSR 2462

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
 1                    I N D E X

 2    ARGUMENT BY:

 3    MR. PORTER, JR.................................    4

 4    MS. LIN.......................................    7

 5    MS. ELKIN....................................   11

 6    MS. WILLS....................................   13

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    SAN FRANCISCO, CALIFORNIA; THURSDAY, JULY 28, 2011; 2:35

2    P.M., CEREMONIAL COURTROOM, NINETEENTH FLOOR; JUDGE DAMRELL,

3    JUDGE VRATIL, JUDGE HEYBURN, JUDGE FURGESON, JUDGE JONES

4                                -oOo-

5            **JUDGE HEYBURN:**  Next is 2266.  Wells Fargo Wage

6    and Hour Employment Practices Litigation.

7            Mr. Porter.

8            **MR. PORTER:**  Good afternoon, members of the Panel.

9    Lindbergh Porter representing Wells Fargo and various other

10   entities that have been named in the complaint, which are

11   various, resolved with various merger and acquisition

12   activities, like all of the individuals who are now subject

13   to the various complaints that are employed by Wells Fargo

14   as a loan officer or as home mortgage consultants.

15           First, there remain four cases.  No additional

16   cases have been filed.  Second, motions to stay have been

17   filed in Washington or are pending, about to be filed in New

18   Jersey in the district courts there pending the further

19   proceedings outcome of this panel proceeding.  That's the

20   current status.

21           This is the second file of the whole morning's

22   litigation based on Wells Fargo Bank.  The first is in

23   2005/2006.  Those cases were consolidated by this Panel

24   before Judge Patel here in the Northern District and MDL

25   proceeding 06-71770.  We had provided the excerpt briefing

1    to record in part the orders from the district court as well

2    as the Ninth Circuit Court of Appeal's opinion in the first

3    round of this litigation.

4              The three points that I would like to make:   (1)

5    There is overlap among all of these cases.  **Richardson**,

6    **Chaplain** and **Gonzales**, all allege misclassification

7    violations of the FSLA.  They allege that the punitive class

8    members form a collective nationwide action.  Each purports

9    to represent the same group of current and former employees.

10   The **Chan** action, which is in Washington, also alleges

11   misclassification though under Washington State law.

12   Washington state law, however, has the same exemptions as

13   available under the FLSA that are applicable here, including

14   the administrative exemption, the commission sales

15   exemption, and the outside sales exemption.  Those are

16   affirmative defenses that were asserted in each of the

17   responses to the Complaint and will be present here.  Those

18   were the same as applied in the previous MDL proceeding,

19   whether legal issues and factual issues are the same.   I

20   point that out because then and now the questions will be

21   what activities these home mortgage consultants perform,

22   where they performed those activities, how much time they

23   spent performing those activities, and what is the legal

24   effect of the activities that they performed?  It has been

25   said that these are localized issues.  That's not the case.

1    Those are individual issues, but they are not localized.

2    They run across the nation involving all of the employees

3    subject to these complaints.

4        The second item is notice.  These actions all

5    purport to represent the same employees across the nation.

6    If three or four different district court judges hear three

7    or four separate motions for class certification, that

8    certainly will be inefficient.  It is likely that we could

9    get three or four different orders on the certification

10   motion resulting in punitive class members receiving three

11   or four different orders from all of the district judges

12   unless these cases are coordinated.  And the --

13       **JUDGE FURGESON:**  Does it really matter where you

14   say these cases go?

15       **MR. PORTER:**  I -- we don't think so, your Honor.

16   We suggest the Southern District of Texas because that's

17   where the **Richardson** case was filed as the first case

18   followed by **Chaplain.**  I should say with respect to

19   **Chaplain**, it names Wachovia, which is now a part of Wells

20   Fargo.  It applies or purports to include nationwide

21   Plaintiff as well who are now employed by Wells Fargo.

22       Worse yet, the possibility that separate judges

23   hearing the same certification motion involving the same

24   employees will reach different results in the certifications

25   and send out notices.  In one instance, an employee will not

1    get a notice; and in another, the employees will get a

2    notice, confusing them as to what they ought to do, if

3    anything.

4              **JUDGE HEYBURN:**  Thank you very much.

5              Ms. Lin.

6              **MR. PORTER:**  May I just make one final remark,

7    your Honor?  And that is the complexity.  We have the orders

8    from the district court and the ninth circuit already in

9    this case.  Those orders will be at issue.  Whether they are

10   persuasive or to be rejected or how they are to be

11   interpreted will have to be decided by each of the district

12   courts if these cases are separated.  That's another reason

13   why they should all be combined and consolidated for

14   certification purposes and for discovery purposes.

15             **JUDGE HEYBURN:**  These are orders from an earlier

16   MDL?

17             **MR. PORTER:**  That's correct.  And involving the

18   exact same group of employees.

