UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: WELLS FARGO WAGE | § | |
| AND HOUR EMPLOYMENT | § | MULTI-DISTRICT LITIGATION |
| PRACTICES LITIGATION (NO. III) | § | CASE NO. H-11-2266 |

## ORDER

Pending before the court are the following motions and applications: (1) motion of the *Gonzalez* and *Chan* plaintiffs for consolidation and appointment of Woodley & McGillivary as lead counsel ("*Gonzalez/Chan* Motion") (Dkt. 6); (2) cross motion of the *Richardson* and *Chaplin* plaintiffs for appointment of the Texas plaintiffs' counsel as lead counsel ("*Richardson/Chaplin* Motion") (Dkt. 17); (3) application for appointment of Woodley & McGillivary as liaison counsel ("*Gonzalez/Chan* Application") (Dkt. 28); and (4) application to appoint the *Richardson* and *Chaplin* plaintiffs' counsel as lead/liaison counsel ("*Richardson/Chaplin* Application") (Dkt. 29). After considering these motions and applications and associated documents, the arguments made by counsel during the November 16, 2011 hearing, and the applicable law, the court is of the opinion that the *Gonzalez/Chan* Motion and Application should be DENIED, the *Richardson/Chaplin* Motion and Application should be GRANTED.

## I. BACKGROUND

This is a multi-district litigation case involving four cases filed in three different districts—two cases filed in the Southern District of Texas, one case filed in the District of New Jersey, and one case filed in the Eastern District of Washington at Seattle. Dkt. 1; *see Richardson et al. v. Wells Fargo Bank, N.A.*, No. 10-cv-4949, Dkt. 1; *Chaplin et al. v. Wachovia Mortgage Corp. et al.*, No. 11-cv-638, Dkt. 1; *Gonzalez et al. v. Wells Fargo Home Mortgage, Inc. et al.*, No. 11-cv-3208, Dkt. 1; *Chan et al. v. Wells Fargo Home Mortgage*, No. 11-cv-3275, Dkt. 7. The two Texas

cases, *Richardson* and *Chaplin*, were filed on December 10, 2010, and February 23, 2011, respectively.  When filed, Rhonda H. Wills of the Wills Law Firm represented the *Richardson* plaintiffs and the *Chaplin* plaintiffs, and John M. Padilla of Padilla, Rodriguez & de la Garza, L.L.P. was co-counsel for the *Chaplin* plaintiffs.  The New Jersey case, *Gonzalez*, was filed on April 14, 2011, and these plaintiffs were initially represented by Vincent Giblin of Pitta & Giblin, LLP, and Gregory K. McGillivary and Diana J. Nobile, both of Woodley & McGillivary.  The Washington case, *Chan*, was filed on June 13, 2011, and these plaintiffs were initially represented by Mark Griffin and Tana Lin of Keller Rohrback L.L.P. and Timothy J. Pauley and Ryan J. Pauley of Pauley Law Group, PLLC.

Each of the cases involves claims for overtime compensation by plaintiffs who work or have worked for defendants Wachovia Mortgage Corporation, World Mortgage Company, Wells Fargo Home Mortgage, Inc., Wells Fargo & Company, or Wells Fargo Bank, N.A. as home mortgage consultants, loan originators, loan consultants, or similar positions.  Dkt. 1.  Defendants Wells Fargo Bank, N.A., Wells Fargo & Co., Wachovia Corp., Wachovia Mortgage Corp., and World Mortgage Co. moved to centralize the litigation in this district, as two of the four actions were already pending here.  Dkt. 1.  The *Richardson* and *Chaplin* plaintiffs, whose cases were already pending in the Southern District of Texas, did not oppose the motion to centralize the litigation in the Southern District of Texas, but the *Gonzalez* and *Chan* plaintiffs, who had cases pending out-of-state, opposed the motion.  *Id.*  The United States Judicial Panel on Multidistrict Litigation (the "Panel") granted the defendants' motion and transferred the *Gonzalez* and *Chan* cases to the Southern District of Texas for coordinated or consolidated pretrial proceedings with the actions already pending in this district.  *Id.*

