# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: WELLS FARGO WAGE | § | |
| AND HOUR EMPLOYMENT | § | MULTI-DISTRICT LITIGATION |
| PRACTICES LITIGATION (NO. III) | § | CASE NO. H-11-2266 |

## ORDER

Pending before the court are (1) a motion for conditional certification filed by the plaintiffs asserting claims against defendant Wells Fargo Bank, N.A. ("Wells Fargo Plaintiffs") (Dkt. 63); (2) a motion for conditional certification filed by the plaintiffs who were employed by defendants Wachovia Mortgage Corporation, Wachovia Corporation, or World Mortgage Corporation a/k/a World Mortgage Co., before Wachovia Corporation's merger with Wells Fargo & Company ("Wachovia Plaintiffs"); (3) objections and a motion to strike portions of the declarations supporting the motions for conditional certification filed by defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Wachovia Mortgage Corporation ("Wachovia") (Dkt. 71); and (4) a motion to strike the declarations supporting the defendants' response to the motions for conditional certification filed by all plaintiffs[1] (Dkt. 74). After reviewing the motions, responses, replies, other relevant filings, and applicable law, the court is of the opinion that the Wells Fargo Plaintiffs' motion for conditional certification and the Wachovia Plaintiffs' motion for conditional certification are GRANTED, Wells Fargo and Wachovia's objections are SUSTAINED IN PART AND OVERRULED IN PART, and Plaintiffs' motion to strike is DENIED.

## I. BACKGROUND

This is a multi-district litigation case involving five cases filed in four different

---

[1] The court will refer to the plaintiffs who have participated in these motions collectively as "Plaintiffs."

districts—two cases filed in the Southern District of Texas, one case filed in the District of New Jersey, one case filed in the Eastern District of Washington at Seattle, and one case filed in the Northern District of Illinois.  Dkts. 1, 40; *see Richardson et al. v. Wells Fargo Bank, N.A.*, No. 10-cv-4949, Dkt. 1; *Chaplin et al. v. Wachovia Mortgage Corp. et al.*, No. 11-cv-638, Dkt. 1; *Gonzalez et al. v. Wells Fargo Home Mortgage, Inc. et al.*, No. 11-cv-3208, Dkt. 1; *Chan et al. v. Wells Fargo Home Mortgage*, No. 11-cv-3275, Dkt. 7; *Hoffman v. Wells Fargo & Co.*, No. 11-4219, Dkt. 1.  Each of the cases involves claims for overtime compensation by plaintiffs who work or have worked for defendants Wachovia Mortgage Corporation, World Mortgage Company, Wells Fargo Home Mortgage, Inc., Wells Fargo & Company, or Wells Fargo Bank, N.A. as home mortgage consultants, loan originators, loan consultants, or similar positions.  Dkt. 1.  Defendants Wells Fargo Bank, N.A., Wells Fargo & Co., Wachovia Corp., Wachovia Mortgage Corp., and World Mortgage Co. moved to centralize the litigation in this district, as two of the four actions were already pending here.  Dkt. 1.  The United States Judicial Panel on Multidistrict Litigation (the "Panel") granted the defendants' motion and transferred the *Gonzalez* and *Chan* cases to the Southern District of Texas for coordinated or consolidated pretrial proceedings with the actions already pending in this district—*Richardson* and *Chaplin*.  *Id.*  In November 2011, the parties in *Hoffman* filed an agreed motion to transfer the case to this district for pretrial purposes consistent with the Panel's order consolidating *Gonzalez*, *Chan*, *Richardson*, and *Chaplin*.  *Hoffman*, No. 11-4219, Dkt. 13.  The federal district court in the Southern District of Illinois granted the motion and transferred the case to this district.  *Id.*, Dkts. 15-18.

Only two of the five cases are at issue with regard to the instant motion—*Richardson* and *Chaplin*—which are both FLSA nationwide collective actions.  The *Richardson* plaintiffs (Wells Fargo Plaintiffs) seek to represent all current and former Wells Fargo home mortgage consultants

("HMCs") who opt-in whose primary job was to originate Wells Fargo residential mortgage loans. Dkt. 63.  The *Chaplin* plaintiffs (Wachovia Plaintiffs) seek to represent individuals who were employed by Wachovia prior to its merger with Wells Fargo as mortgage consultants, mortgage loan officers, or loan originators ("MC") who opt in and whose primary job duty was originating home mortgage loans.  Dkt. 65.  During the relevant timeframe, the Wells Fargo Plaintiffs and the Wachovia Plaintiffs were paid on a commission only basis without any provision for overtime compensation.  Dkts. 63, 65.  Plaintiffs assert that Wells Fargo and Wachovia ("Defendants") misclassified the HMCs and MCs as exempt under the FLSA, that HMCs and MCs regularly worked in excess of 40 hours a week, and that Wells Fargo and Wachovia failed to keep accurate time records and denied overtime compensation in willful violation of the FLSA.  Dkts. 63, 65. Wachovia merged with Wells Fargo in or around 2009.  Dkt. 65.  On April 1, 2011, Wells Fargo reclassified all its HMCs nationwide as non-exempt and began paying them overtime.  Dkt.63.

On February 24, 2012, the court held a status conference at Plaintiffs' request.  Dkt. 54 at 3. Plaintiffs' counsel asserted that Plaintiffs wished to file motions for nationwide class certification in the *Richardson* and *Chaplin* cases and noted that, prior to consolidation, they had agreed to some targeted discovery in the *Richardson* case.  *Id.* at 6-7.  Plaintiffs' counsel asserted during the status conference that Plaintiffs believed they could go forward to conditional certification without any discovery, and they proposed either that the court not allow discovery prior to the motion to conditionally certify or that the court limit the discovery to the targeted discovery that had been agreed to in the *Richardson* case.  *Id.* at 8.  Defendants urged the court to allow some discovery, pointed out that there had already been ruling by the Ninth Circuit and a district court in a California case involving the same types of claims that provide some backdrop for this case, and asserted that this case is "not a traditional out-of-the-gate two-step process."  *Id.* at 11.  Defendants stated that

courts "have begun to look at this two-step process with greater scrutiny" and that they were therefore "going to be presenting to the Court a more thorough opposition" that would "suggest to the Court that that so-called two-step process should be collapsed on the basis of the record that already exists." *Id.* at 11-12.

The court ruled that the parties could conduct "some targeted discovery," but it limited the discovery to certification issues. *Id.* The court ruled that defendants could depose three plaintiffs in *Richardson* and three plaintiffs in *Chaplin*, with two depositions a day. *Id.* at 24-25. The court ruled that Plaintiffs could depose corporate representatives for Wells Fargo and Wachovia, with the same time restrictions as the depositions of the six plaintiffs. *Id.* at 27. This discovery has now been completed, and Plaintiffs have filed motions for conditional certification of both cases. Both motions are fully briefed.

Plaintiffs seek conditional certification of two nationwide collective actions. The proposed Wachovia collective actions consists of the following individuals:

> All persons who were employed by Wachovia as an MC at anytime from February 23, 2008 to December 31, 2009 and who (1) were paid on a commission basis under a Wachovia compensation plan; (2) were classified as exempt; (3) worked more than 40 hours in any given work week within the defined time period; and (4) were denied overtime compensation.

Dkt. 65 at 6 (footnote omitted). The proposed Wells Fargo collective action consists of the following individuals:

> All persons who were employed by Wells Fargo as an HMC at anytime from February 11, 2008 to March 31, 2011 and who (1) were paid on a commission basis, (2) were classified as exempt, (3) worked more than 40 hours in any given work week within the defined time period, and (4) were denied overtime compensation. The putative class excludes anyone with the title of "manager."

4

Dkt. 63 at 5 (footnote omitted).  Plaintiffs contend that the law favors collective actions, that their evidentiary burden should be light at this preliminary stage in the litigation, that the plaintiffs in each proposed class are similarly situated with respect to job duties and pay provisions, and that Wells Fargo and Wachovia had common policies relating to MCs and HMCs that violated the FLSA.  Dkts. 63, 65.  Plaintiffs additionally point out that there are a large number of opt-in plaintiffs already. Plaintiffs seek an order requiring Defendants to provide the name, address, telephone number, email address, job title, and dates of employment of all putative class members, permit Plaintiffs to disseminate a notice form approved by the court to affected employees, and allow potential class members to have three months after the notice is mailed to join this action.  Dkts. 63, 65.

Defendants assert that there is significant variation in how individual HMCs or MCs perform or performed their jobs and that this variation makes collective adjudication impossible.  Dkt. 72 at 1.  Defendants argue that, in light of the discovery already taken in this case, the court should require Plaintiffs to meet a more strenuous burden than that typically required in this district during the first phase of an FLSA collective action.  *Id.*  Defendants provide declarations from 35 HMCs and managers from different regions across the country that they claim support their argument that there is significant variation in the ways in which the members of the putative classes performed their jobs. *Id.* at 2-3 & Exhs.  Defendants also request that the court take into account the discovery and rulings in an MDL case involving Wells Fargo HMCs in a federal district court in California ("California MDL").  *Id.* at 2.  The California district court, which was considering similar claims against Wells Fargo made by HMCs, certified a nationwide class action under Rule 23 and a nationwide collective action under the FLSA.  Dkt. 63, Exh. 44.  Wells Fargo appealed the Rule 23 decision, and the Ninth Circuit reversed and remanded.  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 956 (9th Cir. 2009).  The California District Court denied certification of the Rule 23 class on

5

remand due to the significant variation in how HMCs performed their jobs. *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 268 F.R.D. 607, 613 (N.D. Cal. 2010).

In support of their motions to conditionally certify, Plaintiffs filed declarations of the seven named plaintiffs and 39 opt-in plaintiffs that describe their employment history with Wells Fargo or Wachovia, the job responsibilities they had during their employment, how they were paid either during their employment, if no longer employed, or prior to the change in Wells Fargo's pay policies with respect to HMCs, an assertion that they worked well in excess of 40 hours per week but were not paid overtime, and their observations with regard to other HMCs or MCs. Dkt. 63, Exhs. 3, 5-6, 8-34; Dkt. 65, Exhs. 4-19. In opposition to conditional certification, Defendants filed declarations of 34 current Wells Fargo employees and one declaration of a person who previously worked as an HMC for Wells Fargo. Dkt. 70, Exhs. These declarations indicate, in general, that HMCs were essentially entrepreneurs who determined how to do their jobs on an individual basis. *See, e.g.*, Dkt. 72 at 11 & n.13; Dkt. 70, Exhs. A-6, A-10, A-11, A-13, A-16, A-23.

Defendants filed a motion to strike significant portions of all of the declarations submitted by Plaintiffs.[2] Dkt. 71. In their response to Defendants' motion to strike, Plaintiffs move to entirely strike the declarations filed by Defendants, claiming that they are "happy camper declarations" with no probative value. Dkt. 74 at 6. The court will first consider the evidentiary objections, and then it will address Plaintiffs' motions for conditional certification.

## II. EVIDENTIARY OBJECTIONS

Defendants move to strike substantial portions of the declarations Plaintiffs submitted in

---

[2] The court notes that Defendants' motion to strike contains 28 pages of single-spaced objections that are mostly boilerplate objections similar to those one may see in response to discovery requests. While the court gladly entertains all motions filed by litigants in its court, it notes that it found these boilerplate objections excessive.

support of their motions for conditional certification (Dkt. 71), and Plaintiffs request that the court disregard all of the declarations of Wells Fargo employees that Defendants submitted with their response or, in the alternative, strike them from the record (Dkt. 74).

