UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: WELLS FARGO WAGE AND HOUR EMPLOYMENT PRACTICES LITIGATION (NO. III) | § § § | MULTI-DISTRICT LITIGATION CASE NO. H-11-2266 |

### ORDER

Pending before the court is Plaintiffs' motion for approval of Fair Labor Standards Act ("FLSA") notice forms and methods and for a longer notice period. Dkt. 95. After considering the motion, related filings, arguments during a hearing on May 1, 2013, and applicable law, the court is of the opinion that the motion should be GRANTED IN PART AND DENIED IN PART.

### I. BACKGROUND

This is a multi-district litigation case involving claims for overtime compensation by plaintiffs who work or have worked for Defendants as home mortgage consultants ("HMCs") or mortgage consultants ("MCs"). *See* Dkt. 81. The court has conditionally certified two collective action classes of plaintiffs—one consisting of MCs who worked for Wachovia, and one consisting of HMCs who worked or work for Wells Fargo.[1] Dkt. 81. In the order conditionally certifying these collective action classes, the court instructed the parties to meet and confer about the notice form and either file an agreed notice form or a proposed form and opposed motion for approval. *Id.* The court also approved a 90-day notice period, which was to commence upon the court's approval of the notice form. *Id.* Before the notice form issues could be resolved, however, Defendants petitioned the Fifth Circuit Court of Appeals for a writ of mandamus challenging the process by which courts in the Southern District of Texas certify collective actions under section 216 of the FLSA. *See*

---

[1] See Docket Entry 81 for an exact definition of the two collective action classes.

Dkt. 82.  The Fifth Circuit stayed the proceedings while this petition was pending.  Dkt. 88.  It denied the petition approximately six months later.  Dkt. 93.  The parties then met and conferred about the notice form, but were unable to agree.  Dkt. 95.  Plaintiffs have now moved the court to approved their proposed notice as well as approve various different methods of notice, which they urge the court to accept to ensure all potential plaintiffs receive notice.  *Id.*  Plaintiffs additionally request an extension in the length of the notice period.  *Id.*  Defendants object to the longer notice period, and instead argue that 60 days is sufficient.  Dkt. 98.  Defendants also argue that notice by first-class mail is sufficient and that all of the alternative methods proposed by Plaintiffs are unnecessary.  *Id.*  Finally, Defendants object to several sections of the proposed notice form.  *Id.*

## II.  LONGER NOTICE PERIOD

Plaintiffs request that the court expand the notice period from 90 days to 180 days due to the seven-month delay while defendant Wells Fargo sought a writ of mandamus.  Dkt. 95.  Plaintiffs argue that there is a high turnover rate among the potential class members and that additional time is therefore warranted to allow for returned mail, follow up on returned notice forms, and research on addresses that are no longer valid.  *Id.*; Dkt. 102 (noting that the nationwide turnover rate among HMCs is 40-45% per year).  Defendants argue that the notice period should be limited to, at most, 60 days.  Dkt. 98.  They point out that Plaintiffs have a professional claims administrator and that they have presented no evidence that this professional claims administrator will need more than the standard notice period to complete the notice process.  *Id.*

Plaintiffs have adequately justified a slightly longer than normal notice period, given the heavy turnover rate of the potential class members.  The court believes a 120-day notice period will be sufficient.  Plaintiffs' motion for an extended notice period is therefore GRANTED IN PART.  The notice period shall continue until 120 days after the date of this order.

### III. ALTERNATIVE METHODS OF NOTICE

Plaintiffs request to send notice by mail and email, and to provide notice on the Internet, Defendants' Intranet, and by posting in Defendants' offices. Dkt. 95. Plaintiffs also would like to disseminate a reminder notice to alert potential plaintiffs that the deadline for the notice period is approaching and to provide a recorded message to class members both at the time notice is disseminated and no later than 30 days prior to the expiration of the notice period. *Id.* Finally, they request that the court order Defendants to provide social security numbers for each putative class member whose notice is returned undeliverable so that they can locate those class members to provide notice. *Id.*

Defendants argue that first-class mail is the preferred method for notification and that alternative methods are permissible only when first-class mail is shown to be insufficient. Dkt. 98. They point out that the Supreme Court has cautioned that "'trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action,'" and that the multiple forms of notice requested cross that line. *Id.* (quoting *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 174, 110 S. Ct. 482 (1989)).

