IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: WELLS FARGO WAGE AND HOUR EMPLOYMENT PRACTICES LITIGATION (NO. III) | §<br>§<br>§ | MULTI-DISTRICT LITIGATION<br>CASE NO. 4:11-md-2266 |

**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL
OF THE SETTLEMENT ON BEHALF OF
FLSA COLLECTIVE ACTION MEMBERS**

| | |
|---|---|
| **Rhonda H. Wills (Lead Counsel)**<br>WILLS LAW FIRM, PLLC<br>1776 Yorktown St., Suite 570<br>Houston, Texas 77056<br>Telephone: 713.528.4455<br>Facsimile: 713.528.2047 | **R. Paul Yetter (Lead Counsel)**<br>**Reagan W. Simpson**<br>YETTER COLEMAN, LLP<br>909 Fannin St., Suite 3600<br>Houston, Texas 77010<br>Telephone: 713.632.8000<br>Facsimile: 713.632.8002 |
| **Diana E. Marshall**<br>MARSHALL & LEWIS, LLP<br>1010 Lamar St., Suite 450<br>Houston, Texas 77002<br>Telephone: 713.655.0300<br>Facsimile: 713.655.0130 | **John M. Padilla**<br>PADILLA, RODRIGUEZ & DE LA GARZA<br>1776 Yorktown, Suite 110<br>Houston, Texas 77056<br>Telephone: 713.574.4600<br>Facsimile: 713.574.4601 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................... 2

        A.      Procedural Background................................................................................ 2

        B.      Claims and Defenses.................................................................................... 5

III.    SUMMARY OF SETTLEMENT ........................................................................ 6

IV.     APPROVAL OF THE FLSA SETTLEMENT ..................................................... 7

        A.      Legal Authority............................................................................................ 7

        B.      The Settlement Resolves a Bona Fide and Contested Dispute. ................... 8

        C.      The Proposed Settlement Is Fair and Reasonable...................................... 10

                1.      The Amount Offered in Settlement is Reasonable. .................... 10

                2.      The Expense, Complexity, and Duration of Further Litigation. ............. 11

                3.      The Experience and Views of Counsel..................................... 12

        D.      Service Awards ......................................................................................... 13

        E.      Attorneys' Fees and Costs ........................................................................ 15

V.      CONCLUSION ................................................................................................. 21

CERTIFICATE OF SERVICE ....................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Beckman v. Keybank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ...........................................................................8

*Camp v. Progressive Corp.*,
2004 WL 2149079 (E.D. La. Sep. 23, 2004) ..................................................14, 19

*Chan v. Wells Fargo Home Mortgage Inc.*
(W.D. Wash.) ......................................................................................................2, 3, 7

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ...........................................................................11

*Davis v. J.P. Morgan Chase & Co.*,
827 F.Supp.2d 172 (W.D.N.Y. 2011) ......................................................................8

*Deleon v. Wells Fargo Bank, N.A.*
(S.D.N.Y.) ..........................................................................................................2, 3, 7

*Di Giacomo v. Plains All Am. Pipeline*,
2001 WL 34633373 (S.D. Tex. Dec. 19, 2001).....................................................16

*Faircloth v. Certified Finance Inc.*,
2001 WL 527489 (E.D. La. 2001) ........................................................................17

*Gonzalez v. Wells Fargo Home Mortgage Inc.*
(D.N.J.)...............................................................................................................2, 3, 7

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).............................................................................................15

*Hoffman v. Wells Fargo & Co.*
(N.D. Ill.) ("*Hoffman*") .....................................................................................2, 3, 7

*In re Bank of America Wage and Hour Employment Litig.*,
2013 WL 6670602 (D. Kan. 2013) ......................................................................19

*In re Combustion, Inc.*,
968 F.Supp. 1116 (W.D. La. 1997)......................................................................17

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
586 F.Supp.2d 732 (S.D. Tex 2008) ................................................................16, 18

*In re Heartland Payment Sys.*,
851 F.Supp.2d 1040 (S.D. Tex. 2012) ...................................................................13

*In re Lease Oil Antitrust Litig. (No. II)*,
186 F.R.D. 403 (S.D. Tex. 1999) ...........................................................................14

*In re M.L. Stern Overtime Litig.*,
2009 WL 3272872 (S.D. Cal. Oct. 9, 2009) ..........................................................14

*In re Wells Fargo Home Mortgage Overtime Pay Litig.*,
268 F.R.D. 604 (N.D. Cal. 2010) ...................................................................11, 19

*In re Wells Fargo Mortgage Overtime Pay Litig.*,
571 F.3d 953 (9th Cir. 2009) .................................................................................11

*Johnson v. Ga. Highway Express, Inc.*,
488 F.3d 714 (5th Cir. 1974) ...........................................................................16, 18

*Klein v. O'Neal, Inc.*,
705 F.Supp.2d 632 (N.D. Tex. 2010) ...............................................................16, 17

*Lynn's Food Stores, Inc. v. U.S.*,
679 F.2d 1350 (11th Cir. 1982) ....................................................................7, 9, 10

*Mallin v. Nat'l City Mortg. Inc.*,
2007 WL 4208336 (N.D. Cal. Nov. 27, 2007) ........................................................8

*Murillo v. Texas A&M Univ. Sys.*,
921 F. Supp. 443 (S.D. Tex. 1996) ........................................................................12

*Prater v. Commerce Equities Mgmt. Co.*,
2008 WL 5140045 (S.D. Tex. Dec. 8, 2008) ...........................................................7

