IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: WELLS FARGO WAGE AND HOUR EMPLOYMENT PRACTICES LITIGATION (NO. III) | § § § § § | MULTI-DISTRICT LITIGATION CASE NO. 4:11-MD-2266 |

## SETTLEMENT AGREEMENT

This Agreement ("Agreement" or "Settlement") is entered into by and between plaintiffs Raymond Richardson, Judith Gott, Angela Kolmansberger, James Chaplin, Lucy Gonzales, Donna Lynn Pontello, and Bill Earley (the "Named Plaintiffs") on behalf of themselves and as representatives of the Fair Labor Standards Act ("FLSA") Collective Action, defined below and defendants Wells Fargo Bank, N.A., Wells Fargo & Co. and "Wachovia Mortgage Corp." (collectively, "Defendants" or "Wells Fargo"). Named Plaintiffs and Defendants are collectively referred to herein as "the Parties."

### A.  FACTUAL BACKGROUND AND RECITALS

1. Several separate wage and hour actions were brought against Defendants on behalf of current and former Loan Originators (defined below). The cases are: (1) *Richardson, et al. v. Wells Fargo Bank, N.A.*, 4:10-cv-4949 (S.D. Tex.) ("*Richardson*"); (2) *Chaplin, et al. v. Wachovia Mortgage Corp., et al.*, 4:11-cv-00638 (S.D. Tex.) ("*Chaplin*"); (3) *Gonzalez, et al. v. Wells Fargo Home Mortgage, Inc., et al.*, 4:11-cv-03208 (D.N.J.) ("*Gonzalez*"); (4) *Chan, et al. v. Wells Fargo Home Mortgage, Inc.*, 2:11-cv-00871 (W.D. Wash.) ("*Chan*"); (5) *Hoffman, et al, v. Wells Fargo & Company, et al.*, 11-cv-06011 (N.D. Ill.) ("*Hoffman*"); and (6) *Deleon, et al. v. Wells Fargo Home Mortgage, Inc.*, 1:12-cv-04494 (S.D.N.Y.) ("*Deleon*").

2. On August 19, 2011, the Judicial Panel on Multidistrict Litigation ("JPML") transferred these actions pursuant to 28 U.S.C. § 1407 to the United States District Court for the

**Exhibit 1**

Southern District of Texas ("the Court"), under the case name *In Re: Wells Fargo Wage And Hour Employment Practices Litigation (No. III)*.

3. On August 10, 2012, the Court certified a § 216(b) Fair Labor Standards Act ("FLSA") collective action in *Richardson* and *Chaplin* only based on alleged violations of the FLSA.

4. A Notice of Collective Action was approved by the Court on May 17, 2013 and mailed June 12, 2013 to current and former mortgage loan officers employed by defendant Wells Fargo between February 11, 2008 and March 31, 2011 and to former mortgage loan officers employed by defendant Wachovia between February 23, 2008 and December 31, 2009. Following Notice of Collective Action 4487 of those Loan Originators returned Consent Forms to become part of the FLSA Collective Action ("FLSA Collective Action Members"). Separately, on September 23, 2013, the Court ordered that the Notice of Collective Action also be sent to members of the California Code of Civil Procedure section 382 class in *Lofton, et al v. Wells Fargo Bank*, San Francisco Superior Court Case No. CGC-11-509502 ("*Lofton*"), employed between February 11, 2008 and March 31, 2011. Following that Notice of Collective Action, 1,516 of the *"Lofton"* Home Mortgage Consultants submitted Consent Forms between October 10, 2013 and December 23, 2013. Those 1,516 *"Lofton" Opt-Ins* (defined below) are not included in this settlement. This settlement includes and binds those Named Plaintiffs and all FLSA Collective Action members who filed Consent Forms in the *Richardson* and *Chaplin* collective class cases and were not members of the California Code of Civil Procedure section 382 class in *Lofton*. Defendants contend that the 2011 settlement in *Lofton* resolved and bars all the claims now being asserted by the *Lofton Opt-Ins* in this Lawsuit. Plaintiffs vigorously deny Defendants' contention.

5. Class Counsel also filed two additional actions, *Lewis et al. v. Wells Fargo*, San Francisco Superior Court Case No. CGC-3-534914 in September 2013, and *Bok et al. v. Wells Fargo Bank*, in United States District Court for the District of Colorado Case No. 1:13-cv-03367-RM in December 2013. As part of the settlement of this action, Plaintiffs will seek dismissal of both the *Lewis* and *Bok* actions without prejudice.

