Robert W. Thompson, Esq. (SBN 106411)
Charles Russell Esq. (SBN 233913)
CALLAHAN, THOMPSON, SHERMAN
  & CAUDILL, LLP
111 Fashion Lane
Tustin, California 92780-3397
Tel:    (949)  261-2872
Fax:    (949)  261-6060
Email: rthompson@ctsclaw.com
Email: crussell@ctsclaw.com

George A. Hanson, Esq.
Norman E. Siegel, Esq.
Eric L. Dirks, Esq.
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
816-714-7115 tel
816-714-7101 fax
Email: hanson@stuevesiegel.com
Email: siegel@stuevesiegel.com
Email: dirks@stuevesiegel.com

LEAD COUNSEL FOR NATIONWIDE PLAINTIFFS

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>WELLS FARGO HOME MORTGAGE OVERTIME PAY LITIGATION<br><br>This document relates to NATIONWIDE CASES ONLY | **MDL Case No.: 3:06-md-1770-MHP**<br><br>**NATIONWIDE PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF THE SETTLEMENT ON BEHALF OF FLSA CLASS MEMBERS AND DECERTIFICATION AND DISMISSAL WITHOUT PREJUDICE OF THE NATIONWIDE RULE 23 CLASS CLAIMS**<br><br>Date: August 9, 2010<br>Time: 2:00 P.M.<br>Judge: Hon. Marilyn Hall Patel<br>Courtroom 15 |

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that, pursuant to Local Rule 7-2 and the Court's June

28, 2010 Order, a hearing on matters raised in this Motion will take place on August 9, 2010,

**Exhibit 2**

at 2:00 p.m. before the Honorable Marilyn Hall Patel, District Court Judge for the Northern District of California.  The hearing will be at Courtroom 15 in the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, California.

Nationwide Plaintiffs request this Court to: (a) approve the FLSA settlement in its entirety as fair and reasonable; and (b), decertify the Rule 23 Class, dismiss their claims without prejudice and order notice be sent to them substantially in the form attached as Exhibit B advising them of their rights.

This Motion is based upon this Notice, the Memorandum of Points and Authorities, affidavits, pleadings and other exhibits in support thereof, as well as any documents or testimony presented at the time of hearing.

DATED: July 26, 2010

By:    /s/ Charles S. Russell
Robert W. Thompson
Charles Russell
CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP
111 Fashion Lane
Tustin, California 92780-3397
Tel:    (949)  261-2872
Fax:    (949)  261-6060
Email: rthompons@ctsclaw.com
Email: crussell@ctsclaw.com


George A. Hanson, Esq.
Norman E. Siegel, Esq.
Eric L. Dirks, Esq.
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
816-714-7115 tel
816-714-7101 fax
Email: hanson@stuevesiegel.com
Email: siegel@stuevesiegel.com
Email: dirks@stuevesiegel.com


**CO-LEAD COUNSEL FOR NATIONWIDE PLAINTIFFS**

## TABLE OF CONTENTS

Memorandum of Points and Authorities ................................................................................ 1

I.    Introduction ............................................................................................................... 1

II.   Statement of Facts ..................................................................................................... 1

   A.   Procedural Background ....................................................................................... 1

   B.   Claims and Defenses .......................................................................................... 3

III.  Summary of Settlement .............................................................................................. 4

IV.   Approval of the FLSA Settlement ............................................................................. 5

   A.   Legal Authority .................................................................................................. 5

   B.   The Settlement Resolves a Bona Fide and Contested Dispute. .......................... 6

   C.   The Proposed Settlement Is Fair and Reasonable. ............................................. 6

      1.   The Amount Offered in Settlement is Reasonable. ..................................... 7

      2.   The Expense, Complexity, and Duration of Further Litigation. .................. 8

      3.   The Experience and Views of Counsel. ...................................................... 8

   D.   Incentive Awards ............................................................................................... 9

   E.   Attorneys' Fees and Costs ................................................................................. 11

V.    Decertification of the Rule 23 Class ......................................................................... 14

VI.   Conclusion ............................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Aguayo v. Oldenkamp Trucking*, 2006 WL 3020943 (E.D. Cal. Oct. 17, 2006) ........................... 5

*American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974) ........................................ 15

*Barcia v. Contain-A-Way, Inc.,* No. 07-938, 2009 WL 587844, at *5 (S.D. Cal. March 6, 2009)13

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945 .................................................... 4

*Erie Cty. Retirees Ass'n v. County of Erie, Pennsylvania*, 192 F. Supp. 2d 369, 375-76 (W.D. Pa.
    2002) ................................................................................................................ 7

*Fleury v. Richemont North Am., Inc.*, No. C-05-4525, 2009 WL 1010514, *1 (N.D. Cal. April 14,
    2009................................................................................................................ 10

*Glass v. UBS Fin. Serv., Inc.*, No. C-06-4068, 2007 WL 221862, *4 (N.D. Cal. Jan. 26, 2007 7, 9

