**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| IN RE: WELLS FARGO WAGE AND HOUR EMPLOYMENT PRACTICES LITIGATION (NO. III) | MULTI-DISTRICT LITIGATION CASE NO. 4:11-md-2266 |

**OBJECTION TO PROPOSED SETTLEMENT AGREEMENT
– AND –
REQUEST FOR A RULING ON *CHAN* PLAINTIFFS' MOTION FOR RECONSIDERATION**

*HEARING REQUESTED*

## TABLE OF CONTENTS

I. FACTS RELEVANT TO THIS OBJECTION ................................................................2

II. ARGUMENT .................................................................................................................6

   A. Chan Plaintiffs Have Standing To Object To The Proposed Settlement Agreement....6

   B. Before Approving An FLSA Settlement, The Court Must Closely Scrutinize Any Pervasive Releases To Ensure They Are Fair And Reasonable. ................................7

      1. The problem with pervasive releases in FLSA cases..........................................7

      2. The legal standard for reviewing pervasive releases in FLSA cases ...................8

   C. The Pervasive Release Provisions of the Proposed Settlement Agreement In This Case Render Are Inequitable And Unfair....................................................................9

      1. The release provision contained in the proposed Settlement Agreement is pervasive and has been rejected by numerous courts..........................................9

      2. Insufficient information has been provided for the Court to be able to assess the value of the released claims..............................................................................10

III. *CHAN* PLAINTIFFS MOTION TO RECONSIDER.......................................................14

IV. CONCLUSION .............................................................................................................15

# TABLE OF AUTHORITIES

**Cases**
*Bright v. Mental Health Res. Ctr., Inc.,* 2012 WL 868804 (M.D. Fla. Mar. 14, 2012) ............ 8, 10
*Brumley v. Camin Cargo Control, Inc.,* 2012 WL 1019337 (D. N.J. Mar. 26, 2012) ............... 9, 16
*Gambrell v. Weber Carpet, Inc.*, 2012 WL 5306273 (D. Kan. Oct. 29, 2012) ......................... 8, 9
*Hogan v. Allstate Beverage Co, Inc.*, 821 F.Supp. 2d 1274 (M.D. Ala. 2011) .............................. 7
*Jarrard v. Se. Shipbuilding Corp.*, 163 F.2d 960 (5th Cir. 1947) .................................................. 6
*Kakani v. Oracle Corp.*, 2007 WL 1793774 (N.D. Cal. June 19, 2007) ........................................ 8
*Luo v. Zynga*, 2013 WL 5814763 (N.D. Cal. Oct. 29, 2013) ........................................................ 8
*McKeen-Chaplin v. Franklin Am. Mortg. Co.*, 2012 WL 6629608 (N.D. Cal. Dec. 19, 2012) . 8, 9, 11
*Moreno v. Regions Bank*, 729 F. Supp. 2d 1346 (M.D. Fla. 2010) ....................................... passim
*Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946) ................................................................................. 6

**Other Authorities**
*Newberg on class Actions* §12:15 (4th ed. 2002) ......................................................................... 8

**Rules**
Fed. R. Civ. P. 23(a)(4) ................................................................................................................... 7

As the lead named Plaintiffs in the *Chan* Action,[1] Mr. Brent Chan and Mr. Dien Luu ("*Chan* Plaintiffs") have a duty to protect the interests of the members of the *Chan* class and vigorously prosecute the interest of the class. Accordingly, Messrs. Chan and Luu file this objection to highlight a fatal deficiency with the Settlement Agreement related to the over broad release that will adversely affect certain Washington State residents who are members of the *Chan* class. In short, MDL Lead Counsel have over-reached in this settlement, negotiating a self-serving deal that sells out members of the *Chan* class. Therefore, Plaintiffs Chan and Luu respectfully file this objection to seek two kinds of relief from the Court.

*First,* by and through their counsel, they respectfully object to MDL Lead Counsel's motion for Approval of the Settlement on Behalf of FLSA Collective Action Members ("Approval Motion" or "Approval Mtn.") (Dkt. 233). In particular, *Chan* Plaintiffs object to the overly broad and pervasive release provisions in the Settlement Agreement which extinguish claims beyond FLSA claims for all the opt-in plaintiffs and, specifically, for Washington opt-in plaintiffs who have *known* claims for unlawful deductions of third party fees from their wages as well as unpaid wages for meal and rest periods (collectively, "Known Claims") that have been plead on their behalves.[2] As currently structured, the Settlement Agreement will cause these Known Claims to be *waived without any additional compensation* to those plaintiffs. Therefore, *Chan* Plaintiffs request that the Court reject the pervasive release provisions of the proposed Settlement Agreement and order that the release provisions of the proposed Settlement Agreement be modified to track the FLSA allegations in the *Richardson* and *Chaplin* complaints and release only the FLSA claim raised in those complaints.

