United States District Court
Southern District of Texas
**ENTERED**
November 04, 2015
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: WELLS FARGO WAGE | § | MULTI-DISTRICT LITIGATION |
| AND HOUR EMPLOYMENT | § | CASE NO. H-11-2266 |
| PRACTICES LITIGATION (NO. III) | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion for summary judgment filed by defendants Wells Fargo Bank, N.A. and Wachovia Mortgage Corporation (collectively, "Wells Fargo") (Dkt. 255), along with two requests for judicial notice (Dkts. 256, 278). After reviewing the motion and requests, the plaintiffs' response, other relevant material in the record, and applicable law, the court finds that it should take judicial notice of the pleadings attached to docket entries 256 and 278 and further finds that Wells Fargo's motion for summary judgment should be GRANTED.

**I. BACKGROUND**

This is a Fair Labor Standards Act ("FLSA") collective action. The majority of the plaintiffs have settled their claims. The remaining plaintiffs consist of 1,516 individuals who work or worked for Wells Fargo in California and were previously part of a class action settlement in the case *Lofton v. Wells Fargo Home Mortgage*, No. CGC-11-509502 (S.F. Super. Ct.) (the "California Plaintiffs"). *Lofton* was a class action filed on behalf of Wells Fargo Home Mortgage Consultants ("HMCs") who, according to the plaintiffs, were improperly classified as exempt and consequently did not receive overtime compensation for the hours of overtime they worked. Dkt. 258, Ex. 1, Ex. A. The San Francisco Superior Court approved a settlement of the *Lofton* claim after a court-approved notice of the settlement, a claim form, and an exclusion form were mailed to each HMC and after conducting a hearing as to whether the settlement should be approved. Dkt. 258, Ex. 1. The court-approved notice and the court-approved settlement each included a release of state and federal wage-

and-hour claims. Dkt. 255, Ex. 1 ¶ 43; Dkt. 258, Ex. 1 ¶ 3.D. The released claims included claims "under any and all applicable California or federal laws, statutes, regulations, and Wage Orders including any existing under the Fair Labor Standards Act of 1938, as amended, and California political subdivisions and municipalities." *Id.*

Of the 1,516 plaintiffs in this case, 1,283 filed proofs of claim in the *Lofton* case and received settlement payments, and the remaining 233 failed to file proofs of claim, thus receiving no compensation from the settlement. Dkts. 258, 259. None of them opted out of the *Lofton* case. The *Lofton* settlement was not appealed, and the payments required by the settlement have been made. Dkt. 255, Porter Dec. ¶ 4. The trial court, however, "retained jurisdiction over the implementation and enforcement of the settlement agreement." *Lofton v. Wells Fargo Home Mortg.*, 179 Cal. Rptr. 3d 254, 261 (Cal. Ct. App. 2014).

After the order approving the settlement became final, an individual named David Maxon moved to intervene in the *Lofton* lawsuit. Dkt. 255, Porter Dec. ¶ 7. Maxon was a client of Initiative Legal Group ("ILG"), which was pursuing claims on behalf of more than 600 California HMCs in thirteen different cases. Dkt. 258. ILG and counsel in the *Lofton* case mediated the *Lofton* settlement together. *Lofton*, 179 Cal. Rptr. 3d at 259. They agreed on a common fund to resolve the class action and a separate common fund to resolve the individual actions filed on behalf of ILG's clients. *Id.* The *Lofton* court was told that ILG's clients would opt out of the class action settlement. *Id.* However, ILG's clients participated in the class action settlement. *Id.* ILG claims that the separate fund—which was a $6 million fund—was for attorneys' fees, but it provided $750 to each ILG plaintiff for a claim that it stated was not resolved in the class action. *Id.* After one of ILG's clients, David Maxon, objected to ILG's disbursement of the fund, ILG agreed to provide slightly more than $1 million to the ILG plaintiffs, keeping the rest as fees. *Id.* Maxon apparently did not

find this satisfactory, and he filed a class action lawsuit against ILG for breach of fiduciary duty, among other things. *Lofton*, 179 Cal. Rptr. 3d at 262.