19             **JUDGE HEYBURN:**  Thank you.

20             Ms. Lin.

21             **MS. LIN:**  Good afternoon, your Honor.

22             Wells Fargo wants to have its cake and eat it,

23   too.  It's taken a position in the California wage case

24   regarding home mortgages that is completely at odds with the

25   position it now tries to take before the Panel.

1    **JUDGE DAMRELL:**  The mortgage in the opposing

2    brief, I think.

3    **MS. LIN:**  In its brief opposing classification in

4    the California case, Wells Fargo stated HFCs work

5    differently, depending on geographic location.  That

6    position makes it difficult, if not impossible, for Wells

7    Fargo to meet at least two of the three criteria it has to

8    establish under this Panel's rules.  First, it can't

9    demonstrate convenience to the parties; in fact, the

10   transfer to Texas will not be convenient for the **Chan**

11   plaintiffs or Wells Fargo itself.  The **Chan** case involves

12   only Washington state law case claims.  The Plaintiffs and

13   class numbers all reside in Washington.  While Texas may

14   afford an opportunity for them to get some sun, it is not a

15   convenient forum.

16        As for Wells Fargo, it's based on its

17   representations that a job depends on the geographic

18   location.  We believe the witnesses will be regional.

19   Regardless, Wells Fargo is headquartered here in San

20   Francisco and I would note that in the 36(b) declaration as

21   well, Wells Fargo California case take place in San

22   Francisco as well.  And Texas is not convenient for Wells

23   Fargo either.

24        **JUDGE FURGESON:**  Ms. Lin, have you filed -- have

25   you filed under the FSLA?  Have you filed under the FLSA

1    under the Washington statutes?

2         **MS. LIN:**  We have only Washington state claims.

3    We have no FLSA filing in our case.

4         **JUDGE FURGESON:**  Thank you.

5         **MS. LIN:**  Which I think it does distinguish it

6    from the other cases, not an MDL.

7         **JUDGE FURGESON:**  Well, is it kind of a mirror

8    statute?

9         **MS. LIN:**  They would like to make it seem like a

10   mirror, but it has significant different factors.  Um, and I

11   would point out in the California case, while they may

12   minimize the differences, that there is on outside sales

13   exemption under Washington state law, an administrative

14   exemption.  The difference is in the state law resulted in

15   granting of the plaintiffs' motion for summary judgment on

16   the sales exemption under state law or denying it under

17   Federal law, and under Washington Supreme Court law, while

18   the FSLA and federal case process are binding.

19        **JUDGE FURGESON:**  Thank you.

20        **MS. LIN:**  Now, transfer will not be efficient in

21   this case either.  The most recent decisions in this panel

22   have found that the case transfer of FSLA type cases are

23   less convincing where some plaintiffs oppose or some parties

24   are opposed from here, both Washington and in New Jersey

25   Plaintiffs oppose the transfers, only a few cases are

1    involved.  We have only the Wachovia case.  And what the

2    duties of the subject employees appear to be subject to

3    local variances.  As earlier discussed, Wells Fargo conceded

4    this point already.  For the **Chan** case, there is also the

5    fact that we have no interest in discovery with the Wachovia

6    Defendant.  And for the other cases, they have no interest

7    in discovery regarding our breach of contract claims or wage

8    deductions or the specific facts establishing the evidence

9    under Washington law, which, again, are different than the

10    federal exemptions.  I've also spoken with both the New

11    Jersey and Texas counsel and we're willing to coordinate

12    discovery to the extent there is any overlap.

13        Finally, the few common questions that may be at

14    issue here are not complex enough to warrant a transfer.

15    Since there are such a small number of cases, according to

16    the Panel's decision in the Woodbe, Scott Woodbe and the

17    Cupcake, Wells Fargo has the burden to demonstrate that any

18    common questions of fact are so complex that it may not be

19    convenient, and, however, **RiteAid**, **USA Exterminators**, **E.D.**

20    **Jones** and **Tyson Foods** decisions of this panel held that

21    these types of FSLA claims are not so complex as to satisfy

22    this burden.

23        Again, the **Chan** case involved only Washington

24    State claims with variances from the FLSA.  Because Wells

25    Fargo cannot testify to the ulterior point of the transfer

1    because we can coordinate discovery without a transfer, we

2    would ask that the Defendants request to transfer to

3    Washington be denied.

4                JUDGE HEYBURN:   Thank you very much.

5           Ms. Elkin.   (2:45 p.m.)

6                MS. ELKIN:   Good afternoon, judges.   I am Molly

7    Elkin and I represent the New Jersey Plaintiffs in the case

8    of **Gonzalez versus Wells Fargo**.   I agree with plaintiff's

9    counsel in the **Chan** case and the Washington State case this

10   will not promote any kind of convenience for us.   Our case

11   is a hybrid action involved with an FSLA case claim as well

12   as New Jersey state law claims.   Contrary to what counsel

13   for the Defendant stated, we are not seeking to have a

14   nationwide fairly standard act 215(b) collective action

15   class.   We only seek to represent the employees who work at

16   home mortgage consultants, loan officers, and loan

17   originators in the State of New Jersey.   We will be filing

18   our motion for class certification, collective action

19   certification, and court supervised notice in the next week

20   or two.