Shortly after the case was transferred, the *Gonzalez* and *Chan* plaintiffs filed a motion to consolidate the four cases and to appoint Woodley & McGillivary as lead counsel. Dkts. 5, 6. The *Richardson* and *Chaplin* plaintiffs were opposed to the motion to consolidate and appoint, and filed a cross-motion for appointment of the *Richardson* and *Chaplin* plaintiffs' counsel as lead counsel. Dkt. 17. The court issued an order setting the pretrial status and scheduling conference for November 16, 2011. Dkt. 16. In that order, the court advised that it intended to appoint liaison counsel and ordered the parties to submit applications prior to the conference. *Id.* It also ordered counsel to submit a proposed initial case management order and proposed agenda items. *Id.*

In response to this order, the *Gonzalez* and *Chan* plaintiffs submitted a proposed discovery/case management plan, a proposed scheduling order, and an application for the appointment of Woodley & McGillivary as lead or liaison counsel. Dkts. 26-28. The *Richardson* and *Chaplin* plaintiffs submitted a separate preliminary case management plan and an application for the appointment of the *Richardson* and *Chaplin* plaintiffs' counsel as lead or liaison counsel. Dkts. 29-30. Defendants also submitted a proposed case management plan. Dkt. 24. Defendants' plan points out that "the parties were unable to ultimately agree on a joint case management plan/initial scheduling order because counsel for different groups of Plaintiffs have been unable to reach a consensus on lead counsel for Plaintiffs or case management." *Id.* Defendants noted that they were unable to "meaningfully negotiate individually with Plaintiffs regarding a litigation plan" and asserted that it was "essential for Plaintiffs' counsel to work with Defendant in a coordinated fashion to help develop a Joint Discovery Plan." *Id.*

The parties did jointly file proposed agenda items, but this document, rather than showing that the parties were able to work together to develop an agenda, demonstrates that the two sets of plaintiffs' counsel were not able to agree even on agenda items for the scheduling conference, as

3

there are parentheticals throughout indicating that a particular item was proposed by a certain set of plaintiffs only. Dkt. 25. Wells Fargo proposed in the agenda that the first order of business should be the appointment of lead or liaison counsel and that the parties should meet after such leadership is in place to negotiate the scheduling order and initial case management plan. *Id.* Wells Fargo reiterated this viewpoint during the conference, and both sets of plaintiffs' counsel agreed that it was essential that lead counsel be appointed before the case could efficiently go forward. This order, therefore, addresses only the motions/applications for the appointment of lead/liaison counsel.[1]

## II. LEGAL STANDARD

The Manual on Complex Litigation, Fourth (2004) (the "Manual") indicates that it may be helpful to institute "special procedures for coordination of counsel early in the litigation." Manual § 10.22. The central goal in doing so is to achieve "efficiency and economy without jeopardizing fairness to the parties." *Id.* § 10.221. It also helps "avoid what otherwise might well become chaotic." *In re Zyprexa Prods. Liability Litig.*, 594 F.3d 113, 130 (2d Cir. 2010).

Courts may appoint liaison counsel, lead counsel, trial counsel, or committees of counsel. *Id.* Liaison counsel are "[c]harged with essentially administrative matters, such as communications between the court and other counsel . . . , convening  meetings of counsel, advising parties of developments, and otherwise assisting in the coordination of activities and positions." *Id.* Lead counsel are "[c]harged with formulating (in consultation with other counsel) and presenting positions

---

[1]  Woodley & McGillivary also moved to consolidate the four member cases for pretrial proceedings. Dkts. 6, 20. The *Richardson/Chaplin* Team was opposed to the motion, as it had construed the motion as a request to consolidate the cases for all purposes rather than just pretrial management. *See* Dkt. 17. However, Woodley & McGillivary clarified in reply that it meant only to request consolidation for pretrial purposes as suggested by the Panel upon transfer. *See* Dkt. 20. The cases are already consolidated for pretrial proceedings, *see* Dkts. 1, 22, so the motion to consolidate is moot.