## A.    Plaintiffs' Declarations

Defendants move to strike paragraphs 3, 5-8, 11, and 13-17 of plaintiff Judith Gott's declaration, paragraphs 3, 5-7, 9, 12, and 14-17 of plaintiff Angela Kolmansberger's declaration, paragraphs 3-4, 6, 8, and 10-13 of plaintiff Raymond Richardson's declaration, paragraphs 4-6, 8-11, and 13-17 of plaintiff James Chaplin's declaration, paragraphs 5-7, 9-12, and 14-18 of plaintiff Lucy Gonzales's declaration, paragraphs 4-6, 8, 10-11, and 13-17 of plaintiff Donna Pontello's declaration, and paragraphs 4-6, 8, 10-11, and 13-17 of plaintiff Bill Earley's declaration.  Dkt. 71. They also move to strike portions of the declarations of all the opt-in plaintiffs, which Defendants claim are strikingly similar.  *Id.*  Defendants divide the opt-in declarations into three groups: (1) declarations from opt-in plaintiffs whose employment at Wells Fargo ended before March 30, 2011 (the "Bethea Declarations");[3] (2) declarations from opt-in plaintiffs who were employees of Wells Fargo as of March 30, 2011 (the "Lavoie Declarations");[4]  and (3) declarations of opt-in plaintiffs who worked for Wachovia (the "Jeffreys Declarations").[5]  They object to paragraphs 5-7 and 10-12

---

[3]  This group contains declarations from Cathy Bethea, Jessica Breault, Edward Carrai, Darlene Castille, Hector Cil, Pamela Gale-Lacour, Sonyia Graham, Anthony Inzero, Jamarr Lewis, David Martinelli, Patricia McIssac, Penny Medeiros, Havazelet Miller, Ted Miller, Marianela Opazo, Nelson Oyedeji, John Pasquarello, Cindy Richardson, Cedric Smith, Kim Smith, Donna Vitalone, Wali Allal, Chris Bartlett, Emerson Bermudez, and DeNetrice Williams.

[4]  This group contains declarations from Jeffrey R. Lavoie and Michael Pierce.

[5]  This group contains declarations from Elizabeth Jeffreys, Angela Anderson-Mills, Marvin Miller, Bruce Nohe, Teryl Peer, Ana Villegas, Robert Ware, Sheila Wright, Lela Ashford, Jessica Breault, and Anthony Inzero.  Breault and Inzero each filed two declarations—one relating to employment for Wachovia and another relating to employment for Wells Fargo.  *See* Dkt. 63, Exhs.

of the Bethea Declarations, 5-6, 11, and 13 of the Lavoie Declarations, 5-7, and 9-11, with some minor exceptions, of the Jeffreys Declarations, and paragraph 8 of the declarations of opt-in plaintiffs Anderson-Mills, Wright, and Peer. *Id.* The court will first consider the objections to the named plaintiffs' declarations, and will the discuss the objections to the opt-in plaintiffs' declarations.

### 1.   Objections to Named Plaintiffs' Declarations

Defendants object to statements by Gott (para. 3), Kolmansberger (para. 3), Richardson (para. 3), Chaplin (para. 5), Gonzales (para. 6), Pontello (para. 5), and Earley (para. 5) relating to their primary job duties and the job duties of other HMCs or MCs. *Id.* Some of these statements indicate that the primary duties of the specific declarant were "like other mortgage consultants." *Id.* Defendants assert that these statements lack foundation, are vague, are inadmissible lay opinions, state a legal conclusion, and/or are speculative. *Id.* The court finds that the declarants have personal knowledge of their primary job duties and that these statements are not vague, are not inadmissible lay opinions, and do not state a legal opinion. *See* Fed. R. Evid. 602, 701. However, the declarants have not adequately shown that they have sufficient personal knowledge of the duties of other mortgage consultants to testify about their duties, and therefore any testimony relating to the job duties of other mortgage consultants is inadmissible. *See* Fed. R. Evid. 602. Thus, the objections to the statements relating to job responsibilities are SUSTAINED IN PART AND OVERRULED IN PART. The court will not consider the testimony in the cited paragraphs relating to the job duties of other employees.

Defendants object to Kolmansberger's (para. 3), Gott's (para. 14), and Richardson's (para. 3) statement that they were provided with Wells Fargo's compensation and human resources policies

---

12, 18; Dkt. 65, Exhs. 9, 10.

and that these policies were expected to be followed by HMCs as lacking foundation, being speculative and conclusory, and being inadmissible lay opinions. Dkt 71. The court finds that these declarants had personal knowledge of the policies, and it construes the statement that HMCs were expected to follow the policies as being the belief of these declarants rather than probative of what Wells Fargo actually expected. Defendants' objections to this statement are OVERRULED.

Defendants next object to statements that Gott (para. 3), *like other HMCs,* performed her tasks in accordance with Wells Fargo's policies, procedures, and guidelines for mortgage sales as lacking foundation, being a vague, inadmissible lay opinion, being speculative as to the conduct of other HMCs, and inconsistent with her deposition testimony. Dkt. 71. Gott testified that other HMCs originated loans, as she did. Dkt. 70, Exh. A-42 at 105-06. She worked with six other HMCs, but she testified that she did not talk with the other HMCs about what they did on a daily basis. Dkt. 70, Exh. A-42 at 105-06; Dkt. 74, Exh. 2 at 29. The court agrees that Gott has not shown that she has personal knowledge with regard to the other HMCs' conformance with Wells Fargo's policies, procedures, and guidelines, and her testimony relating to the other consultants contained in paragraph 3 is hereby STRICKEN. However, Gott has sufficient personal knowledge about how she performed her job, and her opinion of the policies and procedures her employer provided, and these opinions are not inadmissible lay opinions. *See* Fed. R. Evid. 602, 701. Accordingly, Defendants' objections—to the extent they relate to Gott's testimony about her own duties contained in paragraph 3—are OVERRULED.

Defendants object to Gott's (para. 5) and Kolmansberger's (para. 5) statement that, like other HMCs, they were required to promote and market Wells Fargo to generate loan origination business. Dkt. 71. Defendants argue that these statements lack foundation, are conclusory, and are speculative as to the conduct of other HMCs other than themselves. *Id.* Additionally, Defendants assert that

these statements are inconsistent with Gott's and Kolmansberger's deposition testimony. *Id.* Gott testified that she had not spoken with other HMCs about what they did on a day-to-day basis, Dkt. 70, Exh. A-42 at 105, and Kolmansberger testified that she had spoken with at least one other consultant about what she did to market Wells Fargo's business, but she did not recall a lot of specifics about the conversation, Dkt. 70, Exh. A-43 at 74-75. While the court finds that Gott and Kolmansberger have personal knowledge of their own duties and that their statements about promotion and marketing of Wells Fargo is not conclusory or inconsistent with their deposition testimony, their testimony about other HMC's activities relating to promotion and marketing is speculative and inadmissible. Accordingly, Defendants' objections with regard to other consultants' activities are SUSTAINED, but the objections are otherwise OVERRULED.

Wells Fargo and Wachovia object to Richardson's (para. 6) statement that he fulfilled his job responsibilities in many ways but that the purpose was to generate loan origination business for Wells Fargo and to strengthen the Wells Fargo home mortgage loan business as lacking foundation, being conclusory, and being speculative to the extent he is discussing the conduct of other HMCs. Dkt. 71. Richardson does not even discuss other HMCs in this statement. He is merely discussing his job and what he believed his goal was. This is within his personal knowledge. Defendants' objections to this statement are OVERRULED.

Defendants object to Gott's (para. 5) and Kolmansberger's (para. 5) statement that they could not make additions or deletions to promotional materials they gave to realtors (para. 5) as being inconsistent with their deposition testimony. During her deposition, Gott testified that she provided her business card when she visited realtors. Dkt. 70, Exh. A-42 at 50. Kolmansberger similarly testified during her deposition that she could not alter the Wells Fargo marketing material but that she left business cards with her name on them with the materials when she went to open houses.

Dkt. 70, Exh. A-43 at 90.  This testimony is not inconsistent with their declarations, which describe

their ability to personalize Wells Fargo marketing materials, not their ability to supplement the

materials with personal information.  Defendants' objection with respect to this statement is

OVERRULED.

Defendants object to Gott's statement (para. 6) that she attended open houses for brief

periods of time to represent Wells Fargo and its products and did not solicit referrals on her own

behalf as being inconsistent with her deposition testimony.  Dkt. 71.  In her deposition, Gott testified

that she went to open houses once a month to "present Wells Fargo materials" and "just be a

representative of Wells Fargo."  Dkt. 70, Exh. A-42 at 67-68.  She stated that she did not remember

how long she would stay at open houses, when she was asked to speculate as to how long she stayed

at open houses in general.[6]  Dkt. 70, Exh. A-42 at 69-72.  Defendants assert that Gott also testified

---

[6] Wells Fargo and Wachovia represent the following testimony as indicating that Gott spent from one to four hours at each open house:

> Q: How long would you typically stay at an open house?
> A: I don't recall.
> Q: Ten minutes or a few hours?
> . . . .
> A: I don't recall the exact time.
> Q: Okay.  Give me your best approximation, please.  You can answer the question.
> . . . .
> Q: I'm asking you to speculate as to how long you would typically stay at an open house during your employment with Wells Fargo or to provide a range, an approximation, as to how long you would typically stay.
> . . . .
> A: I don't recall.
> Q: Would five minutes be too short a period to stay at an open house?
> A: Yes.
> Q: Would an hour be too short a period to stay at an open house?
> A: I don't recall.
> Q: Would four hours be too long to stay at an open house?

that she "talked with customers, and made appointments for customers to visit with her in the bank branch to discuss mortgage products."  Dkt. 71.  However, the court cannot find such testimony in the deposition testimony that Wells Fargo and Wachovia cite.  *See id.* (citing Dkt. 70, Exh. A-38 at 67-68, 72, 75-76)[7]; Dkt. 70, Exh. A-42 at 67-68, 72, 75-76.  The court finds that the cited deposition testimony is not inconsistent with paragraph 6 of Gott's declaration.  Accordingly, Defendants' objection to this paragraph is OVERRULED.

Defendants object to Kolmansberger's (para. 7) similar statement that any personal contact she had with realtors was occasional and very brief in duration as being inconsistent with her deposition testimony.  Dkt. 71.  Kolmansberger testified that she would "occasionally" make appointments with realtors, that she usually went out to visit realtors about once a month, that she met with realtors "briefly" (from two to ten minutes each time), that she left business cards with realtors, and that she thanked realtors when she closed loans based on referrals from the realtors.  Dkt. 70, Exh. A-43 at 41, 48-49, 93-94.  There is nothing in this testimony that conflicts with Kolmansberger's statement that her personal contact with realtors was occasional and brief.  Accordingly, Defendants' objection is OVERRULED.

Defendants object to Richardson's (para. 6) similar testimony that he occasionally attended open houses to display or deliver Wells Fargo marketing materials but did not solicit referrals and

---

A: Again, I don't recall.
Q: So, it could be one; it could be four hours; you just don't remember?
A: Correct.

Dkt. 70, Exh. A-42 at 70-72.  Her response, that it was "correct" was made to a compound question and cannot properly be construed as meaning that she spent from one to four hours at these open houses.

[7]  Defendants actually cite exhibit A-38 in their motion, but Gott's deposition is contained in exhibit A-42.

did not speak to customers unless a realtor asked him to do so as being inconsistent with his deposition testimony. Dkt. 71. During his deposition, Richardson testified that he attended open houses on a monthly basis to represent Wells Fargo and help market home mortgage materials. Dkt. 70, Exh. A-41 at 65. He stated that he would take the materials to the event and be there to answer questions. *Id.* He testified that he answered realtors' questions and agreed, when asked, that he answered questions from people who were coming to look at the open houses. *Id.* He did not qualify his statement that he answered questions of people who came to look at open houses by first stating that he did so only if asked to do so by the realtor. While not clear, this is potentially a conflict. Since Richardson did not explain this potential conflict, the court will not consider the portion of the statement indicating that Richardson did not speak directly to potential customers unless asked to do so by a realtor when making its determination on the motion to conditionally certify the class. *Cf. Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482-83 (5th Cir. 2002) ("[W]hen the sole evidence purporting to create a genuine issue of material fact and thus to preclude summary judgment is an affidavit that conflicts with deposition testimony, we have required an explanation of that conflict."). The court will, however, consider the remainder of this statement, as Richardson's deposition testimony is not in conflict with his statement that he occasionally attended open houses or why he did so. Thus, Defendants' objection is SUSTAINED IN PART.