**A.     Email**

Defendants state that the only email addresses they have are corporate email addresses for current employees. *Id.* Since Defendants should also have the current home addresses for current employees, the provision of email addresses would not facilitate notice. *Id.* Moreover, Defendants argue that allowing notice via email increases the risk of distorting the court-approved notice, since it is easily altered and forwarded to unintended recipients. *Id.* The court agrees that the provision of email addresses will likely not facilitate notice in this case. Plaintiffs' request to provide notice via email is therefore DENIED.

**B.      Posting on Wells Fargo Intranet and at Wells Fargo Offices**

Defendants point out that posting on Wells Fargo's Intranet and at its offices would only provide notice to current employees, for whom the home addresses should be valid. *Id.* Defendants assert that the postings would thus merely be supplemental to the mailed notice and are therefore overly intrusive. *Id.* The court agrees that these postings would not facilitate notice in this case. Plaintiffs' request that the court require such postings is therefore DENIED.

**C.      Internet Site**

Plaintiffs request, in addition to their other proposed forms of notice, leave to establish a website with the court-approved notice and related information, including opt-in forms. Dkt. 95. The proposed website would allow potential plaintiffs to view the notice and learn about the status of the litigation, and they would be able to execute consent forms online by electronically providing their name, current contact information, date of birth, and last four digits of their social security number, all in a secure manner. *Id.* Defendants argue that Plaintiffs have not shown that first-class mail will not be an effective form of notice, as notice administration companies generally employ effective address location tools. Dkt. 98. Defendants warn that allowing additional methods of notice will result in judicially-endorsed solicitation and perceived endorsement of Plaintiffs' claims. *Id.*

This case involves a large number of potential plaintiffs, and due process requires that these potential plaintiffs receive adequate notice. There is also an extremely high turnover rate for people in the jobs at issue (*see* Dkt. 102), which could result in a large number of letters being returned because people have moved. Defendants argued that the percentage of notices returned due to bad addresses in a previous case was only 1.72%. Dkt. 98 & May 1, 2013 Hearing. Even if the rate were similar here, the list of potential plaintiffs currently contains 14,800 individuals, which would mean

254 to 255 people would not receive notice at a 1.72% miss rate. A website could potentially help find these missing individuals. Plaintiffs' request to publish notice on the Internet in addition to mailing notice is GRANTED.

**D. Reminder Notice and Recorded Message**

Defendants assert that Plaintiffs' proposed reminder notices will merely stir up litigation and inappropriately encourage putative plaintiffs to join the suit. Dkt. 98. They additionally argue that reminders would not be necessary if the notice period were not so long. *Id.* While the court is approving a somewhat longer notice period, it does not believe reminder notices are necessary or appropriate. The proposed phone messages likewise are not necessary to effectuate notice. Accordingly, Plaintiffs' requests to disseminate reminder notices and recorded messages are DENIED.

**E. Social Security Numbers**

Defendants argue that the court should reject Plaintiffs' request for the social security numbers of putative class members whose notice is returned undeliverable due to the private, personal nature of this information. Dkt. 98. Defendants propose that the court require Defendants to provide less private information, such as email addresses or telephone numbers, for potential plaintiffs whose notices are returned undeliverable. *Id.*

Defendants have already conceded that they do not have email addresses for former employees, and if the former employees have moved, the phone numbers Defendants have on file likely will not work, either. While the court agrees that social security numbers are very personal and private, it finds that in the event that Plaintiffs' professional claims administrator is unable to locate the potential plaintiffs whose notice forms are returned as undeliverable by other means, the use of social security numbers for the limited purpose of locating the current addresses of these

potential plaintiffs is permissible.  Accordingly, Plaintiffs' request for the social security numbers

of potential plaintiffs whose notice is returned undeliverable is GRANTED IN PART.  Plaintiffs'

professional claims administrator must provide an affidavit certifying that he or she was unable to

locate the addresses of these individuals by less intrusive means.  Defendants shall provide the social

security numbers of these potential plaintiffs only.  The documents containing these social security

numbers shall be considered highly confidential and shall be provided only to the attorney in charge

of communicating with the professional claims administrator, who shall then provide them only to

the professional claims administrator.   These documents shall be destroyed as soon as the

professional claims administrator has successfully located the potential plaintiffs.