*Purdie v. Ace Cash Express, Inc.*,
2003 WL 22976611 (N.D. Tex. Dec. 11, 2003) .....................................................14

*Quintanilla v. A & R Demolition, Inc.*,
2008 WL 9410399 (S.D. Tex. May 7, 2008) ...........................................7, 11, 12

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
91 F.Supp.2d 942 (E.D. Tex. 2000) .......................................................................17

*Silva v. Tegrity Pers. Servs.*,
2013 WL 6383030 (S.D. Tex. 2013) .......................................................................14

*Tarlecki v. Bebe Stores, Inc.*,
2009 WL 3720872 (N.D. Cal. 2009) ......................................................................14

*Tittle v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*,
  228 F.R.D. 541 (S.D. Tex. 2005).............................................................................11

*Turner v. Murphy Oil USA, Inc.*,
  472 F.Supp.2d 830 (E.D. La. 2007) ......................................................................16

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) .................................................................................16

**FEDERAL STATUTES**

28 U.S.C. § 1407...........................................................................................................3

29 U.S.C. § 216(b) ............................................................................................... passim

**RULES**

Fed. R. Civ. P. 23 ...........................................................................................7, 8, 11, 17

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: WELLS FARGO WAGE AND HOUR | § | MULTI-DISTRICT LITIGATION |
| EMPLOYMENT PRACTICES LITIGATION | § | CASE NO. 4:11-md-2266 |
| (NO. III) | § | |

**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL
OF THE SETTLEMENT ON BEHALF OF
FLSA COLLECTIVE ACTION MEMBERS**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs Raymond Richardson, Judith Gott and Angela Kolmansberger (*Richardson* named plaintiffs) and James Chaplin, Donna Pontello, Lucy Gonzales, and Bill Early (*Chaplin* named plaintiffs), on behalf of themselves and all others who have filed a written consent to opt-into those respective cases (*Richardson* and *Chaplin*) (collectively, "FLSA Collective Action") file this Unopposed Motion for Approval of the Settlement on Behalf of FLSA Collective Action Members, and in support thereof show the following:

## I.      INTRODUCTION

Some of the parties to this multi-district litigation matter have reached a settlement. Specifically, the federal and state wage and hour claims of the *Richardson* and *Chaplin* plaintiffs and opt-in plaintiffs have been settled, with the exception of those opt-in plaintiffs who may have been members of the *Lofton* California state law class as described below.  The claims of the opt in plaintiffs who may have been *Lofton* class members remain pending.  The Named Plaintiffs and opt in plaintiffs who are participating in the settlement will be referred to as the "Settling

Plaintiffs"[1].  The settlement reached here also specifically excludes the claims of the originating named plaintiffs in the *Chan*, *Gonzalez*, *Hoffman* and *Deleon* matters.   The settlement is memorialized in a written agreement (the "Agreement"), which is attached hereto as Exhibit 1.  Under the terms of the Agreement, the claims of the Settling Plaintiffs are being resolved for a total gross amount of $15 million.

For all the reasons set forth below and in supporting documents, the settlement is fair, reasonable, and adequate. The FLSA settlement meets all requirements for approval.  Pursuant to the terms of the Agreement, the Settling Plaintiffs request that this Honorable Court approve the FLSA settlement in its entirety as fair and reasonable.

## II.      STATEMENT OF FACTS

### A.      Procedural Background

Several separate wage and hour actions were brought against Wachovia and Wells Fargo on behalf of current and former loan originators, otherwise known as Home Mortgage Consultants ("HMCs").  The cases are: *Richardson v. Wells Fargo Bank, N.A. ("Richardson")*; *Chaplin v. Wachovia Mortgage Corporation ("Chaplin"); Gonzalez v. Wells Fargo Home Mortgage Inc.* (D.N.J.) ("*Gonzalez*"); *Chan v. Wells Fargo Home Mortgage Inc.* (W.D. Wash.) ("*Chan*"); *Hoffman v. Wells Fargo & Co.* (N.D. Ill.) ("*Hoffman*"); and *Deleon v. Wells Fargo Bank, N.A.* (S.D.N.Y.) ("*Deleon*").   This settlement resolves alleged claims of the Settling Plaintiffs in the *Richardson* and *Chaplin* actions only.  The individual claims asserted by the originating named plaintiffs in the *Gonzalez*, *Chan*, *Hoffman*, and *Deleon* actions are not

---

[1]   This definition specifically excludes all those persons who filed a notice of consent but were classified as members of the *Lofton* class in California state court.  The claims of those persons remain pending in this matter.

included in the settlement.[2]   As explained more fully below, the parties intend to request that these actions be remanded to their respective transferor courts, upon appropriate motion.