6.  The individual claims asserted by the originating named plaintiffs in the *Gonzalez, Chan, Hoffman*, and *Deleon* actions are not included in this settlement.[1] The Parties will request this Court (or the JPML, if necessary) to transfer the *Chan, Gonzalez, Hoffman*, and *Deleon* actions back to the JPML and thereafter request the JPML to remand *Chan, Gonzalez, Hoffman*, and *Deleon* to the respective district courts.

7.  The Parties participated in mediation of this case on December 16 and 17, 2013 with David Rotman of Gregorio, Haldeman & Rotman in San Francisco. At the conclusion of the second day, Mediator Rotman made a mediator's proposal that was accepted by the Parties and the Parties thereafter executed a binding Memorandum of Understanding.

8.  The Named Plaintiffs and Class Counsel (as defined hereafter) believe that the claims asserted in the Lawsuit (as defined hereafter) have merit. The Named Plaintiffs and Class Counsel, however, recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the litigation against Defendants through trial and appeal. The Named Plaintiffs and Class Counsel are also mindful of the possible defenses to the Alleged Claims (as defined hereafter). After careful consideration, including mediation, the Named Plaintiffs and Class Counsel have concluded that it is desirable that the Alleged Claims of the Settling Plaintiffs be settled in the manner and upon the terms and conditions set forth in this Agreement. Both the Named Plaintiffs and Class Counsel believe that the settlement set forth in this Agreement is fair, reasonable and adequate and confers substantial benefits upon the Settling Plaintiffs.

9.  The Parties are sufficiently familiar with the facts of the Lawsuit and the applicable law so as to warrant settlement at this time. The Parties have engaged in significant discovery in order to evaluate the relative strength of the Parties' claims and defenses, including the exchange of documents, written interrogatories, and depositions of Plaintiffs and corporate representatives.

---

[1] Those originating named plaintiffs in *Gonzalez* who are excluded from this settlement are: Manuel Gonzalez, Michelle Campbell, Kaustuv Datta, Quinn Elam, Dick Galarza, Joseph Johnson, Frank Lay, Humberto Morin, Samuel Pauls, and Clayton Peters. Those originating named plaintiffs in *Chan* who are excluded from this settlement are: Brent K. Chan and Dien Luu. The originating named plaintiff in *Hoffman* who is excluded from this settlement is: Dylan Hoffman. The originating named plaintiff in *Deleon* who is excluded from this settlement is: Daly Deleon.

Through the discovery process, Plaintiffs obtained, among other documents and testimony, electronic payroll, time and employment records of the collective action members. The Parties also conducted significant motion practice and briefing in this case, including a mandamus proceeding in the Fifth Circuit Court of Appeals. In furtherance of the mediation, the Parties exchanged additional information, data and documents necessary to fully and fairly evaluate the claims of collective action members. Further, Class Counsel obtained a significant amount of relevant information regarding the compensability and value of claims through written correspondence, as well as telephone and in-person interviews with the numerous Opt-In Plaintiffs and Named Plaintiffs throughout the litigation.

10. The Parties are represented by competent counsel and have had the opportunity to consult with counsel prior to the submission of this Agreement to the Court.

11. Nothing in this Agreement, or the fact of the Agreement itself, shall be construed or deemed an admission of liability, culpability, negligence or wrongdoing of any kind on the part of Defendants with respect to the Alleged Claims or with respect to the collective action. Defendants deny all the claims and contentions alleged by the Named Plaintiffs in the Lawsuit. Nonetheless, Defendants have concluded that further litigation would be protracted and expensive, and would also divert management and employee time. Defendants have taken into account the uncertainty and risks inherent in litigation, especially in multi-party cases. Defendants therefore have concluded that it is desirable that the Alleged Claims of the Settling Plaintiffs be fully and finally settled in the manner and upon the terms and conditions set forth in this Agreement.

12. Pursuant to Federal Rules of Evidence 408, this Agreement and any related documents filed or created in connection with it shall be inadmissible in evidence in any proceeding, except as necessary to approve, interpret or enforce this Agreement.