*Gribble*, 2008 WL 5281665; *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862 (N.D. Cal. Jan. 26,
    2007) ................................................................................................................ 5

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983 ...................................................... 10

*Hopson v. Hanesbrands, Inc.,* 08-0844, 2009 WL 928133, *10 (N.D. Cal. April 3, 2009) ........... 9

*In re M.L. Stern Overtime Litigation*, No. 07-cv-118, 2009 WL 3272872, *3-4 (S.D. Cal. Oct. 9,
    2009................................................................................................................ 9

*In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 457, 463 (9th Cir. 2000)................................ 13

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998)............. 14

*In re Wells Fargo Home Mortgage Overtime Pay Litigation,* 571 F.3d 953 (9th Cir. 2009)......... 2

*In re Wells Fargo Home Mortgage Overtime Pay Litigation,* no. 06-1770, 2010 WL 174329
    (N.D. Cal. Jan. 13, 2010) ................................................................................... 3

*Jacobs v. California State Auto Ass'n Inter-Ins. Bereau*, No. 07-00362, 2009 WL 3562871, *5
    (N.D. Cal. Oct. 27, 2009 ..................................................................................... 9

*Linney v. Alaska Cellular P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, *5 (N.D. Cal. July 18,
1997    8

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982) ................................... 4, 6

*Misra v. Decision One Mortgage Co.*, No. SA CV 07-0994, 2009 WL 4581276, at *8 (C.D. Cal.
    April 13, 2009 .................................................................................................... 9

*Moralex v. Five J's Trucking, Inc.*, 2006 WL 1409733 (E.D. Cal. May 23, 2006)....................... 5

No. C05-1777, 2009 WL 372087 ............................................................................... 9

*Officers for Justice v. Civil Service Comm'n of City and County of San Francisco* 688 F.2d 615, 633. (9th Cir. 1982) ................................................................................................... 14

*Perry v. Nat'l City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008) ............................... 13

*Rosenburg .v Int'l Bus. Machines Corp.*, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007) ............... 5

*Sandoval v. Tharaldson Employee Mgmt.*, No. EDCV 08-00482-VAP, 2009 WL 3877203 (C.D. Cal. Nov. 17, 2009 ......................................................................................................... 7

*Singer v. Becton Dickinson and Co.*, No. 08-CV-821-IEG, 2009 WL 4809646 (S.D. Cal. Dec. 9, 2009 ................................................................................................................................ 7

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990 ............ 11

*Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1262 (M.D. Ala. 2003 ...................................... 4

*Sullivan v. Oracle Corp.*, Cal. Sup. Court Case No. S170577 (4/22/09) ........................................ 3

*Trinh v. JP Morgan & Chase Co.*, 2009 WL 532556 at *1 (S.D. Cal. 2009) ................................ 5

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995 .................................. 9

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) ...................................... 15

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002 ............................................... 11

*Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986 .................................. 5

*Yue Zhou v. Wang's Restaurant*, No. C05-0279, 2007 WL 2298046 (N.D. Cal. Aug. 8, 2007 ...... 5

**Statutes**

29 U.S.C. § 216(b) .......................................................................................................................... 10

29 U.S.C. §§ 201, et seq ................................................................................................................... 3

Cal. Bus. & Profs. Code §§ 17200, et seq ........................................................................................ 3

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................................. 5

Fed. R. Civ. P. 23(f) ......................................................................................................................... 2

Fed. R. Civ. Proc., R. 23(c)(1)(C) ................................................................................................... 14

Fed. R. Civ. Proc., R. 23(e) ............................................................................................................. 14

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The parties to the Nationwide Action have reached a settlement.  The settlement is memorialized in a written agreement ("Agreement," attached to the Declaration of Robert W. Thompson as Exhibit 1, with attachments 1-A and 1-B.)   Under the terms of the Agreement, the FLSA Collective Action is being settled for a total gross amount of $20 million, and the Rule 23 Class is to be decertified and dismissed without prejudice.  For all the reasons set forth below and in the supporting documents, the settlement is fair, reasonable, and adequate. The FLSA settlement meets all requirements for approval, and decertification of the Rule 23 Class is appropriate.

Pursuant to the terms of the Agreement, Nationwide Plaintiffs request this Court to: (a) approve the FLSA settlement in its entirety as fair and reasonable; and (b), decertify the Rule 23 Class, dismiss their claims without prejudice and order notice be sent to them substantially in the form attached as Exhibit B advising them of their rights.

## II.    STATEMENT OF FACTS

### A.    Procedural Background

Several separate wage and hour actions were brought against Wells Fargo on behalf of current and former loan originators, otherwise known as Home Mortgage Consultants ("HMCs").  The cases are: *Mevorah v. Wells Fargo Home Mortgage, Inc.*, N.D. Cal. 3:05-1175; *Perez v. Wells Fargo Mortgage Co*., N.D. Cal. 3:05-2722; *Perry v. Wells Fargo Home Mortgage, Inc*., S.D. Ill. No. 3:05-890; and *Miles v. Wells Fargo Mortgage Company*, N.D. Cal., Case No. 3:06-CV-01991 MEJ. On June 15, 2006, the Judicial Panel on Multidistrict Litigation transferred these actions pursuant to 28 U.S.C. § 1407 to the United States District Court for the Northern District of California ("the Court").