*Second*, *Chan* Plaintiffs renew their request that this Court reconsider its November 22, 2013 Order (Dkt. 210) granting Lead Counsel leave to file an amended and supplemental complaint in the *Chan* case (Dkt 202). The Court's November 22nd Order was granted on the

---

[1] *Chan v. Wells Fargo Home Mortg., Inc.*, Civil Action No. 4:11-md-2266 (S.D. Tex.), on remand, Case No. 2:11-cv-00871 (W.D. Wash.)("*Chan* Action").

[2] The same arguments which will be made on behalf of *Chan* Plaintiffs apply to the known state law claims for all the opt-ins who will not receive any consideration in exchange for waiving their additional claims.

day responses were due and the day *Chan* Counsel filed their objection (Dkt 217) (but before the objection was filed). Given Lead Counsel's unfortunate willingness to now abandon the Known Claims of the Washington State (and other states') opt-ins without securing them any consideration in exchange for the release of the additional claims, this Court should reconsider its November 22nd Order because Lead Counsel's motion to amend the *Chan* complaint included -- buried in the Prayer for Relief – a request that they be appointed lead attorneys representing the class upon remand. Their actions have demonstrated that they are unqualified to lead the case on remand in Washington State where they are not licensed to practice law and where they have demonstrated that they will not protect the interests of the class. This Court should reconsider its November 22nd order to, at a minimum, clarify that it was *not* appointing MDL Lead Counsel as lead attorneys for the *Chan* class upon remand to Washington.

Finally, *Chan* Plaintiffs respectfully request the opportunity to be heard regarding their objection. *Chan* Counsel will be available at the hearing should the Court have any questions about their objection.

I. **FACTS RELEVANT TO THIS OBJECTION**

The proposed Settlement Agreement defines "Released Claims" to include:

> all claims, asserted or unasserted, by the Settling Plaintiffs arising before or during the Class Period, whether in the nature of claims for damages, liquidated damages, punitive damages, minimum wages and/or overtime pay, interest, attorneys' fees, costs or injunctive relief or other penalties or remedies that were or could have been asserted out of, relating to, or in connection with any type of actual or alleged violation of any wage and hour laws asserted in the *Richardson* Complaint or the *Chaplin* Complaint, ***or that arise from the same factual predicate, whether known or unknown, and whether under the Fair Labor Standards Act or state wage and hour laws.***[3]

Settlement Agreement (Dkt 233-1) ¶5.2 (emphasis added).

---

[3] All of the claims raised in the Amended *Chan* Complaint fall under Washington State's wage laws.

2

The history leading to this objection reveals that the *Chan* Plaintiffs have made every reasonable effort to avoid having to file this objection. Over one and half years ago on August 24, 2012, *Chan* Counsel raised with Lead Counsel the concern that "[i]f there is a resolution of this matter, we expect Wells Fargo will craft a release requiring any opt-in class members to release them from all claims they could have brought, including the additional claims raised in the *Chan* case." August 24, 2012 Letter from *Chan* Counsel to Lead Counsel at p.2, Ex. 1 to Declaration of Tana Lin ("Lin Decl.") (Att. 1). Accordingly, *Chan* Counsel requested Lead Counsel include in the FLSA class notice a brief paragraph, consisting of three sentences, informing potential opt-ins from Washington State of the existence of the Washington state case and the additional claims raised in that case. [4] *Id.* *Chan* Counsel specifically told Lead Counsel that they were not seeking to inject themselves into the FLSA case and, therefore, were not asking that *Chan* Counsel's contact information be put in the notice (or the case name even included). *Id.* *Chan* Counsel only sought to ensure that any Washington State opt-ins had notice of their additional claims so they could make the appropriate inquiries and informed decisions regarding their potential claims. *Id.*

*Chan* Counsel raised this issue once again on March 28, 2013. March 28, 2013 Letter from Chan Counsel to Lead Counsel, Ex. 2 to Lin Decl. Lead Counsel refused the request as the proposed notice program was "for purposes of FLSA conditional certification only." April 11, 2013 Letter from Lead Counsel at p.3, Ex. 3 to Lin Decl. Relying on the repeated assurances from Lead Counsel throughout the MDL that the process was addressing the FLSA issues only

---

[4] *Chan* Counsel requested the following language be included with the notice:

> Attention HMCs who worked in Washington State:
>
> There is another class action lawsuit currently pending before this Court brought by residents of Washington State on their behalf and on behalf of other HMCs who worked in Washington State for Wells Fargo during the time period noted above. In that case, the plaintiffs allege that they were not paid minimum wages and overtime, were denied break and meal periods, and had unlawful deductions of third party fees made from their pay in violation of Washington State law. If you opt-in to this current litigation, you may be barred from recovering any monies you would otherwise be entitled to in that class action regarding alleged violations of Washington State law.