Maxon also intervened in the *Lofton* case and moved for a temporary restraining order. *Id.* Maxon requested that the court review the payment by Wells Fargo to ILG attorneys in connection with their work on behalf of a subset of the class. *Id.* The trial court judge, after noting he "was 'very, very troubled' by the situation" and that he believed he was "obligated to completely take another look at this settlement," issued a temporary restraining order that required ILG to deposit the funds in an escrow account. *Id.* at 263. The judge specifically stated, "'I believe that there is good cause to think that the entire class, not just the ILG clients, have been badly disserved.'" *Id.* ILG argued that the *Lofton* court lacked jurisdiction to issue the temporary restraining order and appealed the ruling. *Id.*

On October 22, 2014, a California appellate court held that "the trial court presiding over the class action properly enjoined ILG from distributing or taking action to distribute the proceeds of its settlement to itself [and] had concurrent *exclusive* jurisdiction to consider the propriety of the settlement of class member claims, even for those class members represented by ILG on class or related claims." *Id.* (emphasis added). The California appellate court also found that the "trial court had a duty to ensure the fees claimed by ILG were reasonable in light of the overall result ILG achieved." *Id.* The court noted that "despite entry of judgment, the *Lofton* settlement was incomplete in two critical respects": (1) the trial court had been misinformed that 600 ILG clients were opting out of the settlement, and their failure to opt out diluted the anticipated recovery of other class members; and (2) no court ever considered the reasonableness of the separate $6 million settlement fund being used as attorneys' fees for ILG. *Id.* at 265–66. The court held that "limited proceedings designed to resolve these outstanding issues with respect to the *Lofton* settlement fall

within the scope of the [trial] court's continuing jurisdiction under section 664.5, section 128 and the court's equitable authority to ensure the fair and orderly administration of justice and protect the integrity of its judgment in the class action." *Id.* at 267. Therefore, the appellate court dismissed the appeal from the order granting intervention and affirmed the temporary restraining order. *Id.* at 271.

On June 24, 2015, the California trial court held a hearing after remand on eleven different matters, including disposition of the ILG settlement funds, a motion to vacate the judgment, and a combined motion to intervene filed by Daniel Roberts Spotts, who sought to pursue claims to opt out of the settlement, and Thomas R. Sebring, who sought clarification that the settlement did not release federal claims. Dkt. 268; Dkt. 272, Ex. C. On July 15, 2015, the California trial court issued an order holding that the funds in the separate ILG fund should be distributed to the *Lofton* class because if the payment was for class action attorneys' fees as ILG claimed, it should have been disclosed to and approved by the court. *Id.* Since ILG failed to disclose the payment as fees, the court found it was not entitled to any fees. *Id.* The court declined to vacate the judgment, noting, among other reasons, that the motion was untimely, as the judgment had been entered on July 27, 2011, and there was no basis for the court to exercise its jurisdiction to vacate the judgment now. *Id.* As far as Spotts and Sebring's motion to intervene, the court held that the motion was untimely, the intervention would unduly enlarge the issues before the court, and the court would "not issue an advisory opinion on the effect of the release of claims in this action on the pending MDL action in Texas"—which is this case. *Id.*

Wells Fargo originally moved for summary judgment in this case with regard to the California Plaintiffs' claims on September 22, 2014, which was prior to the California appellate court's ruling that the trial court did not abuse its discretion in entering a temporary restraining order

relating to the ILG funds. *Id.*; Dkt. 255. In the original motion, Wells Fargo argued that the final judgment approving the settlement, which included a release of all FLSA claims, prohibited the plaintiffs in this case, who were members of the *Lofton* class, from pursuing their FLSA claims here. Dkt. 255. In response, the California Plaintiffs argued that the court "should not accord preclusive effect to the *Lofton* release" because of the issues with the ILG settlement fund as well as other alleged substantive and procedural deficiencies related to the *Lofton* settlement. Dkt. 258. Wells Fargo contended, in a surreply that it filed after the California appellate ruling, that the ILG issues and decision of the California appellate court are "irrelevant to the determination of [their] pending motion for summary judgment because (a) Plaintiffs' argument related to the Maxon/ILG dispute is an improper collateral attack on the final judgment in *Lofton*, and (b) the Maxon/ILG dispute has no impact on the finality of that judgment." Dkt. 261.

As of December 2014, the California appellate court had affirmed the California trial court's authority to deal with the ILG issues, but the trial court had not held any hearings or issued any orders on remand. This court was concerned with the impact of the open issues in the *Lofton* case on its res judicata effect and requested additional briefing from both parties confined to that issue. Dkt. 262. The parties complied. Dkts. 263, 264. After considering the additional briefing, this court entered an order staying the case for six months to allow events in California to unfold. Dkt. 265. In that order, the court indicated that it was reluctant to rely on the finality of the judgment in the *Lofton* case when the California trial court judge had said that the class had "been badly disserved" and that he was "taking a look at the entire settlement." *Lofton*, 179 Cal. Rptr. at 263.