21               JUDGE FURGESON:   There was some confusion about

22   that that you're only seeking a state-wide class, not a

23   national class, that you're telling us only state wide.

24               MS. ELKIN:   Only New Jersey.   New Jersey.   New

25   Jersey.   New Jersey.   That is it.   And we are going to be

1    filing that motion in the next, like I said, the next couple

2    of weeks.  And the reason we're seeking New Jersey, Wells

3    Fargo has set up a company where New Jersey is its own

4    region, and the Plaintiffs, the ten Plaintiffs in the case

5    all worked for Wells Fargo in New Jersey.  The Plaintiffs

6    and the punitive class members all report to branch managers

7    in New Jersey.  Those branch managers, in return, report to

8    their manager in New Jersey, Central, Southern, Northern New

9    Jersey Shore, and those area managers, in turn, report to a

10   regional manager, and that regional manager only has

11   jurisdiction and supervision over employees that work in New

12   Jersey.  So it is going to be New Jersey specific.  We don't

13   care what happens in Texas, no offense to Texas.  We don't

14   care what happens in Washington.

15           JUDGE FURGESON:  None taken.  None taken.

16           MS. ELKIN:  And I would agree, and I think that

17   Judge Furgeson mentioned earlier in the previous panel

18   hearing, that Wells Fargo has attempted to have both,

19   they're here, coming and going, because they did make up an

20   argument in the earlier Wells Fargo case that the, um, job

21   duties of the employees are geographically, um, variant.

22   And they, I don't think, can sort of stand on the other side

23   of the argument here with any kind of a straight face so --

24           JUDGE FURGESON:  You and Ms. Lin know that world

25   class judges that you're here before, so I'm sure you would

1    like to stay with them?

2              **MS. ELKIN:**  We would.  And we don't -- that's

3    exactly right.  We would.  We would not be able to stay with

4    world class judges.  And there are only a few cases and we

5    can all handle this.  And we're big girls in the woods and

6    we can work together successfully.  If there is any, you

7    know, corporate witness that we need under 30(b)(6) that

8    we'll coordinate and -- and make sure that everything is

9    done as efficiently as possible to keep it down.

10              **JUDGE HEYBURN:**  Thank you very much.

11              **MS. ELKIN:**  Thank you.

12              **JUDGE HEYBURN:**  Ms. Wills.

13              Were any of you in the first case?

14              **MS. WILLS:**  No, your Honor.

15              Good morning, your Honor, or good afternoon, your

16    Honors.  I'm Rhonda Wills and I represent the **Richardson**

17    **versus Wells Fargo** plaintiffs in the Southern District as

18    well as the **Chaplin versus Wachovia** Plaintiffs.  Our

19    position, your Honors, is that we are unopposed to the

20    motion, provided that the cases all be consolidated in the

21    Southern District of Texas --

22              **JUDGE HEYBURN:**  And if they're not --

23              **MS. WILLS:**  -- before Judge Rosenthal.

24              **JUDGE FURGESON:**  If you're not, are you opposed to

25    that?

1       **MS. WILLS:**  We would be opposed, your Honors,

2  because the cases are not going to be consolidated in

3  Houston before Judge Rosenthal.  That is a first filed case.

4  There are four cases that are subject to this motion.  Two

5  of them are pending in the Southern District of Texas.

6       **JUDGE FURGESON:**  What about Judge Felder?  We each

7  got to stop and assist and also request judges, a judge like

8  Rosenthal, I'm sure he wouldn't mind.

9       **MS. WILLS:**  He is your Honor.  We would not mind

10  Judge Felder, your Honor.  But certainly we feel it should

11  be in Houston, not only are there two cases there, the

12  **Richardson** case currently has 37 plaintiffs.  The **Chaplin**

13  case has 26 Plaintiffs.  Might I add that those -- those

14  Plaintiffs hail from, not only Texas, but New York, New

15  Jersey, Connecticut and Georgia as well.  So we have filed

16  those cases as nationwide collective actions under the FLSA,

17  and we already have persons that represent collectively five

18  different states.  Um, we also --

19       **JUDGE DAMRELL:**  You're familiar with

20  centralization?

21       **MS. WILLS:**  I'm sorry, your Honor.