on substantive and procedural issues during the litigation.  Typically they act for the group . . . in presenting written and oral arguments or suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met." *Id.*  Trial counsel "[s]erve as principal attorneys at trial for the group and organize and coordinate the work of other attorneys on the trial team."  And "committees of counsel," or "steering committees, coordinating committees, management committees, discovery committees, or trial teams," "are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making.  The court or lead counsel may task committees with preparing briefs or conducting portions of the discovery program if one lawyer cannot do so adequately." *Id.*

The court has a great deal of flexibility with regard to appointing representative counsel; for instance, one attorney may serve as lead, liaison, and trial counsel, or the function of lead attorney may be split among several attorneys. *Id.*  However, "the number of attorneys appointed should not be so large as to defeat the purpose of making such appointments." *Id.*

Federal Rule of Civil Procedure 23(g)(3) permits courts to appoint interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.  Fed. R. Civ. P. 23(g)(3).  Courts may "consider the merits of each applicant in light of the criteria set out in Rule 23(g)(1)(A) and the Manual." *In re Plasma Derivative Protein Therapies Antitrust Litig.*, No.09 C 7666, MDL No. 2109, 2010 WL 1433316, at *5 (N.D. Ill. Apr. 7, 2010).  The factors courts consider under Rule 23(g)(1)(A) are:

> (i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  Additionally, the court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  Ultimately, the court must appoint the applicant or applicants "best able to represent the interests of the class."  Fed. R. Civ. P. 23(g)(2).

### III. ANALYSIS

All counsel agree that it is necessary for the court to appoint lead counsel so that this case may proceed smoothly and efficiently.  There is, however, strong disagreement between the different groups of plaintiffs with regard to which firm or firms are best suited to be lead counsel and what the structure of the leadership team should be.  The *Gonzalez/Chan* plaintiffs propose that the court appoint one firm, Woodley & McGillivary, as lead counsel, arguing that it will be more efficient to have the leadership role centralized with one firm that has extensive experience with nationwide FLSA class actions and will be able to work cooperatively with other counsel.  Dkts. 6, 20, 28.  The *Richardson/Chaplin* plaintiffs propose that the court appoint Rhonda Wills of the Wills Law Firm and Reagan W. Simpson and R. Paul Yetter of Yetter Coleman LLP co-lead counsel, and Diana Marshall and Ronald Lewis of Marshall & Lewis, LLP, and John M. Padilla of Padilla, Rodriguez & de la Garza, LLP, as co-counsel (hereinafter, the "*Richardson/Chaplin* Team").  Dkts. 17, 29.  The *Richardson/Chaplin* plaintiffs argue that *Richardson/Chaplin* Team has extensive experience in FLSA actions and complex litigation, including many cases in this district, and that their superior commitment to the nationwide class is evident in their actions, as they have already negotiated tolling agreements for potential plaintiffs.

6

## A.  Work Identifying and Investigating Potential Claims

Both the *Richardson/Chaplin* Team and Woodley & McGillivary have worked to identify and investigate potential claims.  Woodley & McGillivary learned of the alleged violations at Wells Fargo from a plaintiff in another case in which they represent 492 loan officers against a different financial institution that has pay practices that are similar to Wells Fargo's.  Dkt. 28.  Woodley & McGillivary have thereafter conducted several phone conference calls with potential plaintiffs before filing suit.  *Id.*  Ms. Wills of the *Richardson/Chaplin* Team first filed suit after her investigation of the compensation practices of Wells Fargo, Wachovia, and their subsidiaries allegedly revealed "widespread and systematic failures to comply with the FLSA."  Dkt. 29 at 3.  The *Richardson/Chaplin* Team continued to work to identify potential claims after filing, and have 29 opt-in plaintiffs who work or worked for Wachovia and 43 opt-in plaintiffs who work or worked for Wells Fargo.[2]  While it is clear that both teams have investigated the claims and worked to identify plaintiffs, the number of opt-in plaintiffs in the *Richardson/Chaplin* litigation tip the balance on this factor in favor of the *Richardson/Chaplin* Team.