Defendants object to the statement made by Gott (para. 7) and Kolmansberger (para. 6) that they understood that other Wells Fargo employees, including tellers and personal bankers for example, were expected to refer prospective home mortgage applicants to Wells Fargo HMCs as lacking foundation, being speculative, and being an inadmissible lay opinion. Dkt. 71. Defendants assert the same objections to similar statements relating to Wachovia's expectations with regard to

referrals by Chaplin (para. 11), Gonzales (para. 12), Pontello (para. 11), and Early (para. 11).  *Id.* The court finds, however, that these individuals may testify as to their *understanding* of how they got referrals.  Accordingly, Defendants' objections to these statements are OVERRULED.

Defendants object to Gott's (para. 8), Kolmansberger's (para. 9), Chaplin's (para. 6), Gonzales's (para. 7), Pontello's (para. 6), and Earley's (para. 6) statement that their job responsibilities did not include counseling or attempting to steer loan applicants to particular loan products and that their responsibilities were restricted to inputting loan applications into the system and advising the customer about the products for which the customer qualified. Dkt. 71. Defendants assert that these statements lack foundation, are vague, are inadmissible lay opinions, and state a legal conclusion.  *Id.*  Additionally, with regard to Gott's statements, Defendants assert that they are inconsistent with her deposition testimony.  *Id.*  Defendants also object to Richardson's (para. 4) similar statement that he had no authority to provide financial counseling or direct applicants to a particular loan product and he simply input applicants' data into the system and informed them about the loan products for which they qualified.  Defendants assert that these statements lack foundation, are vague, are inadmissible lay opinions, state a legal conclusion, and are inconsistent with Richardson's deposition testimony.  *Id.*  The court finds that none of these statements is a vague, inadmissible lay opinion, and the statements are not legal conclusions.  Additionally, these employees have personal knowledge of what their job responsibilities were.  Further, the deposition testimony cited is *not* inconsistent with Gott's and Richardson's declarations.  Accordingly, Defendants' objections to these statements are OVERRULED.

Defendants object to the statement made by Chaplin (para. 8), Gonzales (para. 9), Pontello (para. 8), and Earley (para. 8) that they had an additional job responsibility to market Wachovia as a means to generate business for Wachovia generally, as opposed to generating business for

14

themselves, as lacking foundation, being conclusory, and being an inadmissible lay opinion. Dkt. 71. The court finds that these declarants have personal knowledge about their job requirements. Defendants' objections are OVERRULED.

Defendants object to a statement made by Chaplin (para. 9) and Gonzales (para. 10) that they marketed Wachovia to realtors and builders and rarely to sales people at open houses, but that Wachovia encouraged them to be in the office to take mortgage loan applications, as lacking foundation, being conclusory, and being an inadmissible lay opinion. Dkt. 71. They also argue that the statement is inconsistent with Chaplin's deposition testimony. *Id.* In his deposition, Chaplin testified that he occasionally made presentations to realtors, builders, and bank employees about Wachovia products—"when the opportunities arose"—between one and ten times in 2008. Dkt. 70, Exh. A-44 at 52-58. He also testified that he would call on realtors' offices about once a week, and he would call on between one and ten in any given week. *Id.* at 52-58, 89. He testified that he attended open houses, but not as frequently as he went to realtors' offices, and that he spent from ten minutes to an hour at these open houses. *Id.* at 94-95. He testified that he reported to the office every day but that he spent more than ten hours a week traveling in his car throughout the city. *Id.* at 64-65. He also testified that Wachovia did not really encourage them to visit realtors and builders because "the encouragement was certainly to be in the office to . . . take applications," so his objective when visiting realtors and builders was to make the visit and then get back to the office. *Id.* at 104. The court finds that this testimony is not inconsistent with Chaplin's statement—he made a statement about Wachovia's expectations with regard to his time in the office, not a statement that he never left the office. Chaplin and Gonzales have personal knowledge about to whom they marketed, how often they did so, and their perceptions about their employer's expectations with regard to their marketing. Accordingly, Defendants' objections to this statement are OVERRULED.

15

Defendants object to a statement made by Chaplin (para. 10), Gonzales (para. 11), Pontello (para. 10), and Earley (para. 10) that they received referrals for mortgage loan applications from Wachovia and did not recall ever taking an application for a customer that was referred from a source other than Wachovia as lacking foundation and being conclusory.  Dkt. 71.  They also object to Chaplin's, Pontello's, and Earley's statement as being inconsistent with their deposition testimony. *Id.*  In the cited testimony, Chaplin discusses what he did to try to get referrals from realtors, builders, and bank employees, but he does not indicate that he actually received any referrals from the realtors or builders.  *See* Dkt. 70, Exh. A-44 at 52-58, 64-65, 89, 94-95, 104.  Pontello indicates that she primarily called on bank branches and that she passed out fliers to realtors and bank branches.  Dkt. 70, Exh. 46 at 20-22.  It does not indicate that she actually received a referral from a source other than Wachovia.  Earley indicates that his branch manager "vaguely discussed" the possibility of getting references from realtors and that on his performance evaluation his supervisor recommended that Earley should perform one external daily activity from a prospective realtor or builder, but Earley did not believe the external obligations were in his job description.  Dkt. 70, Exh. A-45 at 54, 87-89 & Exh. 1.  There is no indication that he ever received referrals from an external source.  *Id.*  The court finds that these declarants were in positions to know how they received referrals and that their deposition testimony does not conflict with their statement in their declaration pertaining to referrals.  Accordingly, Defendants' objection to this statement are OVERRULED.

Defendants object to Gott's (para. 11), Kolmansberger's (para. 12), Richardson's (para. 10), Chaplin's (para. 13), Gonzales's (para. 14), Pontello's (para. 13), and Earley's (para. 13) statements in their declarations that they were paid on a commission only basis and their description of what that means as lacking foundation, being vague and conclusory and an inadmissible lay opinion, and stating a legal conclusion.  Dkt. 71.  The court finds that these individuals have personal knowledge

about how they were paid and that the general statements about it are admissible.  Defendants also object to the statement in the same paragraphs that the draw they received was "nothing more than a loan" as lacking foundation, argumentative, and an improper legal opinion.  The court finds that one does not need a law degree to determine what a loan is, and it is reasonable for these declarants to perceive the draw system as a loan.  Finally, Defendants object to the following statement in the paragraphs about how the declarants were paid: "To my knowledge, this same policy applied to all HMCs at Wells Fargo during my employment."[8]  Defendants argue that this statement lacks foundation, is conclusory, is an inadmissible lay opinion, and is speculative to the extent the declarants are discussing HMCs or MCs other than themselves.  *Id.*  The court agrees that this statement is speculative as it relates to other HMCs and MCs and that there is no indication that the declarants have any way of knowing how all other HMCs or MCs were paid.  Accordingly, Defendants' objection to this particular sentence in the paragraphs relating to how the declarants were paid is SUSTAINED.  The objections are otherwise OVERRULED.

Defendants object to a statement made by Gott (para. 13), Kolmansberger (para. 14), and Richardson (para. 11), that they understood that all Wells Fargo employees had to complete a new team member safety orientation as lacking foundation, being conclusory, being an inadmissible lay opinion, and being speculative as to the extent it asserts what other individuals had to do.  Dkt. 71.  While it is true that these individuals likely do not know if all employees attended the orientation, they are free to testify as to their *understanding* of what was required of a new employee.  The court does not take this as evidence that all employees indeed attended this orientation, but as evidence

---

[8]  The sentence in the Wachovia declarations is similar: "'To my knowledge, this same pay policy applied to all MCs at Wachovia during my employment, and we were all paid according to the same system.'"  Dkt. 71 (quoting Chaplin, Gonzales, Pontello, and Early declarations).

that these individuals believed that all employees attended.  Defendants' objections with regard to this statement are therefore OVERRULED.

Similarly, Defendants object to a statement made by Gott (para. 13) and Kolmansberger (para. 14) that the persons for whom they had provided origination services prior to their employment at Wells Fargo, whose names had to be entered into the Wells Fargo database, became Wells Fargo customers "for all practical purposes" and that they understood that these policies applied to all HMCs as lacking foundation, being conclusory, being an inadmissible lay opinion, and being speculative to the extent the declarants purport to know about all other HMCs.  Gott and Kolmansberger do not explain why, other than that their previous customers' names were in Wells Fargo's computers, that they believed their previous customers became Wells Fargo customers.  This portion of the statement appears to lack foundation and will therefore be disregarded by the court. However, the court finds that Gott and Kolmansberger may discuss their *understanding* with regard to the policy about entering names applying to all employees.  The court construes their statement about their understanding about Wells Fargo's policy as their beliefs and not as proof that every HMC at Wells Fargo had to enter their previous customers' names into Wells Fargo's database. Defendants' objection with regard to this statement is therefore SUSTAINED IN PART AND OVERRULED IN PART.

Defendants object to statements by Gott (para. 15), Kolmansberger (para.15), Richardson (para. 12), Chaplin (para. 14), Gonzales (para. 15), Pontello (para. 14), and Earley (para. 14), that they regularly worked in excess of 40 hours per week, that Wells Fargo or Wachovia did not record the time worked by other HMCs or MCs, and that Wells Fargo or Wachovia did not have a time keeping system for their HMCs or MCs.  Dkt. 71.  Defendants assert that the hours worked sentence lacks foundation, is conclusory, and is vague as to the word "regularly."  The court finds that these

declarants have personal knowledge of how many hours they worked and that, while the term "regularly" may be something defendants wish to pin down during substantive discovery, here the court is merely considering these statements as support for conditional certification. The objections to the sentence about regularly working more than 40 hours is OVERRULED.

Defendants object to the statement about Wells Fargo or Wachovia not recording the time of other HMCs or MCs as lacking foundation, being speculative and conclusory, and being an inadmissible lay opinion. They also claim that the statement is inconsistent with Gott's, Kolmansberger's, Richardson's, Chaplin's, Pontello's, and Earley's deposition testimony. First, the court notes that Gott stated, "Wells Fargo did not record the time I worked, and to my knowledge did not record the time of other HMCs." *See* Dkt. 63, Exh. 5 ¶ 15. She is permitted to note that she is unaware of Wells Fargo recording the time of other HMCs. The other declarants did not add the "to my knowledge" qualifier. *See* Dkt. 63, Exhs. 3 ¶ 12, 6 ¶ 15; Dkt. 65, Exh. 4 ¶ 15, Exh. 5 ¶ 14, Exh. 6 ¶ 14, Exh. 7 ¶ 15. The court finds that there is no evidence that Kolmansberger, Richardson, Chaplin, Pontello, or Earley had personal knowledge with regard to whether Wells Fargo or Wachovia kept time for other HMCs or MCs, so these statements are inadmissible. With regard to Gott's alleged contradictory statements in her deposition, Defendants cite testimony indicating that Gott had limited contact with other HMCs. This testimony does not contradict her statement that she has no knowledge of Defendants recording the time of other HMCs. Defendants' objections to Gott's testimony about Wells Fargo's recording of time for other HMCs is OVERRULED. Defendants' objection with regard to the other declarants' statements about Wells Fargo or Wachovia recording the time of other HMCs or MCs is SUSTAINED.