### IV.  PROPOSED NOTICE FORMS

Plaintiffs seek approval of the notice form they attached to their motion.  Dkt. 95 & Ex. 1.

They note that courts generally use the plaintiffs' notice as a starting point and argue that courts

should not alter the plaintiffs' proposed notice unless alteration is necessary.  Dkt. 95.  Defendants

argue that the proposed notice does not provide objective and neutral information and does not fully

inform potential plaintiffs of their rights *and* responsibilities should they chose to join the case.

Dkt. 98.  Specifically, Defendants object to (1) references to the amount of the settlement in the

Northern District of California case, which they claim only ferments litigation and creates an

expectancy; (2) the bolded, all caps language about the court's authorization of the notice, which

they argue perpetuates the suggestion of judicial endorsement; and (3) the bold, underlined, all caps

language that the potential plaintiffs must join the case to preclude the statute of limitations running,

which they claim is misleading and impermissibly goads recipients into joining the lawsuit.  *Id.*

Defendants also argue that the notice fails to inform putative class members that they are bound by

any potential unfavorable rulings, does not indicate that other plaintiffs in the case may not retaliate

against them if they elect not to join the lawsuit, and fails to inform putative class members that they are potentially liable for Wells Fargo's fees and costs. *Id.*

### A.    Reference to N.D. Cal. Settlement

The proposed notice states,

> In 2011, Wells Fargo paid $20 million to settle overtime claims brought by HMCs in a separate lawsuit filed in the Northern District of California. As discussed in Section 9, even if you received a settlement in a prior lawsuit, you are still eligible to participate in this action if you continued to work at Wells Fargo after July 20, 2010.

Dkt. 95, Ex. 1 § 4. Section 9 reiterates that Wells Fargo paid $20 million to settle previous overtime claims. *Id.* § 9. Defendants argue that the amount is wholly irrelevant to the notice and highly prejudicial. Dkt. 98. The court agrees. While it is appropriate to inform the putative plaintiffs that they may still join this action even if they participated in the prior litigation so long as they worked for Wells Fargo after the relevant date, the amount of the settlement is not relevant and could create expectations of a big recovery to recipients of the notice. Therefore, Defendants' objection to this portion of the proposed notice is SUSTAINED. Plaintiffs shall change the language, "Wells Fargo paid $20 million to settle overtime claims" in sections 4 and 9 to "Wells Fargo settled overtime claims."

### B.    References to Court's Authorization of Notice

The title of the notice is "IMPORTANT COURT AUTHORIZED NOTICE OF OVERTIME LAWSUIT AGAINST WELLS FARGO & WACHOVIA." Dkt. 95, Ex. 1. It is in very large, bold font. Section 1 of the proposed notice also states,

> This Notice has been approved by the United States District Court for the Southern District of Texas, the Honorable Gray H. Miller presiding. The Court has not yet rendered any determination of the merits of this case. This Notice is provided to give you an

7

> opportunity to preserve your right to participate in any potential recovery or settlement that may be obtained.