On August 9, 2011, the Judicial Panel on Multidistrict Litigation transferred these actions pursuant to 28 U.S.C. § 1407 to the United States District Court for the Southern District of Texas ("the Court").   By order dated December 19, 2011 (Dkt. #37), the Court granted the motion and application for lead counsel made by counsel for the *Richardson/Chaplin* plaintiffs and denied the application of counsel for the *Gonzalez/Chan* plaintiffs.   By separate order dated February 24, 2012 (Dkt. #45), the Court designated Rhonda H. Wills of the Wills Law Firm, PLLC and R. Paul Yetter and Reagan W. Simpson of Yetter Coleman LLP, all of whom are counsel to plaintiffs in *Richardson* and *Chaplin*, to act as lead counsel in these proceedings ("lead counsel").   In the same order, the Court named Diana E. Marshall and Ronald C. Lewis of Marshall & Lewis, L.L.P. and John M. Padilla of Padilla & Rodriguez, LLP as co-counsel.  *Id.*

On August 10, 2012, the Court certified a 29 U.S.C. § 216(b) collective action based on alleged violations of the Fair Labor Standards Act ("FLSA") in the *Richardson* and *Chaplin* matters only (the "FLSA Collective Action").   Thereafter, on September 4, 2012, the defendants filed a petition for writ of mandamus to the Fifth Circuit Court of Appeals contending that the Court erred in granting conditional certification under the FLSA.   Upon motion of the defendants, this matter was stayed by the Fifth Circuit during the pendency of the mandamus

---

[2]   Those originating named plaintiffs in *Gonzalez* who are excluded from this settlement are:  Manuel Gonzalez, Michelle Campbell, Kaustuv Datta, Quinn Elam, Dick Galarza, Joseph Johnson, Frank Lay, Humberto Morin, Samuel Pauls, and Clayton Peters.   Those originating named plaintiffs in *Chan* who are excluded from this settlement are:  Brent K. Chan and Dien Luu.  The originating named plaintiff in *Hoffman* who is excluded from this settlement is:  Dylan Hoffman.   The originating named plaintiff in *Deleon* who is excluded from this settlement is:  Daly Deleon.

proceeding.   On March 12, 2013, the Fifth Circuit denied defendants' petition for writ of mandamus and restored the jurisdiction of this Honorable Court.

A Notice of Collective Action was approved by the Court on May 17, 2013 and mailed on June 12, 2013 to current and former mortgage loan officers employed by defendant Wells Fargo between February 11, 2008 and March 31, 2011 and to former mortgage loan officers employed by defendant Wachovia between February 23, 2008 and December 31, 2009. Plaintiffs' lead counsel also maintained a website for the purpose of effectuating notice in this proceeding.   Following the conclusion of the notice period, approximately 4,487 opt ins returned consent to join forms, which were filed with the Court, and as a result, those individuals became plaintiffs in the FLSA Collective Action.

Separately, on September 23, 2013, the Court ordered that the Notice of Collective Action also be sent to members of the opt-out class in *Lofton, et al v. Wells Fargo Bank*, San Francisco Superior Court Case No. CGC-11-509502 ("*Lofton*"), employed between February 11, 2008 and March 31, 2011.   Dkt. # 193.   Following that Notice of Collective Action, 1,516 mortgage loan officers who were members of the *Lofton* California state law class submitted Consent Forms between October 10, 2013 and December 23, 2013.   These 1,516 *Lofton* opt-ins are not included in this settlement and their claims remain pending before this Court.[3]

In their respective consent-to-join forms, each FLSA Collective Action plaintiff designated the representative plaintiffs "as my agents to make decisions on my behalf concerning

---

[3]   Class Counsel also filed two additional actions, *Lewis et al. v. Wells Fargo*, San Francisco Superior Court Case No. CGC-13-534914 in October  2013, and *Bok et al. v. Wells Fargo Bank*, in United States District Court for the District of Colorado Case No. 1:13-cv-03367-RM in December 2013. As part of the settlement of this action, Plaintiffs will dismiss both the *Lewis* and *Bok* actions without prejudice.

the case, the method and manner of conducting the case, entering into a contingency fee agreement concerning attorneys' fees and case expenses, entering into a settlement agreement, and all other matters pertaining to this litigation."  *See, e.g.,* Dkt. # 95-2.  Each person who consented to join also affirmatively chose to be represented by Plaintiffs' lead counsel, Rhonda H. Wills (WILLS LAW FIRM, PLLC) and R. Paul Yetter (YETTER COLEMAN LLP).  *Id.*

Pursuant to the Court's docket control order, the parties mediated this case during a two-day mediation in San Francisco with mediator David Rotman of Gregorio, Haldeman, & Rotman.  In addition to counsel for plaintiffs, named plaintiffs Raymond Richardson (*Richardson*) and James Chapin (*Chaplin*) were present at the mediation on behalf of the Settling Plaintiffs.  At the conclusion of the two-day mediation on December 17, 2013, Mr. Rotman made a mediator's proposal that was accepted by the parties, and the parties thereafter executed a binding Memorandum of Understanding.  The settlement was thereafter memorialized in further detail in the Agreement attached as Exhibit 1.

## B.    Claims and Defenses

The *Richardson* and *Chaplin* named plaintiffs and other members of the FLSA Collective Action all worked as mortgage loan officers at a mortgage loan center, retail bank branch, or other office operated by the defendants (one or more of them), with the primary job duty of originating home mortgage loans ("HMCs").  The plaintiffs alleged that in violation of the FLSA, defendants compensated the Named Plaintiffs and FLSA Collective Action members on a commission-basis only without overtime compensation and/or minimum wages, imposed a work week greater than forty hours per week, and failed to keep accurate time records for HMCs.

Defendants asserted numerous defenses, both as to collective action status and as to liability.  Chief among them were defendants' affirmative defenses based on exemptions from

the overtime requirements of the FLSA.  Defendants argued that mortgage loan officers are exempt, variously and alternatively, as outside salespersons, highly compensated, and administrative employees, and under a combination exemption.  On the basis of one or more of these exemptions, defendants filed motions for summary judgment with respect to the claims of named plaintiffs James Chaplin and Judith Gott.  The settlement was concluded, however, before a response was filed by the plaintiffs and before any determination by the Court with respect to these motions for summary judgment.