### B.  TERMS OF AGREEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and between

the Named Plaintiffs, for themselves and the FLSA Collective Action Members (hereafter, "the Settling Plaintiffs") and Defendants that the Released Claims (as defined hereafter) shall be finally and fully compromised, released, resolved, relinquished, discharged and settled, and the claims of the Settling Plaintiffs shall be dismissed in accordance with Paragraph 2 of this Agreement, and without any adverse findings or conclusions against Defendants or anyone else, upon and subject to the terms and conditions of this Agreement, as follows:

**1.     DEFINITIONS**

As used in this Stipulation, the following terms shall have the meanings specified below:

1.1     "Alleged Claims" shall mean the claims that were alleged in the Lawsuit, including, but not limited to, claims that the Settling Plaintiffs were not paid all wages, including overtime, entitling them to damages, statutory penalties, restitution, penalties, interest, attorneys' fees, costs, injunctive and other equitable relief under state and federal law.

1.2     "Class Information Spreadsheet" means an electronic file with the name, social security number, employee identification number, telephone number, and last known address of all Settling Plaintiffs: (i) the number of weeks worked as an HMC for Wells Fargo or Wachovia or both between February 11, 2008, and March 26, 2011, and (ii) the monthly average earnings based on the total earnings for each Settling Plaintiff while an HMC during the class period. For those Settling Plaintiffs who were collective class members in the settlement class in In re Wells Fargo Home Mortgage Overtime Litigation, Case No. 3:06-MD-01770-MHP, the number of work weeks shall be counted between July 26, 2010 and March 26, 2011.

1.3     The "Court" means the United States District Court, for the Southern District of Texas, the Honorable Gray H. Miller, currently presiding, or any other court that obtains competent jurisdiction over the Lawsuit.

1.4     "Defendants" mean Wells Fargo Bank, N.A. and Wells Fargo & Company and include Wachovia Mortgage Corporation. Wells Fargo & Company is the parent corporation of Wells Fargo Bank, N.A. Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.

Between October 2008 and December 2008, Wells Fargo & Co. acquired Wachovia Corporation, including its affiliate entities, Wachovia Mortgage Corporation and World Mortgage Company.

1.5     "Class Counsel" means Rhonda H. Wills, Attorney, Wills Law Firm, PLLC, 1776 Yorktown Street, Suite 570, Houston, Texas 77056 and R. Paul Yetter, Attorney, Yetter Coleman LLP, 909 Fannin Street, Suite 3600, Houston, Texas 77010.

1.6     The "FLSA Collective Action" or "FLSA Collective Action Members" or "the Settling Plaintiffs" means and includes all the individuals who returned valid Consent Forms in *Richardson* and/or *Chaplin* and who are not "*Lofton* Opt-Ins" as defined below, whose names are to be provided to the Court on or before April 4, 2014.

1.7     The "Class Period" means February 11, 2008 through March 26, 2011.

1.8     "Individual Payment" shall mean the settlement allocation for each Settling Plaintiff as described in Paragraph 3.4 of this Agreement.

1.9     "Loan Originator" or "HMC" means and includes Home Mortgage Consultant, Mortgage Consultant, Private Mortgage Banker, or similar job title.

1.10    "Lawsuit" means the action styled *In re Wells Fargo Wage and Hour Employment Practices Litigation (No. III)*, MDL Action No. 4:11-md-02266, the Honorable Gray H. Miller presiding.

1.11    "*Lofton* Opt-Ins" means those members of the California Code of Civil Procedure section 382 class in *Lofton, et al. v. Wells Fargo Bank*, San Francisco Superior Court Case No. CGC-11-509502, employed between February 11, 2008 and March 26, 2011 who filed Consent Forms in the Lawsuit on or before December 23, 2013.

1.12    "Non-Settling Cases" mean: (1) *Gonzalez, et al. v. Wells Fargo Home Mortgage, Inc., et al.*, 4:11-cv-03208 (D.N.J.); (2) *Chan, et al. v. Wells Fargo Home Mortgage, Inc.*, 2:11-cv-00871 (W.D. Wash.); (3) *Hoffman, et al, v. Wells Fargo & Company, et al.*, 11-cv-06011 (N.D. Ill.); and (4) *Deleon, et al. v. Wells Fargo Home Mortgage, Inc.*, 1:12-cv-04494 (S.D.N.Y.), although "Settling Plaintiffs" include individuals from jurisdictions where these Non-Settling Cases are filed.