The consolidated cases were brought on behalf of two subgroups of HMCs.  The first group consists of current and former HMCs who worked in California ("California Plaintiffs").  The second group consists of current and former HMCs who worked in the

United States, but outside of California ("Nationwide Plaintiffs").  This settlement involves the Nationwide Plaintiffs only.

On October 18, 2007, the Court issued two orders regarding the Nationwide Plaintiffs:  (i) the Court certified a Rule 23 class based on the alleged violation of the California Unfair Competition Law ("the Nationwide Rule 23 Class"), and (ii) the Court certified a 29 U.S.C. § 216(b) collective class based on the alleged violation of the Fair Labor Standards Act ("the FLSA Collective Action").  Also on October 18, 2007, the Court issued a similar but separate order certifying the California Plaintiffs as a Rule 23 class.

A notice approved by the Court was sent in February 2008.  Following notice, and after excluding individuals who returned exclusion forms, the Nationwide Rule 23 Class consisted of approximately 23,561 individuals.

Approximately 4,570 HMCs returned consent to join forms, which were filed with the Court, and as a result, those individuals became plaintiffs in the FLSA Collective Action.  In their respective consent-to-join forms, each FLSA Collective Action plaintiff designated "Genaro Perez and Derrick Perry as my representative, and to the fullest extent possible, to make decisions on my behalf concerning the case, the method and manner of conducting the case, the entering of an agreement with Plaintiffs' counsel regarding payment of attorneys' fees and court costs, the approval of settlements, and all other matters pertaining to this lawsuit." (*See, e.g.,* Notice of Consent to Join, Docket # 241.)  Each person who consented to join also affirmatively chose to be represented by the lead counsel for the Nationwide Plaintiffs.[1] (*Id.*)

Shortly after the Court issued its orders certifying the California and Nationwide Rule 23 classes, Wells Fargo filed an appeal of both decisions pursuant to Fed. R. Civ. P. 23(f).  On July 7, 2009, the United States Court of Appeals for the Ninth Circuit reversed the

---

1.      In its July 27, 2006 Case Management Order consolidating and coordinating the cases, the Court appointed the law firms of Callahan McCune & Willis, APLC (now Callahan, Thompson, Sherman & Caudill, LLP) and Stueve Siegel Hanson LLP as lead counsel for Nationwide Plaintiffs.

Court's order certifying the California Plaintiff class. *In re Wells Fargo Home Mortgage Overtime Pay Litigation,* 571 F.3d 953 (9th Cir. 2009). On remand, this Court denied class certification to the California Plaintiffs. *In re Wells Fargo Home Mortgage Overtime Pay Litigation,* no. 06-1770, 2010 WL 174329 (N.D. Cal. Jan. 13, 2010). Because a threshold issue – specifically, whether the California Unfair Competition Law may be applied to non-California workers – is pending before the California Supreme Court in *Sullivan v. Oracle Corp.*, Cal. Sup. Court Case No. S170577 (4/22/09), the Ninth Circuit has not ruled on Wells Fargo's appeal of the Court's order certifying the Nationwide Rule 23 Class. *In re Wells Fargo,* 571 F.3d at 955, fn 1.

The parties mediated this case on four separate occasions. The last three mediations were conducted with David Rotman of Gregorio, Haldeman, Piazza, Rotman, Frank & Feder in San Francisco. At the conclusion of the most recent mediation on May 7, 2010, Mr. Rotman made a mediator's proposal that was accepted by the parties and the parties thereafter executed a settlement term sheet. The settlement was thereafter memorialized in the Agreement attached as Exhibit 1.

### B.   Claims and Defenses

This litigation involved claims by HMCs living and working in a variety of settings across the country to sell home mortgage products for Wells Fargo. The plaintiffs alleged they were misclassified as exempt and were entitled to compensation for the overtime they had worked. They asserted causes of action directly under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., as well as under California's unfair competition law, Cal. Bus. & Profs. Code §§ 17200, et seq.

Wells Fargo asserted numerous defenses, both as to class status and as to liability. Chief among them were Wells Fargo's affirmative defenses based on exemption. Wells Fargo argued the HMCs are exempt, variously and alternatively, as commissioned salespersons, outside salespersons, highly compensated, and administrative employees. The federal commissioned salesperson exemption was eliminated through summary judgment,

3

but Wells Fargo continued to vigorously assert the administrative, outside sales, and highly compensated exemptions.

## III.    SUMMARY OF SETTLEMENT

The parties agreed to settle the FLSA Collective Action claims, and that the Rule 23 Class should be decertified and dismissed without prejudice.  (See Exhibit 1, Agreement § 3.1.)  The terms of the Agreement are summarized as follows and are set forth in full in the attached Agreement. (Exhibit 1, 1-A, and 1-B.)