3

(and seeing that the Court orders also focused on the FLSA claims), *Chan* Counsel did not pursue the issue any further at that time.

According to the Approval Motion, Lead Counsel "conducted in-depth interviews with hundreds of opt-in plaintiffs concerning the claims of the collective action members…," Approval Mtn. at 8, speaking with individuals "spread throughout the country." *Id.* at 18. In addition, Defendant produced over 10,000 documents, and Lead Counsel "analyzed comprehensive personnel, payroll, and compensation data relating to the damages sustained by individual opt-in plaintiffs."[5] *Id.* at 8-9. Based upon their investigation, Lead Counsel filed a Motion for Leave to File Amended and Supplemental Complaints ("Am. Compl. Mtn.") (Dkt.202) on November 1, 2013 "to ensure that the rights of collective action members are protected, through the assertion of all applicable state law claims and the inclusion of all culpable defendants in each pending action." Am. Compl. Mtn at 2. Lead Counsel specifically sought leave to supplement the complaints in the *Chan*, *Gonzalez, Hoffman,* and *DeLeon* cases, re-asserting the unlawful wage deductions claim already raised in the *Chan* complaint and asserting parallel, copycat unlawful wage deductions claims in the *Gonzalez, Hoffman,* and *DeLeon* cases.[6] *Id.* at 3-5. Lead Counsel further sought to be appointed lead in all the state cases upon remand. *Id.* at Exs. C at 25, D at 24, E at 24, and F at 26. This Court granted the motion. Dkt. 217.

On January 13, 2014, Lead Counsel informed counsel for *Chan, Gonzalez, Hoffman*, and *Deleon* Plaintiffs that a partial settlement had been reached on behalf of the named and opt-in plaintiffs in the *Richardson* and *Chaplin* matters. January 13, 2014 Letter from Lead Counsel, Ex. 4 to Lin Decl. However, Lead Counsel refused to provide the other plaintiffs' counsel with a copy of the settlement agreement or any information whatsoever regarding any of the terms upon which the settlement was based, stating that "the terms of the settlement are confidential." *Id.*

---

[5] None of these documents were shared with other counsel despite fact that MDL was supposed to be about coordinating and sharing information for the various cases.

[6] Lead Counsel also filed two, new complaints in California and Colorado asserting state law claims for unlawful wage deductions as well as unpaid meal and rest period wages. *Lewis v. Wells Fargo Bank*, Case No. 13-534914 (Super. Ct. Cal.) (filed October 18, 2013)("California Case") at 12-15, Ex. 7 to Lin Decl., and *Bok v. Wells Fargo Bank*, Case No. 13-cv-03367 (D. Colo.) (filed December 13, 2013) ("Colorado Case") at 20-21, Ex. 8 to Lin Decl.

4

The settlement papers were originally due to be filed with the Court on January 31, 2014 with the fairness hearing to be held on March 7, 2014 (Dkt. 231) which would have provided anyone that wanted to analyze the papers five full weeks to do so. On February 3, 2013, however, *Chan* Counsel learned through an ECF notice that the parties had agreed to delay the submission of the settlement papers until March 21, 2014 and shortened the time between the submission and the hearing date to just 10 business days. Lin Decl. ¶10. *Chan* Counsel renewed their request to Lead Counsel for a copy of the settlement papers the next day. February 4, 2013 Email from Tana Lin, Ex. 5 to Lin Decl. Lead Counsel did not respond until February 10th, informing counsel for the other plaintiffs that the agreement "will be provided to you when it is made publicly available," February 10, 2014 Email from Autry Ross, Ex. 6 to Lin Decl., and once again refusing to give *Chan* or other plaintiffs' counsel any information at all about the terms of the settlement.