In July 2015, the court received correspondence from Wells Fargo and the plaintiffs regarding developments in the *Lofton* case. Dkts. 268–70. On July 17, 2015, the plaintiffs advised the court that the *Lofton* trial court had entered an order relating to the ILG funds and other motions before

5

the court. Dkt. 268. On July 24, 2015, Wells Fargo responded to the plaintiffs' July 17 correspondence. Dkt. 269. Wells Fargo urged the court to enter judgment in its favor, arguing that the judgment entered in *Lofton* on July 27, 2011, had res judicata effect here and the California court had refused to vacate its judgment. *Id.* The plaintiffs filed a response to Wells Fargo's July 24 letter on July 28. Dkt. 270. The plaintiffs pointed out that Wells Fargo was a "willing participant" in any impropriety related to the ILG settlement issues, that the *Lofton* trial court had declined to comment on the scope of the release when it denied Spotts and Sebring's motion to intervene, and that the interpretation of the legal impact of the release thus lies with this court. *Id.* The plaintiffs also took issue with Wells Fargo's determination that the *Lofton* court's denial of the motion to vacate dictates a finding of res judicata in this case because that motion did not relate to the scope or propriety of the *Lofton* release. *Id.* The plaintiffs also noted that the *Lofton* trial court's order was stayed pending appellate review. *Id.*

The court set a status conference for September 17, 2015, and received three status reports beforehand. *See* Dkts. 271–75. The status reports mostly reiterated previous arguments and also discussed recent authority. Dkts. 272–75. At the status conference, the court ordered the parties to file supplemental briefing. Dkt. 276. Both parties filed supplemental responses. Dkts. 277, 279. The original motion is now ripe for adjudication.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dall., Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

### III. ANALYSIS

Plaintiffs contend that (1) the waiver in the *Lofton* case is not sufficient to waive the FLSA claims in this case; (2) even if the waiver were sufficient, the *Lofton* judgment is "tainted by impropriety," leaving the class members inadequately represented, and giving res judicata effect to the *Lofton* judgment would violate due process as to the absent class members; (3) the *Lofton* judgment is not final for res judicata purposes because several issues are on appeal, including an appeal of the trial court's decision not to vacate the judgment. Dkt. 277. Wells Fargo, on the other hand, argues that (1) the settlement, including the waiver, was approved by the California court and must be given full faith and credit by this court; (2) the California Plaintiffs may not collaterally attack the *Lofton* judgment by claiming due process violations here because the interests of the class were aligned with the interests of the class representative in the *Lofton* case; (3) the court should defer to the *Lofton* court's decision not to vacate its judgment; and (4) the *Lofton* judgment has been and still remains final for res judicata purposes. Dkt. 279.

**A.     Waiver**

The court-approved settlement agreement in the *Lofton* case included a clause that released "any and all applicable state and federal law wage-and-hour claims, rights, demands, liabilities and cause of action" including claims "under any an all applicable California or federal laws, statutes, regulations, and Wage Orders including any existing under the Fair Labor Standards Act of 1938,

7

as amended, and California political subdivisions and municipalities." Dkt. 255, Ex. 1 ¶ 43. Additionally, the court-approved notice advised that the release included claims under federal laws, "including any existing under the Fair Labor Standards Act of 1938, as amended." Dkt. 255, Ex. 1, Ex. A at 3.D.

Plaintiffs argue that the release in the court-approved settlement has no res judicata effect on the current case because the release was obtained in an opt-out class action and this case is an opt-in collective action. Dkt. 258. They point out that, under the FLSA, plaintiffs must opt in to the collective action in order to be bound by a judgment, and it would be violate these procedural requirements of the statute if FLSA claims could be waived by a previous opt-out class action in which the plaintiffs never took affirmative action to be part of the class. *Id.*

Wells Fargo argues that waiver in the court-approved settlement in *Lofton* precludes the FLSA claims in this case and that the court must give effect to the court-approved settlement under the Full Faith and Credit Clause. Dkt. 255. It asserts that the FLSA's prohibition of opt-out class actions for FLSA claims does not create an exception to normal res judicata rules. *Id.*