22       **JUDGE DAMRELL:**  You're familiar with

23  centralization in these cases?

24       **MS. WILLS:**  I'm sorry, your Honor.

25       **JUDGE DAMRELL:**  You're familiar with

1  centralization in these cases?

2      **MS. WILLS:**  Your honor, we believe that

3  centralization in Houston, in particular before Judge

4  Rosenthal, would be favorable.

5      **JUDGE DAMRELL:**  It wouldn't be favorable to you.

6  But why would centralization be effective for any other

7  district?  Why would you oppose it for the same reason?

8      **MS. WILLS:**  Well, I believe that the one factor

9  that really points towards centralization is the point that

10  was discussed earlier, and, that is, if notice is going to

11  be sent out, if there's going to be a determination made

12  about whether or not there is going to be a collective

13  action, it makes sense to have one judge make that

14  determination. and it also makes sense to have notice

15  facilitated by a single judge, especially on a nationwide

16  basis, so that people aren't getting three or four different

17  notices and that would create confusion and it would be

18  judicially in-efficient.

19      **JUDGE FURGESON:**  But these lawyers --

20      **MS. ELKIN:**  That's fine.

21      **JUDGE FURGESON:**  -- are -- they're really saying

22  we just have state collective actions and really pretty much

23  under state law.  We don't want to be a part of your FSLA

24  collective national action.  Do you want to rope them in or

25  is that your goal to rope these -- these lawyers in?

1      **MS. WILLS:** That's not our goal at all, your
2   Honor, but I would add that the New Jersey complaint is
3   filed as a nationwide collective action.
4      **JUDGE FURGESON:** Well, apparently, there is some
5   deep confusion about that. I don't know, but I'm going to
6   take Ms. Elkin at her word that she is not fling a
7   nationwide class action. And she has said in record, she is
8   also in court, she's not seeking that.
9      **MS. WILLS:** Even given that, your Honor, that case
10  is certainly going to overlap with the **Richardson** case
11  because it is a nationwide class, and it would also
12  encompass the FSLA claims for the New Jersey plaintiffs. In
13  fact, we have a client right now that recently joined the
14  case. He is from New Jersey. We have not been able to
15  determine whether or not that person worked in New Jersey
16  during the relevant time because he worked in both New
17  Jersey and New York, but we currently have a reserved
18  Plaintiff that has joined the **Richardson** case. So clearly
19  there is going to be overlap with New Jersey and the current
20  **Gonzalez** case. And the same thing with Washington State,
21  while they are not really FSLA claims, those persons in
22  Washington State would fall under the nationwide file that
23  we seek to represent so they would also be included in the
24  nationwide class.
25      **JUDGE FURGESON:** They don't have to. I mean you

1   can have a nationwide class that carves out two states,

2   Washington and New Jersey.  I mean, you know, I realize you

3   would have liked that, but it can be a 48-state nationwide

4   class instead of 50 states.  That would be possible, is that

5   right?

6          **MS. WILLS:**  Well, obviously, it would be up to

7   Judge Rosenthal or the judge that would make that determ --

8   either Judge Rosenthal or Judge Miller would make that

9   determination, but we already represent someone who is from

10  New Jersey so I don't know that it would be possible at this

11  stage to do so with respect to New Jersey.  We do not seek

12  to represent anyone on Washington State claims.  This is

13  simply a nationwide FSLA collective action pursuant to

14  federal law.

15         **JUDGE HEYBURN:**  Thank you very much.  We'll take

16  that under submission.

17         **MR. PORTER:**  May I correct her on one point?  One

18  point.  Wells Fargo has not set up any separate structure in

19  any state.  These people are all under the very same

20  structure.  There is no separate New Jersey structure for

21  management of supervision as was said.

22         **JUDGE HEYBURN:**  Thank you very much.

23       (Whereupon, at 2:50 p.m. the proceedings concluded.)

24             COURT REPORTER'S CERTIFICATE

25       I, STARR A. WILSON, CSR NO. 2462, United States

1    District Court, Northern District of California, do hereby

2    certify that the foregoing is a correct transcript from the

3    record of proceedings in the above-entitled matter.

4         I certify that the transcript fees and format

5    comply with those prescribed by the Court and Judicial

6    Conference of the United States.

7

8              /s/    _____

9                     STARR A. WILSON, CSR NO. 2462

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    UNITED STATES JUDICIAL PANEL

2    ON

3    MULTIDISTRICT LITIGATION

4    SAN FRANCISCO, CALIFORNIA; CEREMONIAL COURTROOM, NINETEENTH

5    FLOOR; JUDGE DAMRELL, JUDGE VRATIL, JUDGE HEYBURN, JUDGE

6    FURGESON, JUDGE JONES

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25