## B.  Experience Handling Complex Litigation and FLSA Claims

Both Woodley & McGillivary and the *Richardson/Chaplin* Team are well-qualified to act as lead counsel.  The lawyers on both teams have extensive experience with the FLSA and complex litigation.  However, this factor weighs in favor of appointing the *Richardson/Chaplin* Team because (1) Ms. Wills of the Wills Law Firm has experience successfully negotiating with Wells Fargo's local counsel; and (2) Yetter Coleman has substantial MDL experience.  While the court is confident that Woodley & McGillivary, given its team members' extensive experience in a wide variety of

---

[2]  At the hearing, counsel noted that there is some overlap in these numbers, as some of the plaintiffs worked for both Wells Fargo and Wachovia.

courts, would be able to quickly adapt to local rules and procedures and develop a working relationship with opposing counsel, Ms. Wills has already done so.  And, while Woodley & McGillivary are no doubt more than competent to determine the best course of action with regard to MDL proceedings, Yetter Coleman already has experience with MDLs.  Yetter Coleman specializes in complex litigation, including MDLs.  Woodley & McGillivary have extensive FLSA experience, but no experience with MDLs.  Instead, Ms. Elkin of Woodley & McGillivary represented during the hearing that Woodley & McGillivary would rely on the MDL expertise of Keller Rohrback, which has experience in over 20 MDL cases and supports Woodley & McGillivary's bid to be appointed lead counsel.  While the court believes that Woodley & McGillivary would be able to handle the responsibility of being lead counsel, particularly since the firm is working cooperatively with Keller Rohrback, this factor weighs in favor of appointing the *Richardson/Chaplin* Team.

**C.  Knowledge of Applicable Law**

The third factor is counsel's knowledge of the applicable law.  Both teams are equally competent with regard to knowledge of the applicable law.  Thus, this factor is neutral.

**D.  Resources Counsel Will Commit to Representing the Class**

Courts next consider the resources that counsel will commit to representing the class.  Both teams have indicated that they have and are willing to use the necessary resources, so this factor is neutral.

**E.  Other Factors**

The court may consider other matters pertinent to counsel's ability to represent the interests of the class, and both teams present additional information that they believe will aid the court in making its decision.  The *Richardson/Chaplin* Team assert that they have already demonstrated that

8

they will be able to fairly and adequately represent the class by securing tolling agreements on behalf of class members.  Dkt. 29 at 16.  The further claim that they "'command the respect of their colleagues' and can 'work cooperatively with opposing counsel and the court,'" as several of the attorneys on the team have already worked together in other FLSA actions.  *Id.* at 16-17 (quoting the Manual).  Woodley & McGillivary argue that the structure proposed by the *Richardson/Chaplin* plaintiffs is "unwieldy and inefficient."  Dkt. 28 at 22.  They further assert that such a large team is unnecessary as there are, in reality, only three groups of cases filed, and the three groups can be effectively managed by one firm.  Dkt. 28 at 22.

While the court agrees with Woodley & McGillivary that a multi-firm team is not required for an MDL with only four or five cases, the *Richardson/Chaplin* Team convinced the court during the hearing that it will be able to efficiently manage this case.  The attorneys on the team have previously worked together and should be able to assign work in accordance with the strengths of the team's various members.

### III. CONCLUSION

While both teams are highly impressive, the court finds that the factors weigh in favor of appointing the *Richardson/Chaplin* Team.  Accordingly, the *Richardson/Chaplin* Team's motion and application for appointment as lead counsel (Dkt. 20, 29) are GRANTED, and the court APPOINTS the *Richardson/Chaplin* Team, as lead counsel, under the terms set forth in their application for appointment. *See* Dkt. 29.  Woodley & McGillivary's motion for consolidation and appointment as lead counsel and application for appointment (Dkts. 6, 28) are DENIED.

It is so ORDERED.

Signed at Houston, Texas on December 19, 2011.

_____
Gray H. Miller
United States District Judge