The final objection to the paragraph about Wells Fargo's and Wachovia's alleged failure to record time is that the statement in the declarations that Wells Fargo or Wachovia did not have a

time keeping system for their HMCs or MCs lacks foundation, is speculative and conclusory, and is an inadmissible lay opinion. The court agrees that these statements are speculative and lack foundation. Defendants' objection with regard to these statements is SUSTAINED.

Defendants object to a statement made by Gott (para. 16), Kolmansberger (para. 16), Richardson (para. 13), Chaplin (para. 15), Gonzales (para. 16), Pontello (para. 15), and Earley (para. 15), about the primary duties of other HMCs or MCs who worked at Wells Fargo or Wachovia. These declarants stated that the other consultants were paid on a commission-only basis, regularly worked over 40 hours per week, and were not paid for their overtime. *Id.* Defendants assert that this statement lacks foundation, is speculative and conclusory, is an inadmissible lay opinion, states a legal conclusion, and is inconsistent with the deposition testimony of each declarant. *Id.* The court agrees that these statements are speculative. Defendants' objections as to these statements are SUSTAINED.

Defendants object to the statement made by Chaplin (para. 16), Gonzales (para. 17), Pontello (para. 16), and Earley (para. 16), that their primary job duties were performed at Wells Fargo's or Wachovia's offices as lacking foundation, being a vague, inadmissible lay opinion, and stating a legal conclusion. Dkt. 71. They object to a similar statement by Gott as being inconsistent with deposition testimony, but do not assert the other objections with regard to Gott's statement. They also argue that Chaplin's statement is inconsistent with his deposition testimony. *Id.* The court finds that the declarants have personal knowledge of where they performed their primary job duties. Moreover, the statement is not vague because each declarant stated what his or her primary job duty was elsewhere in his or her declaration. Wells Fargo fails to explain why it believes where a person performs his or her primary job duty is a legal conclusion. As far as allegedly inconsistent deposition testimony, Defendants cite testimony from Gott in which she stated that she visited two to three

20

realtor's offices a week. *See id.* (citing Dkt. 70, Exh. A-42 at 25, 42). With regard to Chaplin, they cite testimony that Chaplin had one to ten meetings a week away from Wachovia, conducted seminars, and visited open houses. *Id.* (citing Dkt. 70, Exh. A-44 at 52-58, 64-65, 89, 94-95, 104). None of this testimony demonstrates that Gott or Chaplin spent a majority of her or his time away from the office or that they performed their primary duty of loan origination away from the office. Defendants' objections to this statement are OVERRULED.

Defendants object to the statement made by Gott (para. 17), Kolmansberger (para. 17), Richardson (para. 8), Chaplin (para. 16), Gonzales (para. 17), Pontello (para. 16), and Earley (para. 16) that they were personally aware that other HMCs also perform their primary job duties in the office as lacking foundation, being conclusory and speculative, and as inconsistent with the deposition testimony of Gott, Kolmansberger, Richardson, Pontello, and Earley. Dkt. 71. These declarants state that they are aware that the other employees work primarily from the office due to their interaction and involvement with other HMCs or MCs and also from their understanding of the requirements inherent in the sale of mortgage loans. *Id.* (quoting the declarations). In the testimony Defendants cite from Gott's deposition, she testified that she had never worked *in a branch* with another HMC and that she does not believe she ever talked with other HMCs about their job duties. Dkt. 70, Exh. 42 at 33, 105-06. She also testified, however, that she "worked with" six other HMCs at Wells Fargo. Dkt. 74, Exh. 2 at 29. She certainly could have noticed that the other HMCs worked primarily from the office by observing them even if she did not directly speak to them about it. Thus, her deposition testimony and declaration are not inconsistent.

In the testimony Defendants cite from Kolmansberger, she testified that she spoke with other HMCs about what they did to develop business and then she specifically mentions one HMC with whom she spoke, but she did not get specifics from this particular HMC about how often she went

to open houses or visited realtors.  Dkt. 70, Exh. 43 at 74-75.  This testimony does not contradict her statement that she was aware that other employees worked primarily from the office due to her interaction with them, as her relationship with only one other HMC was explored during the deposition.

In the testimony Defendants cite from Richardson, he testified that he did not ever have conversations with other HMCs regarding his or their job duties *at meetings*.  Dkt. 70, Exh. 41 at 53.  He did not state that he never talked to other HMCs outside of these meetings or never observed other HMCs.  The cited testimony is not contradictory to the statement in Richardson's declaration.

In the testimony Defendants cite from Pontello, she testified that Wachovia never told her not to visit realtors. that she had no idea if other loan originators in her office visited realtors, that she did not know if other loan originators went to open houses, met with builders, or were members of trade associations or professional networking groups, that she did not know if Wachovia had expectations for other loan originators with regard to visiting open houses, meeting with builders, or meeting with realtors, and that she did not talk with other loan officers about Wachovia's expectations.  Dkt. 46 at 25-26, 42-43.  If she has no idea how often the other loan originators engage in these other activities or what Wachovia's expectations of the other loan officers were, then she has no way of knowing if that they worked primarily from the office.  The testimony contradicts her declaration.

Finally, in the testimony Defendants cite from Earley, he states that he never spoke with other MCs at Wachovia about visiting with realtors, and never went with other MCs to visit realtors or builders or to open houses, but that he did observe other MCs that were in the same offices as he.  Dkt. 70, Exh. 45 at 55-56.  The court finds that he had personal knowledge that other loan originators

performed their primary duties in the office through observation, which is not contradictory to his declaration.

With regard to the other objections, the declarants clearly state they are making the statements because they are personally aware from their observation as well as their understanding of the requirements of the job.  Wells Fargo and Wachovia's objections to this statement are OVERRULED in entirety with respect to the statements by Gott, Kolmansberger, Richardson, Chaplin, Gonzales, and Earley.  The objections are SUSTAINED with respect to Pontello, as her deposition testimony contradicts the statement.

Defendants object to a statement made by Chaplin (para. 4), Gonzales (para. 5), Pontello (para. 4), Earley (para. 4), that they, like other MCs, were supervised by a manager who was aware of their activities and who reported up the chain of command on the operations of the mortgage office, at least to the vice president level, as lacking foundation, being conclusory, being an inadmissible lay opinion, and being speculative to the extent the declarants purport to testify about the conduct of other MCs.  Dkt. 71.  The court finds that these declarants have personal knowledge about how they were supervised but that there is a lack of foundation with regard to how they know who their managers reported to and whether other MCs had similar management arrangements. Accordingly, Defendants' objections are OVERRULED IN PART AND SUSTAINED IN PART. The court will not consider the portions of this statement relating to how MCs, other than the declarants themselves, were supervised, or to whom the declarants' supervisors reported.

Defendants object to a statement made by Chaplin (para. 17), Gonzales (para. 18), Pontello (para. 17), and Earley (para. 17) that they were aware of other Wachovia MCs who performed the same job duties as they performed and were treated similarly by Wachovia as relates to compensation policies and practices as lacking foundation, being conclusory, and being speculative

with regard to the conduct of MCs.  Dkt. 71.  Defendants also argue that this statement contradicts the deposition testimony of Chaplin, Pontello, and Earley.  The cited testimony from Chaplin indicates that he had no way of knowing if other loan originators visited open houses or realtors' or builders' offices more often than he did.  Dkt. 70, Exh. 44 at 97-98.  Chaplin stated that he was "not aware of what other loan officers did."  *Id.* at 98.  The court finds that this testimony is inconsistent with the statement made in paragraph 17 of Chaplin's declaration and will thus not rely on that statement.

Pontello similarly testified that she had "no idea" if other loan originators visited realtor offices, and that she did not know if they went to open houses, met with builders, or were members of trade associations or professional networking groups, and that she had not spoken with other loan originators about Wachovia's expectations with regard to visiting open houses or meeting with realtors and builders.  Dkt. 70, Exh. A-46 at 25-26, 42-43.  The court finds this testimony inconsistent with Pontello's statement in paragraph 17 of her declaration and thus will not consider the statement in paragraph 17 when making the conditional class certification determination.

Earley testified that he had never talked with other MCs at Wachovia about visiting with realtors, never went with other MCs to visit with realtors or builders or to open houses, and never went with them to closings.  Dkt. 70, Exh. A-45 at 55-56.  If Earley did not talk to other MCs about these duties, then he had no way of determining that they had the same or similar job duties as he.  Clearly, some of the other MCs *did* go to open houses and visit with realtors and builders.  The court finds that Earley's testimony thus contradicts the statement made in paragraph 17 of his declaration and will disregard that statement.  Defendants' objections to these statements are SUSTAINED.

### 1.    Objections to Opt-In Plaintiffs' Declarations

The court will now consider Defendants' objections to various statements made in the

declarations submitted by the opt-in plaintiffs.  Defendants first object to the statement made in the

Bethea Declarations (para. 5) and the Lavoie Declarations (para. 5) that the declarants were provided

with Wells Fargo's compensation and human resources policies and that these policies applied to

and were expected to be followed by all loan officers as lacking foundation and being vague and

conclusory.  Dkt. 71.  The court finds that these declarants had personal knowledge of the policies,

and it construes the statement that HMCs were expected to follow the policies as being the belief of

these declarants rather than probative of what Wells Fargo actually expected.  Defendants' objections

to this statement are OVERRULED.

Defendants object to the statement made in the Bethea Declarations (para. 6), the Lavoie

Declarations (para. 6), and the Jeffreys Declarations (para. 6) that the declarants were paid on a

commission only basis as lacking foundation, being vague and conclusory, being an inadmissible

lay opinion, and being a legal conclusion.  Dkt. 71.  Defendants do not explain why they believe a

statement about how these declarants were paid is a legal conclusion.  These declarants have

personal knowledge about how they were paid.  Defendants' objections to this statement are

OVERRULED.

Defendants object to the statement made in the Lavoie Declarations (para. 6) that they

received no salary, minimum guaranteed wages, and no overtime pay as lacking foundation, being

vague and conclusory, being an inadmissible lay opinion, and being a legal conclusion.  Dkt. 71.

Again, these declarants have personal knowledge about how they were paid.  The objections are

OVERRULED.

Defendants object to the statement made in the Bethea Declarations (para. 6), the Lavoie

Declarations (para. 6), and the Jeffreys Declarations (para. 6) that they received a "recoverable

draw," which was "nothing more than a loan," as lacking foundation, being argumentative, and being

an improper legal conclusion.  Dkt. 71.  The court finds that it is reasonable for these declarants to perceive the draw system as a loan, and doing so is not a legal conclusion.  The objections are OVERRULED.

Defendants object to the statement made in the Bethea Declarations (para. 6) and the Lavoie Declarations (para. 6) that to the knowledge of each declarant, the same pay policies applied to all mortgage loan officers at Wells Fargo during the declarant's employment as lacking foundation, being vague and conclusory, being an inadmissible lay opinion, and being speculative.  Dkt. 71.  The court agrees that this statement is speculative and that there is no indication that the declarants have any way of knowing how *all* other HMCs were paid.  Accordingly, Defendants' objection to this particular sentence in the paragraphs relating to how the declarants were paid is SUSTAINED.

Defendants object to the statement in the Lavoie Declarations (para. 7) that Wells Fargo changed the compensation system with respect to all its mortgage officers so that they, including the individual declarants, were classified as "nonexempt" employees and eligible to receive overtime compensation as lacking foundation, being vague, conclusory, and speculative, and being an improper legal conclusion.  Dkt. 71.  It is clear from the record in this case that Wells Fargo did, indeed, change the status of this class of employees to nonexempt.  The objection to this statement is OVERRULED.

Defendants object to the statement in the Bethea Declarations (para. 7) and the Lavoie Declarations (para. 8) that, to the knowledge of the declarants, mortgage loan officers all performed the same or similar job duties at all Wells Fargo locations as lacking foundation, being vague and conclusory, being an inadmissible lay opinion, and being speculative.  Dkt.71.  The court agrees that there is no indication that these declarants had knowledge of what loan mortgage officers in other locations did.  Thus, this objection is SUSTAINED.