*Id.* § 1. Section 12 notes that the court "has conditionally certified this case as a nationwide collective action and authorized sending this Notice to you." *Id.* § 12. Defendants argue that the notice should exclude any indication that it was approved by or authorized by the court. Dkt. 98. Defendants cite a Third Circuit case, *Sperling v. Hoffman-La Riche, Inc.*, 862 F.2d 439 (3d Cir. 1988), and a Northern District of Illinois case, *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042 (N.D. Ill 2003), in support of this contention. *Id.* In *Sperling*, the Third Circuit stated that "the better practice would be to exclude any reference in the notice indicating it had been approved or authorized by the court," but it specifically declined to reach the question of "whether the statement that the notice had been 'authorized' by the court should have been included." *Sperling*, 862 F.2d at 447. In *Flores*, the federal district court in the Northern District of Illinois stated that the notice should not create an appearance of judicial sponsorship, noting that it should not be on the court's letterhead or contain the signature of the clerk or other judicial officer. *Flores*, 289 F. Supp. 2d at 1046. In that case, the caption of the proposed notice was the caption for court filings, containing the name of the court at the very top. *Id.* The court found that this was likely to misunderstood as a representation that the suit had merit. *Id.*

Plaintiffs point out that their proposed notice merely states a fact, that the notice is "court authorized." Dkt. 100. Plaintiffs argue that, regardless, the sentence stating that the court has not yet determined the case on the merits should alleviate any concerns that the court has endorsed Plaintiffs' claims simply because the court approved the notice. *Id.* During a hearing on May 1, 2013, Plaintiffs' counsel agreed to remove the words "court authorized" in the title of the notice

since the body of the document already informs potential plaintiffs that the court authorized the notice.

The court agrees that the indications in the proposed notice that it is court authorized merely state a fact, and, since the first section of the notice clearly states that the court "has not yet rendered any determination on the merits of this case," the proposed notice does not suggest that the court endorses Plaintiffs' claims. The proposed notice in this case is very different from the proposed notice in *Flores*, which contained the caption of the case rather than a plain title. And *Sterling* does not require a different outcome, as it merely stated in *dicta* that it may be a better practice not to indicate that the notice is authorized. The court believes it is important to inform the recipients of the notice that it is court authorized so that they understand the current stage of the lawsuit. Accordingly, Defendants' objection to the use of the term "court authorized" is SUSTAINED IN PART AND OVERRULED IN PART. It is sustained to the extent that the term is used in the bold title of the notice. Plaintiffs shall remove the term "court authorized" from the title, as they agreed to do during the hearing. The objection is otherwise OVERRULED.

**C.     References to the Statute of Limitations**

Section 3, entitled "How Are My Rights Affected by This Lawsuit?," states,

> As explained in Section 8 on page 3, many HMCs may have their federal law claims barred completely if they do not join this action because the deadline for bringing federal claims to recover overtime wages is continuing to expire. For example, **HMCs who stopped working at Wells Fargo or Wachovia more than three years ago (*i.e.* March 2010 or earlier) must join this action or their federal claims for overtime may be time barred.**

Dkt. 95, Ex. 1 § 3. Section 8, entitled "What Happens if I Choose Not to Join — Does This Mean That My Claims May Be Barred?," states,

Yes, for many HMCs.  There is at most a three year statute of limitations (or deadline) for filing overtime claims under federal law. Many HMCs may have their federal overtime claims barred completely if they do not join this case because of the running of the statute of limitations.  **IF YOU ARE AN HMC WHO STOPPED WORKING AT WELLS FARGO OR WACHOVIA MORE THAN THREE YEARS AGO (*i.e.* MARCH 2010 OR EARLIER), YOU MUST JOIN THIS CASE OR YOUR OVERTIME CLAIMS MAY BE COMPLETELY BARRED UNDER FEDERAL LAW**. In other words, if you choose not to join this action, the deadline to file your case under federal law may have completely passed under the statute of limitations, and you may not have an opportunity to ever seek those unpaid wages.

The Plaintiffs in this case have obtained an agreement with Wells Fargo and Wachovia to stop the statute of limitations from running, but only for those HMCs who file a Notice of Consent in this action.  Any HMC who joins this action may seek overtime wages and damages under federal law extending back to February 2008.  If you do not file a Notice of Consent form to join in this case, you will lose your opportunity to participate in this case and share in any settlement or recovery obtained, as well as  your right to toll or extend your statute of limitations under this agreement.

*Id.* § 8.