### III.    SUMMARY OF SETTLEMENT

The parties have agreed to settle the federal and state wage and hour claims of the Settling Plaintiffs.  *See* Exh. 1, Agreement § 5. The terms of the Agreement are summarized as follows and are set forth in full in the attached Agreement and supersedes any inconsistent provision of this Unopposed Motion for Approval.  Exh. 1.

With regard to the settlement terms, a $15 million settlement fund will be created after approval by this Court, inclusive of the Settling Plaintiffs' attorneys' fees, litigation expenses and costs, and other costs of the settlement other than the defendants' portion of payroll taxes. Each Settling Plaintiff will receive a proportionate share of the settlement fund according to a formula based on the length of each person's individual tenure and compensation.  Exh. 1 at § 3.4 and Exh. A.  The Agreement further provides for a minimum payment of $50 to each Settling Plaintiff.  *Id.* at § 3.4.  The average gross per capita recovery for each Settling Plaintiff will be approximately $3,343. (Wills Decl., ¶ 30). The computation and handling of the settlement will be accomplished by a neutral administrator.  Exh. 1 at §§ 3.2-3.3. These payments are made in exchange for dismissal with prejudice and a release of claims by the Settling Plaintiffs.  Exh. 1 at § 5.

-6-

Pursuant to the settlement agreement, the parties will also request this Court, or the Multi-District Litigation Panel, if necessary, to transfer the *Chan*, *Gonzalez*, *Hoffman*, and *Deleon* actions back to the Panel and thereafter request the Panel to remand each of those actions to their respective transferor courts. Exh. 1 at A-6. Otherwise, the terms of the settlement do not affect the named plaintiffs of the *Chan*, *Gonzalez*, *Hoffman*, and *Deleon* actions in any way. None of those named originating plaintiffs in the *Chan*, *Gonzalez*, *Hoffman*, and *Deleon* cases opted in to either the *Richardson* or *Chaplin* actions; they are not parties to the Agreement; and no type of relief, including Rule 23 class certification, is sought with respect to them.

## IV.  APPROVAL OF THE FLSA SETTLEMENT

### A.  Legal Authority

As a general matter, settlement of claims brought under the FLSA requires court approval. *See Prater v. Commerce Equities Mgmt. Co.*, 2008 WL 5140045, at *2 (S.D. Tex. Dec. 8, 2008) (citing *Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 135301

 (11th Cir. 1982)). Pursuant to a private enforcement action under 29 U.S.C. § 216(b) of the FLSA, claims may be compromised if a court reviews and approves the settlement. *Quintanilla v. A & R Demolition, Inc.*, 2008 WL 9410399, at *2 (S.D. Tex. May 7, 2008) (citing *Lynn's Food Stores*, 679 F.2d at 1353). The decision to approve a class action settlement is left to the district court's sound discretion. *Quintanilla*, 2008 WL 9410399, at *2 (citing *Newby v. Enron Corp.*, 394 F.3d 296, 300 (5th Cir. 2004)). Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Lynn's Food Stores,* 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the court may approve the settlement in order to promote the policy of encouraging settlement of litigation. *See Quintanilla*, 2008 WL 9410399, at *2.

-7-

Federal courts routinely approve similar settlements reached in FLSA collective actions. *See, e.g., Beckman v. Keybank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) (approving settlement of overtime claims asserted by 1735 collective action members for $4.9 million); *Davis v. J.P. Morgan Chase & Co.,* 827 F. Supp. 2d 172 (W.D.N.Y. 2011) (settlement fund totaling $42 million approved by court); *Mallin v. Nat'l City Mortg. Inc.*, 2007 WL 4208336 (N.D. Cal. Nov. 27, 2007) (court approval of a $5 million settlement). Unlike settlements under Fed. R. Civ. P. 23, FLSA settlements are not subject to a two-stage process of preliminary approval followed by final approval, and no final fairness hearing is required. However, Court approval of this collective action settlement remains necessary to effectuate a valid and enforceable release of the Settling Plaintiffs' FLSA claims.

**B.    The Settlement Resolves a Bona Fide and Contested Dispute.**

The litigation of the claims asserted by the Settling Plaintiffs was strongly contested, protracted, and reflected a bona fide and contested dispute between the parties. (Yetter Decl. ¶ 33, Wills Decl. ¶ 31.) *Richardson*, the earliest case filed in this multidistrict proceeding, was brought in December 2010. In the more than three years since *Richardson* was commenced, lead counsel has developed a keen understanding of the strengthens and weaknesses of the claims of the FLSA Collective Action, as well as the potential defenses thereto, both through discovery and motion practice.

Among the discovery engaged in by the parties was significant reciprocal written discovery, including both interrogatories and the production of more than 10,000 documents by defendants. In addition, the collective action representative plaintiffs and corporate designees of both Wells Fargo and Wachovia were deposed. Lead counsel also conducted in-depth interviews with hundreds of opt-in plaintiffs concerning the claims of the collective action members and the

-8-

defenses asserted by the defendants; reviewed company policies related to the job duties and responsibilities of HMCs and the payment of overtime; and analyzed comprehensive personnel, payroll, and compensation data relating to the damages sustained by individual opt-in plaintiffs. (Yetter Decl. ¶ 35; Wills Decl. ¶ 26.)