1.13 "Net Settlement Fund" means the amount of the Total Settlement Fund available for distribution to Settling Plaintiffs after deductions for (i) Settling Plaintiffs' attorneys' fees; (ii) Plaintiffs' litigation expenses and costs, (iii) service awards, and (iv) costs of settlement administration.

1.14 "Released Claims" shall have the meaning set forth in Paragraph 5 below.

1.15 "Released Entities" means Wells Fargo Bank, N.A., and Wells Fargo & Company and includes Wachovia Mortgage Corporation and each and all of their respective past and present parents, subsidiaries, affiliated companies and corporations, and each and all of their respective past and present directors, officers, managers, employees, general partners, limited partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint venturers, assigns, or related entities, and each and all of their respective executors, successors, assigns and legal representatives.

1.16 "Total Settlement Fund" is the amount of Fifteen Million Dollars ($15,000,000) as set forth in Paragraph 2 of this Agreement.

## 2. SETTLEMENT FUND

2.1 Wells Fargo shall establish a Total Settlement Fund in the amount of Fifteen Million Dollars ($15,000,000), inclusive of FLSA Collective Action payments, Settling Plaintiffs' attorneys' fees, costs and expenses, service awards and settlement administrative costs (but excluding Wells Fargo's share of employer payroll taxes), to resolve the Released Claims of the Settling Plaintiffs. In no event shall Defendants be obligated to pay more than $15,000,000 in total settlement of the claims of the Settling Plaintiffs inclusive of FLSA Collective Action Member payments, Settling Plaintiffs' attorneys' fees, costs and expenses, service awards and settlement administrative costs (but excluding its share of employer state, federal, and local payroll taxes).

2.2 Class Counsel will apply for attorneys' fees not to exceed 30% (Thirty Percent) of the Total Settlement Fund, as well as a separate amount for costs and expenses, to be paid from the Total Settlement Fund. Wells Fargo will not oppose or object to such an application. Payment

of these fees, costs and expenses shall constitute Class Counsel's complete consideration for all work performed and all expenses and costs incurred to date and for all work to be performed and expenses and costs to be incurred through the completion of the settlement.

2.3 Class Counsel will apply for service awards for the Named Plaintiffs in an amount not to exceed Fifteen Thousand Dollars ($15,000) each, except for James Chaplin and Raymond Richardson, for whom Class Counsel will apply for service awards in an amount not to exceed Twenty Thousand Dollars ($20,000) each. Wells Fargo will not oppose or object to such an application.

2.4 The Settlement Administrator (as described in Paragraph 3.2) will issue Class Counsel an IRS Form 1099 for the attorneys' fees and costs paid under this Agreement.

2.5 If the Court does not approve any portion of the attorneys' fees, costs or service awards agreed-upon in this Paragraph, such funds that are not approved shall be distributed to the Net Settlement Fund.

## 3. SETTLEMENT PROCEDURE

3.1 The Parties will file a motion (the "Settlement Motion") (i) for approval of the settlement on behalf of the Settling Plaintiffs and (ii), as soon as practicable, for transfer of the Non-Settling Cases to the JPML and thereafter to remand the Non-Settling Cases to their respective, original United States District Courts.

3.2 As soon as practicable, the Parties will select a Settlement Administrator ("the Settlement Administrator") to assist the Parties in administering the Settlement, including calculating settlement allocations and mailing payments to the Settling Plaintiffs.

3.3 Wells Fargo shall deposit the Total Settlement Fund plus applicable payroll taxes with the Settlement Administrator within 30 days of Court approval of the Settlement Motion. Within 45 days of approval of the Settlement Motion, the Settlement Administrator shall (i) mail Individual Payments to the Settling Plaintiffs, (ii) mail approved service awards, and (iii) pay approved attorneys' fees, litigation expenses and costs to Class Counsel via wire transfer. Class

Counsel will be responsible for allocating and distributing attorneys' fees to any other additional counsel for the Settling Plaintiffs in a fashion that fairly compensates such counsel for their contribution to the prosecution of the ligation.