With regard to the settlement of the FLSA Collective Action, a $20 million settlement fund will be created after approval by this Court, inclusive of attorneys' fees and costs, and other costs of the settlement other than Wells Fargo's portion of payroll taxes.  Each FLSA Collective Action member will receive a proportionate share of the settlement fund according to a formula based on the length of each person's individual tenure and compensation. (See Settlement Agreement § 3.4 and Exhibit 1-B.)   The Agreement further provides for a minimum payment of $100 to each Collective Action member.   (Agreement § 3.4.) The average gross per capita recovery for Collective Action members will be approximately $4,375. The settlement equates to approximately $250 for each month worked by FLSA class members.  Thus, the overall gross recovery for the average individual who worked for the entire class period will be in the range of $20,000.  Likewise, the recovery for individuals who worked for only a few weeks or months, or whose compensation was lower than the average will be proportionately lower.  (Hanson Decl., ¶ 8.)  The computation and handling of the settlement will be accomplished by a neutral administrator.  These payments are made in exchange for dismissal with prejudice and a release of claims by the FLSA Collective Action members.  (Agreement § 5.)

The Agreement also calls for the Rule 23 Class to be decertified, and their claims dismissed without prejudice.  (Agreement § 3.1.) Notice will be sent to the Rule 23 Class fully advising them as to the decertification and their rights. (*See Id.* and Notice attached as Agreement Exhibit 1-A.)

## IV.    APPROVAL OF THE FLSA SETTLEMENT

### A.    Legal Authority

As a general matter, settlement of claims brought under the FLSA requires court approval. *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1262 (M.D. Ala. 2003) (*citing Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697 (1945)); *see also Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982).  Pursuant to a private enforcement action under 29 U.S.C § 216(b) of the FLSA, the district court may approve a settlement of contested litigation to resolve a bona fide dispute between the parties.  *Lynn's Food.,* 679 F.2d at 1353; *see also Yue Zhou v. Wang's Restaurant*, No. C05-0279, 2007 WL 2298046, *1 (N.D. Cal. Aug. 8, 2007) ("The proper procedure for obtaining court approval of the settlement of FLSA claims is for the parties to present to the court a proposed settlement, upon which the district court may enter a stipulated judgment only after scrutinizing the settlement for fairness.").  The Court must "determine whether the settlement is a fair and reasonable resolution of a bona fide dispute." *Trinh v. JP Morgan & Chase Co.*, 2009 WL 532556 at *1 (S.D. Cal. 2009).  Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness.  *Lynn's Food Stores*, 679 F.2d at 1354.   If the proposed settlement reflects a reasonable compromise over contested issues, the court may approve the settlement in order to promote the policy of encouraging settlement of litigation.  *Id.*; *see also Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986).

Federal courts in California routinely approve similar settlements reached in FLSA collective actions.  *See, e.g.*, *Gribble*, 2008 WL 5281665; *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007); *Rosenburg .v Int'l Bus. Machines Corp.*, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007); *Aguayo v. Oldenkamp Trucking*, 2006 WL 3020943 (E.D. Cal. Oct. 17, 2006); *Moralex v. Five J's Trucking, Inc.*, 2006 WL 1409733 (E.D. Cal. May 23, 2006).

Unlike settlements under Fed. R. Civ. P. 23, FLSA settlements are not subject to a two-stage process of preliminary approval followed by final approval, and no final fairness hearing is

required.  However, Court approval of this collective action settlement remains necessary to effectuate a valid and enforceable release of Nationwide Plaintiffs' FLSA claims.

**B.      The Settlement Resolves a Bona Fide and Contested Dispute.**

This Nationwide litigation was strongly contested, protracted, and reflected a bona fide and contested dispute between the parties.  (Thompson Decl. ¶ 12, Hanson Decl. ¶ 5.)  Multiple lawsuits were filed by different plaintiffs using different law firms in different courts. The cases were consolidated in this Court by the Judicial Panel on Multi-District Litigation. The earliest cases were filed in 2005 – more than five years ago.  The motion practice was enormously complicated, hard-fought and the parties strenuously argued their positions.  Further, as noted above, Wells Fargo claimed numerous defenses to Plaintiffs' claims, including that HMCs were paid lawfully, that class and collective action treatment was inappropriate, and that the pay practices varied from location to location.  Nationwide Plaintiffs successfully brought a motion for summary adjudication with regard to the federal commissioned salesperson exemption, but other affirmative defenses asserted by Wells Fargo remained in doubt after the Court's initial certification orders. Wells Fargo appealed both class certification orders, and was successful before the Ninth Circuit in reversing and remanding the certification order with regard to the California Class.  In short, this hard and long-fought case reflects a bona fide dispute in a contested litigation and, as such, the settlement enjoys a presumption of fairness. (Thompson Decl. ¶ 12, Hanson Decl. ¶ 5.)

**C.      The Proposed Settlement Is Fair and Reasonable.**

The second prong of the Court's settlement approval inquiry focuses on the fairness and reasonableness of the proposed settlement.   As explained below, the Court should readily conclude that the settlement meets the criteria for approval.