March 21st came and went with no settlement papers submitted to the Court. Without any explanation, the settlement papers were filed four days late on March 25, 2014 at the close of business Pacific Time. Not until they received the proposed Settlement Agreement via the March 25th ECF process did *Chan* Counsel discover that Lead Counsel had made a deal with counsel for Wells Fargo to extinguish, *inter alia*, the Known Claims that opt-in plaintiffs have for unlawful wage deductions as well as unpaid meal and rest period wages without any compensation to the opt-in plaintiffs for that concession. Given the very short turn around time before the hearing, *Chan* Counsel reached out simultaneously to Lead Counsel and counsel for Wells Fargo on Thursday, March 29th to raise their concern and request clarification regarding the release provision. *Chan* Counsel asked for a response by the next day given the time constraints created by the late submission of the settlement papers. March 28, 2014 Email from Tana Lin, Ex. 9 to Lin Decl. Both Lead Counsel and counsel for Wells Fargo have informed *Chan* Counsel that they oppose the filing of this objection. March 31, 2013 Emails from Autry Ross and Daniel Theme, Ex. 9, Lin Decl.

In a continuing effort to work with the parties, *Chan* Counsel informed them that they would be willing to withdraw this objection if they either a) provided information demonstrating that the Washington opt-ins had received adequate compensation in exchange for waiving their Known Claims and non-FLSA claims or b) would agree to modify the release provision of the proposed Settlement Agreement to track the claims in the *Richardson* and *Chaplin* copmlaint. *Id.*

II. **ARGUMENT**

The settlement of an FLSA action "stands distinctly outside the practice common to, and accepted in, other civil actions," *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1348 (M.D. Fla. 2010), because the compromise of an FLSA claim can only be made under the supervision of the Secretary of Labor[7] or with the approval of a district court. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982). A district court may enter a stipulated judgment only after scrutinizing the settlement for fairness. *Id. citing Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946) and *Jarrard v. Se. Shipbuilding Corp.*, 163 F.2d 960, 961 (5th Cir. 1947).

A. **Chan Plaintiffs Have Standing To Object To The Proposed Settlement Agreement.**

The *Chan* Action is a case brought by Messrs. Chan and Luu on behalf of a class of Home Mortgage Consultants employed by Wells Fargo in the state of Washington alleging that Wells Fargo violated various Washington state statutes. *Chan* Plaintiffs alleged that Wells Fargo violated Washington's state minimum wage and overtime law as well as the meal and rest periods law. In addition, *Chan* Plaintiffs brought claims regarding unlawful wage deductions which Wells Fargo made from the wages of its Home Mortgage Consultants.[8]

---

[7] *Chan* Plaintiffs are serving this objection on the Secretary of Labor because the concerns raised here implicates important policy issues that should considered by the Secretary.

[8] The unlawful deductions claim involves the deductions of third party fees such as appraisal report or credit report fees. For example, and by way of example only, in cases where plaintiffs collected the required amount of upfront third party fees from a loan applicant, Wells Fargo routinely refunded the full amount of those fees to the loan applicant if he/she withdrew his/her application. However, Wells Fargo would then deduct the refunded third party fees – which were Wells' Fargo's business expenses -- from the plaintiffs' commission credits.

6

*Chan* Plaintiffs have standing to bring this objection because as the named Plaintiffs in the *Chan* Action, Messrs. Chan and Luu have a duty to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This duty requires Messrs. Chan and Luu to "take an active role in and control the litigation and to protect the interests of absentees." *Horton v. Goose Creek Ind. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982). Accordingly Messrs. Chan and Luu file this objection to raise a concern with the pervasive release which will affect the claims of members included in the *Chan* Action.

**B. Before Approving An FLSA Settlement, The Court Must Closely Scrutinize Any Pervasive Releases To Ensure They Are Fair And Reasonable.**

1. The problem with pervasive releases in FLSA cases

*Chan* Plaintiffs file this objection to specifically raise a concern with the pervasive release that is contained in the proposed Settlement Agreement that has been submitted to the Court. Under black letter law interpreting the FLSA, a pervasive release "is a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee." *Moreno*, 279 F.Supp.2d at 1351. Pervasive releases in FLSA actions are "side deals" because "the provisions 'confer a partially offsetting benefit on the employer' that is ancillary to the bona-fide dispute over FLSA coverage and wages due." *Hogan v. Allstate Beverage Co, Inc.*, 821 F.Supp. 2d 1274, 1282 (M.D. Ala. 2011). But "an employer is not entitled to use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA." *Moreno*, 279 F.Supp.2d at 1351. *See also*, *Hogan*, 821 F.Supp.2d at 1282 ("Settlement of an FLSA claim is not an occasion for employers to extract valuable concessions unfairly from employees).