While the parties have cited various cases from different jurisdictions in support of their arguments, the court chooses to follow *Lipnicki v. Meritage Homes Corp.*, No. 3:10-cv-605, 2014 WL 923524 (S.D. Tex. Feb. 13, 2014) (Costa. J.), which is from this district and is directly on point. In *Lipnicki*, Judge Costa considered whether to grant a motion to dismiss fifteen opt-in plaintiffs in an FLSA case because these plaintiffs were members of a class action lawsuit against the same defendant in California. The *Lipnicki* California case, like the *Lofton* case, settled, and the court approved a settlement containing a release of wage and hour claims. 2014 WL 923524, at *13. Judge Costa noted that the ordinary rule is that a court-approved settlement agreement is binding on and enforceable against absent class members who do not opt out of the settlement, and he rejected

the argument that "there is something special about FLSA claims that takes them outside the ordinary rule that class action settlements are enforceable." *Id.* at *14. Judge Costa analyzed the same cases that are cited by the parties here, and he determined that the release in the California settlement was binding. *Id.* at *13–16. This court agrees with the reasoning in *Lipnicki*. Accordingly, the court finds that so long as there are no due process issues with the *Lofton* judgment as it relates to the plaintiffs in this case, then the release in the California settlement is binding.

**B.      Inadequate Representation**

The plaintiffs contend that the court cannot give res judicata effect to the *Lofton* judgment because the *Lofton* class members were inadequately represented by the class representative and thus denied due process. Dkt. 277.

> As a general rule . . ., a judgment in a class action will bind the absent members of the class. The exception to this general rule is grounded in due process. Due process of law would be violated for the judgment in a class suit to be res judicata to the absent members of a class unless the court applying res judicata can conclude that the class was adequately represented in the first suit.

*Gonzales v. Cassidy*, 474 F.2d 67, 75 (5th Cir. 1973). "[G]enerally, the class will be bound unless the party attacking the judgment can show that the class was inadequately represented." *Id.* "[T]he primary criterion for determining whether the class representative has adequately represented his [or her] class for purposes of res judicata is whether the representative, through qualified counsel, vigorously and tenaciously protected the interests of the class. A court must view the representative's conduct of the entire litigation with this criterion as its guidepost." *Id.* For the prior litigation to be have binding effect on non-present class members, it must "at least have to be 'so devised and applied as to insure that those present [were] of the same class as those absent and that the litigation [was] so conducted as to insure the full and fair consideration of the common issue.'"

9

*Richards v. Jefferson Cnty. Ala.*, 517 U.S. 793, 801, 116 S. Ct. 1761 (1996) (quoting *Hansberry v. Lee*, 311 U.S. 32, 43, 61 S. Ct. 115 (1940)).

The plaintiffs contend that the *Lofton* settlement "was tainted by impropriety, including gross failure by class counsel, such that absent class members were left effectively unprotected." Dkt. 277 at 10. They assert that Wells Fargo—the party seeking to benefit from the preclusive effect—"was in on the fraud." *Id.* The plaintiffs argue that it "would be inequitable, to say the least, for a culpable wrongdoer to benefit from a state [court] judgment stained by its own conduct." *Id.* According to the plaintiffs, "the employer [Wells Fargo] and the purported representative of the employees were cooperating to ram through a settlement in which class members got short changed while lawyers pocketed millions." *Id.*

Wells Fargo argues that the class representative adequately represented the class. Dkt. 279. Wells Fargo asserts that the focus of the adequate representation inquiry is on whether the parties' interests were aligned, and here the interests of the class representative and the members of the class that are part of this lawsuit never diverged. *Id.*

> A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representative are aligned . . .; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty. . . . In addition, adequate representation sometimes requires (3) notice of the original suit to the persons alleged to have been represented . . . . In the class-action context, these limitations are implemented by the procedural safeguards contained in Federal Rule of Civil Procedure 23.

*Taylor v. Sturgell*, 553 U.S. 880, 900–01, 128 S. Ct. 2161 (2008) (citations omitted). Under Rule 23, the class representative or representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts determining "whether the class representative adequately represented the class so that the judgment in the class suit will bind the absent members of the class"

10

must ask "(1) Did the trial court in the first suit correctly determine, initially, that the representative would adequately represent the class? and (2) Does it appear, after the termination of the suit, that the class representative adequately protected the interest of the class?" *Gonzales*, 474 F.2d at 72.

The plaintiffs assert that class counsel in *Lofton* did not adequately represent the interests of the class because class counsel "turned a blind eye" and did not tell the court that counsel's original representation to the court that the "ILG plaintiffs were opting out of the settlement was inaccurate." Dkt. 277. Wells Fargo contends that the interests of the *Lofton* class representative and the California Plaintiffs in this case were always aligned and that the due process exception to res judicata for inadequate representation does not apply when the class representative and the other class members received the same relief. Dkt. 270 (citing *Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1054 (5th Cir. 1979) (finding that the due process exception is inapplicable because the plaintiff received the same relief as all other members of the class), *overruled on other grounds as recognized in Southmark Props. v. Charles House Corp.*, 742 F.2d 862, 870 n.12 (5th Cir. 1984)).