Defendants object to the statement in the Lavoie Declarations (para. 12) that Wells Fargo did not record the time worked by other loan officers prior to March 31, 2011, as lacking foundation, being vague and conclusory, being an inadmissible lay opinion, and being speculative.  The court agrees that there is no indication that these declarants had personal knowledge of how other loan officers were being paid.  The objections to this statement are SUSTAINED.

Defendants object to the statement in the Bethea Declarations (para. 11) that Wells Fargo did not record the time worked by other mortgage loan officers as lacking foundation and being vague, conclusory, and speculative.  Dkt. 71.  The court agrees that the declarants have no personal knowledge of how Wells Fargo tracked the time worked by other mortgage loan officers.  Thus, Defendants' objections to this statement are SUSTAINED.

Defendants object to the statement made in the Bethea Declarations (para. 11), the Lavoie Declarations (para. 12), and the Jeffreys Declarations (para. 10 or 11), that Wells Fargo or Wachovia did not have a time keeping system for its mortgage loan officers as lacking foundation and being vague, conclusory, and speculative.  Dkt. 71.  Additionally, they argue that the statement in the Jeffreys Declarations is an inadmissible lay opinion.  *Id.*  The court agrees that there is no indication that these declarants have personal knowledge of whether Wells Fargo actually had a time-keeping system for its mortgage loan officers—only that if such a system existed, they had not been so informed.  Defendants' objection is SUSTAINED.

Defendants object to the statement made in the Jeffreys Declarations (para. 5) that Wachovia's compensation and human resources policies applied to all mortgage loan officers and that Wachovia expected the officers to follow these policies as lacking foundation and being vague, conclusory, and speculative.  Dkt. 71.  The court finds that these declarants had personal knowledge of the policies, and it construes the statement that mortgage loan officers were expected to follow

the policies as being the belief of these declarants rather than probative of what Wachovia actually expected.  Defendants' objections to this statement are OVERRULED.

Defendants object to the statement made in the Jeffreys Declarations (para. 6 or 7) that, to the knowledge of each declarant, the same compensation policy applied to all mortgage loan officers at Wachovia while each declarant was employed as lacking foundation, being vague, conclusory, and speculative, and being an inadmissible lay opinion.  Dkt. 71.  There is no indication that these declarants have personal knowledge of how other mortgage loan officers at Wachovia were paid.  Thus, Defendants' objections to this statement are SUSTAINED.

Defendants object to the statement made in the Jeffreys Declarations (para. 7 or 8) that, to the knowledge of each declarant, mortgage loan officers at all Wachovia locations performed the same job duties, but they fail to state the grounds of its objections.  *See* Dkt. 71 at 25.  Therefore, the objections are OVERRULED.

Defendants object to the statement made in the Jeffreys Declarations (para. 10 or 11) that Wachovia did not record the time worked by other mortgage loan officers as lacking foundation and being vague, conclusory, and speculative.  Dkt. 71.  The court agrees that there is no indication that these declarants had personal knowledge about whether Wachovia recorded the time worked by other mortgage loan officers.  Thus, Defendants' objections to this statement are SUSTAINED.

Defendants object to the statement made in the Bethea Declarations (para. 10), the Lavoie Declarations (para. 11), and the Jeffreys Declarations (para. 9 or 10), that the other loan officers sold home loans as their primary duty, were paid on a commission basis, regularly worked in excess of 40 hours a week, and were not paid overtime, as lacking foundation, being vague, conclusory, and speculative, and being an inadmissible lay opinion.  Dkt. 71.  There is no indication that these

28

declarants have personal knowledge of the primary duty, pay method, or amount of hours worked by other loan officers.  Accordingly, Defendants' objections to this statement are SUSTAINED.

Defendants object to the statement made in the Bethea Declarations (para. 12), the Lavoie Declarations (para. 13), and the Jeffreys Declarations (para. 11 or 12) that each declarant is personally aware that other loan officers would also primarily work in the office from both their observation of other officers and their understanding of the requirements inherent in the sale of mortgage loans, as lacking foundation, being vague, conclusory, and speculative, being an inadmissible lay opinion, and being an improper legal conclusion.  Dkt. 71.  Whether the other loan officers work in the office is not a legal conclusion.  Moreover, the declarants clearly state that they are making the statements because they are personally aware from their observation as well as their understanding of the requirements of the job.  Defendants' objections to this statement are OVERRULED.

Defendants object to the statement made in the Bethea Declarations (para. 10), the Lavoie Declarations (para. 11), and the Jeffreys Declarations (para. 9 or 10) that each declarant was told that all mortgage loan officers were paid on a commission only basis and were required to attend meetings with other mortgage loan officers as lacking foundation, being conclusory and speculative, being a lay opinion, and being impermissible hearsay.  The statement does not lack foundation, and it is not conclusory, speculative, or an inadmissible lay opinion.  As far as hearsay, the court finds that the statement is not hearsay because it "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed" and is being offered against the opposing party.  *See* Fed. R. Evid. 801(d)(2)(D).  Defendants' objections to this statement are OVERRULED.

Defendants object to the statement made in the declarations of Anderson-Mills (para. 8), Wright (para. 8), and Peer (para. 8) that these declarants would receive referrals from Wells Fargo

and also took potential customers that had been referred by various other referral sources such as realtors as lacking foundation, being vague, conclusory, and speculative, and being an inadmissible lay opinion. Dkt. 71. The court finds that these declarants had personal knowledge of how they received referrals. These objections are OVERRULED.

In sum, Defendants' objections to the declarations submitted by Plaintiffs are SUSTAINED IN PART AND OVERRULED IN PART. Defendants' motion to strike (Dkt. 71) is therefore GRANTED IN PART AND DENIED IN PART. The portions of the statements made by the declarants that contradict their deposition testimony or about which there is no indication that they have personal knowledge are hereby STRICKEN.

**B.     Defendants' Declarations**

Plaintiffs argue that the court should disregard or strike all of the declarations Defendants submitted with their response to the motions to conditionally certify because the declarations are from employees who were "cherry-picked" by Defendants. Dkt. 74. Plaintiffs also note that, during the California MDL, Wells Fargo obtained a declaration from an employee without advising her that she was potentially eligible to recover overtime as a result of the lawsuit or that her declaration could be used against her interests or those of the putative class. *Id.* (citing Exh. 8 (the employee's declaration in the California case) and Exh. 9 (an order in the California case finding Wells Fargo's interactions with this employee were misleading)). Defendants did not respond to Plaintiffs' motion to strike.

In *West v. Lowes Home Ctrs., Inc.*, the federal district court in the Western District of Louisiana noted that the defendant had submitted "happy camper" declarations that contradicted the statements made in the plaintiffs' declarations. No. 6:09-1310, 2010 WL 5582941, at *8 (W.D. La. Dec. 16, 2010). The court stated that it did not appear that the plaintiffs had deposed these declarants

and that, regardless, at the notice stage the plaintiffs were not even required to present deposition testimony. *Id.* The court thus appeared to give no little to no weight to the defendants' declarations. *See id.* at *8-9.

Similarly, in *Creely v. HCR ManorCare, Inc.*, the federal district court in the Northern District of Ohio noted that it was not "swayed" by the defendants' "happy camper" affidavits, which it deemed "of little use at this juncture." 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011). The court stated that the defendant's "argument that such affidavits show [that the plaintiff's] proposed class is unmanageable and overbroad" failed because "the Court's function at this stage of conditional certification is not to perform a detailed review of individualized facts from employees hand-picked by [the defendant]." *Id.* Indeed, the court noted that "questions of breadth and manageability of the class are left until the second-stage analysis following the receipt of forms from all opt-in plaintiffs." *Id.*

Here, the court allowed *limited* discovery for conditional certification purposes only. *See* Dkt. 54. Plaintiffs were able to depose corporate representatives for Wells Fargo and Wachovia, and defendants were able to depose a select group of plaintiffs. Plaintiffs were not permitted to depose *any* of the 35 employees who Wells Fargo hand-picked out of its 21,000 current and former HMCs to provide declarations. *See* Dkt. 72 (noting the number of Wells Fargo HMCs nationwide). The court agrees with the *West* and *Creely* courts' characterizations of these types of declarations at the notice stage as being "happy camper" declarations and finds that because Plaintiffs have not had an opportunity to depose these declarants, it is inappropriate to afford significant weight to their substance. *Cf. Creely*, 789 F. Supp. 2d at 840; *West*, 2010 WL 5582941, at *8; *see also Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 330 (S.D.N.Y. 2010) (noting that the defendant filed affidavits that asserted job responsibilities that vary from those described by the plaintiff but

declining "to wade into a thicket of competing factual assertions at [the] preliminary stage");

*Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, 2006 U.S. Dist. LEXIS 73090, at *25 (S.D.N.Y.

Oct. 4, 2006) (finding that the evidentiary value of 56 affidavits presented by the defendant was

"sharply limited by the fact that plaintiff had not yet had an opportunity, at the time the instant

motion was fully submitted, to depose any of the affiants" and determining that "untested evidence

such as the affidavits submitted by defendant cannot, under the circumstances present here, defeat

plaintiffs' entitlement to a preliminary determination that they are similarly situated").  Plaintiffs

request that the court strike the declarations.  However, none of the courts in the cases provided by

Plaintiffs has actually decided to strike the "happy camper" declarations.  Plaintiffs' motion to strike

the declarations (Dkt. 74) is therefore DENIED, but the court will give them minimal consideration.

### III. CONDITIONAL CERTIFICATION

**A.     Legal Standard**

Section 207(a) of the FLSA requires covered employers to compensate nonexempt employees

at overtime rates for time worked in excess of statutorily defined maximum hours.  29 U.S.C.

§ 207(a).  Section 216(b) creates a cause of action against employers who violate the overtime

compensation requirements.  29 U.S.C. § 216(b).  Section 216(b) also permits an employee to bring

a collective action lawsuit against an employer on "behalf of himself . . . and other employees

similarly situated." 29 U.S.C. § 216(b).  Employees who wish to participate in a § 216(b) collective

action must affirmatively "opt in" by filing a written consent to become a party with the court . *Id.*

The "opt-in" procedure of § 216(b) illustrates its "fundamental, irreconcilable difference" from a

class action under Federal Rule of Civil Procedure 23(c); in a Rule 23 proceeding, persons within

the class description are automatically considered class members and must "opt out" of the suit if

they do not wish to participate.  *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975).

The Fifth Circuit has declined to adopt a specific test to determine when a court should certify a class or grant notice in a § 216(b) action, but most federal courts (including this court) have adopted the *Lusardi* test.  *See Mooney*, 54 F.3d at 1214 (discussing but declining to adopt the test applied in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)); *Badgett v. Tex. Taco Cabana, L.P.*, No. H-05-3624, 2006 WL 2934265, at *1-2 (S.D. Tex. Oct. 12, 2006).  Under the *Lusardi* test, a district court approaches the question of whether the potential plaintiffs are "similarly situated" through a two-stage analysis.  *Mooney*, 54 F.3d at 1213.

The two stages of the *Lusardi* test are the "notice stage" and the "decertification stage." *Badgett*, 2006 WL 2934265, at *1.  At the notice stage, the court makes a decision, usually solely based on the pleadings and any submitted affidavits, whether to certify the class conditionally and give notice to potential class members.  *See Mooney*, 54 F.3d at 1213.  The decision is made using a "fairly lenient standard," because the court often has minimal evidence at this stage of the litigation.  *Id.* at 1214.  Courts, in fact, "appear to require nothing more than substantial allegations that putative class members were together the victims of a single decision, policy or plan. . ." *Id.* (quoting *Sperling*, 118 F.R.D. at 407).  Thus, notice stage analysis typically results in conditional certification of a representative class.  *Badgett*, 2006 WL 2934265, at *1.  After conditional certification, the "putative class members are given notice and the opportunity to 'opt-in.'" *Mooney*, 54 F.3d at 1214.