Defendants argue that this proposed language strongly suggests that the putative class members are duty bound to join the lawsuit and is misleading.  Dkt. 98.  Plaintiffs argue that Defendants wish to conceal from the putative class that they will be barred by limitation unless they opt in to this lawsuit.  Dkt. 100.

The court agrees with Defendants that the proposed form improperly makes it appear that all potential plaintiffs must opt in to this lawsuit if they desire to bring claims.  Of course, due to the tolling agreement, which extends the statute for this case only, many potential plaintiffs *will* be barred from bringing claims if they do not opt in to this lawsuit.  The language in the proposed notice should inform the potential plaintiffs about what rights they do and do not have, but as currently worded it could be considered too coercive and needs to be revised.  Defendants objections are

therefore SUSTAINED IN PART AND OVERRULED IN PART.  The court does not believe that

Section 3 is necessary, and it should be deleted.  Section 8 (which will now be Section 7) should be

modified to read as follows:

> Yes, for some HMCs.  There is at most a three year statute of limitations (or deadline) for filing overtime claims under federal law. The Plaintiffs in this case have obtained an agreement with Wells Fargo and Wachovia to stop the statue of limitations from running, but only for those HMCs who file a Notice of Consent in this action. Any HMC who joins this action may seek overtime wages and damages under federal law extending back to February 2008.  HMCs who stopped working at Wells Fargo or Wachovia more than three years ago (i.e. March 2010 or earlier) may be completely barred from filing a lawsuit under federal law if they do not join this case because of the running of the statute of limitations.

**D.     Failure to Adequately Inform**

Defendants argue that the proposed notice does not adequately inform potential plaintiffs that

they are bound by any potential unfavorable rulings, does not indicate that other plaintiffs in the case

may not retaliate against the potential plaintiffs if they elect not to join the lawsuit, and fails to

inform putative class members that they are potentially liable for Wells Fargo's fees and costs.

Dkt. 98.  Plaintiffs argue that Defendants' proposed warnings are meant to chill participation.

Dkt. 100.  They note that the potential plaintiffs cannot be liable for attorneys' fees and that the

warning about the costs, which would be minimal, would have an "*in terrorem*" effect.  Dkt. 100 &

May 1, 2013 Hearing.  And as far as warning that other plaintiffs may not retaliate against the

potential plaintiffs who elect not to opt in, Plaintiffs assert that this warning is "absurd on its face"

and that there is no law banning such "retaliation," to the extent it could be deemed retaliation.

Dkt. 100 & May 1, 2013 Hearing.

### 1.   Binding Nature of Unfavorable Rulings.

The language regarding the effect of rulings in this case on the potential plaintiffs is found

in section 7 of the proposed notice.  Section 7 states,

> If You choose to join this action, you may share in any settlement or recovery, and will be bound by the judgment or any settlement of this action.  While the case is pending, you may be required to provide information and documents.  By completing and sending in the enclosed Notice of Consent form, you will be designating representative plaintiffs to act on your behalf and to represent your interests.  You will also be retaining Plaintiffs' Lead Counsel (*see* Section 10) as your attorneys to represent you in this matter.

Dkt. 95, Ex. 1 § 7.  Defendants argue that this language "fails to inform putative class members that

they will be bound by <u>any</u> judgment of the Court in this case, whether it is favorable or unfavorable."

Dkt. 98.  The section *does*, however, state that the potential plaintiffs, if they opt in, "will be bound

by the judgment."  This language covers *any* judgement, and adding "favorable or unfavorable" is

not necessary.  Defendants' objection relating to appropriate notice that potential plaintiffs who opt

in will be bound by any judgment is OVERRULED.

### 2.   Retaliation by Plaintiffs.

The section of the proposed notice discussing retaliation is section 15.  It is entitled, "Am I

Protected Against Retaliation?," and it states:

> Yes.  It is illegal for Wells Fargo to retaliate against you in any manner because you have joined and/or participated in this case.  If you believe you have been penalized, punished, threatened or intimidated in any way as a result of your consideration of this Notice or your participation in this case, please contact Plaintiffs' Lead Counsel immediately.