The motion practice on behalf of the FLSA Collective Action was enormously complicated and hard-fought.  Perhaps the most critical briefing aspect of the case was the defendants' petition for writ of mandamus filed with the Fifth Circuit Court of Appeals seeking immediate review of the conditional certification order.  The briefing process required nearly seven months and attracted national attention, including the filings of amicus briefs by business, governmental, and public interest entities supporting the position of the plaintiffs, including the U.S. Department of Labor, the U.S. Equal Employment Opportunity Commission, National Employment Lawyers Association, National Women's Law Center and Association of American Retired Persons ("AARP").  (Wills Decl. ¶ 20.)  Although the plaintiffs prevailed at the conditional certification stage at both the trial and appellate level, lead counsel believed that additional challenges to certification were likely.

Defendants claimed numerous defenses to the plaintiffs' claims, including that mortgage loan officers were paid lawfully, that class and collective action treatment was inappropriate, and that pay practices varied by location.  In addition, the defendants claimed that certain exemptions to the federal overtime laws were applicable, which were asserted via summary judgment motions and were pending at the time of the mediation.  (Yetter Decl. ¶ 27; Wills Decl. ¶ 22.)

In short, this hard and long-fought case reflects a bona fide dispute in a contested litigation and, as such, the settlement enjoys a presumption of fairness. *See Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1353 (11th Cir. 1982).

**C.      The Proposed Settlement Is Fair and Reasonable.**

The second prong of the Court's settlement approval inquiry focuses on the fairness and reasonableness of the proposed settlement.   As explained below, the Court should readily conclude that the settlement meets the criteria for approval.

This settlement was the product of arm's-length negotiations by experienced counsel and has the salutary effect of: (1) providing substantial and immediate relief to the Settling Plaintiffs and (2) eliminating the inherent risks both sides would bear if this complex litigation continued to resolution on the merits.   A two-day mediation with a qualified mediator, David Rotman, ultimately allowed the parties to bridge the significant gap between the parties' settlement positions and obtain the resolution described above.   (Yetter Decl. ¶ 28; Wills Decl. ¶ 24.) Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1353 (11th Cir. 1982).   Moreover, consideration of several additional factors confirms that the proposed settlement is fair and reasonable.

**1.      The Amount Offered in Settlement is Reasonable.**

By any objective measure, the compensation this settlement makes available to the Settling Plaintiffs is favorable and provides collective action members reasonable consideration for their alleged claims.   The settlement brings the Settling Plaintiffs significant monetary value *now*, not years from now, and provides certainty about the outcome.   Further, the average per capita gross compensation of approximately $3,343 provides a meaningful recovery.   This is not a case where the benefit to the class is largely injunctive or of modest value.

Although the maximum possible award at trial could be larger than the settlement amount, the inquiry as to whether a settlement is reasonable examines the benefits of the

settlement in light of the risks of establishing liability and damages.  *See, e.g., Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (affirming a district court's approval of a settlement after properly comparing the settlement amount and "the likely rewards the class would have received following a successful trial of the case"); *Tittle v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*, 228 F.R.D. 541 (S.D. Tex. 2005) (approving a settlement amount below the possible recovery amount); *Quintanilla v. A & R Demolition, Inc.*, 2008 WL 9410399 (S.D. Tex. May 7, 2008) (finding settlement of FLSA claims for a percentage of the claimed damages to be reasonable in light of uncertainties involved in the litigation).

**2.  The Expense, Complexity, and Duration of Further Litigation.**

This case is complex and carries significant risks for the parties as to both legal and factual issues.  There is no question that litigating the case to trial would require substantial time and expenses in addition to that already expended.

Among the risks faced by the Settling Plaintiffs was the uncertainty of maintaining a certified collective action.  In a prior MDL proceeding involving mortgage loan officers against Wells Fargo, the Ninth Circuit Court of Appeals reversed the district court's Rule 23 certification of a class of California mortgage loan officers.  *In re Wells Fargo Mortgage Overtime Pay Litig.*, 571 F.3d 953 (9th Cir. 2009).  On remand, the district court denied the plaintiffs' renewed motion for class certification.  *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 268 F.R.D. 604 (N.D. Cal. 2010).  Although the standards for certification under § 216(b) of the FLSA are significantly different and the plaintiffs would likely prevail under such arguments, there is no doubt that the defendants here would vigorously argue that the FLSA collective action should be decertified for the same reasons that doomed the California Rule 23 class.

In addition, if the *Richardson* and *Chaplin* cases had completed the discovery process and proceeded to trial, the plaintiffs would have been required to address, both at trial and through extensive motion practice, the exemption defenses raised by defendants, including the outside sales, administrative, retail sales, and highly paid exemptions, all of which are potential grounds for classifying HMCs/MCs as exempt from overtime pay.   While lead counsel believe the plaintiffs would prevail as to each exemption, the resolution of these issues would require a massive amount of discovery and are subject to a shifting legal and regulatory landscape.

The large number of Settling Plaintiffs—4,487 individuals—would have created additional challenges.   Discovery and trial preparation for a class of this magnitude would have been costly.   For example, an expert's sampling of opt-ins, analysis and extrapolation of damages would have been lengthy and extremely costly.   (*See* Wills Decl. ¶ 31.)

Finally, it is very likely that in the event the Settling Plaintiffs were to prevail at trial, the defendants would appeal such a result.   It is safe to assume that trial preparation, trial and post-trial litigation could consume at least another three years before there would be finality in this litigation that dates back to 2010.