3.4   Wells Fargo will provide the Class Information Spreadsheet to the Settlement Administrator and Class Counsel within 10 days of the Court's approval of the Settlement Motion. Within 20 days of the Court's approval of the Settlement Motion, the Settlement Administrator will provide Wells Fargo's counsel and Class Counsel with a spreadsheet of the estimated Individual Payments due to each Settling Plaintiff. The Individual Payments due to each Settling Plaintiff will be determined by using a settlement allocation formula taking into account weeks worked, rate of pay, and other equitable factors. A minimum payment of Fifty Dollars ($50.00) will be awarded to all Settling Plaintiffs. The settlement formula to be used by the Settlement Administrator to calculate Individual Payments is attached to this Agreement as Ex. A. Any modifications to this allocation formula must be agreed to by the Parties.

3.5   One-half of each Individual Payment shall be deemed payment of alleged unpaid wages, subject to appropriate payroll withholdings, and reported on an IRS Form W-2. The remaining one-half of each Individual Payment shall be deemed compensation for alleged liquidated damages pursuant to the FLSA, shall not be subject to payroll withholdings, and shall be reported on an IRS Form 1099. Court-approved service awards will be designated as non-wage payments and reported on an IRS Form 1099. The Settlement Administrator shall issue the IRS W-2 forms and 1099 forms for all payments under this Agreement.

3.6   If a Settling Plaintiff fails to cash his/her settlement check within 180 days of its issuance, and there is no request for a new check within one year of issuance, the money allocated to him/her will escheat to the State of California, if permitted, and if not permitted, it will be reallocated to a charity selected by Wells Fargo. The Parties and the Settlement Administrator will exercise their best efforts to ensure that all Settling Plaintiffs receive their checks and that replacement checks are reissued when appropriate, with any stop-payment and re-issuance charges deducted from the respective Settling Plaintiff's share.

### 4. DISMISSAL

Within forty-five (45) days of the Court's approval of the Settlement Motion, the Parties will file a joint stipulation dismissing the settled claims with prejudice with respect to the Settling Plaintiffs. The Court will retain jurisdiction over the Settlement to the extent permitted by law.

### 5. RELEASE OF CLAIMS

5.1  The Named Plaintiffs and all FLSA Collective Action Members, on behalf of themselves, and their heirs, representatives, successors, assigns, and attorneys, hereby compromise, release, resolve, relinquish, discharge and settle each and all of the Released Entities from each of the Alleged Claims and any claims derived from or based upon or related to or arising out of the same factual predicate of the *Richardson* Complaint and the *Chaplin* Complaint, whether known or unknown, that exist in their favor through the date of this Agreement. Collectively, the claims released by Named Plaintiffs and FLSA Class Members shall be known as the "Released Claims."

5.2  The Released Claims include all claims, asserted or unasserted, by the Settling Plaintiffs arising before or during the Class Period, whether in the nature of claims for damages, liquidated damages, punitive damages, minimum wages and/or overtime pay, interest, attorneys' fees, costs or injunctive relief or other penalties or remedies that were or could have been asserted out of, relating to, or in connection with any type of actual or alleged violation of any wage and hour laws asserted in the *Richardson* Complaint or the *Chaplin* Complaint, or that arise from the same factual predicate, whether known or unknown, and whether under the Fair Labor Standards Act or state wage and hour laws.

5.3  "Unknown Claims" means any Released Claims which any Settling Plaintiff does not know or suspect to exist in his or her favor at the time of the Released Claims, which, if known by him or her, might have affected his or her Settlement with and Release of the Released Entities.

5.4  The Settling Plaintiffs may hereafter discover facts in addition to or different from those which he or she now knows or believes to be true with respect to the subject matter of the

Released Claims, but hereby stipulate and agree that the Settling Plaintiffs, upon dismissal of their claims, fully, finally and forever settles and releases any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity, without regard to the subsequent discovery or existence of such different or additional facts.

5.5     Defendants agree that they will bear their own attorneys' fees, litigation expenses and costs arising from the Lawsuit.

## 6.     MISCELLANEOUS PROVISIONS

6.1     The Parties will cooperate and take all necessary steps to effectuate final judicial approval of this Settlement. This Settlement is contingent upon all Settling Plaintiffs being bound by the Settlement and Court approval of the entire Settlement. Wells Fargo will provide to Class Counsel any information necessary to confirm the fairness of this Settlement and the equitable distribution of settlement amounts among the Settling Plaintiffs. Such information may include, but is not limited to, contact information, social security numbers, dates of employment, compensation data, and related personal contact information.