This settlement was the product of arm's-length negotiations by experienced counsel and has the salutary effect of (1) providing substantial and immediate relief to the Collective Action members, and (2) eliminating the inherent risks both sides would bear if this complex litigation

continued to resolution on the merits.   A fourth mediation with a qualified mediator, David Rotman, ultimately allowed the parties to bridge the significant gap between the parties' settlement positions and obtain the resolution described above.  (Thompson Decl. ¶ 11, Hanson Decl. ¶ 7.)  Under these circumstances, a presumption of fairness should attach to the proposed settlement.  *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354.  Moreover, consideration of several additional factors confirms that the proposed settlement is fair and reasonable.

### 1.    The Amount Offered in Settlement is Reasonable.

By any objective measure, the compensation this settlement makes available to class members is favorable and provides class members reasonable consideration for their alleged claims.   The settlement brings class members significant monetary value *now*, not years from now, and provides certainty about the outcome.   Further, the average per capita gross compensation – and $4,375, representing approximately $250 for each month worked – provides a meaningful recovery.  This is not a case where the benefit to the class is largely injunctive or of modest value.  Although the maximum possible award at trial could be larger than the settlement amount, the inquiry as to whether a settlement is reasonable examines the benefits of the settlement in light of the risks of establishing liability and damages.  *See, e.g., Singer v. Becton Dickinson and Co.*, No. 08-CV-821, 2009 WL 4809646 (S.D. Cal. Dec. 9, 2009) (finding the amount offered in settlement to be adequate "in light of the uncertainties involved"); *Sandoval v. Tharaldson Employee Mgmt.*, No. EDCV 08-00482, 2009 WL 3877203 (C.D. Cal. Nov. 17, 2009) (settlement amount was reasonable considering, among other factors, the risk of proving liability and damages at trial); *Glass v. UBS Fin. Serv., Inc.*, No. C-06-4068, 2007 WL 221862, *4 (N.D. Cal. Jan. 26, 2007) (finding settlement of wage and hour class action for a percentage of the claimed damages to be reasonable in light of uncertainties involved in the litigation).

2.      The Expense, Complexity, and Duration of Further Litigation.

This case is complex and carries significant risks for the parties as to both legal and factual issues.  There is no question that litigating the case to trial would require substantial time and expenses in addition to that already expended.  Among the risks faced by Plaintiffs was the uncertainty of maintaining a certified collective action.  The Ninth Circuit reversed the Court's Rule 23 certification of the California Class, and on remand, the Court denied California Plaintiffs' renewed motion for class certification.  Although the standards for certification under § 216(b) of the FLSA are different, there is no doubt that Wells Fargo would vigorously argue that the FLSA collective action should be decertified for the same reasons that doomed the Rule 23 class.  Further, a massive amount of discovery and trial preparation would have been required given the size of the FLSA class (4,570 individuals).  And an expert's sampling of opt ins, analysis and extrapolation of damages would have been lengthy and extremely costly.  All of these factors show that a trial was not on the near horizon, even absent any additional appeals.  Finally, it is very likely that in the event Plaintiffs were to prevail at trial, Wells Fargo would appeal such a result.  It is safe to say that trial preparation, trial and post-trial litigation could consume at least another three years before there would be finality in this litigation that dates back to 2005.  (See Hanson Decl. ¶¶ 5-7, Thompson Decl. ¶12.)

3.      The Experience and Views of Counsel.

The experience of Class Counsel in litigating and negotiating complex wage and hour disputes likewise strongly favors approving the settlement.  "The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery ha[s] taken place create[s] a presumption that the agreement is fair."  *Linney v. Alaska Cellular P'ship*, No. C-96-3008, 1997 WL 450064, *5 (N.D. Cal. July 18, 1997).  Although the Court is not bound by counsels' opinion, their opinion

is nonetheless entitled to great weight. *Gribble*, 2008 WL 5281665, at *9. The putative class had the benefit of attorneys who are highly experienced in complex litigation and familiar with the facts and law in the case, and who have negotiated many such class and collective action settlements. (Thompson Decl. ¶¶ 3-11, Hanson Decl. ¶¶ 1-9.) As with all aspects of the litigation, the settlement negotiations were hard-fought and at arm's length. In Nationwide Plaintiffs' Counsels' view, the settlement provides substantial benefits to the Class, especially when one considers, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. Further, in Nationwide Plaintiffs' Counsels' experience, when evaluated against the risks and compared with similar litigation, the relief to the class is substantial. (*Id.*) Because this settlement is fair, adequate, and eminently reasonable, it should be approved.

### D.   Incentive Awards

In recognition of their service, their assistance in prosecuting the case, their participation in written discovery and appearing for depositions, and their participation in settling the case, the Plaintiffs ask the Court to approve incentive awards of $5,000 to each of the three named Plaintiffs.