Pervasive releases are especially problematic for employees in an FLSA collective action because an employer who secures a pervasive release at "worst" receives nothing if no claim accrues but will receive a windfall at the expense of an employee should there be a valid claim

7

that was waived. *Moreno*, 729 F.Supp.2d at 1352. "In either instance, the employee bears the risk of loss, and the employer always wins – a result that is inequitable and unfair in the circumstance." *Id. See also Bright v. Mental Health Res. Ctr., Inc.*, 2012 WL 868804 at *4 (M.D. Fla. Mar. 14, 2012). In addition, an employee who agrees to additional concessions in the FLSA context "will have effectively accepted payment below the FLSA's minimum wage in derogation of the statute." *Hogan*, 821 F.Supp.2d at 1282. Therefore, requiring class members to provide a general release of claims "runs contrary to the history and policy of the FLSA." *Gambrell v. Weber Carpet, Inc.*, 2012 WL 5306273 at *6 (D. Kan. Oct. 29, 2012).

2. The legal standard for reviewing pervasive releases in FLSA cases

Because the pervasive release does not directly relate to any bonafide dispute over FLSA coverage or wages due and workers may be willing to waive additional claims in order to access wrongfully withheld wages, a court "should closely scrutinize the fairness of such 'side deals.'" *Hogan*, 821 F.Supp.2d at 1281, 1282. Indeed, for a broad release to be approved, there must be a "particularized showing that such a broad release … is 'fair and reasonable.'" *Luo v. Zynga*, 2013 WL 5814763 at *3 (N.D. Cal. Oct. 29, 2013).

In order for a court to "independently and objectively [ ] evaluate the adequacy of the entire settlement…, the court must possess sufficient evidence or information to weigh the strengths and weaknesses of the additional…claims." *Id.* at 1352, *citing Newberg on class Actions* §12:15, at 313 (4th ed. 2002). First, the release should be examined to see if it is a release that "tracks the extent and breadth of Plaintiff's allegations," *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, 2012 WL 6629608 at *3 (N.D. Cal. Dec. 19, 2012) (*citing Kakani v. Oracle Corp.*, 2007 WL 1793774 at *2-3 (N.D. Cal. June 19, 2007). Second, a court needs some knowledge of the value of the released claims, *Moreno*, 729 F. Supp. 2d at 1352. Finally, settling parties must show that class members have been informed and have a full understanding of what they are releasing in exchange for a settlement payment. *McKeen-Chaplin*, 2012 WL 6629608 at *5. *See also Hogan*, 821 F.Supp.2d at 1284-5. These factors are not met in this case.

**C. The Pervasive Release Provisions of the Proposed Settlement Agreement In This Case Render Are Inequitable And Unfair.**

1. <u>The release provision contained in the proposed Settlement Agreement is pervasive and has been rejected by numerous courts.</u>

The *Richardson* and *Chaplin* complaints only asserted claims under the FLSA. Yet, the proposed Settlement Agreement requires the release of "all claims, asserted or unasserted, by the Settling Plaintiffs … that arise from the same factual predicate, *whether known or unknown, and whether under the Fair Labor Standards Act **or state wage and hour laws**.*" Settlement Agreement (Dkt 233-1) ¶5.2 (emphasis added). Accordingly, the release clearly is an overly broad, pervasive release. *See Moreno* and *Hogan, supra.*

This type of general release which sweeps in state law or other employment claims beyond the asserted FLSA claims has been rejected by a number of courts as unfair in the context of FLSA lawsuits. *See McKeen-Chaplin*, 2012 WL 6629608 at *5 (rejecting the broad general release provision that released claims, known or unknown, that did not track the breadth of the allegations in the complaint); *Gambrell*, 2012 WL 5306273 at *2, 5 (where settlement required release of "any federal, state or local statute or ordinance" including a litany of specific federal and state laws, court held "it is inappropriate to require plaintiffs to release all employment claims to settle their wage claims"), *Brumley v. Camin Cargo Control, Inc.,* 2012 WL 1019337 at *8 (D. N.J. Mar. 26, 2012) (excluding from the court's finding of fairness and reasonableness the release of FLSA "or state wage-and-hour statutes . . . and state wage laws…"); *Hogan*, 821 F.Supp.2d at 1277 (rejecting agreement that required the release of "any rights or claims…under Title VII…or any other claims arising under federal, state or local statutory or common law"); *Moreno*, 729 F.Sup.2d at 1347 (holding unfair a settlement that required the release of a litany of specific federal and state laws). Similarly, this Court should reject the pervasive release at issue here.

### 2. Insufficient information has been provided for the Court to be able to assess the value of the released claims.

As a general matter, "[a] pervasive release in an FLSA settlement introduces a troubling imponderable into the calculus of fairness and full compensation." *Moreno*, 279 F.Supp.2d at 1351. Indeed, the "indeterminate nature of general releases also prevents the Court from being able to evaluate the claims that have been waived by employees, thereby making a fairness determination difficult if not impossible." *Bright*, 2012 WL 868804 at *4. This is true of the generally overbroad nature of the release proposed in this Settlement Agreement and, in particular, the language with regard to unknown non-FLSA claims that the opt-ins are being asked to waive.