The court agrees with the plaintiffs that the interests of the class could have been better served if class counsel had alerted the court to the fact the ILG class members never opted out as soon as they learned about it. However, that is not the relevant inquiry here. The ILG settlement was separate from the settlement negotiated by class counsel. There is no contention that the *Lofton* settlement gave an unfair advantage to the class representative or class counsel. There was admittedly some dilution of the funds received by the class because the ILG plaintiffs did not opt out as originally expected, but this dilution impacted all class members. Additionally, the dilution issue was cured when the trial court required the ILG funds to be distributed to the class. When the California trial court considered all of these issues on remand, it presumably still believed the original settlement was fair to the class as it did not elect to vacate the judgment. *See id.* at 20

11

(noting that there was "no basis for [the] Court to exercise its jurisdiction to vacate the judgment"). This court likewise believes the *Lofton* settlement was fair and that the Plaintiffs were adequately represented with regard to the issues impacting this case—namely the notice and the release contained within the settlement. The California Plaintiffs had notice that they were releasing FLSA claims, *see* Dkt. 272, Ex. 6 ¶ 3.D, and they each made the decision to either disregard the notice or to file a claim form.

The plaintiffs point out that class counsel did not even request that the ILG funds be distributed to the entire class and that the California judge "was aghast at the conduct of class counsel" and believed that the entire class had been "badly disserved." Dkt. 277 at 7 (citing Dkt. 272, Ex. D at 13, 43). The court agrees that it appears from the transcript that class counsel could have more zealously advocated with regard to the class's interest in the ILG funds.[1] But this does not mean that the absent class members' due process rights were violated. The interests of the class members and the class representative remained aligned throughout. Moreover, the California court took care to protect the interests of all class members—originally *and* after Maxon brought the ILG funds to the court's attention, and the notice to the absent class members was sufficient to advise them that they were losing rights under the FLSA if they did not opt out of the settlement. This is not a case where the due process exception applies. The final judgment binds this court, and under that judgment, the California Plaintiffs' claims in this case are precluded.

---

[1] However, Wells Fargo provided the court with an affidavit from Kevin McInerney, one of the attorneys representing the *Lofton* class, that indicates that the lawyers representing the *Lofton* class did attempt to negotiate with Wells Fargo for it to pay a portion of the ILG funds to the *Lofton* class after they learned that the ILG clients submitted claims forms in *Lofton*. Dkt. 277, Ex. B. McInerney explains that he supports Maxon's attempt to recover a portion of the fees, but that he did not advocate for doing so because he felt in would be a mistake to disrupt the *Lofton* settlement at this point in light of new caselaw that would substantially decrease the settlement value. *Id.*

C.   **Finality of the *Lofton* Judgment**

Plaintiffs contend that the *Lofton* judgment is not final for res judicata purposes because several issues are on appeal. Dkt. 277. However, the appeal has no impact on the finality of the judgment. The judgment was final on July 27, 2011, and it has not been disturbed. *See* Dkt. 279, Ex. A at 20. While the court understands the decision not to vacate the judgment is on appeal, it does not make the original judgment any less final.

The court originally stayed the case because it was "reluctant to rely on the finality of the judgment in the *Lofton* case." Dkt. 265. At that point, the California trial judge who had decided to issue a temporary restraining order relating to the ILG funds had stated on the record that he was "'taking a look at the entire settlement.'" *See id.* (quoting *Lofton*, 179 Cal. Rptr. 3d 254, 263 (Cal. App. 4th 2014)). The court noted that it had "an equitable duty to protect the integrity of its judgments" and did not want to base its judgment "on such an unstable foundation." *Id.* The court relied on its discretionary power to stay proceedings in the interest of justice. *Id.* Now that the California district court has elected not to vacate its judgment, this court's concern that the *Lofton* trial judge may undo the entire judgment has been assuaged. Accordingly, the court no longer has reason to delay relying on the final judgment in *Lofton*.

## IV. CONCLUSION

The *Lofton* judgment is final and binding, and the California Plaintiffs released their FLSA claims in the settlement in that case. Their claims in this case are therefore barred under the doctrine of res judicata. Accordingly, Wells Fargo's motion for summary judgment is GRANTED, and the California Plaintiffs' claims are DISMISSED WITH PREJUDICE.

Signed at Houston, Texas on November 4, 2015.

_____
Gray H. Miller
United States District Judge