After notice issues, the action proceeds as a representative action.  *See id.*  The second stage of the *Lusardi* approach—the "decertification stage"—is typically precipitated by the defendant filing a motion to decertify after the opt-in period has concluded and discovery is largely complete.

33

*Id.*  "At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question."  *Id.*  If the court finds the claimants are no longer made up of similarly situated persons, it decertifies the class and dismisses the opt-in plaintiffs without prejudice.  *Id.*  If the class is still similarly situated, the court allows the collective action to proceed.  *Id.*

A "decision to certify, even if subject to correction at the decertification stage, is not without consequences" as "[t]oo much leniency at the notice stage can lead to a 'frivolous fishing expedition conducted by the plaintiff at the employer's expense'" and "extreme leniency at the notice stage can result in conditional certification that must later be revoked at the eve of trial . . . when it becomes obvious that manageability concerns make collective action impossible."  *Lang v. DirecTV, Inc.*, No. No. 10-1085, 2011 WL 6934607, at *6 (E.D. La. Dec. 30, 2011) (citations omitted).  For this reason, in cases in which parties have had the opportunity to conduct discovery prior to filing the motion for notice and conditional certification, some courts apply a more stringent inquiry.  *See*, *e.g.*, *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 802-03 (S.D. Tex. 2010) (Rosenthal, J.) (noting that courts may increase the plaintiffs' burden at the notice stage if discovery is largely complete); *Basco v. Wal-Mart Stores, Inc.*, No. 00-3184, 2004 WL 1497709, at *4 (E.D. La. Jul. 2, 2004) ("[I]n light of the substantial discovery that has occurred in this matter, the Court will consider the criteria for both the first and second steps in deciding whether to certify this matter.").  If there has been extensive discovery, some courts collapse the *Lusardi* two-stage process and subject the plaintiffs to the more stringent second-stage burden.  *See, e.g.*, *Harris v. FFE Transp. Servs., Inc.* No. 3:05-CV-0077-P, 2006 U.S. Dist. Court LEXIS 51437, at *7 (N.D. Tex. May 15, 2006) (applying the second stage of the *Lusardi* approach after the court gave the parties seven months to conduct discovery related to the certification issue); *Pfohl v. Farmers Ins. Grp.*, No. CV03-3080 DT (RCX), 2004 WL 554834,

at *2-3 (C.D. Cal. Mar. 1, 2004).  However, it is only appropriate to increase the plaintiffs' burden "after discovery is largely complete and the matter is ready for trial."  *Mooney*, 54 F.3d at 1214; *McKnight*, 756 F. Supp. 2d at 802-03.

**B.    Degree of Plaintiffs' Burden**

Here, Plaintiffs move for conditional certification under the first stage of the *Lusardi* approach.  Dkts. 63, 65.  Defendants argue that there is already significant discovery in this case as well as previous rulings from other courts that disfavor certifying the class and that conditionally certifying the class under the lenient first stage of the *Lusardi* approach at this point conflicts with the Supreme Court's *Wal-Mart v. Dukes* decision and the Rules Enabling Act.  Dkt. 72 at 3-4.  Thus, Defendants urge the court to apply a more stringent "intermediate" or modified *Lusardi* approach in which courts consider the evidence submitted and the two *Lusardi* stages collapse into one.

### 1.    *Significant Discovery*

The court does not believe that it is appropriate to apply the more stringent burden of the second stage of the *Lusardi* approach in this case.  "The fact that some discovery has been conducted does not increase the plaintiffs' burden at this first, conditional certification stage to the more onerous standard that applies at the second, decertification stage."  *McKnight*, 756 F. Supp. 2d at 802.  In *McKnight*, Judge Rosenthal determined that the plaintiffs were required to meet only the light burden of the first stage of the *Lusardi* approach even though the parties had deposed the plaintiffs, submitted deposition excerpts, and submitted other documents, as there was still "significant additional discovery to be completed, including discovery into the nature and extent of the relationships among the defendants."  *Id.* at 802.  Similarly, in this case, the parties have deposed

several plaintiffs and opt-in plaintiffs and submitted deposition excerpts and affidavits, but the court has allowed only limited conditional certification discovery.[9]  Dkt. 44.

Defendants assert that Plaintiffs are asking the court to "close its eyes to the more than 70 declarations, testimony of 9 deponents, voluminous documents, and the record in the earlier [California] MDL." Dkt. 72.  While the court understands that Wells Fargo was involved in similar litigation involving HMCs in California, this is a different case with different plaintiffs, and these plaintiffs have had a limited amount of time to conduct discovery.

Defendants cite *Harris v. FFE Transportation Services, Inc.*, *Basco v. Wal-Mart Stores, Inc.*, *Valcho v. Dallas County Hospital District*, and *Bunyan v. Spectrum Brands, Inc.* to support their argument that the court should apply a more stringent burden on the plaintiffs.  Discovery was in a significantly more advanced stage in *Harris*, *Basco*, and *Bunyan* than it is in this case.  In *Harris*, the parties had over seven months to conduct discovery on the certification issue, and the court found that this amount of discovery was "sufficient to engage the second step of the analysis."  *Harris*, 2006 WL 1994586, at *3.  In *Basco*, the case was filed on September 5, 2000.  2004 WL 1497709, at *1.  The complaint was amended five different times.  *Id.* at *2.  On March 17, 2003, the plaintiffs noted their desire to proceed as a collective action under the FLSA and sought discovery.  *Id.* at *1. The hearing for the certification of the collective action was set for March 2004.  *Id.*  The court, in determining that it was appropriate to consider the motion for certification under the second stage of the *Lusardi* approach, noted the extensive discovery and procedural history and stated that the case was "not in a nascent stage[]."  *Id.* at *4.  In *Bunyan*, the federal district court in the Southern District of Illinois noted that the first stage, in which a court conducts a more lenient analysis with

---

[9]  The court ordered 30 days for discovery on February 24, 2012, but the parties agreed to an extension of the time to complete pre-conditional certification depositions until April 20, 2012. *See* Dkts. 44, 48, 50.

regard to whether class members are similarly situated, occurs when parties "have engaged only in minimal discovery." *Bunyan v. Spectrum Brands, Inc.*, No. 07-CV-0089-MJR, 2008 WL 2959932, at *2 (S.D. Ill. Jul. 31, 2008). The *Bunyan* parties, however, had conducted over fifteen months of discovery. *Id.* The court found that an intermediate two-stage approach in which the plaintiffs must, at the initial stage, make a "'modest factual' showing" with "at least some minimal support for Plaintiffs' allegation that they, along with potential plaintiffs, are similarly situated in their job duties and their compensation plan" was appropriate. *Id.* at *6.

The only case Defendants cite in which the amount of discovery is comparable to the instant case is *Valcho*, but *Valcho* is distinguishable for other reasons. In *Valcho*, the plaintiff had three months of discovery, and the court determined that it could "therefore reasonably expect [the plaintiff] to be able to produce evidentiary support beyond the bare allegations contained in her complaint and personal declaration." *Valcho*, 574 F. Supp. 2d 618, 622 (N.D. Tex. 2008). The plaintiff, however, filed only one declaration, and there had been only one consent to join the lawsuit. *Id.* The court noted that it did "not intend that its powers be used for a 'frivolous fishing expedition,' [and that] it [would] hesitate to facilitate notice where a plaintiff, having already conducted discovery, still cannot support her claim with evidence." *Id.* (citations omitted). Here, Plaintiffs have provided numerous declarations supporting their claims—they have provided sufficient evidentiary support of their claims to assure the court that Plaintiffs are not simply using the court's power to issue notice to aid in a frivolous fishing expedition.

### 2. *Rulings from Other Courts.*

Defendants assert that this court should be "guided by the conclusions reached by the Ninth Circuit and California District Court in the earlier MDL case." Dkt. 72 at 6. Specifically, Defendants urge the court to find, as the California district court judge found on remand from the

Ninth Circuit, that the fact intensive individualized inquiry necessary for determining how the individual HMCs performed their jobs precluded class certification. *Id.* at 7; Dkt. 75 at 2. Defendants note that federal courts should apply principles of comity to each other's class certification decisions. Dkt. 72 at 6 (citing *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2382 (2011)).

Plaintiffs argue that the only issue before the Ninth Circuit that was remanded to the district court in the California MDL was the class certification under Federal Rule of Civil Procedure 23—not the conditional certification of the FLSA class—and that the decertification of the Rule 23 class has no bearing on this court's determination of whether to conditionally certify an FLSA collective action. Dkt. 73 at 3.

In the California MDL, the court certified a Rule 23 class of nationwide plaintiffs based on an alleged violation of the California Unfair Competition Law, and a collective class based on an alleged violation of the FLSA. Dkt. 63, Exh. 44 (Memorandum of Points and Authorities, *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, No. 3:06-md-1770-MHP (Jul. 26, 2010)). The court also certified a California class under Rule 23. *Id.* Wells Fargo filed an interlocutory appeal of the Rule 23 certification pursuant to Rule 23(f) and 28 U.S.C. § 1292(e). *See In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 956 (9th Cir. 2009). The Ninth Circuit reversed the district court's order certifying the class of California plaintiffs and remanded the case for a new certification analysis, noting that district court improperly relied on Wells Fargo's uniform exemption policy "to the near exclusion of other factors relevant to the predominance inquiry."[10] *Id.* at 959. The Ninth Circuit did not address the certification of the nationwide FLSA collective class. *See id.* After remand, the district court conducted a new Rule 23 certification analysis with

---

[10] The Ninth Circuit did not address the Rule 23 certification of the nationwide class because it was waiting for a decision by the California Supreme Court relating to whether the California Unfair Competition Law could even be applied to non-California workers. Dkt. 63, Exh. 44.

regard to the California Rule 23 class, noted that although "there are some issues in this case amenable to common proof, individual inquiries will predominate over common questions," and denied the plaintiffs' renewed motion for Rule 23 class certification. *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 268 F.R.D. 604, 613 (N.D. Cal. 2010). The parties then mediated the cases and agreed to settle the FLSA collective action claims and dismiss the Rule 23 claims. Dkt. 63, Exh. 44.

At this point, the court is merely considering whether to conditionally certify an FLSA collective action class. While the court understands that the California district court determined that the case was inappropriate for certification under Rule 23, its initial ruling conditionally certifying the FLSA class and allowing notice remains undisturbed. Defendants strenuously argue that the California district court judge's finding on remand that an individual, fact intensive analysis would be required to determine how each HMC performs his or her duties applies equally whether one is considering a Rule 23 certification or an conditional certification of an FLSA collective action. Dkt. 75. But the standards for Rule 23 certification and conditional certification of an FLSA collective action are *different*. The Plaintiffs' burden here is light. Thus, the California district court's finding is not dispositive.