Dkt. 95, Ex. 1 § 15.  Defendants argue that this section should also warn that putative class members

have the right to be free from retaliation from other Plaintiffs based on their decision not to

participate in the lawsuit.  Dkt. 98 & May 1, 2013 Hearing.  Defendants cite one case in which they

claim the court required Plaintiffs' counsel to revise a notice in a similar lawsuit to prohibit

retaliation in general, not just from Defendants.  Dkt. 98 at 18 n.15 (citing *Edwards v. KB Homes*,

No. 3:11-cv-240 (S.D. Tex.)).  In that case, the court approved the following language regarding

retaliation:

> If you are a current [employee of defendant], do not worry about
> being retaliated against.  Like those [employees of defendant]
> currently in this lawsuit, you are protected by federal law from any
> negative action against you in retaliation for joining this matter.

Dkt. 100, Ex. A.  Defendants, however, cite no federal law that prohibits other plaintiffs from taking

"negative action against" potential plaintiffs who elect not to join the lawsuit, and the court is

unaware of any such law.  There *is*, however, a federal law that prohibits *employers* from retaliating

against their employees who choose to opt in, and the court finds that the language in the current

version of section 15 adequately and appropriately states that law.  Accordingly, Defendants'

objection to the retaliation section of the proposed notice is OVERRULED.

### 3.      Liability for Defendants' Costs.

The proposed charge does not contain any warning that potential plaintiffs who opt in could

be liable for Defendants' costs.  Instead, it contains a section entitled "Who Will Pay the Lawyers?,"

which solely addresses the fee arrangement with regard to the Plaintiffs' lawyers.  It affirmatively

states that if a potential plaintiff elects "to join this matter, [the plaintiff] will <u>not</u> be responsible for

payment of any attorneys' fees or case expenses out of [his or her] pocket."  Dkt. 95, Ex. 1 § 11.  In

*Barajas v. Acosta*, this court held, in a case in which defendants had no counterclaims and provided

no reason why Plaintiffs would be liable for any substantial costs, that requiring an instruction that

potential plaintiffs could be liable for costs associated with the lawsuit "'may have an in terrorem

effect that is disproportionate to the actual likelihood that costs or counterclaim damages will occur in any significant degree.'" *Barajas v. Acosta*, No. 11-3862, 2012 WL 1952261, at *5 (S.D. Tex. May 30, 2012) (Ellison, J.) (citations and quotation omitted).  This case is quite similar.  There are no counterclaims asserted, and there is no reason to believe any costs assessed should Defendants prevail would be more than *de minimus* with respect to each plaintiff.  Thus, the court does not believe requiring a warning about potential liability for Defendants' costs is appropriate.

*However*, the language in section 11 stating that opt-in plaintiffs will not be responsible for any attorneys' fees and costs out of their pockets, while aimed at the responsibility for Plaintiffs' counsel's fees and costs, could be misconstrued.  Defendants' objection with regard to the discussion (or lack of discussion) of fees and expenses is therefore SUSTAINED IN PART AND OVERRULED IN PART.  First, the title of Section 11 should be "Who Will Pay the Plaintiffs' Lawyers?" rather than "Who Will Pay the Lawyers?."  Second, the body of the section shall be amended to state:

> The attorneys for the Plaintiffs in this case are being paid on a contingency fee basis, which means that if there is no recovery, they will receive no attorneys' fees.  If there is a recovery, the attorneys for the Plaintiffs will either receive part of that recovery or will seek to have their attorneys' fees and case expenses paid by Wells Fargo and Wachovia.

The last sentence of section 11 in the proposed notice, which refers to no out-of-pocket expenses, shall be deleted.

## V. CONCLUSION

Plaintiffs' motion for approval of FLSA notice forms and methods and for a longer notice period (Dkt. 95) is GRANTED IN PART AND DENIED IN PART as described above.

Signed at Houston, Texas on May 17, 2013.

_____
Gray H. Miller
United States District Judge