### 3.    The Experience and Views of Counsel.

The experience of Plaintiffs' lead counsel in litigating and negotiating complex wage and hour disputes likewise strongly favors approving the settlement.   The involvement of experienced counsel and the fact that the settlement agreement was reached in arm's-length negotiations, after a "long, hard-fought mediation" creates a presumption that the agreement is fair.   *Quintanilla*, 2008 WL 9410399, at *4.   Although the Court is not bound by counsels' opinion, their opinion is nonetheless entitled to great weight.   *See Murillo v. Texas A&M Univ. Sys.*, 921 F. Supp. 443, 445 (S.D. Tex. 1996) (explaining that courts should not substitute their

judgment for that of counsel, absent evidence of fraud or overreaching).  The FLSA Collective Action had the benefit of attorneys who are highly experienced in complex litigation and familiar with the facts and law in the case, and who have negotiated settlements in other complex litigation cases, including class and collective action settlements.  (Wills Decl. ¶ 7, Yetter Decl. ¶¶ 6-8).  As with all the aspects of the litigation, the settlement negotiations were hard-fought and at arm's-length.

In the view of Plaintiffs' lead counsel, the settlement provides substantial benefits to the Settling Plaintiffs, especially when one considers, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings.  Further, in the experience of lead counsel, when evaluated against the risks and compared with similar litigation, the relief to the class is substantial. *(Id.)* Because this settlement is fair, adequate, and eminently reasonable, it should be approved.

## D. Service Awards

In recognition of their service, their assistance in prosecuting the case, their participation in written discovery and appearing and preparing for depositions, and their participation in settling the case, the plaintiffs ask the Court to approve service awards of $15,000 to named plaintiffs Judith Gott, Angela Kolmansberger, Lucy Gonzales, Donna Lynn Pontello and Bill Early, and $20,000 to originating, named plaintiffs Raymond Richardson and James Chaplin who were responsible for each of the respective lawsuits and who both attended a two-day mediation in San Francisco.

The proposed service awards are fair and reasonable.  *See In re Heartland Payment Sys.,* 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012) (stating that courts commonly permit payment to class representatives above the amounts received by class members generally).  "When

determining [service] awards, courts may consider a variety of factors, including risks to [plaintiffs] in commencing the suit, personal difficulty encountered by [Plaintiffs], the amount of time and effort spent by [plaintiffs], and the personal benefit enjoyed by representative as a result of the litigation." *Tarlecki v. Bebe Stores, Inc.,* 2009 WL 3720872, at *5 (N.D. Cal. Nov. 3, 2009) (citing *Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995)); *see also Silva v. Tegrity Pers. Servs.*, 2013 WL 6383030, at *32 (S.D. Tex. Dec. 5, 2013) (stating that the purpose of service awards is to compensate plaintiffs for specific expenses and sacrifices).

In *Purdie v. Ace Cash Express, Inc.*, the Court approved $16,665 in service awards to three class representatives for "me[eting] with Class Counsel from time to time to assist in the prosecution of their cases." *Purdie v. Ace Cash Express, Inc.*, 2003 WL 22976611, at *7 (N.D. Tex. Dec. 11, 2003).  Further, awards, as the ones sought here, are warranted when the plaintiffs have spent a significant amount of time assisting counsel and participating in the discovery process. *See, e.g., In re M.L. Stern Overtime Litig.,* 2009 WL 3272872, at *3-4 (S.D. Cal. Oct. 9, 2009) (awarding class representatives $15,000 each); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 449 (S.D. Tex. 1999) (approving awards of up to $ 10,000 per class representative); *Camp v. Progressive Corp.,* 2004 WL 2149079, at *7 (E.D. La. Sep. 23, 2004) (approving service awards to the class representative in the amount of $10,000 each).

Richardson, Chaplin, Gott, Kolmansberger, Pontello, Gonzales and Early – the representative plaintiffs – worked closely with counsel and met with and conferred with them on dozens of occasions over a more than three year period, provided critical information to counsel in preparation of pleadings and motions, identified critical witnesses, traveled from their homes to be deposed by defendants, participated in developing factual material and strategy, and

participated in discovery both in terms of responding and developing discovery propounded, and communicated routinely with counsel regarding the case and regarding the mediation and settlement in this case. (Wills Decl. ¶ 32.)  For each of these depositions, the named plaintiffs met with counsel in advance to prepare. Further, they worked closely with lead counsel in managing the settlement process and in reviewing and approving the settlement agreement. These depositions and assistance were used to evaluate the case and were used in support of conditional certification. (*Id.*)

The requested service awards are a tiny fraction of the $15 million settlement fund in this case – together totaling only .76% of the settlement fund.  Without the active named plaintiffs' participation in this case, the FLSA Collective Action and resulting settlement would not have been possible.  The total settlement fund here easily demonstrates the substantial benefits the named plaintiffs have brought to the class as a whole justifies service awards.

**E.      Attorneys' Fees and Costs**

Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to an award of reasonable attorneys' fees.  In cases involving a fee-shifting statue, the Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983).