6.2     All the Parties and the Settling Plaintiffs have been represented by counsel throughout all negotiations that preceded the execution of this Agreement, and this Agreement is made with the consent and advice of counsel.

6.3     The Parties and the Settling Plaintiffs waive their right to seek any form of appellate review over any order or judgment that is consistent with the terms of this Agreement.

6.4     This Agreement may not be modified or amended, except in a writing that is signed by the duly authorized representatives of all Parties.

6.5     This Agreement and the exhibits attached hereto constitute the entire agreement between the Parties concerning the subject matter hereof, and supersede and replace all prior negotiations, understandings, memoranda of understanding and proposed agreements, written and oral, relating thereto. No extrinsic oral or written representations or terms shall modify, vary or

contradict the terms of the Agreement unless made in writing and signed by duly authorized representatives of all Parties. No waiver of any term, provision or condition of this Agreement, whether by conduct or otherwise, in any one or more instance shall be deemed to be or construed as a further or continuing waiver of any such term, provision or condition.

6.6   This Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the United States and shall be subject to the continuing jurisdiction of the Court. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement or any specific term or condition thereof.

6.7   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and together shall constitute one and the same instrument. When each of the Parties has signed at least one such counterpart, this Agreement shall become effective and binding as to all the Parties and the Settling Plaintiffs as of the day and year last written. Fax signatures shall be deemed as effective as originals.

6.8   In the event that legal action arises out of this Agreement or is necessary to enforce any of the terms or provisions of this Agreement, the prevailing party in the action shall be entitled to recover its reasonable attorneys' fees and costs.

6.9   Each individual signing this Agreement warrants that he or she has the authority and is expressly authorized to enter into this Agreement on behalf of the party for which that individual signs.

IN WITNESS WHEREOF, each of the undersigned has agreed to and accepted the foregoing terms and conditions by executing this Agreement as of the date indicated below.

DATED: MARCH ___, 2014

FOR DEFENDANTS

By: _____

WELLS FARGO BANK, N.A. and
WELLS FARGO & CO.

DATED: MARCH 25, 2014

FOR NAMED PLAINTIFFS AND FOR FLSA
COLLECTIVE ACTION MEMBERS

_____
Raymond Richardson

_____
Judith Gott

_____
Angela Kolmansberger

_____
Lucy Gonzales

_____
Donna Lynn Pontello

_____
Bill Earley

_____
James Chaplin

Firmwide:126041828.3 051995.1045

DATED: MARCH ___, 2014      FOR DEFENDANTS

By: _____

WELLS FARGO BANK, N.A. and
WELLS FARGO & CO.

DATED: MARCH 25, 2014      FOR NAMED PLAINTIFFS AND FOR FLSA
COLLECTIVE ACTION MEMBERS

_____
Raymond Richardson

_____
Judith Gott

*/s/ Angela Kolmansberger*
Angela Kolmansberger

*/s/ Lucy Gonzales*
Lucy Gonzales

_____
Donna Lynn Pontello

*/s/ Bill Earley*
Bill Earley

*/s/ James Chaplin*
James Chaplin

Firmwide:126041828.3 051995.1045

# EXHIBIT A

Wells Fargo Loan Originators
Allocation Formula for Settling Plaintiffs

"Settling Plaintiffs" (as defined in the Agreement) includes the approximately 4487 individuals who are participating in the settlement.

The relevant time period for the Settling Plaintiffs is February 11, 2008 through March 31, 2011.

From the $15,000,000 Gross Settlement Fund, subtract the Settling Plaintiffs' attorneys' fees ($4,500,000) and litigations expenses and costs ($215,821.88), third party settlement administration fees (not to exceed $60,000), and service awards ($115,000). This results in the "Net Settlement Fund."

From the Net Settlement Fund, (1) allocate $50.00 to all Settling Plaintiffs, and (2) add the product of each "Settling Plaintiff's Points" times the "Net Share Per Point." The resulting amount is each Settling Plaintiff's Individual Payment. To determine each "Settling Plaintiff's Points," and the "Net Share Per Point":

(a) Determine average monthly compensation;

(b) Multiply Total Months Worked in the relevant time period (February 11, 2008 through March 31, 2011) times Settling Plaintiff's monthly average compensation = "Settling Plaintiff's Points";

(c) The Net Settlement Fund divided by the combined "Points" for all Settling Plaintiffs = "Net Share Per Point."