A $5,000 incentive award is presumptively reasonable in this Court. *See Hopson v. Hanesbrands, Inc.,* 08-0844, 2009 WL 928133, *10 (N.D. Cal. April 3, 2009) "When determining incentive awards, courts may consider a variety of factors, including risks to Plaintiffs in commencing the suit, personal difficulty encountered by Plaintiffs, the amount of time and effort spent by Plaintiffs, and the personal benefit enjoyed by representatives as a result of the litigation." *Tarlecki v. bebe Stores, Inc.,* No. C05-1777, 2009 WL 3720872, *5 N.D. Cal. Nov. 3, 2009) (citing *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)); *Misra v. Decision One Mortgage Co.*, No. CV 07-0994, 2009 WL 4581276, *8 (C.D. Cal. April 13, 2009) ("It is appropriate for courts to award enhancements to representative plaintiffs who undertake the risk of personal or financial harm as a result of litigation."). In the *Glass* case, this Court approved $25,000 incentive awards to each of four class representatives in

1   a case where no formal discovery was conducted.  2007 WL 221862, at *16-17.  Further, an

2   award of $5,000, as sought here, is warranted when the Plaintiffs have spent a significant amount

3   of time assisting counsel and participating in the discovery process.  *See Jacobs v. California*

4   *State Auto Ass'n Inter-Ins. Bureau,* No. 07-00362, 2009 WL 3562871, *5 (N.D. Cal. Oct. 27,

5   2009) (awarding $7,500 to class representative who spent "somewhat more time assisting

6   counsel than occurs in the average case"); *In re M.L. Stern Overtime Litig.*, No. 07-cv-118, 2009

7   WL 3272872, *3-4 (S.D. Cal. Oct. 9, 2009) (awarding class representatives $15,000 each);

8   *Fleury v. Richemont North Am., Inc.*, No. C-05-4525, 2009 WL 1010514, *1 (N.D. Cal. April 14,

9   2009) (approving incentive awards to the class representatives in the amount of $10,000 each).

10          Plaintiffs Perez and Perry – the appointed and certified representative plaintiffs – worked

11  closely with counsel and met with them on multiple occasions, traveled from their homes to be

12  deposed by Wells Fargo (Perez traveled from his home in New Jersey to San Francisco),

13  participated in developing factual material and strategy, and participated in discovery both in

14  terms of responding and developing discovery to be propounded, and communicated routinely

15  with counsel regarding the case and regarding the mediation and settlement in this case.  Brenda

16  Miles, the third named-plaintiff, while not appointed as a class representative, similarly took the

17  initiative to file a lawsuit on behalf of others, participated in her own deposition, and was

18  instrumental in the settlement being achieved.  (Thompson Decl. ¶ 14, Hanson Decl. ¶ 17.)

19          For each of these depositions, the Plaintiffs met with counsel in advance to prepare.

20  Further, they worked closely with Class Counsel in managing the settlement process and in

21  reviewing and approving the settlement agreement.  These depositions and assistance were used

22  to evaluate the case and were used in support of class certification.   (*Id.*)

23          The requested incentive awards are a tiny fraction of the $20 million settlement fund in

24  this case – together totaling only .075% of the settlement fund.  Without the active Plaintiffs'

25  participation in this case, the settlement would not have been possible.  The total settlement fund

26  here easily demonstrates the substantial benefits the active plaintiffs have brought to the class as

27  a whole justifies incentive awards.

28

### E.     Attorneys' Fees and Costs

Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to an award of reasonable attorneys' fees. In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Here, Nationwide Counsel seek $5 million for attorneys' fees (25% of the total settlement fund) and $154,019.39 as actual costs, as provided in the Settlement Agreement.   (See Declarations of Thompson and Hanson regarding the actual costs incurred.)  Wells Fargo has agreed not to object to or oppose such amounts.  (See Agreement, § 2.2.)  Plaintiffs' Counsels' fee request is fair and reasonable and there is no reason the Court should disturb the agreement of the parties.

In analyzing the reasonableness of a fee, courts may apply the percentage-of-the-fund or the lodestar method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Plaintiffs request that the Court adopt the percentage method, as that is what the parties have agreed.  The fee request is reasonable under either standard.

 In applying the percentage of the fund methodology, the Ninth Circuit has held that 25% of the total settlement fund is the benchmark fee award. *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990), and the usual range is 20-30%, *Vizcaino,* 290 F.3d at 1047.  Here, the representative plaintiffs, Perry and Perez have entered into retainer agreements with Nationwide Counsel that would provide for attorneys' fees of one-third or more of the total recovery, and the opt-ins have authorized the named plaintiffs to enter into agreements on their behalf regarding the payment of attorneys' fees.  (Thompson Decl. ¶ 15, Hanson Decl. ¶ 10.)  Plaintiffs counsel, however, have agreed to limit their fee to just 25% of the total settlement fund, which is in keeping with the benchmark approved by the Ninth Circuit. (Agreement § 2.2.)