However, in this case, the Court has several pieces of significant, additional information available to it to evaluate the fairness of the agreement. First, the Court knows that there are valid Known Claims that opt-ins are being asked to waive – *i.e.*:

1. the unlawful wage deductions and unpaid meal and rest period wages claims that have long been asserted in the *Chan* complaint on behalf of Washington state Home Mortgage Consultants' ("HMCs");

2. the unlawful wage deductions and unpaid meal and rest period wages claims that Lead Counsel recently asserted in the *Lewis* and *Bok* cases on behalf of California and Colorado plaintiffs; and

3. the wage deduction claim asserted by Lead Counsel in their amendments to the Illinois, New Jersey, and New York complaints.

Second, a review of the proposed Settlement Agreement reveals that none of the opt-in plaintiffs will be provided with any additional compensation in exchange for releasing their Known Claims (or unknown non-FLSA claims). Third, a review of the Approval Motion shows that Lead Counsel had access to records from which they could attempt to determine the value of the wage deduction claims as well as investigate the meal and rest period wages issue (and of course, Wells Fargo could know this information as well) but chose to include no information on whether they investigated the value of the claim or, if they did, the results of their investigation. Finally, a review of the record will not reveal any material from which the Court will be able to

determine whether the Settling Plaintiffs who will be giving up their known claims realize or understand the consequences of the release provision in the proposed agreement.

      a.    *Lead Counsel and Counsel for Wells Fargo are attempting to require opt-ins to release Known Claims in exchange for no additional compensation.*

The proposed Settlement Agreement states that "[t]he Individual Payments due to each Settling Plaintiff will be determined by using a settlement allocation formula taking into account the Settlement Administrator to calculate Individual Payments is attached to this Agreement as Ex. A." Settlement Agreement ¶3.4. A review of the formula makes clear that the payment to each Settling Plaintiff will be determined based on a plaintiff's average monthly compensation and total months worked, and that is it. ***None of the Known Claims is factored in or considered in any way, shape or form***. Accordingly, the Washington opt-ins are being asked to release *almost six years of unlawful wage deduction claims and claims for unpaid meal and rest period wages* against Wells Fargo *in exchange for nothing*.[9] Where there is no showing that plaintiffs been "independently compensated" for the broad release of claims unrelated to a FLSA claim, the release should not be approved. *See McKeen-Chaplin*, 2012 WL 6629608 at *5.

Counsel for Wells Fargo has known of the Washington HMCs' Known Claims regarding their unpaid meal and rest periods since at least the date when the *Chan* Complaint was originally filed on April 12, 2011 and the unlawful wage deductions claims since the *Chan* Amended Complaint was filed on June 13, 2011. While Lead Counsel appeared not to be aware of these additional claims as they were not included in either the *Richardson* or *Chaplin* complaints, they certainly became aware of them once they received the *Chan* Amended Complaint during the MDL process. They then used the MDL process to interview opt-ins about the additional wage deductions claim (despite not wanting to give notice of the Known Claims in

---

[9] Washington plaintiffs will be able to assert claims for wage deductions going back to at least June 13, 2008 (three years prior to filing of original complaint) – the date the amended complaint was filed to add these claims -- and unpaid meal and rest wages going back to at least April 12, 2011 – the date the original complaint was filed. See RCW 4.16.080. The opt-ins from California, Colorado, Illinois, New Jersey, and New York -- as well as possibly others given the wage deduction practice was occurring in at least six states -- will be similarly situated as the Washington opt-ins, albeit the lookback periods will be shorter based on the dates of the amendments to those complaints.

11

the notice) and clearly believed there was merit to the claims -- as they filed the California and Colorado cases asserting copycat claims to the *Chan* Complaint and further sought (and obtained) leave to take over the *Chan* case in addition to adding the wage deduction claims in particular to the *Gonzalez, Hoffman,* and *Deleon* complaints in November 2013.

Curiously, having filed two new cases in California and Colorado and amended the various state complaints where there was competing counsel (and asking to take over and be appointed lead in them) prior to the mediation session, Lead Counsel then promptly negotiated away all Known Claims, securing nothing in return for the opt-ins to release them even though they professed that they were amending the complaints to purportedly "ensure that the rights of collective action members are protected, through the assertion of all applicable state law claims..." Am. Compl. Mtn at 2. And even worse, they completely omit from their settlement papers any mention of the fact that they sought to take over the wage deduction case in *Chan* and add them in the Illinois, New Jersey, and New York cases or, how given the approval of those amendments, they have a duty to the opt-in plaintiffs in those states to protect their interests beyond just the FLSA claims. They similarly gloss over – with just a mention in footnote 3 of the Approval Motion -- the fact that they will be dismissing the *Lewis* and *Bok* complaints as a result of the deal they made with Wells Fargo without securing any additional compensation for those California and Colorado opt-ins in exchange for releasing their Known Claims.