### 3. Wal-Mart v. Dukes *and the Rules Enabling Act.*

Defendants next argue that Plaintiffs' assertion that the court should apply the lenient first-stage burden here conflicts with the Supreme Court's *Wal-Mart v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541 (2011), decision and the Rules Enabling Act. Dkt. 72 at 4. In *Dukes*, the Supreme Court was considering whether the certification of "one of the most expansive class actions ever" was consistent with Federal Rules of Civil Procedure 23(a) and (b)(2). *Dukes*, 131 S. Ct. at 2546. The Supreme Court found that "the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge

or modify any substantive right,'" and that, as such, it was inappropriate to certify the class because Wal-Mart could not have litigated its statutory defenses to the individual claims.[11]  131 S. Ct. at 2561.  Here, the court is considering whether to conditionally certify an opt-in class under the FLSA, not whether to certify an opt-out Rule 23 class.  Most courts that have considered whether to apply *Dukes* to FLSA collective actions—particularly at the notice stage—find that it is inapplicable.  *See, e.g.*, *Romero v. Fl. Power & Light Co.*, No. 6:09-cv-1401-Orl-36, 2012 WL 1970125, at *4 (M.D. Fla. June 1, 2012) (finding that *Dukes* was inapplicable to an FLSA collective action because, among other reasons, Rule 23 has different procedural requirements for certification and potentially binds absent class members); *Lagasse v. Flextronics Am., LLC*, No. CA 11-445 ML, 2012 WL 2357442, at *4 (D.R.I. June 1, 2012) (finding that *Dukes* is distinguishable because, among other reasons, "*Dukes* was decided in the context of a Rule 23 'opt-out' class action" not as "an FLSA 'opt-in' collective action" and the "showing required for certification pursuant to Rule 23 . . . is more demanding than that required pursuant to the FLSA" (citations and quotations omitted)); *Richardson v. Wells Fargo Bank, N.A.*, No. 4:11-cv-00738, 2012 WL 334038, at *2 n.8 (S.D. Tex. Feb. 2, 2012) (declining to rely on *Dukes* when determining whether to conditionally certify an FLSA collective action "because Rule 23 certification requirements do not apply to FLSA collective actions" (citing *LaChapelle*, 513 F.2d at 288)); *Robinson v. Ryla Teleservs., Inc.*, No. CA 11-131-KD-C, 2011 WL

---

[11]  The Rules Enabling Act gives the Supreme Court "the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts . . . and courts of appeals."  28 U.S.C. § 2072(a).  The rules "shall not abridge, enlarge or modify any substantive right."  *Id.* § 2072(b).  In *Dukes*, the Supreme Court determined that applying Federal Rule of Civil Procedure 23 in a way that prohibited Wal-Mart from litigating its statutory defenses to individual claims violated the Rules Enabling Act.  *Dukes*, 131 S. Ct. at 2561.  While courts have determined the procedure for certifying opt-in classes under the FLSA—i.e. the *Lusardi* approach—these are not "general rules of practice and procedure" prescribed pursuant to the Rules Enabling Act.  Thus, the *Wal-Mart v. Dukes* holding is not applicable to the determination of whether the court should apply a lenient standard at the notice stage.

40

6667338, at *3 (S.D. Ala. Dec. 21, 2011) ("[I]f applicable at all, *Dukes* is not applicable at the first

step of the two-step collective action certification process").  *But see Karlo v. Pittsburgh Glass*

*Works,* LLC, __ F.R.D. __, 2012 WL 1621265, at *15 (W.D. Pa. May 9, 2012) (agreeing with the

defendant's argument that *Dukes* is "instructive in collective action context" but finding that

applying it would not result in denial of conditional certification); *Ruiz v. Serco, Inc.*, No. 10 Civ.

394, 2011 WL 7138732, at *6-7 (W.D. Wis. Aug. 5, 2011) (stating that "collective actions under the

FLSA are not subject to the provisions generally associated with class actions under Fed. R. Civ. P.

23 . . . [but] the Court's discussion of the propriety of class actions generally provides guidance in

deciding when certification of a collection [sic] action under the FLSA is appropriate"); *MacGregor*

*v. Farmers Ins. Exchange*, No. 2:10 Civ. 03088, 2011 WL 2981466, at *4 (D.S.C. Jul. 22, 2011)

(noting that while "collective actions under FLSA are not subject to the provisions generally

associated with class actions under FRCP 23 [but *Dukes*] is nonetheless illuminating" (citations and

quotations omitted)).  This court likewise does not find *Dukes* applicable to the first-stage analysis.

## C.    Analysis

        While the notice stage standard is lenient, it is not automatic.  *Badgett*, 2006 WL 2934265,

at *2.  The plaintiff bears the burden of making a preliminary factual showing that a similarly

situated group of potential plaintiffs exists.  *Id.*  To establish this, the plaintiff must make a minimal

showing that: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals

exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given

the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Maynor*

*v. Dow Chem. Co.*, No. G-07-0504, 2008 WL 2220394, at *6 (S.D. Tex. May 28, 2008) (referencing

*Prater v. Commerce Equities Mgmt. Co.*, No. H-07-2349, 2007 WL 4146714, at *4 (S.D. Tex. Nov.

19, 2007), and *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *5 (S.D. Tex. Jan. 24, 2007)).

Here, a significant number of potential plaintiffs have already filed notices of consent to join this litigation, so the court's inquiry will focus on whether the putative class is similarly situated. A court may deny conditional certification and notice "'if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice.'" *Id.* (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)). However, the court "'need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated.'" *Id.* (quoting *Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 106 (D. Conn. 2007)). The "remedial nature of the FLSA and the purposes of Section 216 militate strongly in favor of allowing cases to proceed collectively." *Roussell v. Brinker Int'l, Inc.*, No. H-05-3733, 2008 WL 2714079, at *24 (S.D. Tex. July 9, 2008).

Plaintiffs assert that the Wachovia mortgage consultants are similarly situated with respect to job duties and pay provisions and that they were subject to a common policy that violates the FLSA because they were misclassified as exempt. Dkt. 65. Plaintiffs assert that the Wells Fargo home mortgage consultants were likewise similarly situated with respect to job duties and pay provisions and that they were subject to a common policy that violates the FLSA because they were misclassified as exempt. Dkt. 63. Defendants assert that Wachovia MCs and Wells Fargo HMCs were independent entrepreneurs developing their own business, that their specializations impacted how and where they performed their work, and that they all worked differently with regard to individual marketing strategy and geographic location. Dkt. 72. They further assert that the similarly situated analysis must focus on whether the plaintiffs uniformly did their jobs in a manner that rendered them non-exempt under one or more of the FLSA overtime exemptions asserted by

Defendants, which them claim is highly fact intensive and makes conditional certification inappropriate. *Id.*

The court finds, after considering the admissible portions of the declarations submitted by the three named Wells Fargo plaintiffs, four named Wachovia plaintiffs, twenty-seven opt-in Wells Fargo plaintiffs, and twelve opt-in Wachovia plaintiffs, that Plaintiffs have presented enough evidence of similarity among the proposed members of the two proposed classes to allow notice to potential class members.  These declarations indicate that each plaintiff or opt-in plaintiff was primarily responsible for selling or "originating" mortgage loans by reviewing loan applications, running credit reports, collecting financial information and documents from the applicant, entering the information into the company computer program that processes loan applications, and communicating the results to the customer.  *See* Dkt. 63, Exhs. 3, 5, 6, 8-34; Dkt. 65, Exhs. 4-19.  Each plaintiff or opt-in plaintiff was also responsible for promoting Wells Fargo's or Wachovia's home mortgage products**,** and the plaintiffs or opt-in plaintiffs did this by distributing marketing materials provided by Wells Fargo or Wachovia.  Dkt. 63, Exhs. 3, 5, 6; Dkt. 65, Exhs. 4-7.  There is some variation as to where and how often the HMCs or MCs distributed this material—some appear to have spent more time than others going to open houses and visiting with realtors or builders.  *See, e.g.*, Dkt. 70, Exh. A-40 (describing visiting three to four realtors' offices about once a week and going to open houses about once a month); Exh. A-43 (noting that she visited realtors about once a month); A-44 (stating that he visited realtors and builders and attended open houses and that he would spend ten minutes to one hour at an open house).  However, the declarations indicate that Wells Fargo and Wachovia expected their HMCs or MCs to market externally to builders or realtors.  *See* Dkt. 70, Exh. A-45, Exh. 1 (negative performance evaluation in which MC's supervisor requested that the employee "[p]erform one external daily activity from a prospective realtor or

builder within the market" to help "correct the problem"); *see also, e.g.*, Dkt. 63, Exh. 3 ("Wells Fargo required that I distribute promotional materials prepared by Wells Fargo about its mortgage business to realtors, builders, and Wells Fargo branches."); Dkt. 63, Exh. 4 ("One of the ways I [promoted Wells Fargo] was by distributing promotional materials prepared by Wells Fargo about its products to realtors, builders, and Wells Fargo branches."); Dkt. 63, Exh. 6 (same); Dkt. 65, Exh. 4 ("An additional job responsibility of mine was to market Wachovia as a means to generate business. . . [and] [o]ne of the ways I did this was by distributing flyers prepared by Wachovia about its products to realtors, builders, and Wachovia bank branches."); Dkt. 65, Exh. 5 (noting that she promoted Wachovia by "distributing flyers . . . to Wachovia retail bank branches"); Dkt. 65, Exh. 7 (stating that one of her additional job responsibilities was promoting Wachovia by "distributing flyers prepared by Wachovia about its products to realtors, builders, and Wachovia bank branches").

The Wells Fargo named plaintiffs stated in their declarations that they all attended standard training sessions and received standardized scripts. Dkt. 63, Exhs. 3, 5, 6. Wells Fargo's corporate representative testified that all the HMCs were required to attend training called CORE Sales Skills, which "teaches fundamental sales skills, . . . [and] how [to] define features and benefits or give an initial benefit statement to generate interest from a referral source or how to overcome objections." Dkt. 63, Exh. 1 at 134-35. Wachovia's corporate representative testified that MCs from all over the country came to a centralized Training Center in Charlotte, North Carolina, for training that "ranged from how do you get your badge . . . to others." Dkt. 65, Exh. 1 at 133-35. The Wachovia named plaintiffs stated in their declarations that they attended a one-week initial training program with MCs from all over the country and that the training taught them how to originate home mortgages. Dkt. 65, Exhs. 4-8.

HMCs and MCs were deemed exempt under the FLSA prior to March 27, 2011, and they were compensated on a commission-only basis without overtime compensation.[12]  Dkt. 63, Exh. 1 at 12-15; Dkt. 63, Exh. 2.  If they did not sell a mortgage during a pay period, they still received a paycheck, but it was in the form of a "draw," which would be deducted from future commissions. Dkt. 63, Exh. 2; Dkt. 65, Exh. 2; *see also* Dkt. 65, Exh. 22 (Wachovia MC Compensation Plan). After April 1, 2011, the HMCs at Wells Fargo were reclassified as nonexempt.[13]  Dkt. 63, Exh. 1.

Plaintiffs submitted 29 declarations from Wells Fargo HMCs indicating that they worked long hours, and Wells Fargo's representative testified that Wells Fargo did not keep track of the HMCs' time.  Dkt. 63; Dkt. 63, Exhs. 1, 4-6, 8-34.  Similarly, Plaintiffs submitted 15 declarations from Wachovia MCs indicating that they regularly worked more than 40 hours a week, and the Wachovia corporate representative testified that the MCs "worked all the time, around the clock." Dkt. 65 at 20; Dkt. 65, Exhs. 1, 4-19.  The Wells Fargo corporate representative testified that Wells Fargo had timekeeping software available but that Wells Fargo did not keep track of the time of HMCs.  Dkt. 63, Exh. 1 at 150-51.  The Wachovia corporate representative similarly testified that Wachovia had a timekeeping system and that he did not recall the MCs using the system.  Dkt. 65, Exh. 1 at 112-13.

Defendants argue that HMCs were not similarly situated because HMCs can set their own schedules, itineraries, and work plans, that most HMCs generate loans directly or through their own referral sources, which are as varied as the HMCs can generate and include real estate agents, financial advisors, bankers, former clients, industry organizations, residential builders, and

---

[12]  The Wells Fargo HMCs that worked at the centralized phone channel were not deemed exempt.  Dkt. 63, Exh. 1 at 14.