Here, the Settling Plaintiffs' counsel seek $4.5 million for attorneys' fees (thirty percent of the total settlement fund) and $215,821.88 as actual litigation expenses and costs, as provided in the Settlement Agreement.  (*See* Yetter Decl. ¶¶ 41, 53; Wills Decl. ¶¶ 35, 40; Marshall Decl. ¶ 5; Padilla Decl. ¶ 19).  Defendants have agreed not to object to or oppose such amounts.  (*See*

Agreement, ¶ 2.2.)   The fee request is fair and reasonable, and there is no reason the Court should disturb the agreement of the parties.  (*See* Yetter Decl. ¶ 38.)

In analyzing the reasonableness of a fee, federal courts typically use one of two methods for calculating attorneys' fees: (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonably hourly rate and, in its discretion, applying an upward or downward multiplier.  *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012).  While the Fifth Circuit has never explicitly endorsed the percentage method for common fund cases, it has been amenable to its use so long as the framework set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) is utilized to ensure that the fee awarded is reasonable.  *Id.* at 643.   Indeed, the percentage method blended with a *Johnson* "reasonableness check" is commonly used by district courts in this circuit.  *See e.g.*, *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 673-75 (N.D. Tex. 2010); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 751 (S.D. Tex 2008); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 859 (E.D. La. 2007).

In applying the percentage of the fund methodology, Judge Rosenthal in *Di Giacomo* held that 30% of the total settlement fund of $29.5 million produced a reasonable fee amount.  *Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, at *28 (S.D. Tex. Dec. 19, 2001).  Counsel for the Settling Plaintiffs have agreed to limit their fee to 30% of the total settlement fund, which is within the appropriate range for fee awards in percentage-of-the-fund cases. (Exh. 1, Agreement § 2.2.)

In the Fifth Circuit, an award of 30% is well within the range of contingent fee recoveries awarded in complex multi-party litigation like the *Richardson* and *Chaplin* actions. *See e.g.,* *Klein v. O'Neal*, 705 F. Supp. 2d 632, 678-79 (N.D. Tex. 2010) (approving 30% fee award on $90 million settlement fund); *Faircloth v. Certified Finance Inc.*, 2001 WL 527489, at *9 (E.D. La. May 15, 2001) (attorneys' fees amounting to 33.34% of $1.5 billion settlement was reasonable); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("attorneys' fees in the range from 25% to 33.34% have been routinely awarded in class actions"); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1139-40 (W.D. La. 1997) (approving 36% fee based on $127 million settlement fund).

The *Richardson* and *Chaplin* cases involved complex legal and factual issues, both at the conditional certification stage and in subsequent case development. Certification briefing in this case, both before this Court and later in defense of this Court's order on appeal, focused on novel issues related to the relationship between Rule 23 and the collective action certification procedures under the FLSA which had important ramifications for all FLSA plaintiffs. If lead counsel had not prevailed on these issues, this settlement would have been many-fold times more difficult to achieve as would have recoveries by future FLSA plaintiffs. Likewise, the size and scope of this settlement would have been difficult if not impossible to obtain but for the tolling agreements obtained by lead counsel in the *Richardson* and *Chaplin* actions.

The settlement reached in this case was only possible because of the case development and analysis performed by lead counsel. The Banks produced more than 10,000 documents in this matter. To prosecute these cases and to achieve this settlement, lead counsel was required to conduct extensive legal research and interview hundreds of class members concerning the Banks' defenses, particularly their exemption defenses. This undertaking was particularly critical

-17-

in this nationwide collective action with nearly 4500 opt-in plaintiffs, with the concomitant risk of a decertification motion by defendants.

The size of the collective action and its multi-district nature of this litigation required lead counsel to expend considerable time and resources managing the needs and expectations of individuals spread throughout the country.  (Yetter Decl. ¶ 44.) To date, lead counsel is unaware of any complaint by class members concerning its handling and management of this case.  *Id.* Finally, this case, which was undertaken on a purely contingent basis with no guarantee of any recovery, required an immense investment of time by lead counsel and necessarily required counsel to decline other representations.  (Yetter Decl. ¶ 40; Wills Decl. ¶ 36.)   For all these reasons, a fee award of 30% is fully justified in this case.

A "cross-check" of the *Johnson* factors further establishes the reasonableness of lead counsel's fee request.   The following *Johnson* factors are employed in cross-checking the reasonabless of the requested attorneys' fees:  (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, repuation, and ability of the attorneys; (10) the political "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Johnson*, 488 F.2d at 717-19.  "[O]f the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel."  *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 761 (S.D. Tex 2008).

These factors also support the attorney fee request:

(1) <u>The time and labor involved</u> -- In assessing the reasonableness of attorneys' fees, courts rely on the lodestar method, which is determined by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. *Camp v. Progressive Corp.*, 2004 WL 2149079 (E.D. La. Sept. 23, 2004). The total lodestar for this matter is $3,677,861.25, based on the proposed hourly rates set forth in lead counsel's Application for Appointment (Dkt. #29 at 20) and the 8,928.73 hours of professional services expended in these matters, *See* Yetter Decl. ¶ 45; Wills Decl. ¶ 37; Marshall Decl. ¶ 5; Padilla Decl. ¶ 17. However, lead counsel estimate that 5% of the hours expended in this matter may be directly attributable to work performed concerning non-settling claims, including the claims of the *Lofton* opt ins. Thus, for purposes of the hours expended relating to the claims of the Settling Plaintiffs, the total lodestar is $3,493,968.10 and 8,482.29 hours of professional services. Accordingly, the lodestar multiplier on the hours worked to date with respect to the Settling Plaintiffs' claims is 1.29. This multiplier rate is reasonable in comparison to other FLSA collective actions of similar magnitude. *In re Bank of America Wage and Hour Employment Litig.*, 2013 WL 6670602 (D. Kan. Dec. 18, 2013) (multiplier of 1.10); *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, MDL case no. 3:06-md-1770 (N.D. Calif.), Dkt. #341 at 19, attached hereto as Exh. 2 (multiplier of 1.44). *See also*, Dkt. #396 (reflecting approval of California MDL settlement), attached hereto as Exh. 3. Courts in the Fifth Circuit also routinely apply lodestar multipliers in this range. *In re Heartland Payment Systems, Inc. Customer Data Sec. Breach*, 851 F. Supp. 2d 1040, 1088 n. 52 (S.D. Tex. 2012) (recognizing that "multiples from