Further, the Ninth Circuit sets out a non-exhaustive list of factors which may be relevant

to the district court's determination of the fees ultimately awarded: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases.  *See Vizcaino*, 290 F.3d at 1048-50.  Each of these factors also supports the agreed-upon attorney fee request:

(1) The settlement reflects excellent results – This settlement puts meaningful relief into the hands of FLSA Collective action.  The per capita gross settlement amount is more than $4,375 per plaintiff and, on average, approximately $250 per month worked in the class period.   (See Hanson Decl. ¶ 8.)

(2) The litigation was risky – As evidenced by other wage and hour cases involving loan officers, this litigation had significant risks.  These included the risk that the collective action would be decertified, as the California Rule 23 class was; the risk of loss given Wells Fargo's asserted exemption defenses; the risk of further appeal; and even if the plaintiffs were to prevail, the risk that a court or jury could find that measure of damages to be smaller than that sought.  (Thomspon Decl. ¶ 12, Hanson Decl. ¶ 5.)

(3) The litigation required significant skill – Counsel effectively and diligently prosecuted this challenging and complicated case.  This litigation went before the Judicial Panel on Multi-District Litigation and several individual lawsuits filed in various locations were all consolidated into one large action.  A Case Management Order was created appointing the Callahan and Stueve Siegel firms as co-lead counsel for the nationwide, non-California actions.  The collective action and Rule 23 class action certifications were both highly contentious battles requiring tremendous amounts of factual and legal work. Counsel prepared and produced clients for multiple depositions and took several corporate depositions – including depositions of high-ranking corporate officers.   The fact that this case required four separate mediations with two different, highly-skilled and nationally-recognized class action

mediators before a settlement was finally achieved is further testament to the skill of counsel in obtaining these results. (See Thompson Decl. ¶¶ 10-12, Hanson Decl. ¶¶ 5-7.)

(4) <u>Plaintiffs' Counsel took the case on a contingency fee arrangement and expended a great deal of their own resources in prosecuting the case</u> – Nationwide Counsel have prosecuted this case since early 2005 and have paid significant costs and expenses up front.  They have expended a great deal of time in the case as well.  As of this filing, Plaintiffs' Counsel have expended approximately 7,000 hours and $154.019.39 in costs, amounts certain to increase through the administration and notice phases. (Thompson Decl. ¶¶ 16-20, Hanson Decl. ¶¶ 10-16.)

(5) <u>The requested fee award is in line with similar cases</u> – As discussed above, courts routinely award attorneys' fees of 25% of the settlement fund in similar wage and hour litigation. "In wage and hour cases, 'twenty-five percent is considered a benchmark for attorneys' fees in common fund cases." *Barcia v. Contain-A-Way, Inc.,* No. 07-938, 2009 WL 587844, at *5 (S.D. Cal. March 6, 2009); *accord Perry v. Nat'l City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards in loan originator wage case, No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008) (approving request for 33 percent of the settlement fund).  And the Ninth Circuit has, several times, awarded fees in excess of 25% of the common fund requested here. *See Vizcaino,* 290 F.3d at 1050 (affirming 28% of fund as attorney fee); *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 457, 463 (9th Cir. 2000) (affirming 33% of fund as fee); *In re Pac. Enter. Sec. Litig*., 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% of fund as fee).  Accordingly, this factor fully supports the benchmark fee request. Similarly, in recent wage cases involving the same defendant, courts have awarded the same or higher 25% of the fund requested here. *See, Garnica, et al. v. Wells Fargo Bank, N.A.*, Case No. 01264187 (33.9 % of the fund); *see also Osinga v. Wells Fargo* Case No. BC305453 (25% of the fund).

Lastly, although not required, the Ninth Circuit permits a district court to conduct a "lodestar crosscheck" on a percentage-of-the-fund fee request.   Class Counsel's lodestar is $3,470,010.00.[2]   (Thompson Decl. ¶¶ 17-19, Hanson Decl. ¶¶ 11-12.) The lodestar multiplier on the hours worked to date, therefore, is 1.44.   This multiplier is not unreasonable as "multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."   3 Newberg § 14.03 at 14-5; *accord Vizcaino*, 290 F.3d at 1051 (approving multiplier of 3.65 and identifying several other cases with multipliers of four or greater); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) ("In recent years multipliers of between 3 and 4.5 have become common").

Class Counsel's request for 25% of the settlement fund is fully justified by the fact that it is equal to or less than the benchmark set by the Ninth Circuit, is fully supported by each of the relevant factors and is further supported by a lodestar crosscheck.  The Court should, therefore, approve the fee as agreed upon between the parties.

## V.    DECERTIFICATION OF THE RULE 23 CLASS

In addition to settling the FLSA Collective Action, the parties have agreed that the previously certified Rule 23 class of non-California plaintiffs be decertified and that their claims be dismissed without prejudice.

Decertification of the Rule 23 Class and dismissal without prejudice of their claims from this lawsuit requires court approval.  *See* Fed. R. Civ. Proc., R. 23(e).  A district court's decision on maintainability of class status is inherently tentative and the class is subject to decertification at any time before final judgment. Fed. R. Civ. Proc., R. 23(c)(1)(C); *Officers for Justice v. Civil Service Comm'n of City and County of San Francisco* 688 F.2d 615, 633. (9th Cir. 1982).