*Chan* Counsel takes no position on whether the $15 million dollar settlement might be fair and reasonable if the Settling Plaintiffs were only releasing their FLSA claims. However, when one considers that the $15 million settlement is supposed to compensate the Settling Plaintiffs, including the Washington opt-ins, for their FLSA claims *and* their Known Claims *and* any other state wage and hour laws whether known or unknown, the settlement amount does not seem fair and reasonable. In light of the fact that Wells Fargo is getting the release of Known Claims as well as unknown claims without having to give the opt-ins anything in exchange, it is unsurprising that they do not oppose the approval of the settlement. If an employer (or plaintiffs'

counsel) attempts to "'play with house money[,]' [the attempt should] fail[] judicial scrutiny." [10] *Moreno*, 729 F.Supp.2d at 1352.

    b. *No information has been provided to the Court regarding the value of the known claims opt-ins are being asked to release in exchange for no additional compensation.*

The value of the wage deduction claims as well as information relevant to the unpaid meal and rest period claims should be discernible through the records of plaintiffs, to the extent they retained them, as well as a review of Wells Fargo's records. This should have been investigated by Lead Counsel prior to making a deal with Wells Fargo to extinguish the claims on behalf of the opt-in plaintiffs with those claims. While Lead Counsel conducted in-depth interviews with hundreds of opt-in plaintiffs and analyzed "comprehensive personnel, payroll and compensation data," Approval Mtn. at 8-9, they have provided no information as to whether they attempted to make an assessment of the value of the Known Claims and, if they did, any justification for requiring the opt-ins to release these claims in exchange for no compensation whatsoever. And one can safely assume that Wells Fargo can review its own records to make this determination. Yet, this critical information has not been provided to the Court for it to make an informed evaluation of the effect of the release. [11]

    c. *No information has been provide to the Court regarding whether the Settling Plaintiffs have been fully informed of or understand the consequences of the pervasive release.*

Two other critical pieces of evidence are missing that the Court needs to evaluate the fairness of the proposed Settlement Agreement. There is no evidence demonstrating that the Settling Plaintiffs, especially those with Known Claims, have been fully informed of the consequences of the release provision. Nor is there any evidence in the record whatsoever that

---

[10] The *Moreno* Court noted in a parenthetical that "[if] an employee signs a pervasive release as part of a 'side deal' and later discovers a valuable but released claim, the employee perhaps looks for compensation from the attorney who advise[d] the employee to grant the release." *Id.* at 1351.

[11] Alternatively, the Court could postpone consideration of the proposed Settlement Agreement until this information is provided to the Court, extending the discovery period, if it is necessary to do so to obtain this information. *See* Section III, *infra*.

the Settling Plaintiffs fully understand the consequences of the release provisions on the Known Claims or, for that matter, other state wage and hour claims – whether known or unknown – that they are being asked to release pursuant to the proposed agreement.

The fact that there are known claims that will be waived here makes close scrutiny of the release even more important. Wells Fargo should not be given a free pass on either the Known Claims or any additional claims beyond FLSA claims. And Lead Counsel should certainly not be allowed to help Wells Fargo leverage a release from liability unconnected to the FLSA claims.

### III. *CHAN* PLAINTIFFS MOTION TO RECONSIDER

Given Lead Counsel's abandonment of the state law claims during the settlement negotiations, *Chan* Plaintiffs also request the Court grant *Chan* Plaintiffs' Motion for Reconsideration (Dkt. 218) and reconsider its November 22, 2013 Order (Dkt. 210) granting Lead Counsel leave to file an amended and supplemental complaint in the *Chan* case (Dkt 202). In particular, given Lead Counsel's abandonment of the Known Claims of the Washington opt-ins, they have demonstrated they will not fulfill their duties to the class, will not protect the interests of the class, and are unqualified to lead the case upon remand. MDL Lead Counsel made a bold attempt to hijack the state law case of *Chan* Plaintiffs as well as insert themselves into the cases pending in Illinois, New Jersey, and New York only to enter into a patently unfair agreement to release the Known Claims of opt-in plaintiffs from those states (as well as the California and Colorado plaintiffs from the *Lewis* and *Bok* cases) as soon as the opportunity to settle the FLSA claim arose. As they failed to live up to their duties to protect the interests of the Washington state class, the Court should clarify its November 22, 2013 Order to state, at a minimum, that MDL Lead Counsel's request to be appointed lead attorneys in the *Chan* case is denied.