[13]  Wachovia had already merged with Wells Fargo at this point.  *See* Dkt. 65.

construction companies. Dkt. 72 at 11-12. Defendants assert that the MCs at Wachovia had similar autonomy—they were responsible for outside sales origination through solicitation of builders, developers, real estate agents, brokers, and financial institutions, and their daily routines varied from region to region and office to office. *Id.* Wells Fargo pays HMCs an average annual compensation of just over $81,000, and many Wachovia mortgage consultants earned over $100,000 a year. *Id.* at 12. Defendants further assert that HMCs are not similarly situated because they can specialize, which influences their duties, the amount of time they spend in the office, and their compensation. *Id.* at 13; Dkt. 70, Exh. A-1. HMCs may specialize with respect to prime mortgages, reverse mortgages, renovation mortgages, builder developments, or emerging markets, and Defendants assert that these specializations influence an HMC's duties, the amount of time he or she spends in the office, and compensation. Dkt. 72 at 13; Dkt. 70, Exh. A-1. Defendants also contend that the declarants' work experiences are not reflective of the diverse work experiences of other HMCs throughout the country. Dkt. 72 at 20. Specifically, they contend that the plaintiffs named in the *Richardson* case all worked for a single manager in Houston, Texas, did not have a specialty, were fairly short-term employees, and were low to average performers. Dkt. 72 at 19. With regard to the plaintiffs named in the *Chaplin* case, Defendants contend that they all worked for a single manager in the Houston, Texas area, and they worked for varying lengths of time and with varying success. Dkt. 72 at 20. Defendants point out that HMCs or MCs who work or worked in large metropolitan areas such as New York or Chicago will necessarily have different job duties than HMCs or MCs who work or worked in rural farming communities. Dkt. 72 at 15.

Plaintiffs assert that while different types of mortgage loans exist, HMCs and MCs, even if specialized, are originating mortgage loans, and, as acknowledge by Wells Fargo's corporate representative, at least 90% of all HMCs deal with prime loans. Dkt. 73; Dkt. 73, Exh. 1 at 67-69.

About 2-3% deal with renovation loans, Dkt. 73, about 5% deal with reverse mortgages, and less than 1% deal with emerging markets.  Dkt. 73, Exh. 1 at 68-69.  As far as geographic diversity, Plaintiffs note that the 48 Wells Fargo plaintiffs include HMCs who were employed in Texas, New York, Connecticut, Washington, South Carolina, and Idaho, and the 30 Wachovia plaintiffs include people who were employed in Texas, New York, Connecticut, and Georgia.  Dkt. 73 at 9 (citing Dkt. 63, Exh. 35; Dkt. 65, Exh. 20).

The court finds that Plaintiffs have met their burden with regard to showing that the Wachovia MCs were similarly situated and the Wells Fargo HMCs were similarly situated.  Their jobs do not have to be identical, just similar.  *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 534 (S.D. Tex. 2008) ("Courts have repeatedly stressed that Plaintiffs must only be similarly-not identically-situated to proceed collectively." (collecting cases)).  It is only when the job duties of putative class members vary significantly that collective action certification should be denied.  *See, e.g., Aguirre*, 2007 WL 772756, at *9.  Here, while Wells Fargo and Wachovia have shown that there are some variations in the ways in which some HMCs or MCs performed their jobs, they have not overcome the significant evidence provided by Plaintiffs that the main duty of these employees—originating home loans—was the same, they were paid the same way, they received standardized training, and when they marketed Wells Fargo's mortgage products, they used standardized promotional materials.

Defendants next argue that the court must evaluate whether Plaintiffs are similarly situated in the context of the overtime exemptions being asserted.  Dkt. 72 at 21.  They assert that what matters is not whether Plaintiffs had similar job requirements but whether they uniformly did their jobs in such a way as to render them non-exempt under the FLSA.  *Id.*  Plaintiffs assert that this is

a merits-based argument and not properly considered at the notice stage. Dkt. 73 at 17.  Moreover, Plaintiffs argue that the exemption defenses lack merit.  *Id.* at 20.

Defendants first cite, in support of their argument that the court should consider overtime exemptions in its similarly situated analysis, is *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567 (E.D. La. 2008).  *Johnson* involved a motion to decertify after the conclusion of a trial.  561 F. Supp. 2d at 571.  The *Johnson* court was "considering the propriety of certification in light of factual developments."  *Id.*  Here, the parties have not even completed substantive discovery; *Johnson* is not on point.

The next case Defendants cite is *Harris v. FFE Transportation Systems*, 2006 U.S. Dist. LEXIS 51437.  As noted above, in *Harris*, the parties had seven months to conduct discovery and the court found it was appropriate to move on to the second stage of the *Lusardi* approach.  Here, the court has found that the more lenient first-stage burden is appropriate.  Thus, *Harris* is not on point.

Defendants next cite *Evancho v. Sanofi-Aventis U.S. Inc.*, No. 07-2266, 2007 U.S. Dist. LEXIS 93215 (D.N.J. Dec. 18, 2007).  In *Evancho*, the court determined not to conditionally certify an FLSA collective action under the lenient first-stage of the two-stage approach.  2007 U.S. Dist. LEXIS 93215, at *13.  The *Evancho* defendants argued that the plaintiffs were not similarly situated because they fell into different FLSA exemptions.  *Id.* at *10.  The court noted that it "need not reach the merits of these exemption arguments at this point," but found, based on evidence submitted relating to the exemptions, that there were too many differences in the job responsibilities of the plaintiffs and potential collective action members to meet the similarly situated standard.  *Id.* at *13.  Here, like in *Evancho*, the court need not reach the merits of the exemptions.  Unlike in *Evancho*,

the court otherwise finds the plaintiffs' job responsibilities are similar and that notice and conditional certification is appropriate.

Finally, Defendants cite *Holt v. Ride Aid Corp.* and *Clausman v. Nortel Networks, Inc.* Dkt. 72 at 22 n.60 (citing *Holt*, 333 F. Supp. 2d 1265, 1274-75 (M.D. Ala. 2004) and *Clausman*, No. IP 02-0400, 2003 U.S. Dist. LEXIS 11501, at *13 (S.D. Ind. May 1, 2003)). In *Holt*, the court considered evidence presented by defendants, but noted that it was not *weighing* the evidence. 333 F. Supp. 2d at 1274. In *Clausman*, the court denied conditional certification due to the individualized inquiry that would be necessary to determine if the proposed plaintiffs met the outside salesman exemption. 2003 U.S. LEXIS 11501, at *13. These cases stand in contrast to several cases in the Southern District of Texas that have determined that exemptions are merit-based and not relevant at the notice stage. *See, e.g.*, *Coffin v. Blessey Marine Servs.,* Inc., No. H-11-0214, 2011 WL 1103795, at *3 (S.D. Tex. Mar. 23, 2011) (Atlas, J.) (denying the defendant's request for discovery on the merits relating to an exemption at the conditional certification stage); *Dreyer v. Baker Hughes Oilfield Ops., Inc.*, No. H-08-1212, 2008 WL 5204149, at *2 (S.D. Tex. Dec. 11, 2008) (Smith, J.) (holding that the defendant's argument that "several FLSA exemptions—such as administrative, computer employee, and highly compensated employee exemptions—counsels against conditional certification" failed "because exemptions are merits-based defenses to an FLSA claim" and thus the "possible applicability of one or more of them cannot defeat conditional certification"); *Foraker v. Highpoint Sw., Servs., L.P.*, No. H-06-1856, 2006 WL 2585047, at *4 n.16 (S.D. Tex. Sept. 7, 2006) (Atlas, J.) (rejecting the defendant's argument that conditional certification was inappropriate because the plaintiffs were supervisors and exempt under the executive exemption because the argument went "to the merits of whether the employees are exempt . . . and is not a

persuasive basis to deny notice").  This court prefers to follow the cases in this district and thus hold

that Defendants' merits-based arguments are irrelevant at this time.[14]

### IV. CONCLUSION

The court finds that the lenient notice stage burden applies and that Plaintiffs have met their

burden of showing that a similarly situated group of plaintiffs exist.  According, Plaintiffs' motions

for conditional certification and to facilitate notice pursuant to 29 U.S.C. § 2216(b) (Dkt. 63, 65) are

GRANTED.  The class definitions listed in Part I of this order are hereby APPROVED.  With regard

to notice, the court ORDERS the following:

A.      Within twenty (20) days of the date of this order, Defendants shall provide to Plaintiffs'

        counsel a list both electronically[15] and by hard copy, of all individuals (1) who have worked

        for Wachovia as a MC[16] at any time from February 23, 2008, to December 31, 2009, and who

        (a) were paid on a commission basis under a Wachovia Mortgage Corporation or Wachovia

        Corporation compensation plan and (b) were classified as exempt for purposes of the FLSA;

        and (2) who have worked for Wells Fargo as an HMC[17] at any time from February 11, 2008,

---

[14] Plaintiffs additionally argue that the fact that Defendants treated HMCs or MCs the same with regard to pay classification—both in classifying them as exempt prior to March 27, 2011, and in reclassifying them as exempt after March 27, 2011—supports the similarly situated argument. Dkt. 73 at 9.  Defendants argue that what matters is what Plaintiffs actually do on a daily basis, not whether they are classified as exempt or nonexempt. Dkt. 72 at 34.  The court need not reach this issue because it finds that Plaintiffs have met their burden of showing that they are similarly situated with respect to job duties.

[15] The electronic copy or copies shall be in an Excel spreadsheet with each item of the person's last name, last known address, phone number, job title, and dates of employment designated in a separate field.

[16] "MC" includes any individual who performed the job functions of a loan originator or mortgage loan officer with the job title of mortgage consultant, mortgage loan officer, loan originator, mortgage sales, or any similar job title.

[17] "HMC" includes any individual who performed the job functions of loan originator or mortgage loan officer with the job title of home mortgage consultant, mortgage loan officer, private

to March 31, 2011, and who (a) were paid on a commission basis and (b) were classified as exempt workers for purposes of the FLSA.[18]   After providing the list or lists to Plaintiffs' counsel, Defendants shall file with the court a certification that they have provided the list or lists.

B.   Plaintiffs' counsel and Defendants' counsel shall meet and confer about the notice form as soon as possible.  Within twenty (20) days of the date of this order, Plaintiffs' counsel shall submit to the court either an agreed notice form, or Plaintiffs' counsel shall present the court with a proposed form and an opposed motion for approval of the form that complies with this court's procedures with regard to briefing.  Defendants shall respond to the Plaintiffs' motion for approval, succinctly stating their objections, within ten (10) days after the motion for approval is filed.

C.   The "Notice Period" commences seven (7) days after Defendants file with the court a certification that they have provided the list or lists to Plaintiffs as detailed in paragraph A, and it shall continue until ninety (90) days after the court issues a ruling with regard to the notice form.

D.   Until the Notice Period expires, Defendants shall not email, mail, or use any other method of communication to discuss any aspect of this lawsuit with any of Defendants' current or former HMCs or MCs whose names appear on the lists provided under paragraph A, except as otherwise ordered or authorized by this court.  Nothing in this order shall be construed to

---

mortgage banker, junior home mortgage consultant, reverse home mortgage consultant, renovation home mortgage consultant, emerging markets home mortgage consultant, or any similar job title.

[18]   Defendants are free to place all MCs and HMCs on the same list, but Defendants shall list the place or places of employment on the list—in a separate field in the electronic version—if the Wachovia and Wells Fargo employees are submitted on the same list.

prohibit Wells Fargo from properly managing its operations or personnel issues.  If inquiries are initiated by any individual whose name appears on the lists described in paragraph A who are unrepresented regarding this lawsuit, Defendants shall direct the individual to refer to the notice form approved by this court and make no further comment.

E.     Nothing in this order shall be construed to limit or waive any parties' right to seek modification or any other relief from the court relating to this order.

Additionally, Defendants' motion to strike (Dkt. 71) is GRANTED IN PART AND DENIED IN PART, and Plaintiffs' motion to strike (Dkt. 74) is DENIED.

It is so ORDERED.

Signed at Houston, Texas on August 10, 2012.

_____
Gray H. Miller
United States District Judge