one to four are frequently awarded in common fund cases where the lodestar is applied,") (citing *In re Prudential Ins. Co.*, 148 F.3d 283, 341 (3d Cir. 1998); *Burford v. Cargill, Inc.*, 2012 WL 5471985, at *6 (W.D. La. Nov. 8, 2012) (recognizing that 1.78 is "low multiplier").  Lead counsel's lodestar is based on reasonable hourly rates, consisting of the following ranges:  $475-$550 for partners and of counsel; $150-$425 for associates and staff attorneys; and $75 for professional support staff.  These rates are consistent with those charged in other significant FLSA actions and in the Texas legal market in general.  (Yetter Decl. ¶¶ 45-50; Wills Decl. ¶ 42.)

(2) <u>The amount involved and results obtained</u> – This settlement puts meaningful relief into the hands of the Settling Plaintiffs. The per capita gross settlement amount is approximately $3,343 per Settling Plaintiff.    (*See* Wills Decl. ¶ 30.)

(3) <u>The litigation was risky </u> – As evidenced by other wage and hour cases involving loan officers, litigation has significant risks.  These included the risk that the collective action would be decertified, as the California Rule 23 class was; the risk of loss given the defendants' asserted exemption defenses; the risk of further appeal; and even if the plaintiffs were to prevail, the risk that a court or jury could find that measure of damages to be smaller than that sought.  (Yetter Decl. ¶¶ 36-38.)

(4) <u>The litigation required significant skill </u> – Counsel effectively and diligently prosecuted this challenging and complicated case.  This litigation went before the Judicial Panel on Multi-District Litigation and several individual lawsuits filed in various locations were all consolidated into one large action for pre-trial purposes.  The collective action and resulting mandamus proceeding were both highly contentious battles requiring tremendous amounts of factual and legal work.  Counsel

prepared and produced clients for multiple depositions and took several corporate depositions – including depositions of high-ranking corporate officers.   The fact that this case required a two-day mediation before a settlement was finally achieved is further testament to the skill of counsel in obtaining these results.  (*See* Yetter Decl. ¶¶ 16, 19-23, 30-32.)

(5) Plaintiffs' Counsel took the case on a contingency fee arrangement and expended a great deal of their own resources in prosecuting the case – Lead counsel have prosecuted this case since 2010 and have paid significant costs and expenses up front. They have expended a great deal of time in the case as well. As of this filing, Plaintiffs' lead counsel and co-counsel have expended more than 8,000 hours and $215,821.88 in costs, amounts certain to increase through the administration and notice phases.  (Yetter Decl. ¶¶ 45-46, 53; Wills Decl. ¶¶ 37, 40.)

(6) The requested fee award is in line with similar cases –  As shown above, the requested fee of 30% is comparable to fees awarded in the Fifth Circuit in other complex litigation.   *See* p. 16, *supra.*  Accordingly, this factor fully supports the benchmark fee request.

Lead counsel's request for thirty percent (30%) of the settlement fund is fully justified by the fact that it is supported by precedent of the Fifth Circuit, is fully supported by each of the relevant factors, and is further supported by a lodestar crosscheck.  The Court should, therefore, approve the fee as agreed upon between the parties.

## V.   CONCLUSION

For all the foregoing reasons, Plaintiffs request that the settlement be approved.

DATED:  March 25, 2014                    Respectfully submitted,

/s/ Rhonda H. Wills
Rhonda H. Wills (Lead Counsel)
State Bar No. 00791943
WILLS LAW FIRM, PLLC
1776 Yorktown, Suite 570
Houston, Texas  77056
(713) 528-4455
(713) 528-2047 (Fax)

/s/ R. Paul Yetter
R. Paul Yetter (Lead Counsel)
State Bar No. 22154200
Reagan W. Simpson (Lead Counsel)
State Bar No. 18404700
YETTER COLEMAN LLP
909 Fannin, Suite 3600
Houston, Texas 77010
(713) 632-8000
(713) 632-8002 (Fax)

Diana E. Marshall
State Bar No. 13025500
MARSHALL & LEWIS, LLP
1010 Lamar Street, Suite 450
Houston, Texas 77002
(713) 655-0300
(713) 655-0130 (Fax)

John M. Padilla
State Bar No. 00791395
PADILLA, RODRIGUEZ & DE LA GARZA, L.L.P.
1776 Yorktown Street, Suite 110
Houston, Texas 77056
(713) 574-4600
(713) 574-4601 (Fax)

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that the foregoing document has been electronically filed with the Clerk of the Court by using the CM/ECF system, which will in turn send a notice of the electronic filing to all counsel of record, on this 25th day of March, 2014.

/s/ R. Paul Yetter
R. Paul Yetter