---

[2]The lodestar includes only hours by the Lead Counsel firms of Stueve Siegel Hanson LLP and Callahan Thompson Sherman & Caudill, LLP.  Lead Counsel has requested the time records from counsel in the *Miles* action.  Although Lead Counsel do not have the complete time records of the *Miles* attorneys at this time, Lead Counsel anticipates the amount of time will be modest.  As part of its responsibilities as Court-appointed lead counsel in the MDL, Lead Counsel will ensure that lawyers in the *Miles* action are fairly compensated from the awarded attorneys fees for their time in the case.

Decertification is appropriate here.  Shortly after the Court issued its orders certifying the California and Nationwide Rule 23 classes, Wells Fargo filed an appeal of both decisions pursuant to Fed. R. Civ. P. 23(f).  On July 7, 2009, the United States Court of Appeals for the Ninth Circuit reversed the Court's order certifying the California Rule 23 Class.  *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953 (9th Cir. 2009).  On remand, this Court denied class certification to the California Plaintiffs.

As to the Rule 23 class of non-California plaintiffs, the Ninth Circuit has not yet ruled on Wells Fargo's appeal because the California Supreme Court has not yet ruled whether the California Unfair Competition Law may be applied to non-California workers.  *Sullivan v. Oracle Corp.*, Cal. Sup. Court Case No. S170577 (4/22/09).

While Nationwide Plaintiffs maintain that Rule 23 certification was appropriate, given the Ninth Circuit's rulings regarding the California Class in this case (*In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953 (9th Cir. 2009)) and in its companion opinion of *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009), and given this Court's order denying class certification in the California case on remand, Nationwide Plaintiffs appreciate that decertification of the Nationwide Rule 23 Class is likely inevitable.  The class representatives and class counsel have fiduciary obligations to the Rule 23 Class, but those obligations do not require the representatives or counsel to take positions with no reasonable chance of success.

Pursuant to the terms of the Agreement between the parties, the Rule 23 Class will be decertified, their claims dismissed without prejudice, and they will receive notice clearly advising them of the decertification and dismissal and advising them of their rights. (See Notice, attached to the Settlement Agreement as Exhibit 1-A.)  The statute of limitations on their California Unfair Competition Law claims has been tolled during the pendency of the period of certification, (*American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974)), and the parties have agreed to further tolling of the statute of limitations for the Unfair Competition Law claims for an additional 90 days from the date the notice is mailed.  (Agreement § 3.1.)  Rule 23 Class

Members wishing to move forward with their claims will be permitted to pursue them in individual lawsuits.

Plaintiffs, therefore, request that the Court order the Rule 23 class decertified, their claims dismissed without prejudice, and approve the notice submitted.

## VI.    CONCLUSION

For all the foregoing reasons, Plaintiffs request that the settlement be approved and the Rule 23 Class decertified, with notice to be sent to the Rule 23 Class members in substantially the form presented.

Respectfully submitted,


DATED: July 26, 2010

By:    /s/ Charles S. Russell
Robert W. Thompson
Charles Russell
CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP
111 Fashion Lane
Tustin, California 92780-3397
Tel:    (949)  261-2872
Fax:    (949)  261-6060
Email: rthompons@ctsclaw.com
Email: crussell@ctsclaw.com


George A. Hanson, Esq.
Norman E. Siegel, Esq.
Eric L. Dirks, Esq.
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
816-714-7115 tel
816-714-7101 fax
Email: hanson@stuevesiegel.com
Email: siegel@stuevesiegel.com
Email: dirks@stuevesiegel.com

**CO-LEAD COUNSEL FOR NATIONWIDE PLAINTIFFS**

The e-filer has obtained the concurrence of all signatories.

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2010, I electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send email notification of such filing(s) to the following:

Lindbergh Porter, Jr.
Richard H. Rahm
LITTLER MENDELSON, PC
650 California Street, 22nd Floor
San Francisco, CA 94108
Email: lporter@littler.com
Email: rrahm@littler.com
PH:     415-433-1940 / Fax: 415-399-8490
ATTORNEYS FOR DEFENDANT

H. Tim Hoffman
Arthur William Lazear
HOFFMAN & LAZEAR
180 Grand Avenue, Suite 1550
Oakland, CA 94612
Email: hth@hoffmanandlazear.com
Email: awl@hoffmanandlazear.com
PH:     510 763-5700 / Fax:

Kevin J. McInerney
MCINERNEY & JONES
18124 Wedge Parkway #503
Reno, NV 89511
Email: kevin@mcinerneylaw.net
PH:     775-849-3811 / Fax:   775-849-3866
ATTORNEYS FOR CALIFORNIA PLAINTIFFS


                          /s/ Charles S. Russell
                         Charles S. Russell, an attorney for
                         Nationwide Plaintiffs