If the Court decides to postpone the fairness hearing to request an investigation into the concerns raised in this objection regarding the waiver of Known Claims, the Court should task *Chan* Counsel with the investigation for at least four separate and independent reasons:

4. *Chan* Counsel were the only counsel to recognize the importance of the Known Claims and to plead them in their complaint at the outset of the case;

5. *Chan* Counsel are most qualified to investigate the Washington state claims as they are Washington-licensed attorneys who are most familiar with Washington law, originally investigated the state law claims, and developed the theories as well as discovery to request;

6. MDL Lead Counsel has demonstrated that their style of "leading" is by exclusion and a refusal to coordinate or share information with other plaintiff's counsel, *see Chan* Plaintiffs' Objection To Motion For Leave To File Supplemental Complaint In *Chan V. Wells Fargo Home Mortgage* And Request For Clarification Of Initial Case Management Order (Dkt. 217) at 7 and n.2; and

7. MDL Lead Counsel had ample opportunity to investigate these claims *before* entering into the proposed Settlement Agreement as they had access not only to information directly from all the Washington state opt-ins (and, indeed all of the opt-ins from all over the country) but also personnel and payroll records from Wells Fargo but apparently failed to do so.

If asked to investigate the Known Claims in relation to the proposed Settlement Agreement, *Chan* Counsel would seek input and assistance from the other Plaintiffs' counsel as it appears that at least the issue with regard to the unlawful deduction of third party fees was occurring not only in Washington but also, at a minimum, California, Colorado, Illinois, New Jersey, and New York as well.

## IV. CONCLUSION

The release in the proposed Settlement Agreement cannot survive close scrutiny because it is an overbroad, pervasive release that is grossly inequitable as well as unfair. Further, insufficient information has been provided to the Court for it to assess either the value of the release to the Settling Plaintiffs or whether the opt-ins have a full – or any – understanding of

15

what they are releasing in exchange for the settlement award. Accordingly, the Court should reject the pervasive release in the proposed Settlement Agreement.[12]

As Lead Counsel has abandoned the Known Claims of the Washington (and other states) opt-ins law claims during the settlement negotiations, the Court should grant *Chan* Plaintiffs' Motion to Reconsider and, at a minimum, clarify that the Court denies MDL Lead Counsel's request to take over the State-law claims filed in the transferor courts. Finally, if the Court is inclined to postpone the fairness hearing to require an investigation into the claims that the opt-ins will waive with regard to the Known Claims, this Court should task *Chan* Counsel – the only counsel to have originally recognized and plead the claims – to make the inquiry given MDL Lead Counsel's failure to protect the claims.

Date: March 31, 2014

Respectfully Submitted,

/s/ Tana Lin
Mark A. Griffin
Tana Lin
T. David Copley
Keller Rohrback L.L.P.
1201 Third Avenue, Ste. 3200
Seattle, WA 98101-3052
Email: mgriffin@kellerrohrback.com
          tlin@kellerrohrback.com

/s/ Timothy J. Pauley
Timothy J. Pauley
Ryan J. Pauley
Pauley Law Group, pllc
1001 Fourth Ave Suite 3200
Seattle, WA 98154-1003
Email: rpauley@pauleylawgroup.com
          tpauley@pauleylawgroup.com

**Counsel for Plaintiffs: Brent Chan and Dien Luu, W.D. Washington, No. 2:11-cv-00871**

---

[12] A court may approve only portions of an FLSA settlement agreement as fair and reasonable while simultaneously rejecting problematic provisions. *See Brumley*, 2012 WL 1019337 at *9 (excluding the confidentiality and pervasive release provisions of an FLSA settlement agreement from a finding of fairness and reasonableness).

16

CERTIFICATE OF CONFERENCE

Pursuant to LR 7.1 (D), I certify that I have conferred with both counsel for Defendants and Lead Counsel, and Counsel cannot agree about the disposition of this motion.

/s/ Tana Lin
Tana Lin

CERTIFICATE OF SERVICE

    I, the undersigned, hereby certify that the foregoing document has been electronically filed with the Clerk of the Court by using the CM/ECF system, which in turn will send a notice of the electronic filing to all counsel of record, on this 31st day of March, 2014.

    A copy will also be provided to the Secretary of Labor, Thomas E. Perez, via Federal Express on April 1, 2014.

/s/Erica J. Knerr
Erica J. Knerr